UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTH STAR HEALTH ALLIANCE, | ) | Case No. 26-60099 (WAK) |
| INC., *et al.*, | ) | Main Case |
| | ) | **Joint Administration Requested** |
| Debtors. | ) | |
| | ) | |

## OBJECTION AND RESERVATION OF RIGHTS OF NORTHERN CREDIT UNION TO MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL

Northern Credit Union ("NCU") by and through its undersigned counsel, hereby files this Objection (this "Objection") to *Motion for Interim and Final Orders Authorizing Use of Cash Collateral* (the "Cash Collateral Motion") [Docket No. 13], filed by the above captioned debtors and debtors in possession (the "Debtors"). In support of this Objection, NCU respectfully states as follows:

### BACKGOUND

1. On February 10, 2026 (the "Petition Date"), the Debtors filed separate voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Debtors' chapter 11 cases (these "Chapter 11 Cases").

2. NCU had no advance notice of the filing of the Chapter 11 Cases, and was surprised to learn of the filings. Except as may be implied from the filing of the Cash Collateral Motion, NCU is unaware of any request from the Debtors for NCU to consent to the use of its cash collateral.

3. Prior to the Petition Date, NCU made a line of credit (the "Line of Credit") available to Debtor North Star Health Alliance, Inc. ("North Star") up to a maximum principal amount of

23013850.v2

Two Million and 00/100 Dollars ($2,000,000.00) as evidenced by that certain Business Loan Agreement dated as of October 31, 2024 made by and between North Star and NCU (the "<u>Loan Agreement</u>") and that certain Promissory Note dated as of October 31, 2024 in the maximum principal amount of Two Million and 00/100 Dollars ($2,000,000.00) made by North Star in favor of NCU (the "<u>Note</u>"), secured that certain Commercial Security Agreement dated as of October 31, 2024 made by North Star in favor of NCU pursuant to which North Start granted to NCU a security interest in the collateral set forth therein (the "<u>Security Agreement</u>").

4. The Line of Credit is also guaranteed by, (i) that certain continuing unlimited Commercial Guaranty dated as of October 31, 2024 made by Debtor Carthage Area Hospital, Inc. ("<u>Carthage Hospital</u>") in favor of NCU (the "<u>Carthage Guaranty</u>"), and (ii) that certain continuing unlimited Commercial Guaranty dated as of October 31, 2024 made by Claxton-Hepburn Medical Center, Inc. ("<u>Claxton-Hepburn</u>") in favor of NCU (the "<u>Claxton Guaranty</u>", and collectively with the Carthage Guaranty, the "<u>Guaranties</u>").

5. In connection with the Line of Credit, North Star executed and delivered to NCU certain other documents, agreements, and instruments relating to the Line of Credit, (collectively, with the Loan Agreement, the Note, the Security Agreement, and the Guaranties, the "<u>Original Loan Documents</u>").

6. On or around December 24, 2025, NCU issued a temporary increase of One Million One Hundred Thousand and 00/100 Dollars ($1,100,000.00) in the Line of Credit (the "<u>Temporary Loan</u>") to a maximum principal amount of Three Million One Hundred Thousand and 00/100 Dollars ($3,100,000.00) (the "<u>Amended Line of Credit</u>"), in exchange for an Amended Commercial Promissory Note in the maximum principal amount of Three Million One Hundred Thousand and 00/100 Dollars ($3,100,000.00) made by North Star to NCU (the "<u>Amended Note</u>").

23013850.v2

The Original Loan Documents as amended, restated, modified, and/or consolidated by the Amended Note and corresponding documents shall be herein referred to as the "<u>Loan Documents</u>."[1]

7. The indebtedness to NCU evidenced by the Loan Documents is secured by a lien and security interest covering amounts deposited as of the Petition Date in the operating accounts of Carthage Hospital and Claxton-Hepburn held at NCU (the "<u>NCU Cash Collateral</u>").

