**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

---------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099-5-wak |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30078 |
| | | Case No. 26-30079 |
| | | Case No. 26-60100 |

---------------------------------------------------------------------x

**MOTION OF DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO 11 U.S.C.
§§ 105, 507(a)(4) AND 507(a)(5) AND THE "DOCTRINE OF NECESSITY" FOR AN
ORDER AUTHORIZING IT TO PAY:  (A) PREPETITION EMPLOYEE WAGES,
SALARIES, AND RELATED ITEMS; (B) PREPETITION EMPLOYEE BUSINESS
EXPENSES; (C) PREPETITION CONTRIBUTIONS TO AND BENEFITS UNDER
EMPLOYEE BENEFIT PLANS; (D) PREPETITION EMPLOYEE PAYROLL
DEDUCTIONS AND WITHHOLDINGS; AND (E) ALL COSTS AND EXPENSES
INCIDENT TO THE FOREGOING PAYMENTS AND CONTRIBUTIONS**

North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"),

Claxton-Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc.

("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the

"Debtors") hereby move the Court for the entry of interim and final orders:  (i) authorizing the

Debtors, in accordance with their stated policies and in their sole discretion, to pay:  (a) certain

prepetition employee wages, salaries, overtime pay, contractual compensation, sick pay, vacation

pay (including "personal days"), holiday pay, taxes, and other accrued compensation (collectively,

the "Prepetition Compensation"); (b) prepetition employee business expenses, including travel and

lodging expenses (collectively, the "Prepetition Business Expenses"); (c) prepetition contributions

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

to and benefits under employee benefit plans; (d) prepetition employee payroll deductions and withholdings; and (e) all costs and expenses incident to the foregoing payments and contributions (including payroll-related taxes and processing costs); and (ii) granting certain related relief (the "Motion").  In addition, the Debtors request that the Bankruptcy Court schedule a final hearing within approximately twenty-five (25) days of the commencement of these Chapter 11 cases to consider approval of this Motion on a final basis.  In support of this Motion, the Debtors respectfully represent as follows:

<u>**JURISDICTION, VENUE AND BASIS FOR RELIEF**</u>

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are §§ 105(a), 507(a)(4), and 507(a)(5).  The Motion is also supported by the equitable "Doctrine of Necessity."

<u>**BACKGROUND**</u>

A.      <u>**The Chapter 11 Cases**</u>

3.      On February 10, 2026 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in possession of their properties and are operating and managing their businesses, as debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No request for the appointment of a trustee, examiner or patient care ombudsman has been made in these Chapter 11 Cases and no statutory committees have been appointed or designated.

B.     <u>The Debtors' Corporate Structure and Operations</u>

5.     North Star Health Alliance, Inc. was established in September 1993 and incorporated in the State of New York as a not-for-profit corporation. North Star is the umbrella organization within which Carthage, Claxton, Meadowbrook and related affiliates coordinate governance, strategy, and shared services under what is referred to as the Transformation Plan.[2] North Star is a passive parent entity that does not itself exercise financial control over each member organization; rather, it serves as a platform for alignment and operational integration, including shared leadership and centralized administrative functions (e.g., finance, human resources, information technology, compliance, revenue cycle coordination, and cash planning) that are critical to sustaining rural healthcare delivery across multiple campuses. The North Star system as a whole employs approximately 1,600 employees.

6.     Carthage was established in November 1921 and incorporated in the state of New York as a not-for-profit corporation. Carthage operates a 25-bed Critical Access Hospital in Carthage, New York serving a large, rural tri-county area. Carthage holds a New York State Department of Health operating certificate (No. 2238700C; Facility ID/PFI 379) for primary care hospital-critical access hospital services located at 1001 West Street, Carthage, New York 13619, and it also operates a second 25 bed acute-care campus located at 214 King Street, Suite A, Ogdensburg, New York 13669 (the "<u>Claxton Campus</u>") under the same operating certificate (Facility ID/PFI 15684). The Claxton Campus is the designated "9.39" hospital for the area and is

