UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTH STAR HEALTH ALLIANCE, | ) | Case No. 26-60099 (WAK) |
| INC., *et al.*, | ) | Main Case |
| | ) | Jointly Administered |
| Debtors. | ) | Case No. 26-30078 |
| | ) | Case No. 26-30079 |
| | ) | Case No. 26-60100 |
| | ) | |

**OBJECTION AND RESERVATION OF RIGHTS OF NORTHERN CREDIT UNION TO MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTORS TO PAY PRE-PETITION OBLIGATIONS OF CRITICAL VENDORS**

Northern Credit Union ("NCU") by and through its undersigned counsel, hereby files this Objection (this "Objection") to the *Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. Sections 105(a) and 363(b) (i) Authorizing, But Not Directing, the Debtors to Pay Pre-petition Obligations of Critical Vendors, (ii) Authorizing and Directing Financial Institutions to Honor and Process Related Checks and Transfers, and (iii) Granting Related Relief* (the "Motion") [Docket No. 34], filed by the above captioned debtors and debtors in possession (the "Debtors"). As and for its Objection, NCU respectfully states as follows:[1]

1. In the Motion, the Debtors seek interim authorization, on shortened notice, to pay over $29 million to unidentified creditors for pre-petition debts. The relief requested by the Debtors is extraordinary both in its nature and in the amount the Debtors seek to expend.

2. The Debtors make their request without identifying for the Court or any other parties in interest (i) which creditors the Debtors are seeking to favor, (ii) the amount to be paid to

---

[1] The Motion is being heard on an extremely accelerated timeline, and prior to the Debtors making mandatory disclosures regarding their assets, liabilities, and general financial condition. Accordingly, NCU reserves the right to amend and/or supplement this Objection as additional information becomes available.

23040242.v3

each such allegedly critical vendor, and (iii) the underlying justification for paying the prepetition claims of such creditors outside of a plan and in what is almost certain to be a deviation from the Bankruptcy Code's regular priority scheme.

3. NCU respectfully submits that, on the record before the Court, the Debtors have not met their substantial burden of justifying the relief sought in the Motion.

4. While section 105(a) of the Bankruptcy Code gives bankruptcy courts equitable powers to carry out the provisions of Title 11, it "does not create discretion to set aside the Code's rules about priority and distribution; the power conferred by § 105(a) is one to implement rather than override." *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004) (quotations and citations omitted); *see Law v. Siegel*, 571 U.S. 415, 421 (2014).

5. The Debtors invoke the doctrine of necessity, however they do so without disclosing any facts or offering any basis to justify why critical vendor payments are necessary, especially in such striking amounts as proposed by the Debtors in the Motion. Although courts sometimes rely upon the doctrine of necessity to authorize payment of pre-petition claims when doing so is essential to the continued operation of the debtor, the doctrine cannot be invoked simply as a matter of convenience. *See In re Fin. News Network, Inc.*, 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991). "To justify the pre-plan payment of a pre-petition obligation, the proponent of the payment must show substantial necessity." *In re United Am., Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005) (citation omitted). Further, application of the doctrine of necessity should not result in prejudice to other creditors. *Id* at 784.

6. Here, it is impossible to discern from the Motion whether the proposed critical vendor payments are actually necessary to support the Debtors' attempts to continue business operations. Moreover, based upon the limited financial projections offered by the Debtors' to date,

23040242.v3

it is far from certain that the Debtors will even be able to continue as a going concern beyond the next few weeks.

7. Upon information and belief, the Debtors' proposed critical vendor payments vastly exceed the funds available to the Debtors to make such payments, indeed, the Debtors make no attempt to identify any source of funding for the payments proposed in the Motion. To the extent the Debtors seek to make payments using NCU's cash collateral, the Debtors have not articulated how they plan to provide NCU with adequate protection for the inevitable diminution in the value of its cash collateral. Accordingly, NCU objects to any payment of so-called "critical vendor" claims to the extent that the Debtors cannot meet their burden to establish that such payments will not prejudice NCU's secured claims against the Debtors. Indeed, NCU respectfully submits that depleting NCU's cash collateral to pay non-priority general unsecured claims is antithetical to the equitable considerations underpinning the doctrine of necessity because it will result in clear and unavoidable prejudice to NCU's rights as a secured lender while offering no concrete benefit to the Debtors' estates.

8. Under present circumstances, NCU cannot consent to the Debtors' request to expend more than $29 million dollars (that the Debtors do not have) to effect a preferential recovery for unidentified general unsecured creditors to the detriment of NCU's rights to collect its secured claims against cash collateral.

9. NCU respectfully submits that the relief requested in the Motion is premature at this stage in the Debtors' chapter 11 cases and is wholly unsupported from an evidentiary basis. Nevertheless, to the extent the Court may be inclined to allow the Debtors to pay prepetition claims outside of a plan of reorganization, NCU respectfully submits that any authorization to make such payments should be subject to and specifically limited by any amounts designated as a specific

23040242.v3

line-item for payment of critical vendors in an approved budget authorizing the Debtors to use cash collateral. Moreover, the Court should require the Debtors to disclose to NCU and any other party having an interest in cash collateral any "critical vendor" payments at least 14 days prior to making such payment. In the event the Debtors are unable to secure the prior written consent of NCU and any other interested party to make such payments, the Debtors should be prohibited from making any such payment until and unless the Debtors obtain a further order of the Court specifically authorizing such payment and identifying the payee and amount to be paid.

**WHEREFORE**, NCU respectfully requests entry of an order denying the Motion in its entirety and granting such other relief as the Court deems just and proper.

Dated:  February 17, 2026

**BOND, SCHOENECK & KING, PLLC**

By:    /s/ *Andrew S Rivera*
Charles J. Sullivan (Bar Roll #507717)
Grayson T. Walter (Bar Roll #518237)
Andrew S. Rivera (Bar Roll # 700712)
Office and Post Office Address
One Lincoln Center, 18th Floor
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Emails: sullivc@bsk.com
           walterg@bsk.com
           arivera@bsk.com

*Attorneys for Northern Credit Union*

23040242.v3