So Ordered.

Signed this 18 day of February, 2026.




_____

Wendy A. Kinsella

United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099-5-wak |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30078 |
| | | Case No. 26-30079 |
| | | Case No. 26-60100 |

---------------------------------------------------------------------x

**SECOND INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL**

This matter having come before the Court on February 18, 2026 for a second interim hearing on the motion (the "Motion") of North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for authority to use Cash Collateral.[2]  The Debtors seek

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

1

entry of an order authorizing the use of Cash Collateral. The Debtors have represented to the Court that:

  A.  Prior to the Petition Date, the Debtors entered into the various loan and other financial agreements with related security agreements (collectively, the "Agreements") with the parties that are identified on **Exhibit B** to the Motion that may claim an interest in the Cash Collateral (collectively, the "Cash Collateral Secured Creditors").

  B.  As security for Debtors' performance of its obligations under the Agreements, the Debtors agreed to grant the Cash Collateral Secured Creditors valid and binding liens (the "Pre-Petition Liens") on Debtors' present and future Cash Collateral, as such term is defined in Section 363 of the Bankruptcy Code.

  C.  The Cash Collateral Secured Creditors may assert that the Debtors may not use Cash Collateral unless the interests of the Secured Creditor are adequately protected.

  D.  The Debtors provided notice of the Motion to the Cash Collateral Secured Creditors, the Office of the U.S. Trustee, the New York Department of Health, each of the Debtor's twenty largest unsecured creditors, and all parties requesting notice.

  E.  Prior to the initial hearing on the Motion, Cash Collateral Secured Creditor Northern Credit Union (NCU") filed an objection to the Motion (the "NCU Objection"), raising certain objections to the Debtors' use of NCU's Cash Collateral (the "NCU Cash Collateral").

  F.  On February 13, 2026, the Court entered its *Interim Order Authorizing Use of Cash Collateral* with the consent of NCU [Docket No. 31] (the "First Interim Cash Collateral Order"), which among other things, authorized the Debtors to use cash collateral through and including February 18, 2026, subject to compliance with an approved budget and with restrictions and protections provided to NCU.

50131900.1

G. The continued operation of the Debtors' businesses is dependent upon the ability to use Cash Collateral. There is an immediate need for entry of an order authorizing use of Cash Collateral, and, absent entry of such an order, the Debtors' estates will be irreparably harmed.

Based upon the foregoing, the statements of counsel for the parties and all others matters heard by the Court, **THE COURT HEREBY ORDERS**:

1. Attached hereto is an interim cash collateral budget through the week ending February 20, 2026 (collectively, the "Budget"), which has been prepared by Debtors. The Debtors are authorized to use Cash Collateral, solely to the extent set forth in the Budget and except as otherwise limited by this Order, through and including February 27, 2026, provided that such use of Cash Collateral shall be exclusively in the ordinary course of the Debtors' businesses and only for those items set out in the Budget. No later than February 23, 2026, the Debtors shall file with the Court an updated 13 week Budget reflecting the Debtors' projected cash flow and cash collateral needs through the week ending May 22, 2026 and a report reconciling the Debtors' actual post-Petition Date performance to Budget. Notwithstanding this authorization, the Debtors shall not use Cash Collateral for the payment or satisfaction of any expense that will result in the Debtors spending more than 110% of any line item reflected in the Budget and shall not exceed the aggregate amount for all line items set forth in the Budget.

2. The Debtors shall not (a) take any action outside the ordinary course of their businesses without the prior approval of NCU, or (b) grant, permit or suffer to exist any lien upon or security interests in their assets (other than liens and security interests in existence on the Petition Date or granted pursuant to prior orders of the Bankruptcy Court) unless agreed to by NCU.

50131900.1

3. No Cash Collateral may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of the pre-petition indebtedness or liens held by NCU or the liens or claims granted under this order; (b) assert any claims and defenses against NCU or its agents, affiliates, representatives, attorneys or advisors; or (c) seek to modify any of the rights granted to NCU hereunder.