## **OBJECTION**

8. Bankruptcy Code Section 363 provides that the Debtor may not use the NCU Cash Collateral unless NCU consents to such use or this Court authorizes non-consensual use upon terms that provide adequate protection of NCU's interests in such cash collateral. *See* 11 U.S.C. § 363(c)(2) and (e).

9. What constitutes "adequate protection" must be determined on a case-by case basis, with the purpose being to protect the secured creditor from diminution or decrease in the value of its interest in collateral. *In re Energy Partners., Ltd.,* 409 B.R. 211, 236 (Bankr. S.D. Tex. 2009). In other words, if the debtor's proposed protections do not adequately preserve the creditor's interest in the cash collateral as it existed on the petition date, then the creditor is not adequately protected. *In re Carbone*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008). Adequate protection is necessary because otherwise, the secured creditor's Fifth Amendment property right to a just compensation for a taking would be impaired. *See Wright v. Union Cent. Life Ins. Co.,* 311 U.S. 273, 61 S. Ct. 196, 85 L. Ed. 184 (1940).

---

[1] Because NCU was not provided with any advance notice of the filing of these Chapter 11 Cases, it is still in the process of reviewing the Loan Documents and ascertaining the extent of the Debtors' obligations, and therefore reserves the right to amend and supplement this Objection in all respects.

-3-

10. Here, the Debtors' Cash Collateral Motion proposes to provide protection in the form of "a rollover lien to the same extent and validity of their pre-petition interest in the Debtors' assets" and "an allowed superpriority claim pursuant to 11 U.S.C. §507(b) to the extent of any diminution in the value of each creditor's cash collateral, as applicable." *See* Cash Collateral Motion, pg. 2. It is important to note, however, that the Debtors' proposed interim order authorizing the use of cash collateral omits any mention of superpriority claims, and limits the scope of any "roll-over security interests" to "post-petition acquired *assets of the same type*, and to the same extent, validity and priority" that each creditor held on the Petition Date. (emphasis added)

11. According to the budgets submitted with the Cash Collateral Motion, the Debtors project immediate (within the next week) and material negative cash flow at Carthage Area Hospital and Claxton-Hepburn in the amounts of $5,368,076 and $412,898, respectively. Moreover, both of those debtors are projected to have significant negative cash balances at the end of the proposed interim period.

12. This significant cash burn makes the promise of rollover liens as adequate protection illusory and undermines the sufficiency of a narrow "same type" rollover lien as the Debtors are projecting that no new cash will be available for any rollover liens to attach to. Absent additional protections in the form of superpriority claims and additional adequate protection liens granted pursuant to section 364(c)(1)-(3), NCU will be exposed to unmitigated diminution of the NCU Cash Collateral.

13. Further, the Cash Collateral Motion acknowledges at least six other lenders in addition to NCU that may claim interests in the Debtors' cash. This is problematic as the budgets attached to the Cash Collateral Motion contain no delineation of the collateral sources funding the

proposed expenditures, no allocation of whose cash collateral is being used to fund each debtor entity or line item, and no description of the relative priorities that may exist between and among claimants who may hold competing claims to the same cash collateral.

14. NCU is sensitive to the fact that the Debtors are healthcare providers, and that some access to cash collateral may be necessary to protect the health, safety and welfare of patients in the Debtors' care. However, NCU cannot consent to entry of an order in a form as outlined in the Cash Collateral Motion which fails to provide adequate protection of its interest in the NCU Cash Collateral.

Dated: February 11, 2026

**BOND, SCHOENECK & KING, PLLC**

By:     /s/ *Andrew S. Rivera*
Charles J. Sullivan (Bar Roll #507717)
Grayson T. Walter (Bar Roll #518237)
Andrew S. Rivera (Bar Roll # 700712)
Office and Post Office Address
One Lincoln Center, 18th Floor
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Emails: sullivc@bsk.com
       walterg@bsk.com
       arivera@bsk.com

*Attorneys for Northern Credit Union*

23013850.v2