---

[2] Beginning in or about August 2022, North Star pursued a complex transition (the "Transformation Plan") designed to preserve access to acute care and behavioral health services in the North Country while addressing Claxton's unsustainable legacy cost and reimbursement structure as a Sole Community Hospital. The Transformation Plan involved coordinated planning among North Star member organizations, engagement with DOH and OMH, and stepwise regulatory actions. On October 23, 2024, DOH and OMH issued operating certificates that reorganized Claxton into two distinct hospital entities: (i) a standalone inpatient psychiatric hospital (CHMC) and (ii) a separate acute-care campus operated by Carthage under a shared operating certificate (the Claxton Campus).

the former acute-care component of Claxton that is now operated by Carthage under a shared operating certificate as part of the Transformation Plan. While the New York State Department of Health ("DOH") issued the operating certificate reflecting this configuration, Centers for Medicare & Medicaid Services ("CMS") processes to recognize and operationalize the Claxton Campus as a critical access hospital (including surveys, enrollment steps, and related notifications) have involved additional steps and timing considerations.

7.     Claxton-Hepburn Medical Center, Inc. was established in December 1916 and incorporated in January 1917 in the state of New York as a not-for-profit corporation.  Following the implementation of the Transformation Plan, Claxton now operates exclusively as a standalone Article 31 Inpatient Psychiatric Hospital licensed by the New York State Office of Mental Health under Operating Certificate No. 8231002, located at 214 King Street, Suite B, Ogdensburg, New York 13669. Claxton provides acute inpatient behavioral health services for adults (28 beds) and children/adolescents (12 beds), including the region's only acute inpatient unit dedicated to children and adolescents. Claxton also leads the Pathways to Recovery Peer Coaching program and has been planning to establish the region's first Comprehensive Psychiatric Emergency Program.

8.     Meadowbrook Terrace, Inc. was established in December 2011 and incorporated in the state of New York as a not-for-profit corporation.  Meadowbrook is a 60-bed assisted living facility (58 ALP beds and 2 Adult Home) that provides assisted living services for seniors in the North Country region. Meadowbrook is a key part of the Debtors' care continuum for elderly and medically fragile patients, supporting safe discharge planning and community-based care.

9.     Through this bankruptcy proceeding, the Debtors intend to continue to fulfill their mission by operating their facilities to deliver quality health care in their communities.

### REQUEST FOR AUTHORITY TO PAY CERTAIN PREPETITION COMPENSATION, PREPETITION BUSINESS EXPENSES, AND RELATED CLAIMS

10.     The Debtors' workforce consists of an aggregate of approximately 1,627[3] hourly and salaried employees (the "Employees"). The continued and uninterrupted service of the Employees is essential to the Debtors' continuing operations and to their ability to restructure their operations.

11.     As of the Petition Date, many of the Employees were owed or had accrued various sums for Prepetition Compensation and Prepetition Business Expenses. In addition, as of the Petition Date, the Debtors had obligations in respect of Prepetition Compensation for deductions from Employees' paychecks used to make payments on behalf of Employees for: (a) benefit plans, insurance programs, charitable contributions, garnishments or support payments, and other similar programs on account of which the Debtors deduct a sum of money from an Employee's paycheck and pays that amount to a third party (collectively, "Deductions"); and (b) withholdings from Employees' paychecks on account of various federal, provincial, and local income and other taxes for remittance to the appropriate federal, provincial or local taxing authority (collectively, "Withholdings"). Prepetition Compensation, Prepetition Business Expenses, Deductions, and Withholdings were due and owing as of the Petition Date because, among other things:

(a)     the Debtors filed their Chapter 11 petitions in the midst of their regular and customary payroll periods, as well as in the midst of their regular reimbursement cycle for Employees' business expenses (payroll is paid every other Wednesday for the period ending the prior Saturday, February 14, 2026 for Carthage and Sunday, February 15, 2026 for Claxton);

(b)     certain checks issued by the Debtors to the Employees prior to the Petition Date (including Employee expense reimbursement checks) may not have

---

[3] Claxton approximately 719 overall employees, Carthage approximately 898 overall employees, and North Star approximately 10 employees.