4. Pursuant to Sections 361(2), 363(e) and 506 of the Bankruptcy Code, in order to provide adequate protection of the Cash Collateral Secured Creditors' interests under applicable law in the Cash Collateral against diminution in the value of their collateral ("Collateral Diminution") caused by the Debtors' use of Cash Collateral pursuant to this Order, the Debtors grant, and the Cash Collateral Secured Creditors are hereby granted, roll-over security interests in all of the Debtors' post-petition acquired assets, regardless of the nature of such assets, and to the same extent, validity and priority of any interest each Cash Collateral Secured Creditor held in Cash Collateral on the Petition Date (the "Roll-Over Liens"), such Roll-Over Liens shall be (i) in addition to all security interests, liens and rights of setoff existing in favor of the Cash Collateral Secured Creditors on the Petition Date, (ii) valid, perfected, enforceable liens and effective as of the Petition Date without any further action by the Debtors or the applicable Cash Collateral Secured Creditors and without the execution, filing or recordation of any document otherwise required under applicable law for granting and perfecting security interests and liens, and (iii) security for the use of Cash Collateral and as protection against Collateral Diminution. The security interests and liens granted pursuant to this Order shall be binding upon the Debtors, any successor in interest to the Debtors or their assigns, and creditors who have or may hereafter extend credit to the Debtors or their estates. No other liens or claims are or will be prior to or on parity

50131900.1

with the liens or claims of the Cash Collateral Secured Creditors with respect to the Roll-Over Liens (other than pursuant to the express prior written consent of NCU).

5. The Debtors shall deposit all receipts, revenues, and other cash collections into the accounts currently maintained by the Debtors at NCU, except to the extent doing so would be contrary to any established historical practice of the Debtors. Notwithstanding the general authorization to use Cash Collateral set forth herein, the Debtors shall not transfer funds out of deposit accounts held at NCU or pay any Budgeted items from NCU accounts in any manner that is inconsistent with the Debtors' prior established practice, without the express prior written consent of NCU. To the extent necessary to effectuate the foregoing, the Court hereby waives the requirements of section 345(b) of the Bankruptcy Code with respect to any depositary accounts held by the Debtors at NCU through and including February 25, 2026, without prejudice to the right of the United States Trustee to object to any further waiver of such requirements.

6. In addition to the Roll-Over Liens granted herein, and solely to the extent of any diminution in value of NCU's cash collateral resulting from the Debtors' use thereof, NCU is hereby granted: (a) pursuant to Sections 363 and 507(b) of the Bankruptcy Code, an allowed superpriority claim with priority as set forth in sections 503(b) and 507(b) of the Bankruptcy Code ("Superpriority Claim"); (b) pursuant to sections 363 and 361 of the Bankruptcy Code, a first priority perfected security interest and lien on all unencumbered assets of the Debtors and their estates; and (c) pursuant to sections 363 and 361 of the Bankruptcy Code, a junior perfected security interest and lien on all encumbered assets of the Debtors and their estates, subordinate only to valid, perfected, and non-avoidable liens in existence on the Petition Date (collectively, the "Cash Collateral Liens"). The Cash Collateral Liens shall be valid, perfected, and enforceable upon entry of this Order without any further action by the Debtors or NCU and without the

5

50131900.1

execution, filing, or recordation of any financing statements, security agreements, or other documents otherwise required under applicable law.

7. As additional adequate protection, the Debtors agree that, until and unless all NCU Prepetition Obligations (defined below) are fully and indefeasibly paid in full, and except to the extent validly existing on the Petition Date, the Debtors shall not seek to allow, nor suffer to exist, any lien upon any property of the Debtors' estates which is equal or senior in priority to any of the roll-over or replacement liens granted to NCU in accordance with this Order, except as may otherwise be approved by the Court after a hearing held on regular notice to NCU in accordance with the Local Bankruptcy Rules.

8. Nothing herein shall be deemed to prevent NCU from seeking to terminate the use of Cash Collateral for any breach by the Debtors of the terms hereof or to obtain relief from the automatic stay or to assert any other rights, claims, remedies, or defenses available to NCU, nor shall anything contained herein deprive the Debtors or any other party in interest of the right to oppose any such action.