yet been presented for payment or have not yet cleared the banking system and, accordingly, were not honored and paid as of the Petition Date;

(c)    the Employees have not yet been paid certain of their salaries, contractual compensation, and wages for services previously rendered to the Debtors or have not yet been reimbursed for business expenses previously advanced on behalf the Debtors; and

(d)    certain other forms of compensation (including sick pay, vacation pay, and holiday pay) related to prepetition services have not yet been paid to or for the benefit of Employees because such amounts, although accrued either in whole or in part prior to the Petition Date, were not payable at such time, but rather will become payable in the future in the ordinary course of the Debtors' businesses.

12.    The Debtors seek authority, in their sole discretion, to pay all (a) Prepetition Compensation, (b) Prepetition Business Expenses, (c) Deductions, and (d) Withholdings attributable to the period prior to the Petition Date.  The Debtors estimate that, as of the Petition Date, approximately $3,900,000 in Prepetition Compensation (including accrued vacation pay), and less than $50,000 in Prepetition Business Expenses, had accrued but remained unpaid.

13.    None of the payments to the Employees will exceed the amount of $17,150 which would otherwise be entitled to priority treatment under §§ 507(a)(4) and (5) of the Bankruptcy Code.

**REQUEST FOR AUTHORITY TO HONOR PREPETITION EMPLOYEE BENEFITS**

14.    The Debtors have a number of employee benefit programs, including health, dental, life insurance, disability insurance, savings programs, paid time off, and other similar programs (collectively, the "Benefit Programs").  The contributions to or benefits paid under the various Benefit Programs by the Debtors are referred to herein collectively as "Benefits."  The value of the accrued Benefits is approximately $2,925,000.

15.    As of the Petition Date, certain Benefits were owed but remained unpaid because certain obligations under the Benefit Programs accrued either in whole or in part prior to the

Petition Date, but will not become payable in the ordinary course of the Debtors' businesses until a later date.

16.     The Debtors seek authority to honor all Benefits in their sole discretion, including all prepetition Benefits that already have accrued.

### JUSTIFICATIONS FOR GRANTING REQUESTED RELIEF

17.     The Debtors seek the relief requested in this Motion because any delay or disruption in the provision of employee benefits or payment of compensation (including the payment of Prepetition Compensation, Prepetition Business Expenses, Deductions or Benefits) will destroy the Debtors' relationship with the Employees and irreparably impair Employee morale at the very time when the dedication, confidence, and cooperation of these Employees is most critical. The Debtors face the risk that their operations may be severely impaired if authority is not granted immediately for the Debtors to make the payments described above. Further, if the Debtors' operations are interrupted or impaired, the health and well-being of the Debtors' patients could suffer.

18.     At this critical early stage of this case, the Debtors simply cannot risk the substantial disruption to their business operations that inevitably would attend any decline in workforce morale attributable to the Debtors' failure to pay Prepetition Compensation, Prepetition Business Expenses, Deductions, and Benefits in the ordinary course of their businesses. Moreover, bolstering Employee morale will assist the Debtors in maintaining a "business as usual" atmosphere and, in turn, facilitate the Debtors' efforts to continue operating and caring for their patients according to their normal high standard until their facilities can be properly marketed and sold or closed in an orderly manner.

19.     Because the amounts represented by Prepetition Compensation, Prepetition Business Expenses, and Deductions are needed to enable the Employees to meet their own personal obligations, absent the relief requested herein, the Employees will suffer undue hardship and, in many instances, serious financial difficulties.

20.     Under Section 507(a)(4) of the Bankruptcy Code, each Employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $17,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for:
>
> (A)   wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual;....