9. Any reversal, modification, or vacation of this Order shall not affect the validity or priority of any obligation of the Debtors to the Cash Collateral Secured Creditors incurred or arising by operation of law, or any security interest or lien granted to the Cash Collateral Secured Creditors under this Order, before the effective date of such reversal, modification, or vacation. Notwithstanding the entry of any subsequent stay or any such reversal, modification, or vacation, all uses of the Cash Collateral, and the security interests and liens granted to the Cash Collateral Secured Creditors by the Debtors under this Order before the effective date of such stay, reversal, modification, or vacation, shall be governed in all respects by the original provisions of this Order

50131900.1

and the Cash Collateral Secured Creditors shall be entitled to all the rights, privileges, and benefits with respect to all such uses, obligations, security interests, and liens.

10. Nothing herein shall preclude the NCU from asserting that it is not adequately protected, requesting additional adequate protection or making any contention respecting valuation of collateral or the amount of their claims, all rights are reserved.

11. Notwithstanding the foregoing, NCU Cash Collateral shall not be used to pay any prepetition claims of any kind or nature absent further order of the Court authorizing such payments or the express prior written consent of NCU.

12. A copy of this Order shall be served by the Debtors, not later than February 19, 2026 upon (i) the Office of the United States Trustee for the Northern District of New York, (ii) the Cash Collateral Secured Creditors, (iii) the New York State Department of Health, (iv) the Debtors' twenty (20) largest unsecured creditors, and (v) any persons that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002.

13. A further hearing on the Motion will be held on **February 25, 2026 at 11:30 a.m. EST** either in-person at the United States Bankruptcy Court for the Northern District of New York located at the James M. Hanley U.S. Courthouse and Federal Building, 100 South Clinton Street, Syracuse, New York OR by video via Teams, for which pre-registration is required by 3:00 p.m. (EST) one (1) business day before the hearing. Go to https://www.nynb.uscourts.gov/Remote-Hearing-Appearances.

14. Any objections or responses to the Motion or to entry of a further order granting the relief requested in the Motion shall be filed by noon on February 24, 2026 and served upon the following parties: (i) the Debtors, at Barclay Damon LLP, 1270 Avenue of the Americas, Suite 2310, New York, New York 10020, Attn: Janice B. Grubin, Esq., Jeffrey A. Dove, Esq. and Ilan

Markus, Esq.; (ii) Office of the United States Trustee for the Northern District of New York; (iii) counsel for Northern Credit Union, Bond, Schoeneck & King PLLC, One Lincoln Center, 18th Floor, Syracuse, New York 13202-1355, Attn: Charles Sullivan, Esq., Grayson Walter, Esq., and Andrew Rivera, Esq., (iv) the Debtors' Top 20 Unsecured Creditors; and (v) any other party requesting service.

15. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this order are immediately effective and enforceable upon its entry.

# # #

50131900.1

**NORTH STAR HEALTH ALLIANCE**

| 13-Week Cash Flow Projection | WE 2/13/26 Budget | WE 2/13/26 Actual | WE 2/20/26 Budget | WE 2/20/26 Actual |
|---|---|---|---|---|
| **RECEIPTS** | | | | |
| **Operating** | | | | |
| Net Patient Service Revenue | - | - | - | - |
| Other Recurring Operating Revenue | - | - | - | - |
| Leased Employees Revenue | - | - | - | - |
| GPO | - | - | - | - |
| **Non Operating** | | | | |
| VAPAP | - | - | - | - |
| VAP | - | - | - | - |
| FY25 DPT - Actual | - | - | - | - |
| FY26 DPT - Actual | - | - | - | - |
| NY DOH Funding | - | - | - | - |
| Intercompany Transfers In | - | - | - | - |
| Other Cash In-Flows | - | - | - | - |
| **Total Receipts** | - | - | - | - |
| Variance - Cumulative | | - | | - |
| Variance - % - Cumulative | | 0% | | 0% |
| **EXPENSES** | | | | |
| Salaries & Wages | - | - | - | - |
| Payroll Taxes | - | - | - | - |
| Fringe Benefits | - | - | - | - |
| Leased Employees - Ogdensburg (inc. all associated costs) | - | - | 16,500 | - |
| Physician Fees | - | - | - | - |
| Purchased Services | - | 21,108 | - | - |
| Medical Supplies | - | - | - | - |
| Pharmacy Supplies | - | - | - | - |
| Insurance | - | - | - | - |
| Utilities | - | - | - | - |
| Other Operating Expenses | - | - | - | - |
| Bankruptcy - Legal Expense | - | - | - | - |
| Bankruptcy - CRO and FA | - | - | - | - |
| Bankruptcy - Debtor Professionals | - | - | - | - |
| Bankruptcy - Lender Professionals | - | - | - | - |
| Bankruptcy - Committee Professionals | - | - | - | - |
| Interest | - | - | - | - |
| Equipment - Leases | - | - | - | - |
| Loans / Debt Principal Payments | - | - | - | - |
| Capital Purchases | - | - | - | - |
| Intercompany Transfers Out | - | - | - | - |
| **Total Cash Out** | - | 21,108 | 16,500 | - |
| Variance - Cumulative | | 21,108 | | - |
| Variance - % - Cumulative | | 0.0% | | 0.0% |
| **Net Cash Flow** | - | (21,108) | (16,500) | - |
| **Cash Balance - Beginning of Period** | 25,387 | 25,387 | 25,387 | 4,279 |
| **Cash Balance - End of Period** | 25,387 | 4,279 | 8,887 | 4,279 |