11 U.S.C. § 507(a)(4).  Likewise, under Section 507(a)(5) of the Bankruptcy Code, the Employees ultimately may be granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan —
>
> (A)   arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B)   for each such plan, to the extent of —
>
> (i)    the number of employees covered by each such plan multiplied by $17,150; less
>
> (ii)   the aggregate amount paid to such employees under paragraph (3) of this subsection regarding certain wages, salaries, or commissions, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

21.     The Debtors believe that, in each case, the amount of prepetition wages, salaries, and contractual compensation owing to or on account of any particular Employee will not exceed the sum of $17,150 allowable as a priority claim under Section 507(a)(4) or Section 507(a)(5) of

the Bankruptcy Code.[4]  Nonetheless, for the foregoing reasons, to the extent that the Debtors in

limited instances may owe an aggregate amount exceeding $17,150 in combined Prepetition

Compensation, Prepetition Business Expenses, Deductions, and Benefits to or on account of

certain employees, the Debtors should be permitted to pay those amounts to the full extent

described above.  Accordingly, the Debtors request authority to pay all such amounts in the

statutory priority amounts.

22.    Numerous courts have recognized the validity of the foregoing justifications for

allowing the Debtors to pay prepetition compensation, deductions and benefits and, as a result,

have routinely granted relief similar to that requested herein in other cases, including cases in this

District.[5]

23.    In addition, to avoid the serious disruption of the Debtors' efforts to smoothly

continue operations that could result from the nonpayment of any withholding taxes, the Debtors

seek authority to remit all Withholdings, including prepetition Withholdings, collected on behalf

---

[4]  Because earned and accrued vacation typically is paid in-kind, rather than through a direct cash outlay, the Debtor
<u>has not included</u> accrued vacation in determining whether any Employee's Prepetition Compensation exceeds the
$17,150 cap.

[5]  *See In re Victor Insulators, Inc.*, No. 08-22385 (JCN) (Bankr. W.D.N.Y. Sept. 8, 2008); *In re Bush Industries*, No.
04-12295 (CLB) (Bankr. W.D.N.Y. March 31, 2004); *In re Corson Manufacturing Co.,* No. 99-16855K (Bankr.
W.D.N.Y. Dec. 15, 1999); *In re CNB Int'l. Inc.,* No. 99-11240B (Bankr. W.D.N.Y. Mar. 11, 1999); *In re Al Tech
Specialty Steel Corp.,* No. 97-18096B (Bankr. W.D.N.Y. Dec. 31, 1997); *In re City Mattress, Inc.,* No. 93-13767B
(Bankr. W.D.N.Y. Dc. 29, 1993); *accord In re Purina Mills, Inc.,* No. 99-3938 (SLR) (D. Del. Oct. 29, 1999); *In re
Loewen Group Int'l. Inc.,* No. 99-1244 (PJW) (D. Del. June 1, 1999) (Judge Farnan); *In re Loews Cineplex
Entertainment Corp.,* Nos. 01-40346 (AJG) through 01-40582 (MG) (Bankr. S.D.N.Y. Feb. 15, 2001); *In re Al RealW
Marketing of New York. Inc.*, Nos. 01-40252 (MG) through 01-40290 (MG) (Bankr. S.D.N.Y. Feb 6, 2001); *In re The
Imperial Home Décor Group Inc.,* No. 00-19 (MFW) (Bankr. D. Del. Jan. 5, 2000); *In re Tultex Com.*, No. 99-3626
(Bankr. W.D. Va. Dec. 3, 1999); *In re National Restaurants Management. Inc.*, Nos. 99B10350 through 99B10352
and 99B10354 through 99B10356 (CB) (Bankr. S.D.N.Y. July 8, 1999); *In re Montgomery Ward Holding Com.*, No.
97-1409 (PJW) (Bankr. D. Del. July 8, 1997); *In re The Clothestime. Inc.*, No. 5A95-22533 (Bankr. C.D. Cal. Dec. 8,
1995); *In re The Elder-Beerman Stores Corp.*, No. 95-33643 (Bankr. S.D. Ohio Oct. 17, 1995); *In re Dow Corning
Corn.*, No. 95-20512 (Bankr. E.D. Mich. May 17, 1995); *In re Herman's Sporting Goods, Inc.*, No. 93-31529 (Bankr.
D.N.J. Mar. 15, 1993); *In re Phar-Mor. Inc.*, Nos. 92-41599 through 92-41614 (Bankr. N.D. Ohio Sept. 4, 1992); *In
re Southland Corp.*, No. 390-371 19-HCA-1 1 (Bankr. N.D. Tex. Oct. 24, 1990); *In re Ames Dep't Stores. Inc.*, No.
90 B 11233 (Bankr. S.D.N.Y. Apr. 26, 1990); *In re Federated Dep't Stores. Inc.*, No. 1-90-00130 (Bankr. S.D. Ohio
Jan. 15, 1990 and Jan. 25, 1990).  Because of the voluminous nature of these unreported orders, they are not attached
to this Motion.  Upon request, copies of these orders are available from Debtors' counsel.