**Notes:**

To address the projected shortfall, NSHA is pursuing the following three options to reduce cash demand on combined organization:

1. NY DOH stated they will fund $2.6M on 2/17; however, funding mechanism unknown.
2. Pursuing DIP financing to address cash shortfall
3. Evaluating organizational downsizing to reduce cash demands on organization.
4. Budget does not include any Bankruptcy professional expense as those expense have not been approved by the Court.
5. Budget does not include adequate assurance payments to utilities.

**CARTHAGE AREA HOSPITAL**

13-Week Cash Flow Projection

| | WE 2/13/26 Budget | WE 2/13/26 Actual | WE 2/20/26 Budget | WE 2/20/26 Actual |
|---|---|---|---|---|
| **RECEIPTS** | | | | |
| **Operating** | | | | |
| Net Patient Service Revenue | 2,484,935 | 3,421,625 | 2,484,935 | - |
| Other Recurring Operating Revenue | - | - | - | - |
| Leased Employees Revenue | - | - | 87,095 | - |
| GPO | - | - | - | - |
| **Non Operating** | | | | |
| VAPAP | - | - | - | - |
| VAP | - | - | - | - |
| FY25 DPT - Actual | - | - | - | - |
| FY26 DPT - Actual | - | - | - | - |
| NY DOH Funding | - | - | 2,600,000 | - |
| Intercompany Transfers In | - | - | - | - |
| Other Cash In-Flows | - | - | - | - |
| **Total Receipts** | 2,484,935 | 3,421,625 | 5,172,030 | - |
| Variance - Cumulative | | 936,690 | | - |
| Variance - % - Cumulative | | 138% | | 0% |
| | | | | |
| **EXPENSES** | | | | |
| Salaries & Wages | - | - | 2,719,619 | - |
| Payroll Taxes | - | - | 268,974 | - |
| Fringe Benefits | 526,906 | 534,023 | 506,652 | - |
| Leased Employees - Ogdensburg (inc. all associated costs) | - | - | 2,000,000 | - |
| Physician Fees | 762,958 | 160,009 | 1,204,949 | - |
| Purchased Services | 295,940 | 40,052 | 348,188 | - |
| Medical Supplies | 154,540 | 80,646 | 197,000 | - |
| Pharmacy Supplies | 406,090 | 25,677 | 632,113 | - |
| Insurance | 164,437 | 164,437 | 106,639 | - |
| Utilities | - | - | - | - |
| Other Operating Expenses | 84,500 | - | 132,500 | - |
| Bankruptcy - Legal Expense | - | - | - | - |
| Bankruptcy - CRO and FA | - | - | - | - |
| Bankruptcy - Debtor Professionals | - | - | - | - |
| Bankruptcy - Lender Professionals | - | - | - | - |
| Bankruptcy - Committee Professionals | - | - | - | - |
| Interest | - | - | - | - |
| Equipment - Leases | 104,000 | - | 104,000 | - |
| Loans / Debt Principal Payments | 5,089 | 5,089 | - | - |
| Capital Purchases | - | - | - | - |
| Intercompany Transfers Out | - | - | - | - |
| **Total Cash Out** | 2,504,461 | 1,009,934 | 8,220,634 | - |
| Variance - Cumulative | | (1,494,528) | | - |
| Variance - % - Cumulative | | -59.7% | | 0.0% |
| | | | | |
| **Net Cash Flow** | (19,526) | 2,411,691 | (3,048,604) | - |
| | | | | |
| **Cash Balance - Beginning of Period** | 2,310,316 | 2,310,316 | 4,722,007 | 4,722,007 |
| **Cash Balance - End of Period** | 2,290,790 | 4,722,007 | 1,673,403 | 4,722,007 |