of the Employees to the applicable taxing authorities. Many federal, provincial, and local taxing authorities impose personal liability on the officers and directors of entities responsible for collecting taxes from employees to the extent any such taxes are collected but not remitted. Accordingly, if these amounts remained unpaid, there is a risk that the Debtors' officers and directors may be subject to lawsuits or even criminal prosecution on account of any such nonpayment during the pendency of these Chapter 11 cases. Such lawsuits or proceedings obviously would constitute a significant distraction for officers and directors at a time when they should be focused on the Debtors' efforts to (a) stabilize their post-petition business operations, and (b) develop and implement a successful reorganization strategy.

### REQUEST FOR AUTHORITY TO PAY PREPETITION PROCESSING COSTS

24. In addition, the Debtors request that they be authorized, in their sole discretion, to pay all costs incident to Prepetition Compensation and Deductions, such as processing costs and the employer portion of payroll-related taxes, as well as accrued but unpaid prepetition charges for administration of the Benefit Programs (collectively, the "Prepetition Processing Costs").

25. Payment of the Prepetition Processing Costs is justified because the failure to pay any such amounts might disrupt services of third-party providers with respect to Prepetition Compensation, Deductions, and Benefits. By paying the Prepetition Processing Costs, the Debtor may avoid even temporary disruptions of such services and thereby ensure that the Employees obtain all compensation and benefits without interruption.

26. In addition, under existing case law, such program administration charges may be entitled to priority under Section 507(a)(5) of the Bankruptcy Code. *See, e.g., Allegheny Int'l, Inc. v. Metropolitan Life Ins. Co.*, 145 BR. 820 (W.D. Pa. 1992). In *Allegheny*, the court ruled that the prepetition claims of a medical benefits plan administrator for, among other things, fees charged

- 10 -

for performing administrative, actuarial, and claims services in connection with the medical benefits plans of a chapter 11 debtor were entitled to priority under Section 507(a)(5) of the Bankruptcy Code. *See id*. at 822-23 ("It would be useless to prioritize expenses for contributions to an employee benefit plan and not prioritize the expenses necessary to administer those plans."); *see also In re Lummus Industries*, 193 BR. 615, 619 (Bankr. M.D. Ga. 1996) (prepetition administrative fees of debtor's health plan administrator entitled to priority under Section [507(a)(5)] of the Bankruptcy Code); *In re Cardinal Industries*, 164 B.R. 76, 79 (Bankr. S.D. Ohio 1993) (same). As such, amounts paid on account of such Prepetition Processing Costs may not otherwise be available for distribution to unsecured creditors.

### REQUEST FOR AUTHORITY FOR BANKS TO HONOR AND PAY CHECKS ISSUED TO PAY PREPETITION COMPENSATION, PREPETITION BUSINESS EXPENSES, DEDUCTIONS, WITHHOLDINGS, BENEFITS, AND PREPETITION PROCESSING COSTS

27. The Debtors further request that all applicable banks and other financial institutions be authorized and directed, when requested by the Debtors in the Debtors' sole discretion, to receive, process, honor, and pay any and all checks drawn on the Debtor's accounts in respect of Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings, Benefits, and Prepetition Processing Costs, whether such checks were presented prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

28. The Debtors further represent that it has sufficient cash reserves, together with anticipated access to sufficient debtor-in-possession financing, to pay promptly all Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings, Benefits, and Prepetition Processing Costs, to the extent described herein, as such amounts become due in the ordinary course of their business.