**Notes:**

To address the projected shortfall, NSHA is pursuing the following three options to reduce cash demand on combined organization:

1. NY DOH stated they will fund $2.6M on 2/17; however, funding mechanism unknown.
2. Pursuing DIP financing to address cash shortfall
3. Evaluating organizational downsizing to reduce cash demands on organization.
4. Payroll week ending 2/20/26 does not include roughly $340K backpay. Negotiations currently under way with NYSNA to term this amount out.
5. Budget does not include any Bankruptcy professional expense as those expense have not been approved by the Court.
6. Budget does not include adequate assurance payments to utilities.

**CLAXTON-HEPBURN MEDICAL CENTER**

13-Week Cash Flow Projection

| | WE 2/13/26 Budget | WE 2/13/26 Actual | WE 2/20/26 Budget | WE 2/20/26 Actual |
|---|---|---|---|---|
| **RECEIPTS** | | | | |
| **Operating** | | | | |
| Net Patient Service Revenue | 168,826 | 311,305 | 168,826 | - |
| Other Recurring Operating Revenue | - | - | - | - |
| Leased Employees Revenue - Ogdensburg & NSHA | - | - | 2,016,500 | - |
| GPO | - | - | - | - |
| **Non Operating** | | | | |
| VAPAP | - | - | - | - |
| VAP | - | - | - | - |
| FY25 DPT - Actual | - | - | - | - |
| FY26 DPT - Actual | - | - | - | - |
| NY DOH Funding | - | - | - | - |
| Intercompany Transfers In | - | - | - | - |
| Other Cash In-Flows | - | - | - | - |
| **Total Receipts** | 168,826 | 311,305 | 2,185,326 | - |
| Variance - Cumulative | | 142,479 | | - |
| Variance - % - Cumulative | | 184% | | 0% |
| **EXPENSES** | | | | |
| Salaries & Wages | - | - | 2,049,277 | - |
| Payroll Taxes | - | - | 202,675 | - |
| Fringe Benefits | 474,342 | 478,466 | 385,260 | - |
| Leased Employees (inc. all associated costs) | | | | |
| Physician Fees | - | - | - | - |
| Purchased Services | 88,107 | 24,091 | 245,878 | - |
| Medical Supplies | 42,885 | - | 64,885 | - |
| Pharmacy Supplies | 33,520 | - | 28,520 | - |
| Insurance | - | - | - | - |
| Utilities | - | - | - | - |
| Other Operating Expenses | 7,500 | 354 | 7,500 | - |
| Bankruptcy - Legal Expense | - | - | - | - |
| Bankruptcy - CRO and FA | - | - | - | - |
| Bankruptcy - Debtor Professionals | - | - | - | - |
| Bankruptcy - Lender Professionals | - | - | - | - |
| Bankruptcy - Committee Professionals | - | - | - | - |
| Interest | - | - | - | - |
| Equipment - Leases | - | - | 9,000 | - |
| Loans / Debt Principal Payments | - | - | - | - |
| Capital Purchases | - | - | - | - |
| Intercompany Transfers Out | - | - | - | - |
| **Total Cash Out** | 646,354 | 502,911 | 2,992,995 | - |
| Variance - Cumulative | | (143,443) | | - |
| Variance - % - Cumulative | | -22.2% | | 0.0% |
| **Net Cash Flow** | (477,528) | (191,606) | (807,669) | - |
| **Cash Balance - Beginning of Period** | 767,725 | 767,725 | 576,119 | 576,119 |
| **Cash Balance - End of Period** | 290,197 | 576,119 | (231,550) | 576,119 |