29.     Nothing in this Motion shall be construed as a request for (a) authority to assume any executory employment or related contract under Section 365 of the Bankruptcy Code or (b) any relief with respect to any indemnification obligations relating to the Debtors' directors and officers.

## NO PRIOR REQUEST

30.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (i) authorizing, but not requiring, the Debtors, in accordance with their stated policies and in their sole discretion, to pay Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings, and Benefits that accrued but remained unpaid as of the Petition Date to or for the benefit of the Employees; (ii) authorizing the Debtors, in their sole discretion, to pay the Prepetition Processing Costs; (iii) authorizing and directing all applicable banks and other financial institutions, when requested by the Debtors in the Debtors' sole discretion, to receive, process, honor, and pay any and all checks drawn on the Debtors' accounts in respect of Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings, Benefits, and Prepetition Processing Costs, whether such checks were presented prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments; and (iv) granting such other and further relief as the Court may deem proper.

Dated:  February 13, 2026
        New York, New York

**BARCLAY DAMON LLP**
*Proposed Counsel for Debtors and*
*Debtors-In-Possession*

By:    */s/Janice B. Grubin*
Janice B. Grubin
Jeffrey A. Dove
Ilan Markus (*pro hac vice* admission to be sought)
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Janice B. Grubin:
(212) 784-5808; jgrubin@barclaydamon.com
Jeffrey A. Dove:
(315) 413-7112; jdove@barclaydamon.com
Ilan Markus:
(203) 672-2661; imarkus@barclaydamon.com

# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099-5-wak |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30078 |
| | | Case No. 26-30079 |
| | | Case No. 26-60100 |

-------------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE**
**BANKRUPTCY CODE (I) AUTHORIZING PAYMENT OF WAGES,**
**COMPENSATION AND EMPLOYEE BENEFITS AND (II) AUTHORIZING**
**FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND**
**TRANSFERS RELATED TO SUCH OBLIGATIONS**

This matter coming before the Court on the Motion of North Star Health Alliance, Inc.

("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc.

("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors"), for an Order Authorizing them to pay:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

2

(A) Prepetition Employee Wages, Salaries, and Related Items; (B) Prepetition Employee Business Expenses; (C) Prepetition Contributions to and Benefits Under Employee Benefit Plans; (D) Prepetition Employee Payroll Deductions and Withholdings; and (E) All Costs and Expenses Incident to the Foregoing Payments and Contributions (the "Motion"); the Court having reviewed the Motion and having heard the statements of counsel regarding the relief requested in the Motion at a hearing before the Court (the "Hearing"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (c) and due and proper notice of the Motion having been provided to the U.S. Trustee for the Northern District of New York and the creditors holding the twenty largest unsecured claims against the Debtors' estates, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; it is hereby:

**ORDERED,** that the Motion[2] is granted on an interim basis as set forth herein; and it is further

**ORDERED,** that subject to the limitations found in 11 U.S.C. § 507(a)(4), the Debtors are authorized, but not directed, in accordance with their stated policies and in their sole discretion, to pay Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings, and Benefits that accrued but remained unpaid as of the Petition Date to or for the benefit of the Employees; and it is further

**ORDERED,** that the Debtors are authorized, but not directed, in their sole discretion, to pay the Prepetition Processing Costs, if any; and it is further

---

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

**ORDERED,** that all applicable banks and other financial institutions are authorized and directed, when requested by the Debtors in the Debtors' sole discretion, to receive, process, honor, and pay any and all checks drawn on the Debtors' accounts in respect of Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings, Benefits, and Prepetition Processing Costs, whether such checks were presented prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments; and it is further

**ORDERED,** that a copy of the Motion and this Order shall be served upon (i) the Office of the United States Trustee for the Northern District of New York, (ii) the banks and entities affected by this Motion, (iii) the five largest secured creditors, and (iv) the Debtors' twenty (20) largest unsecured creditors by first class mail on or before _____ (EST) on February __, 2026.