**Notes:**

To address the projected shortfall, NSHA is pursuing the following three options to reduce cash demand on combined organization:

1. NY DOH stated they will fund $2.6M on 2/17; however, funding mechanism unknown.
2. Pursuing DIP financing to address cash shortfall
3. Evaluating organizational downsizing to reduce cash demands on organization.
4. Payroll week ending 2/20/26 does not roughly $436K backpay.  Negotiations currently under way with NYSNA to term this amount out.
5. Budget does not include any Bankruptcy professional expense as those expense have not been approved by the Court.
6. Budget does not include adequate assurance payments to utilities.

**MEADOWBROOOK TERRACE INC.**
13-Week Cash Flow Projection

| | WE 2/13/26 Budget | WE 2/13/26 Actual | WE 2/20/26 Budget | WE 2/20/26 Actual |
|---|---:|---:|---:|---:|
| **RECEIPTS** | | | | |
| **Operating** | | | | |
| Net Patient Service Revenue | 39,086 | 27,107 | 39,086 | - |
| Other Recurring Operating Revenue | - | - | - | - |
| Leased Employees | - | - | - | - |
| GPO | - | - | - | - |
| **Non Operating** | | | | |
| VAPAP | - | - | - | - |
| VAP | - | - | - | - |
| FY25 DPT - Actual | - | - | - | - |
| FY26 DPT - Actual | - | - | - | - |
| NY DOH Funding | - | - | - | - |
| Intercompany Transfers In | - | - | - | - |
| Other Cash In-Flows | - | - | - | - |
| **Total Receipts** | 39,086 | 27,107 | 39,086 | - |
| Variance - Cumulative | | (11,979) | | - |
| Variance - % - Cumulative | | 69% | | 0% |
| | | | | |
| **EXPENSES** | | | | |
| Salaries & Wages | - | - | - | - |
| Payroll Taxes | - | - | - | - |
| Fringe Benefits | - | - | - | - |
| Leased Employees - Carthage (inc. all associated costs) | - | - | 87,095 | - |
| Physician Fees | - | - | - | - |
| Purchased Services | - | - | - | - |
| Medical Supplies & Other | - | 3,857 | - | - |
| Pharmacy Supplies | - | - | - | - |
| Insurance | - | - | - | - |
| Utilities | - | - | 8,891 | - |
| Other Operating Expenses | - | 77 | - | - |
| Bankruptcy - Legal Expense | - | - | - | - |
| Bankruptcy - CRO and FA | - | - | - | - |
| Bankruptcy - Debtor Professionals | - | - | - | - |
| Bankruptcy - Lender Professionals | - | - | - | - |
| Bankruptcy - Committee Professionals | - | - | - | - |
| Interest | - | - | - | - |
| Equipment - Leases | - | - | - | - |
| Loans / Debt Principal Payments | - | - | - | - |
| Capital Purchases | - | - | - | - |
| Intercompany Transfers Out | - | - | - | - |
| **Total Cash Out** | - | 3,934 | 95,986 | - |
| Variance - Cumulative | | 3,934 | | - |
| Variance - % - Cumulative | | 0.0% | | 0.0% |
| | | | | |
| **Net Cash Flow** | 39,086 | 23,173 | (56,900) | - |
| **Cash Balance - Beginning of Period** | 104,641 | 104,641 | 143,727 | 127,814 |
| **Cash Balance - End of Period** | 143,727 | 127,814 | 86,827 | 127,814 |

**Notes:**

To address the projected shortfall, NSHA is pursuing the following three options to reduce cash demand on combined organization:

1. NY DOH stated they will fund $2.6M on 2/17; however, funding mechanism unknown.
2. Pursuing DIP financing to address cash shortfall
3. Evaluating organizational downsizing to reduce cash demands on organization.
4. Budget does not include any Bankruptcy professional expense as those expense have not been approved by the Court.
5. Budget does not include adequate assurance payments to utilities.