**ORDERED,** the final hearing concerning the relief requested in the Motion shall be held before this Court on _____, 2026 at _____ (EST), or as soon thereafter as counsel may be heard.  Any party in interest may object to the entry of the Final Order in accordance with the provisions of Local Bankruptcy Rule 9013-1(c).  This Order shall remain in effect notwithstanding any objection until further Order of this Court.  The modification or vacation of this Order shall not impair any action taken pursuant to it prior to its modification or vacation; and it is further

**ORDERED,** that nothing in the Motion shall be deemed a request by the Debtors for authority to assume, and nothing in this Order shall be deemed authorization to assume, any executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code; and it is further

**ORDERED,** that notwithstanding any applicability of Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

# # #

4

# <u>EXHIBIT B</u>

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099-5-wak |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30078 |
| | | Case No. 26-30079 |
| | | Case No. 26-60100 |

-------------------------------------------------------------------x

**FINAL ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE
BANKRUPTCY CODE (I) AUTHORIZING PAYMENT OF WAGES,
COMPENSATION AND EMPLOYEE BENEFITS AND (II) AUTHORIZING
FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND
TRANSFERS RELATED TO SUCH OBLIGATION**

This matter coming before the Court on the Motion of North Star Health Alliance, Inc.

("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc.

("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors"), for an Order Authorizing it to Pay:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

(A) Prepetition Employee Wages, Salaries, and Related Items; (B) Prepetition Employee Business Expenses; (C) Prepetition Contributions to and Benefits Under Employee Benefit Plans; (D) Prepetition Employee Payroll Deductions and Withholdings; and (E) All Costs and Expenses Incident to the Foregoing Payments and Contributions (the "Motion"); the Court having reviewed the Motion and having heard the statements of counsel regarding the relief requested in the Motion at a hearing before the Court (the "Hearing"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (c) and due and proper notice of the Motion having been provided to the U.S. Trustee for the Northern District of New York and the creditors holding the twenty largest unsecured claims against the Debtors' estates, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; it is hereby:

**ORDERED** that the Motion is granted; and it is further

**ORDERED** that, pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized, but not required, to satisfy the prepetition Employee Obligations and Employee Benefits, each as defined in the Motion; and it is further

**ORDERED** that the Debtors are authorized, but not required, to continue to honor their practices, programs, and policies with respect to their Employees as such practices, programs, and policies were in effect as of the date of the commencement of the Debtors' Chapter 11 cases, including, but not limited to the Employee Obligations and Employee Benefits; and it is further

**ORDERED** that the Debtors are authorized, but not required, to pay costs and expenses incidental to the payment of the Employee Obligations and Employee Benefits, including all administration and processing costs and payments to outside professionals or independent

contractors, in the ordinary course of business, in order to facilitate the administration and maintenance of the Debtors' programs and policies related to the Employee Obligations and Employee Benefits; and it is further

**ORDERED** that the Debtors' banks are authorized, when requested by the Debtors in the Debtors' sole discretion, to receive, process, honor, and pay any and all checks, debits, electronic or wire transfers of funds that are related to Employee Obligations and Employee Benefits, and the costs and expenses incident thereof, whether those checks were presented prior to or after the date of the commencement of these Chapter 11 cases, provided that sufficient funds are available in the accounts to make such payments; and it is further

**ORDERED** that the Debtors' banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and that the Debtors' banks shall have no liability to any party for relying on such representations by the Debtors as provided for herein; and it is further

**ORDERED** that the Debtors are authorized (consistent with this Order) to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests related to Employee Obligations or Employee Benefits to the extent that such checks or transfers have been dishonored or rejected as a consequence of the commencement of the Debtors' Chapter 11 cases; and it is further

**ORDERED** that nothing in the Motion or this Order shall be construed as impairing the Debtors' right to contest the validity or amount of any Employee Obligations, including without limitation Payroll Taxes that may be due to any taxing authority; and it is further

**ORDERED** that nothing in the Motion shall be deemed a request by the Debtors for authority to assume, and nothing in this Order shall be deemed authorization to assume, any executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code; and it is further

**ORDERED** that notwithstanding any applicability of Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

# # #