**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : Case No. 26-60099-5-wak |
| | : Main Case |
| Debtors. | : Jointly Administered |
| | : Case No. 26-30078 |
| | : Case No. 26-30079 |
| | : Case No. 26-60100 |

---------------------------------------------------------------------x

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF WINTERGREEN, INC., AS FINANCIAL AND RESTRUTURING ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE**

TO THE HONORABLE WENDY A. KINSELLA,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby move the Court, pursuant to this application (this "Application"), for the entry of an order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to employ and retain Wintergreen, Inc. ("Wintergreen"), as financial and restructuring advisor for the Debtors, effective *nunc pro tunc* to the Petition Date.  In support of this Application, the Debtors rely on the Declaration of Rob Blooom of Wintergreen (the "Bloom Declaration") attached hereto as Exhibit B.  In further support of this Application, the Debtors respectively represent as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

Consideration of this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this

proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105, 328(a), and

1103(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"),

Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### A.  The Chapter 11 Cases

3.      On February 10, 2026 (the "Petition Date"), the Debtors commenced these Chapter

11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The

Debtors are continuing in possession of their properties and are operating and managing their

businesses, as debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy

Code.

4.      No request for the appointment of a trustee or examiner has been made in these

Chapter 11 Cases and no statutory committee has yet to been appointed.

### B.  The Debtors' Business

5.      North Star Health Alliance, Inc. was established in September 1993 and

incorporated in the State of New York as a not-for-profit corporation.  North Star is the umbrella

organization within which Carthage, Claxton, Meadowbrook and related affiliates coordinate

governance, strategy, and shared services under what is referred to as the Transformation Plan.[2]

---

[2] Beginning in or about August 2022, North Star pursued a complex transition (the "Transformation Plan") designed
to preserve access to acute care and behavioral health services in the North Country while addressing Claxton's
unsustainable legacy cost and reimbursement structure as a Sole Community Hospital. The Transformation Plan
involved coordinated planning among North Star member organizations, engagement with DOH and OMH, and
stepwise regulatory actions. On October 23, 2024, DOH and OMH issued operating certificates that reorganized

North Star is a passive parent entity that does not itself exercise financial control over each member organization; rather, it serves as a platform for alignment and operational integration, including shared leadership and centralized administrative functions (*e.g.*, finance, human resources, information technology, compliance, revenue cycle coordination, and cash planning) that are critical to sustaining rural healthcare delivery across multiple campuses. The North Star system as a whole employs approximately 1,600 employees.

6.      Carthage was established in November 1921 and incorporated in the state of New York as a not-for-profit corporation.  Carthage operates a 25-bed Critical Access Hospital in Carthage, New York serving a large, rural tri-county area.  Carthage holds a New York State Department of Health operating certificate (No. 2238700C; Facility ID/PFI 379) for primary care hospital-critical access hospital services located at 1001 West Street, Carthage, New York 13619, and it also operates a second 25 bed acute-care campus located at 214 King Street, Suite A, Ogdensburg, New York 13669 (the "Claxton Campus") under the same operating certificate (Facility ID/PFI 15684).  The Claxton Campus is the designated "9.39" hospital for the area and is the former acute-care component of Claxton that is now operated by Carthage under a shared operating certificate as part of the Transformation Plan.  While the New York State Department of Health ("DOH") issued the operating certificate reflecting this configuration, Centers for Medicare & Medicaid Services ("CMS") processes to recognize and operationalize the Claxton Campus as a critical access hospital (including surveys, enrollment steps, and related notifications) have involved additional steps and timing considerations.

7.      Claxton-Hepburn Medical Center, Inc. was established in December 1916 and incorporated in January 1917 in the state of New York as a not-for-profit corporation.  Following

---

Claxton into two distinct hospital entities: (i) a standalone inpatient psychiatric hospital (CHMC) and (ii) a separate acute-care campus operated by Carthage under a shared operating certificate (the Claxton Campus).

the implementation of the Transformation Plan, Claxton now operates exclusively as a standalone Article 31 Inpatient Psychiatric Hospital licensed by the New York State Office of Mental Health under Operating Certificate No. 8231002, located at 214 King Street, Suite B, Ogdensburg, New York 13669. Claxton provides acute inpatient behavioral health services for adults (28 beds) and children/adolescents (12 beds), including the region's only acute inpatient unit dedicated to children and adolescents. Claxton also leads the Pathways to Recovery Peer Coaching program and has been planning to establish the region's first Comprehensive Psychiatric Emergency Program.

8.      Meadowbrook Terrace, Inc. was established in December 2011 and incorporated in the state of New York as a not-for-profit corporation. Meadowbrook is a 60-bed assisted living facility (58 ALP beds and 2 Adult Home) that provides assisted living services for seniors in the North Country region. Meadowbrook is a key part of the Debtors' care continuum for elderly and medically fragile patients, supporting safe discharge planning and community-based care.

9.      Through this bankruptcy proceeding, the Debtors intend to continue to fulfill their mission by operating their facilities to deliver quality health care in their communities.

## RELIEF REQUESTED

10.     The Debtors seek the entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 105, 328(a), and 1103 of the Bankruptcy Code, authorizing the employment and retention of Wintergreen in accordance with the terms and conditions set forth in that certain Engagement Letter between the Debtors and Wintergreen, dated January 19, 2026 (the "Engagement Letter"), a copy of which is attached hereto as Exhibit C.

## A.      The Debtors' Need for a Financial and Restructuring Advisor

11.     The Debtors require the services of an experienced financial and restructuring advisor that is capable of (a) providing vital financial and restructuring advisory services to the Debtors

consistent with the terms set forth in the Engagement Letter, (b) assisting the Debtors in maintaining their financial books and records, (c) responding to requests for financial information, (d) monitoring the Debtors' ongoing cash position, (e) providing information in compliance with the terms of certain agreements to which the Debtors are party, and (f) continuing to meet requirements for financial reporting and information from government bodies and secured creditors.  The Debtors also seek to retain Wintergreen to interface with the financial and restructuring advisors for the committee of unsecured creditors to be formed in these Chapter 11 Cases.

**B.    The Retention of Wintergreen**

12.    Wintergreen is a consulting and financial and restructuring advisory firm with offices at 190 U.S. Route 1, Suite 215, Falmouth, Maine.  Wintergreen provides a broad range of advisory services to its clients.

13.    Wintergreen professionals have previously provided financial and restructuring advisory services to over 300 community hospitals and clinics in over 40 states.  The Debtors believe that Wintergreen is well qualified to provide its services to them in a cost-effective, efficient and timely manner.  Wintergreen has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of the Court.  Additionally, the Debtors have been advised by Wintergreen that Wintergreen will coordinate with the other retained professionals in these bankruptcy cases to eliminate unnecessary duplication or overlap of work.

**C.    Services to Be Provided**

14.    As further set forth in the Engagement Letter, the Debtors have requested that Wintergreen serve as their financial and restructuring advisor during these Chapter 11 Cases to perform the following services, among others, (the "Services") on behalf of the Debtors:

        a.    reviewing the Debtors' cash position, financial plans, strategic plans, and business alternatives;

b.      reviewing and assessing the pre-petition management of the Debtors' business;

c.      evaluating the Debtors' operations and ongoing viability as a going concern;

d.      valuing the Debtors' assets and assisting in preparation of a liquidation analysis; and

e.      any additional services that the Debtors deem appropriate and feasible in order to advise the Debtors in these Chapter 11 Cases and as more fully detailed in the Engagement Letter.

## D.    Professional Compensation

15.    Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 1103 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

16.    Wintergreen intends to apply to the Court for compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Orders of this Court.

17.    Wintergreen will bill for all Services provided at its standard hourly rates in effect at the time Services are provided.  The current hourly rates of the professionals who will render services to the Debtors in these cases are as follows:

| | |
|---|---|
| Rob Bloom | $450 |
| Jonathan Pantenburg | $450 |
| Other Principals | $450 |
| Senior Consultant | $300-$400 |
| Consultant | $250 |

18.    The Debtors believe that Wintergreen's hourly rates are reasonable and comparable to those generally charged by financial and restructuring advisory firms of similar stature to Wintergreen and for comparable engagements, both in and out of bankruptcy proceedings.

Docusign Envelope ID: 23760B2C-EF8C-45DA-BAC8-F21A7EDSE6C4

19.     Subject to approval of this Court and the terms of the Engagement Letter, Wintergreen will also apply for reimbursement of all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, telephone, facsimile and printing expenses, and other customary expenditures) incurred by Wintergreen in connection with the engagement.

20.     In accordance with section 504 of the Bankruptcy Code, Wintergreen has informed the Debtors that there is no agreement or understanding between Wintergreen and any other entity, other than employees of Wintergreen, for the sharing of compensation received or to be received for services rendered in connection with this engagement.

**E.     Wintergreen's Disinterestedness**

21.     Based upon the Bloom Declaration attached hereto as Exhibit B and the Engagement Letter subject to the disclosures made therein, Wintergreen has informed the Debtors that Wintergreen:  (a) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and (b) does not hold or represent an interest adverse to the Debtors' estates, their creditors, or interested parties therein.

22.     To the best of Wintergreen's knowledge, Wintergreen, its members, shareholders, officers, managers, agents, and employees do not have any relationships with the Debtors or parties-in-interest of which the Debtors have made Wintergreen aware that would create a conflict of interest for Wintergreen in providing the Services.  Wintergreen has in the past had, and from time to time may now or in the future have, relationships with parties in interest of the Debtors in matters unrelated to the Debtors (the "Unrelated Matters") and (ii) has in the past had relationships with the parties-in-interest disclosed on Schedule 2 to the Bloom Declaration in matters related to the Debtors (the "Related Matters").  Wintergreen does not anticipate having any future involvement in the Related Matters.

23.     By signing the Engagement Letter, the Debtors (1) waive any conflict of interest relating to performance of professional services by Wintergreen in connection with the Related Matters, and (2) consent to the continued performance of professional services by Wintergreen in connection with the Unrelated Matters.

24.     In addition to the Related Matters, from time-to-time Wintergreen may provide services or have business associations with other entities or people with relationships with the Debtors, including creditors of the Debtors.  Wintergreen will not be prevented or restricted from providing services to such other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Debtors' interests, provided Wintergreen makes appropriate arrangements to maintain the confidentiality of the Debtors' confidential information, as defined in the Engagement Letter.

25.     Wintergreen has indicated that if it discovers any information that is contrary to or pertinent to the statements made in the Bloom Declaration, Wintergreen will promptly disclose such information to the Debtors, Debtors' counsel, this Court, and the United States Trustee.

## BASIS FOR RELIEF

26.     Section 1103(a) of the Bankruptcy Code provides that the Debtors may "select and authorize the employment . . . of one or more . . . agents, to represent or perform services for [the Debtors].  11 U.S.C. § 1103(a).

27.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

28.     Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules to support entry of an order authorizing the Debtors to employ and retain Wintergreen in these Chapter 11 Cases.

29.     The Debtors believe that the employment of Wintergreen would be in the best interests of their estates and desire to employ Wintergreen, effective *nunc pro tunc* to the Petition Date, with compensation to be determined upon application to this Court.

WHEREFORE, the Debtors respectfully request the entry of an order:  (a) authorizing and approving the retention and employment of Wintergreen by the Debtors as their financial and restructuring advisor; (b) authorizing Wintergreen to be compensated at its standard hourly rates, as set forth in the Engagement Letter, subject to applicable provisions of the Bankruptcy Code; and (c) granting such other and further relief as this Court deems just and proper.

Dated:   March  4 , 2026

North Star Health Alliance, Inc.
By:  Chet Truskowski, Board Chairperson

Carthage Area Hospital, Inc.
By: Gary Rowe

Claxton-Hepburn Medical Center, Inc.
By: Zvi Szafran

Meadowbrook Terrace, Inc.
By: Dale Klock

50178923.1

Filed by:

**BARCLAY DAMON LLP**
*Proposed Counsel for Debtors and Debtors-In-Possession*
Janice B. Grubin
Jeffrey A. Dove
Ilan Markus (*pro hac vice* admission to be sought)
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Janice B. Grubin:  (212) 784-5808; jgrubin@barclaydamon.com
Jeffrey A. Dove:  (315) 413-7112; jdove@barclaydamon.com
Ilan Markus:  (203) 672-2661; imarkus@barclaydamon.com

**Exhibit A**

**[Proposed Order]**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : Case No. 26-60099-5-wak |
| | : Main Case |
| Debtors. | : Jointly Administered |
| | : Case No. 26-30078 |
| | : Case No. 26-30079 |
| | : Case No. 26-60100 |

-------------------------------------------------------------------x

**ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF WINTERGREEN AS**
**FINANCIAL AND RESTRUCTURING ADVISOR TO THE DEBTORS AND DEBTORS-**
**IN-POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the application (the "Application") of the North Star Health Alliance, Inc. ("North

Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc.

("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors"), in the above-captioned chapter 11 cases (the

"Chapter 11 Cases") for entry of an order (this "Order") authorizing the employment and retention

of Wintergreen ("Wintergreen"), as financial and restructuring advisor to the Debtors, pursuant to

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

Docusign Envelope ID: 23760B2C-EF8C-45DA-BAC8-521A7ED5E6C4

sections 105, 328, and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101 — 1532 (the "Bankruptcy Code"); the Court having reviewed the Application and the Declaration of Rob Bloom of Wintergreen (the "Bloom Declaration"); the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) Wintergreen does not hold or represent any interest adverse to the Debtors' estates, their creditors, or other parties in interest, (d) Wintergreen is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and (e) employment of Wintergreen is necessary and in the best interests of the Debtors' estates, creditors, and other parties in interest; the Court finding that notice of the Application given by the Debtors was good and adequate; and the Court being fully advised in the premises and having determined that the legal and factual bases set forth in the Application and the Bloom Declaration establish just cause for the relief herein granted, and after due deliberation and cause appearing therefor, it is **HEREBY ORDERED** that:

1.      The Application is granted as set forth herein.

2.      All objections to the Application or the relief requested therein that have not been made, withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3.      Wintergreen's employment is necessary and in the best interests of the Debtors' estates and their creditors and Wintergreen's proposed compensation and expense reimbursement as set forth in the Application and the Engagement Letter are reasonable.

4.      The Debtors are authorized, pursuant to sections 105 and 1103 of the Bankruptcy Code, to engage Wintergreen as financial and restructuring advisor to the Debtors in these Chapter 11 Cases, effective *nunc pro tunc* to the Petition Date, upon the terms and for the purposes set

forth in the Application and in that certain Engagement Letter attached to the Application as Exhibit C (the "Engagement Letter").

5.    Wintergreen shall apply for compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of this Court and all compensation and reimbursement awarded to Wintergreen by the Court shall be paid as an administrative expense of the Debtors' estates.

6.    The Debtors and Wintergreen are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

7.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

### #

## **Exhibit B**

**[Bloom Declaration]**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------x
In re                                              :    Chapter 11
                                                   :
NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1]      :    Case No. 26-60099
                                                   :    Main Case
                          Debtors.                 :    Jointly Administered
                                                   :    Case No. 26-30788
                                                   :    Case No. 26-30799
                                                   :    Case No. 26-60100
---------------------------------------------------------------------x

**DECLARATION IN SUPPORT OF APPLICATION**
**FOR AN ORDER AUTHORIZING EMPLOYMENT**
**AND RETENTION OF WINTERGREEN, AS FINANCIAL**

1, Rob Bloom, being duly sworn, state the following under penalty of perjury:

1.      I am a partner of Wintergreen, a consulting and financial and restructuring advisory firm with offices at 190 US Route 1, Suite 215,  Falmouth, Maine.  I am duly authorized to make and submit this Declaration on behalf of Wintergreen in connection with the Application of the Debtors for Entry of an Order Authorizing the Employment and Retention of Wintergreen, as Financial and Restructuring Advisor Effective *Nunc Pro Tunc* to the Petition Date (the "Application").

2.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.  Capitalized terms and phrases not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

## SERVICES TO BE RENDERED

3.      The Debtors have requested that Wintergreen serve as their financial and restructuring advisor during these Chapter 11 Cases to perform the following services:

a.      reviewing the Debtors' cash position, financial plans, strategic plans, and business alternatives;

b.      reviewing and assessing the pre-petition management of the Debtors' business;

c.      evaluating the Debtors' operations and ongoing viability as a going concern;

d.      valuing the Debtors' assets and assisting in providing a liquidation analysis; and

e.      any additional services that the Debtors deem appropriate and feasible in order to advise the Debtors in these Chapter 11 Cases and as more fully detailed in the Engagement Letter.

4.      Wintergreen's professionals regularly serve as intermediaries in a variety of turnaround, restructuring, and asset sale or acquisition transactions and they have extensive experience as financial and restructuring advisors both inside of and outside of bankruptcy reorganization cases.  Wintergreen is well qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.

5.      Wintergreen is willing to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of the Court.  Additionally, we will coordinate with the other retained professionals in this bankruptcy case to eliminate unnecessary duplication or overlap of work.

## STATEMENT OF CONNECTIONS

6.       To the best of my knowledge and information, formed after a reasonable inquiry, Wintergreen neither holds nor represents any interest adverse to the Debtors, the Debtors' estates or any of their creditors or other parties-in-interest that have been identified in these Chapter11 Cases (collectively, the "Parties"), which Parties are listed on **Schedule 1** hereto.  I have caused the names of the Parties to be run through Wintergreen's conflict search system where they are

Docusign Envelope ID: 23760B2C-F68C-45DA-BAC8-521A75D8E6C4

compared with lists of current and past clients of Wintergreen. To the extent I have been able to ascertain that Wintergreen has been retained to represent any of the Parties in matters unrelated to these Chapter 11 Cases, such facts are disclosed on **Schedule 2** hereto. To the best of my knowledge and based upon Wintergreen; due inquiry, Wintergreen has not represented any of the Parties aside from the limited instances set forth in **Schedule 2**, except that Wintergreen may have in the past, may currently, and may again in the future, represent certain creditors of the Debtors with respect to matters unrelated to the Debtors. Wintergreen is not retained "generally" by any such creditor, but rather is retained on case-specific matters. Each of such creditors accounts for less than one percent of Wintergreen's annual gross revenues. If any other connections to Parties become known to Wintergreen, it will supplement these disclosures.

7.    The information on **Schedule 1** may have changed without our knowledge and may change during the pendency of these Chapter 11 Cases. Accordingly, Wintergreen will review its files periodically during these Chapter 11 Cases to ensure no conflicts or other disqualifying circumstances exist or arise, and update this Declaration as necessary and when Wintergreen becomes aware of additional material information.

8.    I am not related to, and to the best of my knowledge, no attorney or employee of Wintergreen is related to, any United States Bankruptcy Judge for the Northern District of New York or to any attorney in the Northern District of New York office of the Office of the United States Trustee.

9.    The Debtors have numerous creditors and relationships with various individuals and entities that may be parties in interest in these cases. Consequently, although every reasonable effort has been made to discover and eliminate the possibility of any conflict, including the efforts outlined above, Wintergreen is unable to state with certainty whether one of its clients or an

affiliated entity holds a claim or otherwise is a party in interest in the Debtors' chapter 11 cases. If Wintergreen discovers any information that is contrary to or pertinent to the statements made herein, Wintergreen will disclose such information to the Court on notice to creditors and the United States Trustee promptly. Wintergreen does not advise, has not advised, and will not advise any entity, other than the Debtors, in matters related to the Debtors' Chapter 11 Cases.

10.    I believe that the hourly rates to be charged by Wintergreen are comparable to those generally charged by financial and restructuring advisory firms of similar stature to Wintergreen for comparable engagements, both in and out of court.

11.    Wintergreen intends to apply to the Court for payment of compensation and reimbursement of fees and expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Orders of this Court.

12.    There is no agreement or understanding between Wintergreen and any other entity, other than an employee of Wintergreen for the sharing of compensation received or to be received for services rendered in connection with this engagement.

13.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March _3_, 2026

Signed by:

*Rob Bloom*
9B2UAF065U64432

ROB BLOOM

## SCHEDULE 1
### Conflict Search List

**Debtors**
Carthage Area Hospital, Inc.
North Star Health Alliance, Inc.
Claxton-Hepburn Medical Center, Inc.
Meadowbrook Terrace, Inc.

**D/B/As**
Claxton-Hepburn Medical Campus
Claxton-Hepburn Health System
Claxton-Hepburn Medical Center Auxiliary; Claxton-
Hepburn Medical Center' Hepburn Medical Center
Claxton-Hepburn Medical Center Foundation
North Star Pediatrics; Claxton Hepburn Convenient
Care
North Country Surgical Specialists

**Affiliated Parties**
Chet Truskowski
Jim Thew
Zvi Saffran
Gary Rowe
Larry Hasseler
Julie Ward
Tim Sturick
Mauree Missert
Robert Bloom of WinterGreen
Jerian O'Dell
Brandon Bowline
Rachel Zysk
Jennifer Meagher
Richard Duvall, Former CEO
Claxton-Hepburn Medical Center Foundation, Inc.
Claxton Medical, P.C.
North Country Orthopaedic Group, P.C.
North Country Orthopaedic Ambulatory Surgery
Center, LLC
North Country Realty, LLC
Carthage Area Hospital Foundation, Inc.
Comprehensive Women's Health Services, PLLC

**Court and U.S. Trustee**
Hon. Wendy A. Kinsella
Kelly Griffith
Howard Poon
Rachel Sugrue
Hon. Patrick G. Radel
Brenda Robie
Paige Irvine
Colleen Johnson
William K. Harrington
Erin Champion
Neidy Fuentes

**Creditors and Interested Parties**
ASD Specialty Healthcare LLC
Bruce L. Baird, M.D.
Canon Financial Services, Inc.
CCA Financial, LLC to Huntington Technology
Finance
Center for Medicare & Medicaid Services
Corporation Services Company, as Representative
CT Corporation System, as Representative
D. Peter Van Eenenaam. M.D.
First American
First Financial Holdings, LLC
Flex Financial, A Division of Stryker Sales
Corporation
GE HFS, LLC
Howard H. Huang, M.D.
Huntington Technology Finance
M&T Bank
McKesson Corporation
Med One Capital Funding, LLC
New York State Department of Health
NFS Leasing, Inc.
Northern Credit Union (NCU)
Olympus America, Inc.
Pension Benefit Guaranty Corporation (PBGC)
Richard E. Maginn, Trustee of the Irrevocable
Spousal Lifetime Access Trust fbo Richard E.
Maginn
Siemens Financial Services, Inc.
Steven B. Fish, M.D.
TIAA, FSB
U.S. Small Business Administration
Watertown Savings Bank
Wintrust Asset Finance, Inc.
Xerox Financial Services
1199 SEIU
1199 SEIU DUES
1199 SEIU POLITICAL ACTION FUN
3M
3T MEDICAL SYSTEMS, INC
4IMPRINT, INC.
6 S. BROAD STREET, LLC
A A C CONTRACTING INC
A SHORE ANSWER LLC DBA
A VERDI STORAGE CONTAINERS
AADCO MEDICAL INC.
AANPCB
AAPC
ABATEMENT TECHNOLOGIES
ABBOTT LABORATORIES
ABBOTT NUTRITION
ABC CHANNEL 50

ABJ FIRE PROTECTION CO
ABSOLUTELY YOUMIS
ACADEMY OF NUTRITION & DIETETI
ACCESS NURSE PM, LLC
ACR
ACUMED LLC
ADEPT MED INTERNATIONAL
ADIRONDACK CAREPLUS
ADLER MICRO MED
ADOBE INC
ADR TELECOM
ADVANCE MEDIA NEW YORK
ADVANCE MEDICAL DESIGNS
ADVANCED ASHTMA AND ALLERGY OF
ADVANCED BUSINESS SYSTEMS
ADVANCED INSTRUMENTS INC
ADVANCED MEDICAL OPTICS
ADVOCATE RCM LLC
AESCULAP
AGILITI SURGICAL EQUIPMENT
AIRGAS USA, LLC
AIV, INC.
AJK SITE DEVELOPMENT
AJ'S PORTABLES
ALANA HATZIS
ALBANY MARRIOTT HOTELS
ALCON LABORATORIES INC
ALEXIS O'DETT
ALIMED INC
ALISON ALGUIRE
ALLEGION ACCESS TECHNOLOGIES L
ALLERGAN INC
ALLERGAN USA, INC.
ALLIANCE DISTRIBUTION HOLDINGS
ALLIANCE HEALTHCARE SERVICES
ALLIANCE RECRUITING RESOURCES
ALLSCRIPTSMISYS LLC
ALLTECH INTEGRATIONS, INC.
ALLYSON SMITH
ALPHA MEDICAL EQUIPMENT OF NY
ALPHA SOURCE INC
ALPHACARD
ALYSSA MAYETTE-OSHIER
AM ACADEMY OF NURSE PRACTITIONERS
AM ARBITRATION ASSOC
AM CANCER SOCIETY
AM COLLEGE OF RADIOLOGY
AM MANAGEMENT ASSOCIATION
AMAZON.COM SALES, INC.
AMBLER SURGICAL
AMBU INC
AMERICAN ACADEMY OF SLEEP MEDI
AMERICAN CANCER SOCIETY
AMERICAN EXPRESS
AMERICAN HEART ASSOCIATION
AMERICAN HOSPITAL ASSOCIATION

AMERICAN MEDICAL ASSOCIATION
AMERICAN NURSES ASSOCIATION
AMERICAN OSTEOPATHIC ASSOCIATI
AMERICAN PEDIATRICS, PROFESSIO
AMERICAN PROFICIENCY INSTITUTE
AMERICAN RED CROSS
AMERICAN SOCIETY ECHOCARDIOGRA
AMERICAN SOCIETY FOR HEALTHCAR
AMERICAN TIME & SIGNAL
AMERITAS LIFE INSURANCE CORP
AMICO
AMJAD SHEIKH MD
AMN HEALTHCARE INC
AMO SALES & SERVICE
AMY ERKER
ANGEL PLANTY
ANGIODYNAMICS INC
ANNETTE LINDEMAN
ANSWER WATERTOWN
APPLIED MEDICAL
APPLIED STATISTICS & MANAGMENT
APPLIED TECHNICAL SERVICES
AQUA SCIENCES INC
ARELI GROUP LLC
ARETE ADVISORS LLC
ARMSTRONG MEDICAL INDUSTRIES I
ARNOLD ROBERT HAGER
ARTHREX
ASANA, INC
ASD HEALTHCARE
ASD SPECIALTY HEALTHCARE 340B
ASEPTIC ENCLOSURES
ASEPTICO
ASHLEY'S HOME CENTER
ASHUTOSH SHARMA
ASPEN SURGICAL PRODUCTS
ASSA ABLOY ENTRANCE SYSTEMS
ASSOC OF MEMORIAL STAIR CLIMBS
ASSOC. OF DIABETES CARE & EDUC
AT& T TELECONFERENCE SERVICES
AT&T
ATLANTIC TESTING LABORATORIES
ATOM MEDICAL USA LLC
AUGUSTINIAN ACADEMY
AUSA
AUSTIN-LAYING
AVANOS MEDICAL INC
AVANOS MEDICAL SALES, LLC
AVIDEX INDUSTRIES LLC
B BRAUN MEDICAL INC
B.R. JOHNSON, INC.
BAILEY BENWARE
BARCLAY DAMON LLP
BARCODES INC. LLC
BARD MEDICAL
BARD MEDSYSTEMS DIVISION

| | |
|---|---|
| BARD VASCULAR SYSTEMS DIVISION | C R BARD INC |
| BARD-DAVOL INC | C2DX INC. |
| BARKLEY SAFE & LOCK CO. | CADWELL LABORATORIES INC |
| BARKLEY'S SAFE & LOCK CO | CAH FOUNDATION |
| BARTON AND ASSOCIATES INC | CAH MEDICAL STAFF |
| BAUSCH & LOMB SURGICAL | CALIFORNIA FIRST LEASING CORP |
| BAXTER HEALTHCARE CORP (ANESTHIA) | CAMFIL |
| BAXTER HEALTHCARE CORPORATION | CANCER CAREPOINT INC |
| BAXTER TRAVENOL DIALYSIS DIV | CANNON DESIGN INC |
| BAYER HEALTHCARE | CANON FINANCIAL SERVICES, INC. |
| BCDD, LLC | CANTON RESCUE SQUAD INC |
| BD | CANVAS LADY |
| BD DIAGNOSTICS | CAPINTEC INC |
| BEACHLEY | CARDIAC ELECTROPHYSIOLOGY |
| BEARCOM | CARDINAL HEALTH |
| BEAVER VISITEC | CARDINAL HEALTH 340B |
| BECKMAN COULTER INCORP | CARDINAL HEALTH 414 LLC |
| BECTON DICKINSON AND COMPANY | CARDINAL HEALTH PHARM |
| BEEKLEY CORPORATION | CAREFREE STORAGE INC |
| BENCO DENTAL | CAREFREE SURGICAL SPECIALTIES |
| BEST BUY WATERTOWN | CAREFUSION |
| BESTCO BENEFIT PLANS LLC | CAREWISE |
| BETTER BUSINESS PLANNING, INC. | CARL ZEISS MEDITEC, INC |
| BIG LOTS | CARSTENS HEALTH INDUSTRIES INC |
| BILL'S TIRE CENTER | CARTHAGE AREA HOSPITAL |
| BIMBO FOODS INC | CARTHAGE AREA RESCUE SQUAD |
| BIO RAD LABORATORIES | CARTHAGE ATHLETICS |
| BIO-MEDICAL DEVICES, INT'L INC | CARTHAGE CENTRAL SCHOOL DIST |
| BIOMERIEUX VITEK INC | CARTHAGE CHAMBER OF COMME |
| BIOSERV INC | CARTHAGE ELKS LODGE #1762 |
| BLAKE THERMAL SALES & SERVICE | CARTHAGE LIONS CLUB |
| BLOCK IMAGING PARTS & SERVICE, | CARTHAGE POP WARNER |
| BLUE CROSS BLUE SHIELD | CASELLA WASTE SERVICES |
| BLUE ELM SOFTWARE | CAZENOVIA EQUIPMENT CO INC |
| BLUEORANGE COMPLIANCE | CCB LAW |
| BOBCAT SOFTWARE | CDW GOVERNMENT INC |
| BODEN COMPANY | CENTOLELLA LAW PC |
| BONADIO & CO., LLP | CENTREX CLINICAL LABORATORES I |
| BOND SCHOENECK AND KING | CENTURY LINEN & UNIFORM |
| BONNIE CASTLE RESORT & MARINA | CEPHEID |
| BOSS INSTRUMENTS LTD | CEREBROS MEDICAL SYSTEMS, LLC |
| BOSTON SCIENTIFIC CORPORATION | CHANGE HEALTHCARE |
| BOUSQUET HOLSTEIN PLLC | CHANNELFORD ASSOCIATES INC |
| BPAS ACTUARIAL AND PENSION | CHEMAQUA |
| BRACCO DIAGNOSTICS | CHERYL SMITH |
| BRADLEY'S SERVICE | CHERYL TOUSANT |
| BREG INC | CHILD AND ADOLESCENT HEALTH AS |
| BRIAN R BROWN | CHIMERA INTEGRATIONS, LLC |
| BRIGGS HEALTHCARE | CHMC FOUNDATION INC |
| BRIGHTON RADIOLOGY ASSOCIATES, | CHMC PAYROLL ACCOUNT |
| BROWN & WEINRAUB, PLLC | CHRISTINE CLAXTON |
| BTE TECHNOLGIES | CHRISTINE MONROE |
| BUILDING ENGINES INC | CHRISTMAN FUEL SERVICE INC. |
| BULLDOG PROPERTY SERVICES LLC | CHRISTOPHER FISCHER |
| BURNS BROTHERS CONTRACTORS INC | CHURCH STREET DINER |
| BURRVILLE CIDER MILL | CIERRA SPEARANCE |

CIRCLE K
CITIZENS TELEPHONE CO
CITY COMPTROLLER'S OFFICE
CITY OF WATERTOWN
CIVCO MEDICAL SOLUTIONS
CIVCO RADIOTHERAPY
CLARKSON UNIVERSITY
CLAXTON HEPBURN MEDICAL CENTER
CLAXTON MEDICAL PC
CLEANIS INC
CLEARBREW LLC
CLINEQUIP SERVICE
CLINICAL COMPUTER SYSTEMS, INC
CLOUDWAVE
CNMC COMPANY INC
COLLEGE OF AMERICAN PATHOLOGIS
COLLINS-HAMMOND ELECTRICAL
COLOPLAST CORP.
COLTON GLASS & MIRROR INC
COMMERCIAL INVESTIGATIONS LLC
COMMISSIONER OF MOTOR VEHICLES
COMMUNITY BROADCASTERS LLC
COMMUNITY COMPUTER SERVICE INC
COMMUNITY HOSPITAL ALTERNATIVE
COMPASSIONATE CARE FOUNDATION
COMPHEALTH
COMTRIX SOLUTIONS, INC
CONCORD III, LLC
CONE INSTRUMENTS LLC
CONMED
CONMED LINVATEC
CONTACT
CONTINENTAL RESEARCH CORP
CONTROL SOLUTIONS INC
COOK MEDICAL INC
COOPER ELECTRIC
COOPER SURGICAL
CORE L INC
CORETEK, INC
CORNELL UNIVERSITY
CORROHEALTH
CORTECH LLC
COSMIC HEALTHCARE LLC
COTRONIX
COUGHLIN PRINTING GROUP
COVERYS RRG
COVEYS GARAGE R 4230107
COVIDIEN
CPS TELEPHARMACY, INC.
CPSI
CREDIT CARD HOTEL GAS MEALS
CREG SYSTEMS CORP
CREST HEALTHCARE SUPPLY
CRH CONSULTING INC.
CROUSE HOSPITAL
CRUSHFTP LLC

CRYSTAL HACKER
CSC SERVICEWORKS INC.
CSRA/GDIT
CUMMINS NORTHEAST INC
CURASCRIPT(340B)
CUREUS, INC.
CUSTOM DESIGN FRAMEWORKS LLC
CUSTOMIZED COMMUNICATIONS INC
D.R.E. MEDICAL GROUP INC.
DANIEL J DODGE CSW-R
DARKTRACE HOLDINGS LIMITED
DARLENE LYNCH
DARREN ASHCROFT PROPERTY SERV
DATAGEN INC
DATEX OHMEDA
DATIX (USA) INC
DATIX, INC.
DAVID DUNN, MD
DAVID ROSNER
DAVIN HEALTHCARE WORKFORCE SOL
DAVOL INC.
DC CARTHAGE ASSOCIATES, LLC
DEBRA MATOTT
DELPHI HOSPITALIST SERVICES
DELUXE BUSINESS CHECKS
DENOVO DENTAL INC
DENTSERVE
DEPARTMENT OF HEALTH
DEPARTMENT OF LABOR
DEPARTMENT OF THE TREASURY
DEPUY MITEK
DERMARITE INDUSTRIES LLC
DEROYAL INDUSTRIES INC
DEVELOPMENT AUTHORITY OF THE
DEVICOR MEDICAL PRODUCTS INC
DIAGNOSTIC & INTERVENTIONAL RA
DIAGNOSTIC PATHOLOGY CONSULTAN
DIAGNOSTICA STAGO, INC.
DIANA CHAMBERLAIN
DI-CHEM IN
DIGI INTERNATIONAL, INC.
DIGITAL DESIGNED SOLUTIONS
DIGITAL RIVER, INC
DIRECT ENERGY MARKETING INC
DIRECT SUPPLY HEALTHCARE EQUIP
DJO, LLC
DNV HEALTHCARE INC
DOCUSIGN, INC.
DORNIER MEDTECH AMERICA INC
DOUGLAS MICHAEL WINTER
DOXY, ME
DPAO
DR MANUEL C PALAO
DR MICHAEL LYNCH
DR SARIKA SHAH-SEKHON
DRAEGER MEDICAL, INC.

DRFIRST
DRUG ENFORCEMENT ADMINISTRATIO
DRWANTED.COM LLC
DUFFYS EQUIPMENT SERVICE INC
DUTCH OPHTHALMIC USA
DYNASTHETICS
E3 DIAGNOSTICS, INC.
EAST - WESTELCOM NETWORK INC
EASYBADGES LLC
EBAY
EC DATA SYSTEMS
ECFMG
ECLINICAL WORKS
EDEN LABORATORY
EDWARDS LIFESCIENCES
EFH ARCHITECTS, P.C.
EIDE BAILLY LLP
EILEEN SHARROW
EKEY BLANKS
ELECTRO-CAP INTERNATIONAL INC
ELECTRONIC REGISTRY SYSTEMS IN
ELIJAH ANDERSON
ELIZABETH KELLEY
ELIZABETH SCHAEFER
ELK'S LODGE 772
ELMED INC
ELSEVIER
EMBELLISHED CATERING AND EVENT
EMILY BUSH
EMPIRE NATURAL GAS CORPORATION
EMPIRE NORTHEAST INC.
EMPLOYEE NAME - MISCELLANEOUS
EMPLOYEE NAME-TRAVEL EXPENSES
EMPLOYEE SERVICES, LLC
EMPLOYMENT SCREENING ASSOCIATE
EMPRO INSURANCE COMPANY
ENCHANTED FOREST WATER SAFARI
ENCOMPASS BENEFIT CONSULTANTA
ENERGO POWER & GAS LLC
ENYF
ERBE-USA INC
ERIC C NIER
ESAOTE NORTH AMERICA, INC
ESI
ETHICS UNLIMTED, LLC
EUCLID MEDICAL PRODUCTS
EVERGREEN MEDICAL SERVICES INC
EVOQUA WATER TECHNOLOGIES
EWASTE+
EWTI NORTH COUNTRYS CW WATERT
EXCELON DEVELOPMENT INC
EXPERIAN
FACEBOOK/META- SOCIAL MEDIA
FACILITIES SURVEY INC
FAMILY AND MWR
FAMILY DOLLAR

FARNEYS INC
FASPRINT PRINTING & MARKETING
FAT FREE SYSTEMS INC
FEDERAL EXPRESS CORP
FIRST AMERICAN EQUIPMENT
FIRST FINANCIAL CORPORATE LEAS
FIRST PRODUCTS
FIRST UNUM LIFE INSURANCE
FISHER & PAYKEL HEALTHCARE
FISHER HEALTHCARE
FOLLETT PRODUCTS, LLC
FORNO TOSCANA BISTRA
FORT DRUM REGIONAL LIAISON ORG
FOX-MURRAY FUNERAL HOME
FRARY MEDICAL TRANSPORT
FRESENIUS KABI USA, LLC.
FRONTENAC CRYSTAL SPRINGS
FUJIFILM HEALTHCARE CORP
FUTURE HEALTH CONCEPTS
FX CAPRARA AUTO SALES INC
FX CAPRARA CDJR
GAMBLE DISTRIBUTORS INC
GARDNER'S FLOORCOVERING & FURN
GARDNERS FLOORING AND FURNITUR
GE HEALTHCARE
GE HEALTHCARE FIN SERVICES
GE HEALTHCARE FINANCIAL
GE MEDICAL SYSTEMS INFORMATION
GE PRECISION HEALTHCARE LLC
GENERAL DEVICES LLC
GENERAL HOSPITAL SUPPLY CORP.
GENOVA BURNS LLC
GFG RESTAURANT GROUP INC
GI SUPPLY
GILL PODIATRY SUPPLY & EQUIPME
GILLEES AUTO TRUCK AND MARINE
GIS BENEFITS, INC.
GLAUKOS CORPORATION
GLAXOSMITHKLINE CO
GLEASONS SEPTIC SERVICE
GLOBAL COMPUTER SUPPLIES
GLOBAL INDUSTRIAL
GLOBALSTAR USA LLC
GOOGLE INC.
GOTO TECHNOLOGIES USA INC
GOUVERNEUR BREAST CANCER FUND
GOV'T ACTION PROFESSIONALS INC
GRACE PRESBYTERIAN CHURCH
GRAINGER
GRAN VIEW ON THE RIVER
GRANGER MEDICAL
GRASSE RIVER ASPHALT & PAVING
GRAY VANCE LLC
GRAYS FLOWER SHOP
GREAT AMERICA FINANCIAL SVS
GREATAMERICA FINANCIAL SERVICE

GREATER NIAGARA SALES CORP
GREATER WATERTOWN CHAMBER OF
COMMERCE
GREENLEE LAW PLLC
GRIFOLS DIAGNOSTIC SOLUTIONS
GS1 US, INC
GUILDCRAFT INC
GUILFOYLE AMBULANCE SERVICE
GYMO ARCHITECTURE ENGINEERING
GYPSUM WHOLE SALES, INC
H&O EQUIPMENTS, INC
HANCOCK DANIEL & JOHNSON PC
HANES SUPPLY INC
HANNIGAN LAW FIRM PLLC
HANYS
HARBOR FRIEGHT TOOLS
HARDY DIAGNOSTICS
HARRISVILLE CSD
HARTFORD STEAM BOILER INSPECTI
HAUN WELDING SUPPLY
HAVEL INC
HAYES LOCUMS LLC
HCT LLC
HEALTH CARE COMPLIANCE ASSOCIA
HEALTH CARE LOGISTICS
HEALTH CATALYST INC
HEALTH FACILITY ASSESSMENT FUN
HEALTHCARE ASSOCIATION OF NYS
HEALTHCARE PARTNERS OF THE NC
HEALTHSTREAM, INC
HEALTHTRUST PURCHASING GROUP L
HELLER'S GAS OF NEW YORK LLC
HELMER SCIENTIFIC
HENRY SCHEIN INC
HERITAGE FOOD SERVICE EQUIPMEN
HERITAGE MASONRY RESTORATION I
HERSHEY'S ICE CREAM
HETTICH INSTRUMENTS, LP
HEWLETT-PACKARD COMPANY
HFMA
HIGHLAND CAPITAL CORPORATION
HI-LITE AIRFIELD SERVICES, LLC
HILL AND MARKES WHOLESALE DIST
HILL ROM
HILTON GARDEN INN
HOLOGIC INC
HOLOGIC LIMITED PARTNERSHIP
HOVERTECH INTERNATIONAL
HOWLAND PUMP & SUPPLY, CO.INC
HR WORKS, INC
HUBERT CO
HUDSON HEADWATERS 340B LLC
HULL ANESTHESIA
HUMANE RESTRAINT
HUNTER AMBROSE INTERNATIONAL
HURRICANE MEDICAL

HYDE STONE MECHANICAL CONTRACT
HYPERTYPE, INC.
IAC-6021
IATRIC SYSTEMS, INC.
ICU MEDICAL, INC.
IDEMIA
IDENTTRUST SERVICES
IMD MEDICAL DESIGN CORP
IMMACULATE HEART CENTRAL
IMMUCOR INC
IMPERIUM DATA NETWORKS LLC
IMWRF
INDEED.COM
INDIAN RIVER LAKES CONSERVANCY
INDIGO INKWELL
INFORMNNY.COM
INFRA RED ANALYZERS INC
INFUSYSTEM
INKWELL GRAPHIX SIGNS & COMM
INMARK LLC
INNOMED, INC.
INNOVATIVE CAPITAL LLC
INOVALON PROVIDER, INC.
INSURANCE REFUNDS
INTECH PARTNERS LLC
INTEGRA LIFE SCIENCES
INTEGRA LIFESCIENCES CORP
INTEGRATED MEDICAL SYSTEMS INC
INTEGRITEC, INC.
INTELLIGENT MEDICAL OBJECTS
INTERACTIVATION HEALTH NETWORK
INTERBIT DATA
INTERIM DIAGNOSTIC IMAGING, LL
INTERLACE HEALTH LLC
INTERMETRO INDUSTRIES CORP
INTERNAL REVENUE SERVICE
INTERNATIONAL BUSINESS MACHINE
INTREPID BROADCASTING BUSINESS
INTUIT
INTUITIVE SURGICAL INC
INVOTEC INTERNATIONAL INC
IROQUOIS HEALTHCARE ALLIANCE
IROQUOIS HEALTHCARE ASSOCIATIO
IRREVOCABLE SPOUSAL LIMITED AC
ITALIAN AMERICAN CIVIC ASSOC
J DAVID SCHAEFER, MC PLLC
J J KELLER AND ASSOCIATES INC
J. DAVID SCHAEFER, MD
JACKSON & COKER
JACKSON & COKER LOCUM TENENS
JACKSON SHATRAW
JAEGER MEDICAL AMERICA, INC
JAMIE WALLACE
JANIN GROUP
JANNA FOUNTAIN
JASON J CURRAN

JEANETTE PIERCE
JEFFERSON COMMUNITY COLLEGE
JEFFERSON COUNTY AGRICULTURAL
JEFFERSON COUNTY SPCA
JEFFERSON PHYSICIAN ORGANIZATI
JEFFERSON REHABILITATION CENTE
JEFFORDS STEEL & ENGINEERING C
JENKINS HVAC AND GENERAL CONTR
JERRY'S RUN FOR CANCER
JESSICA BICE
JESSICALEE HOLLIS FNP-C
JHENNA LAFLAIR
JM ORTHOTICS
JMS MECHANICAL CONTRACTORS
JOCELYN AZNAR BEANE MD
JOHN STENARD
JOHN W. DANFORTH COMPANY
JOHNSON AND JOHNSON HEALTH CAR
JOHNSON CORNER MART
JOHNSON NEWSPAPER CORPORATION
JOHNSTONE SUPPLY
JOINT COMMISSION ON ACCREDITAT
JOLENE LASIEGE
JONIECE HARRADINE
JOSEPH MEDICO
JRECK SUBS
JURGAN DEVELOPMENT AND MFG
JUST THE RIGHT STUFF
KARALEE HUNTER
KARL STORZ ENDOSCOPY-AMERICA
KARTHIK MADHAVAN
KASSOUF HEALTHCARE SOLUTIONS L
KCI USA
KELLEY BROS, LLC
KELLY NOWELL
KENNY D TINKER
KEYSURGICAL
KINNEY DRUGS
KIRWAN SURGICAL PRODUCTS
KLM
KNOWBE4 INC.
KPC-NY LLC
KRAMES
KRISTA KELLY
KRISTEN KORMANYOS
KRS GLOBAL BIOTECHNOLOGY INC
KURIN INC.
LABCORP OF AMERICA HOLDINGS
LABORATORY ALLIANCE OF CNY, LL
LABORIE MEDICAL TECHOLOGIES CO
LAFAYETTE INSTRUMENT COMPANY
LANDAUER INC
LANGUAGE LINE SERVICES
LAPEL PINS PLUS NETWORK LLC
LAW OFFICE OF DAVID B GEURTSEN
LAWRENCE RECRUITING SPECIALIST

LAWTON ELECTRIC COMPANY
LCRE PROPERTIES LLC.
LEARNWELL
LEASING ASSOCIATES OF BARINGTO
LEICA BIOSYSTEMS RICHMOND
LEMAITRE VASCULAR INC
LENOVO (UNITED STATES) INC
LEWIS COUNTY GENERAL HOSPITAL
LEWIS COUNTY SEARCH & RESCUE
LGC CLINICAL DIAGNOSTICS, INC.
LIBERTY UTILITIES
LIBERY MUTUAL
LIFE SCIENCE LABORATORIES INC
LIFELINE SYSTEMS INC
LINCOLN PEST CONTROL
LIPPES MATHIAS LLP
LISA STOREY
LITHOTRIPSY SERVICES OF NY LLC
LOCUMS TENENS MEDICAL PARTNERS
LOCUMTENENSCOM
LOGCHECK
LOGAN'S EQUIPMENT LLC
LOGCHECK
LOUIE WILLIAMS
LOWES
LOWES CHARGE CARD
LOWVILLE BUSINESS ASSOCIATION
LTL MEDICAL LLC
LUBE EXPRESS
LUNDY SERVICES
M M HAYES COMPANY INC
M&M CONTRACTING
M&T BANK
M&T CREDIT CARD - JERIAN O
M&T CREDIT CARD- CATHY EBERSOL
M&T CREDIT CARD JOHN C
M&T CREDIT CARD- LORI A
M&T CREDIT CARD MORGAN P
M&T CREDIT CARD- RICHARD D
M&T CREDIT CARD- ROB BLOOM
M.S. HALL & ASSOCIATES, LLC
M/E ENGINEERING, P.C.
MADRID-WADDINGTON CENTRAL SCHO
MAINE MOLECULAR QUALITY INC
MAINTENANCE PRODUCTS & EQUIP C
MANATT, PHELPS & PHILLIPS,LLP
MARCELLUS AMBULANCE VOL EMG SE
MARCY, LP
MARK BRONCHETTI
MARSH GROUP
MARTZ COMMUNICATION B99.3
MARY BOUCHARD
MASIMO CORPORATION
MASSENA HOSPITAL INC
MATHESON TRI-GAS INC.
MATRIX ABSENCE MANAGEMENT, INC
MCDONALD HOPKINS LLC

MCKESSON
MCKESSON CORPORATION DC#8113
MCKESSON MEDICAL SURGICAL-3192
MCKESSON MEDICAL SURGICAL-4938
MCKESSON PLASMA & BOILOGICS LL
MCKESSON SPECIALTY CARE DIST
MCMASTER UNIVERSITY
MCQUADE & BANNIGAN INC
MDSUPPLIES & SERVICE INC.
MEALSUITE INC
MED WATER SYSTEMS, LLC
MEDACTA USA INC
MEDBRIDGE INC
MEDCOMP
MEDGEO VENTURES, LLC
MEDHOST
MEDICAL ACCOUNTS SYSTEMS LLC
MEDICAL DATA SYSTEMS, INC
MEDICAL EDUCATION INSTITUTE
MEDICAL GROUP MANAGEMENT ASSOC
MEDICAL HEALTH 360 PLLC
MEDICAL PACKAGING INC
MEDICOOL, INC.
MEDITECH INFORMATION TECHNOLOG
MEDIVATORS INC
MEDLINE INDUSTRIES INC
MEDPRO DOT TRAINING
MEDSHORTS LLC
MEDTOX LAB INC
MEDTRONIC USA INC
MEDUSIND INC.
MELANIE MACDONALD
MEMIC
MERCEDES SCIENTIFIC
MERIT MEDICAL, INC
MERRY X-RAY CORP
MES INC
MESA LABORATORIES INC
MESSER LLC
METALCRAFT
MGC DIAGNOSTICS CORPORATION
MIACH ORTHOPAEDICS, INC
MICAH MATTESON
MICHAEL HENRIE
MICHAEL KENNEDY
MICHAEL WHEELER
MICHELE CATLIN
MICHELE ROBILLARD
MICHELLE BOULTON CENTER
MICHELLE MORROW
MICROAIRE SURGICAL INSTRUMENT
MICROLINE SURGICAL INC
MICROSOFT 365
MICROSURGICAL TECHNOLOGY
MICROTEK
MILLER MAYER LLP

MIMEDX GROUP, INC
MINDRAY DS USA
MINORIA TECH LLC
MIP USA INC
MIRABITO HOLDINGS, INC.
MIRION TECHNOLOGIES (GDS) INC
MIRION TECHNOLOGIES (GDS), INC
MIZUHO ORTHOPEDIC SYSTEMS, INC
MLMIC
MMIP OF NYS
MODERN WEALTH MANAGEMENT, LLC
MODULAR COMFORT SYSTEMS
MOLLY SIEMATKOWKSI
MOOG MEDICAL
MOORE MEDICAL
MOORE'S STEAMWAY
MOPEC INC
MOWER
MOZARC MEDICAL US LLC
MPLT HEALTHCARE LLC
MVAP MEDICAL SUPPLIES, INC
MX FUELS
MXR IMAGING, INC
NAMSS
NANOSONICS, INC
NATASHA GARDNER
NATIONAL GENERAL INSURANCE
NATIONAL GRID
NATIONAL HEALING CORPORATION
NATIONAL PRACTITIONERS DATA B
NATIONAL RESEARCH CORPORATION
NATIONAL RESTAURANT ASSOCIATIO
NATIONAL RURAL HEALTH ASSOC
NATIONAL STUDENT CLEARINGHOUSE
NATIONWIDE LIFE INSURANCE CO.
NAT'L RENAL ADMINISTRATORS ASS
NATUS MEDICAL INC
NATUS SENSORY, INC.
NBC WATERTOWN
NBT BANK
NCAPA CONFERENCE
NCC SYSTEMS INC
NCQA
NCS PEARSON INC
NEOGEN CORPORATION
NEPHRON PHARMACEUTICALS CORP
NETFLIX
NEUROVIRTUAL USA, INC
NEW YORK IMAGING SERVICE, INC
NEW YORK POWER AUTHORITY
NEW YORK STATE DOH
NEW YORK STATE OFFICE OF CHILD
NEW YORK STATE WIDE SENIOR ACT
NEW YORK TECHNOLOGIES CORP.
NEWEGG, INC
NEWFOLD DIGITAL, INC.

NEWZJUNKY INC
NEXSYS ELECTRONICS, INC
NEXTVEIN LLC
NFPA
NIOX INC
NIPRO MEDICAL CORPORATION
NNY - FORT DRUM AUSA
NORTH COAST MEDICAL INC
NORTH COUNTRY ADULT MEDICINE
NORTH COUNTRY CHILDRENS' MUSUE
NORTH COUNTRY EMERG MED
NORTH COUNTRY EYE ASSOCIATES
NORTH COUNTRY ORTHOPAEDIC AMBU
NORTH COUNTRY ORTHOPAEDIC GROU
NORTH COUNTRY PUBLIC RADIO
NORTH COUNTRY TAI CHI LLC
NORTH COUNTRY THIS WEEK
NORTHCOUNTRY INITIATIVE
NORTHERN BORDER INDUSTRIES
NORTHERN GLASS CO INC
NORTHERN LITHO INC.
NORTHERN NEW YORK LIBRARY NETW
NORTHERN NY NEWSPAPERS CORP
NORTHERN ORTHOPEDIC LAB INC
NORTHERN RADIOLOGY ASSOC PC
NORTHERN SPEECH SERVICES INC
NORTHERN TRANSPORTATION TAXI
NOTARYSTAMP.COM
NOTRE DAME CHURCH
NRC HEALTH
NTL APPLIANCE REPAIR CO INC
NUANCE COMMUNICATIONS
NUNN'S HOSPITAL SUPPLIES, INC.
NUTRITION DIRECT
NXSTAGE MEDICAL INC
NYALTCA
NYS ASSESSMENT RECEIVABLES
NYS CHILD SUPPORT PROCESSING C
NYS COMPTROLLERS OFFICE UNCLAI
NYS DEPARTMENT OF HEALTH
NYS DEPARTMENT OF LABOR
NYS DEPT OF ENVIRON CONSERVAT
NYS DEPT OF ENVIRONMENTAL CONS
NYS DEPT OF HEALTH
NYS DEPT OF HEALTH - SPARCS
NYS DEPT OF LABOR
NYS DEPT OF MOTOR VEHICLES
NYS DEPT OF STATE
NYS EDUCATION DEPT
NYS HEALTH DEPT
NYS INCOME TAX
NYS JOINT COMMISSION ON PUBLIC
NYS NURSES ASSOC
NYS OFFICE OF CHILDREN AND FAM
NYSAMSS
NYSNA

OASIS MEDICAL INC
ODD BALL INDUSTRIES MFG CO INC
OFFICE DEPOT INC
OFFICE FURNITURE
OGD INTERNAT'L SEAWAY FESTIVAL
OGDENSBURG VOLUNTEER RESCUE SQ
OLYMPUS AMERICA INC
OLYMPUS CORPORATION
OLYMPUS FINANCIAL SERVICES
OMNICELL
ONYX HEALTHCARE INC
OPEN TEXT INC
OPTILINQ
OPTUM
OPTUM HEALTH
OPTUM360
ORGANOGENESIS INC
ORGANON LLC
ORSPECIFIC
OSI BATTERIES
OSTEOREMEDIES, LLC
OTIS ELEVATOR COMPANY
P AND T SUPPLY AND SERVICES
PA SCDU
PAJUNK MEDICAL SYSTEMS L.P.
PAMELA DALTON, TAX COLLECTOR
PAMELA S. BEYOR, A.I.A
PAN-AMERICA HYPERBARICS INC
PARAGARD DIRECT
PARAGON 28, INC
PARAMETRICS MEDICAL, LLC
PARKWAY TIM HORTONS
PARTS TOWN LLC
PARTSSOURCE LLC
PASCO BUILDING AUTOMATION SYST
PATHOLOGY ASSOCIATES OF SYRACU
PATIENT REFUND/ SLHA
PATIENT REFUNDS
PATTERSON DENTAL
PAUL VANDUSEN
PAXMAN US INC
PCM
PDQ.COM CORPORATION
PEARL MEYER AND PARTNERS, LLC
PEARSON CLINICAL
PEDIATRIC CARDIOLOGY ASSOC LLC
PENSION BENEFIT GUARANTY CORPO
PEPSI COLA
PERFORMANCE FOODSERVICE
PERFORMANCE HEALTH SUPPLY, INC
PERIGEN - LOCKBOX
PERIMED INC
PERSONNEL CONCEPTS
PESI
PETER BRASSELER HOLDINGS, LLC
PETE'S HEAVY REPAIR

PETTY CASH
PFIZER, INC
PHARMALOGIC HOLDINGS CORP
PHARMALOGIC SYRACUSE, LLC
PHILIPS HEALTHCARE
PHILIPS MEDICAL
PHOENIX TEXTILE CORP
PICA
PILLR HEALTH
PIPELINE HEALTH HOLDINGS LLC
PITNEY BOWES CREDIT CORPORATIO
PITNEY BOWES, INC
PLATINUM CODE
PLEASANT NIGHT INN
PM BIOMEDICAL INC
PMA COMPANIES
PNC BANK C/O ALLIED UNIVERSAL
POLSINELLI PC
POSITIVE PROMOTIONS INC
POWER-FLO TECHNOLOGIES, INC
PRACTICE RESOURCES LLC
PRACTICELINK LTD
PRAXAIR HEALTHCARE SERVICES
PRECISION DYNAMICS CORP (PDC)
PRECISION MEDICAL
PRECISION MEDICAL DEVICES LLC
PREMIER PAGING INC
PREMIUM HEALTH SERVICES INC
PRICE CHOPPER
PRINCIPAL FINANCIAL GROUP
PROACT, INC
PRO-ED
PRO-ED INC
PROFESSIONAL RESEARCH CONSULTA
PROGRESSIVE MEDICAL INC
PROMETRIC
PROVATION SOFTWARE, INC.
PTL CONTRACTING CORP
PUBLIC GOODS POOL SW
PURCHASE POWER
Q FIX
Q-CENTRIX LLC
QHR
QIAGEN LLC
QUANTITATIVE MEDICAL SYSTEMS
QUESET MEDICAL
QUIDELORTHO
QUILL CORPORATION
QUORUM HEALTH RESOURCES LLC
QUOTIENT BIODIAGNOSTICS
R B LAWRENCE AMBULANCE
R&D BATTERIES, INC.
RACHEL BARR SCHOOL TAX COLLECT
RACHEL STROSNIDER
RADIATION DETECTION COMPANY
RADIOGRAPHIC TESTING SERVICES

RADIOMETER AMERICA INC
RC TESTING SERVICES CORP
RE MICHEL COMPANY INC
REGENCY BUSINESS SOLUTIONS
REGENCY OFFICE PRODUCTS LLC
RELIANCE STANDARD LIFE INSURAN
RELIANCE WHOLESALE INC
RELIASTAR LIFE INS.CO. NEW YOR
RELINK MEDICAL LLC
RENAL SERVICES EXCHANGE
RENTOKIL NORTH AMERICA INC
REPLACEMENT PARTS INDUSTRIES I
RESMED CORP
RESPIRONICS
RESTAURANT SUPPLY LLC
RGH ENTERPRISES, LLC
RHEONIX, INC.
RICHARD ALLAN SCIENTIFIC CO
RICHARD E. MAGINN, TRUSTEE
RICHARD WOLF
RISHE'S CUSTOM HARDWOOD FLOORI
RIVER HOSPITAL INC
ROCHE DIAGNOSTICS CORPORATION
ROFTEK LTD T/A FLEXMORT
RONIN SURGICAL CORP
ROXANNE SLATE
ROY Q REALTY
RQI PARTNERS, LLC (DAL)
RTI SURGICAL, INC
RUNNING BOARDS, LTD
RURAL PARTNERS IN MEDICINE LLC
RURAL PARTNERS IN MEDICINE, LL
RURAL WISCONSIN HEALTH COOPERA
RXSTRATEGIES, INC
S.L.P. SCIENTIFIC LABORATORY
S.L.P. SCIENTIFIC LABORATORY P
SAGE PRODUCTS HOLDINGS II, LLC
SAGE PUBLICATIONS INC
SAHARRAH FLANAGAN
SAMANTHA HYDE
SAMARITAN MEDICAL CENTER
SAMS CLUB
SANICO, INC
SANOFI PASTEUR
SARAH EURTO
SARAH PERRETTA
SARISSA MELISSA PHOTOGRAPHY
SAVE-A-LOT CANTON
SAVE-A-LOT POTSDAM
SCA PHARMACEUTICALS, LLC
SCOPEMEDICS
SCORPION HEALTHCARE LLC
SCRIBE EMR, INC.
SDMS MEMBERSHIPT DEPT
SEAWAY VALLEY AMBULANCE
SEAWAY VALLEY PREVENTION COUNC

SECURITY SUPPLY
SEIU1199 REGIONAL PENSION FUND
SENTRY DATA SYSTEMS
SEO TECH SYSTEMS
SERVICE EMP BENEFIT FUND
SERVICE EMP PENSION FUND OF UP
SHAMROCK SCIENTIFIC
SHARN ANESTHESIA INC
SHERIF G. EL BAYADI, M.D.
SHERMAN ELECTRIC
SHERWIN WILLIAMS
SHI
SHI INTERNATIONAL CORP.
SHRED IT USA
SID HARVEY INDUSTRIES INC
SIELLA MEDICAL
SIEMENS FINANCIAL SERVICES INC
SIEMENS HEALTHCARE DIAGNOSTICS
SIEMENS MEDICAL SOLUTIONS USA
SIGMA CHEMICAL COMPANY
SIGNS AND DESIGNS OF NEW YORK
SIMONS FARM & HOME
SION BRANDS LLC
SIS MERGER CO
SKELETAL DYNAMICS INC
SKELLY CONTRACTORS INC
SLAM ARCHITECTS & ENGINEERS PC
SLIC NETWORK SOLUTIONS
SME INC. USA
SMILEMAKERS
SMITH AND NEPHEW ENDOSCOPY
SMITH MEDICAL ASD INC
SMITHS MEDICAL (ICU MEDICAL)
SNOW RIDGE RESORT, LLC
SOCIETY FOR HUMAN RESOURCES MA
SOCIETY OF CORP. COMPLIANCE
SOFT COMPUTER CONSULTANTS, INC
SOLOS ENDOSCOPY INC
SOMATICS
SOUTH ST LAWRENCE ASSOCIATION
SPECTRA CORP
SPECTRIO LLC
SPECTRUM
ST JOSEPHS HHC
ST JUDE MEDICAL NEUROMODULATIO
ST JUDE MEDICAL SC INC
ST LAWRENCE CTY CHAMBER COMMER
ST LAWRENCE CTY SOLID WASTE
ST LAWRENCE HELATH SYSTEM
ST LAWRENCE NYSARC INC
STACEY GRAVES
STANDARD TEXTILE CO, INC
STANDARD TEXTILE COMPANY INC
STAPLES CONTRACT
STAPLES CREDIT PLAN
STATE OF NEW YORK

STATLAB
STAXI CORPORATION
STEFANI BELINA
STEFANOS PIZZERIA
STEPHENS MEDIA GROUP
STEPHENS MEDIA GROUP MASSENA L
STEPHENS MEDIA GROUP WATERTOWN
STEPHENS MEDIA GROUP-OGDENSBUR
STERICYCLE INC
STERILIZ LLC
STERIS CORPORATION
STEWARTS SHOP
STONEFENCE MOTEL
STRATIX LABS CORPORATION
STRECK LABORATORIES INC
STRECK, INC.
STRYKER
STRYKER COMMUNICATIONS
STRYKER CRANIOMAXILLOFACIAL
STRYKER ENDOSCOPY
STRYKER FLEX FINANCIAL
STRYKER INSTRUMENTS
STRYKER MEDICAL
STRYKER ORTHOPAEDICS
STRYKER SALES CORP
STRYKER SALES, LLC
STUDIO CENTER
SUBWAY
SUMMIT MEDICAL INC
SUN NUCLEAR
SUN NUCLEAR CORPORATION
SUNBELT RENTALS INC
SUNDANCE LEISURE
SUNOCO INC
SUNY UPSTATE MEDICAL UNIVERSIT
SURE TECH DIAGNOSTIC ASSOC INC
SUREMARK COMPANY
SURGICAL DIRECT
SURGICAL PRODUCTS SOLUTIONS
SURGICAL PRODUCTS SOLUTIONS LL
SURGIMARK INC
SUZANNE SHAVER
SYDENSTRICER NOBBE PARTNERS
SYMPLR
SYNERGY BIOMEDICAL LLC
SYNERGY GLOBAL SOLUTIONS
SYRACUSE BIOMEDICAL SERV
SYRACUSE THERMAL PRODUCTS
SYRACUSE VENTILATOR SERVICE LL
SYSMEX AMERICA, INC.
SYSTEMS COMMISSIONING SPECIALI
T SYSTEM INC
TAKEDA
TAKEDA PHARMACEUTICALS AMERICA
TALON PARKER
TAMMY MACK

TECHNICAL CONSULTING CO.
TELEFLEX LLC
TELEPHONE ANSWERING SERVICE
TENNANT SALES AND SERVICE COMP
TERACAI CORPORATION
TFP1 Inc
THE ARC JEFFERSON-ST LAWRENCE
THE BUSINESS COUNCIL OF NYS
THE COMPLIANCE TEAM, INC.
THE DAISY FOUNDATION
THE DENTAL BOX CO INC
THE FLOWER GIRLS
THE HARTFORD
THE HILSINGER COMPANY PARENT
THE OLDE BRYAN INN
THE PMA
THE REHAB DOCUMENTATION COMPAN
THE SOULE CO
THE TRANE COMPANY
THE UNIVERSITY OF VT MEDICAL C
THERMCO PRODUCTS INC
THOMPSON PARK CONSERVANCY & ZO
TIME WARNER CABLE
TINA WOODFOLK
TOLLS BY MAIL PAYMENT PROCESS
TONYA WELLS
TOP OF THE HILL
TORNIER, INC.
TOTAL COMM SOLUTIONS LTD LIAB
TOWN OF CHAMPION
TOWN OF MADRID
TOWN OF PHILADELPHIA
TOWN SQUARE PUBLICATIONS LLC
TRANSACT CAMPUS INC
TRAVELERS
TRAVELERS CL REMITTANCE CENTER
TREVOR JOHNSON
TRIAGE STAFFING INC
TRIAGELOGIC
TRI-ANIM HEALTH SERVICES INC
TRI-DELTA RESOURCES, CORP.
TRIOSE, INC
TRI-STATE OPHTHALMICS
TRIZETTO PROVIDER SOLUTIONS
TRUE NORTH CUSTOM PUBLISHING
TRUEBRIDGE, INC
TSEP
TWINSTATE TECHNOLOGIES
U S FOODSERVICE INC
UKG INC
ULINE
UMR
UNDERSEA & HYPERBARIC MEDICAL
UNIFIRST CORPORATION
UNIPOWER CORPORATION
UNITED AD LABEL

UNITED AIRLINES
UNITED HELPERS CARE INC
UNITED MEDICAL SYSTEMS
UNITED PROFESSIONAL BENEFITS,
UNIVERSAL AMERICAN CORP.
UNIVERSITY AT ALBANY SUNY
UNIVERSITY OF ROCHESTER
UNIVERSITY OF WISCONSIN
UNIVERSITY PATHOLOGISTS LAB
UNUM LIFE INSURANCE COMPANY
UNUM LIFE INSURANCE COMPANY OF
UPMC GRADUATE MED ED
UPS
UPSTATE MEDICAL UNIVERSITY
UPSTATE NIAGARA COOPERATIVE
UROTHERAPIES, INC.
US FOODS/ RENZI BROTHERS INC
US FOODSERVICE INC
US POSTAL SERVICE POSTAGE BY P
US POSTMASTER
USARAD HOLDINGS INC
USHERWOOD BUSINESS EQUIPMENT
USO
USO FORT DRUM
USOC BIOMEDICAL
UTILITIES TECHNOLOGY COUNCIL
VANESSA FERNANDES
VANTIVE US HEALTHCARE LLC
VAPOTHERM, INC.
VARIAN MEDICAL SYSTEMS
VASCULAR TECHNOLOGY
VELOCITY
VELOCITYEHS INC.
VERATHON INC
VERIS BENEFITS CONSORTIUM
VERIZON
VERIZON WIRELESS
VERSABADGE, LLC
VICTIMS ASSISTANCE CENTER
VILLAGE OF CANTON
VILLAGE OF CARTHAGE
VILLAGE OF HEUVELTON
VILLAGE OF WADDINGTON
VILLAGE OF WEST CARTHAGE
VIRTUAL RADIOLOGIC PROFESSIONA
VISCOT MEDICAL, LLC
VISTAPRINT
VISTAPRINT NETHERLANDS B.V.
VITAL RECORDS HOLDINGS, LLC
VOLPARA HEALTH INC
VOLUNTEER TRANSPORTATION CENTE
VYAIRE MEDICAL INC
W E AUBUCHON CO INC 140
W. B. MASON CO., INC
WADDINGTON MINOR LEAGUE BASEBA
WADDINGTON TRUE VALUE

WAL MART
WALGREENS
WALMART
WARREN DUNN
WASTE MANAGEMENT OF NY
WATERTOWN BASEBALL & HOCKEY
WATERTOWN FAMILY YMCA
WATERTOWN ROTARY CLUB
WATERTOWN URBAN MISSION INC
WCP CONSULTANTS
WEATHERBY LOCUMS INC
WEBSTAURANT STORE
WELLS FARGO BANK, N.A.
WELLSKY CORPORATION
WERFEN USA LLC
WEST PHYSICS CONSULTING LLC
WESTELCOM
WHITE'S FLOWERS
WILLIAM RANDALL FIPPS
WILLIAM SMITH MD
WINDSTREAM HOLDING LLC
WINNING PROMOTIONS & EMBROIDOR
WITHERHEAD'S PROF SERVICES
WKGRE LLC
WNYF
WOLTERS KLUWER
WOLVES DEN LLC
WOODCHOP SHOP

WOODSTOCK DIETARY SYSTEMS- STE
WPBS
WRIGHT MEDICAL TECHNOLOGY INC
WWNY TV
WWTI-TV
XEROX CORPORATION
XODUS MEDICAL INC
YAFFE & COMPANY INC
YOUNG MEN'S CHRISTIAN ASSOCIAT
ZAFAR AHMAD
ZENITH TRANSACTION SERVICES LL
ZEPTOMETRIX LLC
ZEPTOMETRIX LLC DBA
ZIMMER BIOMET TRAUMA
ZIMMER US INC
ZIXCORP SYSTEMS, INC
ZOHO CORPORATION
ZOLL MEDICAL CORP
ZYNX HEALTH, INC
Hayes Locums, LLC
Healogics, Inc.
Huntington Technology Finance
Jayme M. & Frank J. Mono
Kome Oseghale, M.D.
LabCorp
LC Real Estate Properties, LLC
MASLIS Interpreting Services, LLC
MedHost

**SCHEDULE 2**
**Parties Wintergreen has represented in matters**
**unrelated to Debtors' Chapter 11 Case**

Wintergreen has had or currently has relationships with the following parties-in-interest of the Company in matters related to the Company:

- Rob Bloom's wife, Kristen Bloom, is a mental health therapist employed by Carthage Area Hospital, Inc.  This employment is not a significant source of family income and Ms. Bloom intends to leave that position within the next six months.

- Benjamin Rubacha is the Chief Information Officer of the North Star Health Alliance, Inc. system, and also provides limited IT services to other entities, either individually or through an IT consulting firm he owns.  Mr. Rubacha has been a part-time (approximately 3-5 hours per week) employee of Wintergreen where has helped manage Wintergreen's own IT issues.  Wintergreen intends to terminate Mr. Rubacha's services as an employee and, to the extent needed, retain his consulting services as an independent contractor.

- Versa Badge is a vendor and creditor of North Star Health Alliance, Inc., providing software relating to physician time studies.  Versa Badge and Wintergreen have referred work to each other, without compensation.

- Quorum Health Resources d/b/a Ovation Health ("Ovation") is a vendor and creditor of North Star Health Alliance, Inc., providing services relating to revenue cycle management. Ovation and Wintergreen have referred work to each other, without compensation.

## **Exhibit C**

**[Engagement Letter]**

Docusign Envelope ID: 23760B2C-EF8C-45DA-BAC8-521A7ED8E6C4



Mr. Richard Duvall
President and Chief Executive Officer
North Star Health Alliance
214 King St
Ogdensburg, N.Y. 13637

**Re: Engagement to Provide Advisory Services to Northstar Health Alliance and Subsidiaries**

Dear Mr. Duvall:

The purpose of this letter (this "Engagement Letter") is to confirm our mutual understanding of the scope and terms of the engagement of Wintergreen, Inc ("Wintergreen") by North Star Health Alliance, Inc., those affiliates listed in an addendum or supplement to this Engagement Letter including those on **Schedule E** (collectively, the "Company"), and any other affiliates of the Company ("New Entities") with which the Company, new entities, and Wintergreen , they each agree in writing from time to time. This Engagement Letter and the attached **Schedules A-E**, together constitute the agreement governing the engagement (this "Agreement") and shall supersede the existing Financial Advisory Services Agreement dated January 1, 2025, and the Leased Employee Agreement dated May 1, 2025 as amended by First Amendment dated February 1, 2025, each of which shall be terminated as of the date of this Agreement.

**Scope of Engagement**. Wintergreen shall provide the Company with the personnel identified on Schedule B, fees and expenses (the "Temporary Staff") for the positions, titles, and pay rates set forth on Schedule B, and the duties, tasks and other services set forth on Schedule A, *Additional Tasks and Duties* (the "Services").

**Fees and Expenses**. The Company will compensate Wintergreen for its services, and reimburse Wintergreen for its reasonable out-of-pocket expenses, as set forth on Schedule B, *Fees and Expenses*.

**General Terms and Conditions**. This agreement is subject to the terms and conditions set forth in Schedule C, *General Terms and Conditions*.

**Officer Conditions**. Any Temporary Staff Officers listed on Schedule B who are to assume a Temporary Staff Officer position (as defined in Section 5(a)) will not be officers of the Company until (a) Wintergreen receives duly authorized consent resolutions of the Board of Directors of the Company evidencing the officer appointments of temporary staff officers ("Resolutions"); (b) Wintergreen determines that the Company has director and officer liability insurance (D&O Insurance) in an amount and with coverage reasonably acceptable to Wintergreen; (C) Wintergreen confirms that each Temporary Staff Officer is covered by the Company's D&O Insurance policy; and (d) Wintergreen confirms that there are no claims against the D&O Insurance policy that would render the amount of the policy unacceptable to Wintergreen; (a) through (d), collectively, the

"Officer Conditions"). The Company will use its best efforts to satisfy the Officer Conditions no later than five days after the date of this Agreement.

If you agree to the terms of this Agreement, please sign and date this Engagement Letter below and return a copy to the undersigned. In addition, please execute a wire transfer for payment of any required upfront fees and/or retainers, in accordance with instructions on Schedule B. This Agreement shall be effective upon receipt of payment of any required upfront fees and/or retainers, and signed Engagement Letter, at which time we will commence work.

We very much appreciate the opportunity to serve as advisors to the Company.

Sincerely,

Wintergreen, Inc

By: _Rob Bloom_____ Date: 1/19/2026_____

Name: **Rob Bloom**

Title: Principal


Agreed and Accepted:

North Star Health Alliance, Inc., on its own behalf, and on behalf of its direct and indirect subsidiaries and affiliates :

By: _____ Date  19/01/2026

Name: **Richard Duvall**

Title: **Chief Executive Officer**

Docusign Envelope ID: 23760B2C-EF8C-45DA-BAC8-E21A7ED8E6C4

## Schedule A

## Category and Description of Services

**CRO Services:**

Provide the Company with advice in support of the Company's routine fiscal operations. This shall include advisory services relating to the Company's general accounting, patient business services, third-party reimbursement and financial and statistical reporting functions;

Advise the Company's governing board(s) and CEO in the development of long and short range operational and fiscal plans, which may include service demand analyses, resources availability analyses, and operational development and implementation of strategic plans;

Evaluate the Company's financial projections and operating plan for the purpose of evaluating a recapitalization or restructuring of the Company, as appropriate;

Advise the Company regarding key decisions pertaining to strategic clinical decisions in support of the hospital's routine operations relating to nursing/patient care services.

Advise the hospital's governing board and CEO in the development of long and short range operational and clinical plans, which may include evaluation of resources, recommendations regarding patient care quality standards, assessment of the adequacy of training and instruction, and goal setting.

Develop alternative strategies to assist the Company in negotiations with its stakeholders.

**Clinical, Financial, and Cash Advisory Services:**

Assist the Company with budgetary planning and costs management, including assist the Company's accounting firm in preparing 13-week cash flows.

Assist the Company with financial management functions, including preparation of and review of the annual budget, preparation and review of monthly financial statements in various financial reporting packages.

Provide expert assessment and monitoring as reasonably requested of revenue cycle processes as implemented by the Company.

Assist the Company on issues related to legal and regulatory compliance concerning financial reporting.

**Bankruptcy Related Tasks**

Evaluate the short-term Company prepared cash flows and financing requirements as they relate to the Company's potential Chapter 11 proceedings.

Assist the Company in its potential Chapter 11 proceedings, including review and oversight of its financial statements and schedules related to the bankruptcy process, monthly operating reports, first-day pleadings, and other information required in the bankruptcy proceedings.

As appropriate, assist in providing evidentiary declarations and testimony for court hearings.

As appropriate, assist the Company in obtaining court approval for use of cash collateral or other financing including DIP budgets, cash collateral budgets, and forecasts.

As appropriate, assist the Company with respect to its bankruptcy-related claims management and reconciliation process.

As appropriate, assist the Company in development of a plan of reorganization, including preparation of a liquidation analysis, historical financial data and projections.

Assist management, where appropriate, in communications and negotiations with other constituents critical to the successful execution of the Company's bankruptcy proceedings.

**Information Technology Advisory Services:**

Advise the Company regarding key decisions pertaining to strategic clinical decisions in support of the hospital's routine operations relating to information technology.  Wintergreen shall advise the hospital's CEO and CIO with development of testing and operational monitory dashboards, implementation, and support of related operational monitoring systems, which may include evaluation of resources and assessment of the adequacy of training and instruction.

## Schedule B

## Fees and Expenses

**1. Fees.** Wintergreen will charge the Company for the Services performed by the Temporary Staff based upon the actual number of hours incurred at the following hourly rates[1]:

| Temporary Staff | Description of Role and Duties | Hourly Rate |
|---|---|---|
| Rob Bloom, Principal | Chief Restructuring Officer | $450 |
| Jonathan Pantenburg, Principal | Clinical & Financial Advisory Services | $450 |
| Nicole Thorell, Principal | Clinical & Financial Advisory Services | $450 |

In addition to the duties attendant to any office set forth above, duties will include those set forth on Schedule A.

The parties agree that this Schedule B can be amended to add or delete staff. Wintergreen's billing shall be treated by the parties as such amendments.

Our fees of our other personnel that may become Temporary Staff for the Company from time to time under this Agreement will be based on the hours charged at our hourly rates, as follows:

| Position | Hourly Rate |
|---|---|
| Principal | $450 |
| Senior Consultant | $300-$400 |
| Consultant | $250 |

Wintergreen's hourly rates are subject to periodic adjustment.

**2. Expenses.** In addition to the Fees set forth in this Schedule B, the Company shall pay directly, or reimburse Wintergreen upon receipt of periodic billings,

---

[1] The persons assigned to these roles may change. The persons listed are expected to have primary responsibility for the services described and will be assisted by others as appropriate.

5

for all reasonable out-of-pocket expenses incurred in connection with the Services, such as travel, lodging, meals, reasonable and documented attorney fees, and delivery services. Wintergreen shall use the least costly method of transportation and shall not charge for alcoholic beverages or entertainment. Wintergreen will provide backup documentation of such expenses upon request.

**3.    Retainer.** The existing retainer, consisting of approximately $325,000.00 (the "Retainer"), previously remitted by the Company to Wintergreen pursuant to the January 1, 2025 Financial Advisory Services Agreement between Wintergreen and the Company, shall be transferred to this Agreement. The Company grants Wintergreen a security interest in the Retainer. The Retainer will be applied as follows:

   a)  In the event that the Company intends to file for bankruptcy protection, then immediately prior to the filing, Wintergreen will apply the Retainer to all amounts due; provided that amounts drawn against the Retainer may include an estimate of fees and expenses incurred by Wintergreen, but not billed prior to the filing date. Subsequent to the bankruptcy filing, Wintergreen shall true-up the estimate of fees and expenses to actual fees and expenses incurred pre-petition and the Retainer balance will be adjusted accordingly. Any fees and expenses incurred which exceed the Retainer will be owed and paid as allowed by the bankruptcy court. The excess Retainer, if any, will be held as security for future billings and shall be applied to Wintergreen's final invoice, unless Wintergreen, in its sole discretion, applies it sooner. Any excess Retainer will be refunded to the Company at the conclusion of the engagement, without interest; or

   b)  If the Company does not file a bankruptcy petition, the Retainer will be applied to Wintergreen's invoices as they are issued. Payments on invoices will                    be                    used                    to replenish the Retainer. At the conclusion of the engagement, any excess Retainer will be refunded to the Company, without interest. Wintergreen reserves the right to require that the Company increase the Retainer amount as Wintergreen deems necessary.

**4.    Invoicing and Payment.** The Company shall pay Wintergreen an estimated fee of $240,000 on the first day of every month. Within 15 days following the end of each month, Wintergreen shall submit an invoice for the month that itemizes its services and expenses, with time recorded in one-half hour increments. If the amount of Wintergreen's invoice exceeds the estimated fee payment, then the Company shall immediately but in no event later than three (3) days of receipt of Wintergreen's invoice remit the balance to

Wintergreen. If the amount of Wintergreen's invoice is less than the estimated fee payment, then the Company shall apply such overpayment as a credit toward the next month's estimated payment. Wintergreen's fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company. At Wintergreen's request, the Company agrees to increase the amount of the estimated monthly fee to an amount that approximates Wintergreen's anticipated monthly fees and expenses based on past fees and expenses in recent months. All invoices will be due and payable upon receipt and are payable via wire transfer of U.S. funds in accordance with the following instructions:

Wintergreen, Inc.

Federal Tax ID: ████████ **Retainer:**

| |
|---|
| Camden National Bank, Falmouth, ME |
| ABA Routing #: ████████ |
| Wintergreen, Inc. |
| Account #: ████████ |

| |
|---|
| **Any Billings Thereafter:** |
| Camden National Bank, Falmouth, ME |
| ABA Routing #: ████████ |
| Wintergreen, Inc. |
| Account #: ████████ |

## Schedule C

## General Terms and Conditions

These General Terms and Conditions (the "Terms") are incorporated into the Agreement that includes the Engagement Letter to which these Terms are attached.

All defined terms shall have the meanings ascribed to them in the Engagement Letter, the Schedules attached to the Engagement Letter, and these Terms. The Company and Wintergreen are each a "party," and together the "parties." The headings and titles in these Terms are for convenience only.

1. **Nature of the Engagement**

(a)      **Limited Scope**. The Services set forth in Schedule A are limited to those that the Company has determined will best meet its needs. The Services should not be relied upon to disclose errors, irregularities (including fraud or defalcations), or illegal acts that may exist or have occurred. The ultimate depth and scope of Wintergreen's work and analysis will necessarily be limited by time limitations, scope of Services limitations, and the availability and sufficiency of relevant information.

(b)      **No Audit or Attestation.** Wintergreen is a management consulting firm and not a CPA firm. Wintergreen's services will not include or constitute an audit, attest opinion, verification, tax compliance, review or compilation of the information that Wintergreen is provided, or any other type of financial statement reporting or consulting engagement that is subject to the rules of the AICPA, the SSFS, the PCAOB or other such state and national professional bodies. Accordingly, Wintergreen will not express a conclusion or provide any other form of assurance on the completeness or accuracy of the Company's financial or tax information. The Services do not include legal, tax, accounting, insurance, or similar professional services, which are typically outsourced. The Services also do not include investment banking, investment advice, or the Company's engagement of Wintergreen in connection with the purchase, sale or exchange of securities.

(c)      **No Representations or Warranties.** Wintergreen has made no representations, warranties, or guarantees of any nature as to the success or satisfactory conclusion of this engagement or as to the economic, operational, financial or other results which may be obtained or experienced by the Company. Nothing in this Agreement or any statement by the Temporary Staff constitutes a guarantee or a promise regarding such results or outcomes. Any comments about the outcome of the Company's matter are simply expressions of judgment and are not binding on Wintergreen.

2. **Company Responsibilities**

(a)     **Company Oversight and Direction**. The Company shall assign its CEO or a designee of the CEO to oversee the Services and will be responsible for all Company decisions related to the scope of the Services.

(b)     **Access to Records and Personnel.** the Temporary Staff requires certain information, data, and opinions from or on behalf of the Company ("Company Information") in order for Wintergreen to provide the Services. The Company agrees to provide (or to cause others to provide) to the Temporary Staff Company Information, along with resources and assistance that Wintergreen reasonably requires to perform the Services, including access to Company personnel (where applicable). Temporary Staff Officers shall have appropriate access to the Company's management, lenders and other stakeholders. The Company agrees that Company Information it provides will be accurate, complete, and not materially misleading. Any books, records and reports the Company provides will be of reasonable organization and quality. Wintergreen may rely on all Company Information made available to it, including the accuracy and validity of any data disclosed to it or supplied to it by the Company. Wintergreen has no responsibility to evaluate the reliability, validity, completeness, sufficiency, or accuracy of the information it is provided. Absent a written request from the Company and written acceptance by Wintergreen, Wintergreen will not update or confirm any data Wintergreen receives.

(c)     **Projections**. The Company understands that the Services provided may include the preparation of projections and other forward-looking statements. Wintergreen will rely on Company Information in the event Wintergreen prepares such projections and forward-looking statements. Numerous factors, in addition to the accuracy of Company Information, can affect the actual results of the Company's operations, which may be materially and adversely different from the projections. Wintergreen does not guarantee the Company's future performance.

(d)     **D&O Insurance**. At the request of Wintergreen, the Company shall provide Wintergreen with a copy of its current D&O Insurance policy, a certificate of insurance evidencing it is in full force and effect, and any other documents Wintergreen may reasonably request evidencing such coverage. The Company shall maintain D&O coverage for the Temporary Staff Officers for so long as claims can be made against them on account of their role as officers of the Company. The Company disclaims any right to distribution on behalf of the Temporary Staff Officers. In the event that the Company does not maintain satisfactory insurance coverage at any point during this engagement, Wintergreen may purchase a separate D&O policy that will cover Temporary Staff Officers only. The cost of this policy shall be billed to the Company as an out-of-pocket expense.

(e)     **Bankruptcy Filings**. If the Company files for relief under the Bankruptcy Code during the term of the Agreement:

(i)        The Company shall (i) apply promptly to the bankruptcy court for approval of Wintergreen's retention under the terms of the Agreement, nunc pro tunc to the date of the bankruptcy filing, (ii) provide Wintergreen draft copies of all pleadings in connection with the same for approval, and (iii) use its commercially reasonable efforts to obtain bankruptcy court approval. Wintergreen shall have no obligation to provide any Services under this Agreement unless and until Wintergreen's retention under the terms of this Agreement is approved by a final order of the bankruptcy court in form and substance reasonably acceptable to Wintergreen.

(ii)        In the event the bankruptcy court approves Wintergreen's retention by the Company pursuant to the application process described in this Section, the Company shall pay Wintergreen reasonable and documented fees and expenses associated with any orders (i) approving Wintergreen's retention and (ii) approving Wintergreen reasonable and documented fees and expenses.

3. **Confidentiality**

(a)        **General**. Each of Wintergreen and the Company acknowledges that material and information which has or will come into its possession or knowledge in connection with this Agreement and the performance of the Services may include trade secrets and other confidential and proprietary data of the other party (collectively, "Confidential Information").

(b)        **No Unauthorized Disclosure or Use**. Each of Wintergreen and the Company agrees that it shall not disclose or otherwise make known to any third party, other than its employees, independent contractors or agents that have a need to know, any Confidential Information belonging to the other party without the express written consent of the disclosing party.   Neither party will use such Confidential Information for any purpose other than fulfilling its obligations under the Agreement. Each party will take the same precautions it takes to protect its own Confidential Information of like kind, to prevent any disclosure of Confidential Information, but in no event less than a reasonable degree of care. Wintergreen's non-disclosure obligations under this Section 3 shall apply to the Temporary Staff.

(c)        **General Exceptions**. This confidentiality undertaking shall not apply to information or data which is (1) in the public domain at the time of receipt or which subsequently becomes part of the public domain through no fault of the recipient, (2) known to the recipient at the time of receipt, or (3) obtained by the recipient on a non-confidential basis from a third-party source which, to the best of the recipient's knowledge, is not prohibited from disclosing such Confidential Information.

(d)        **Subpoenas and Orders**. No disclosure of Confidential Information by either party or by the Temporary Staff shall be deemed to be a breach or violation of the Agreement if such disclosure is required to be made in any judicial or administrative proceeding pursuant to a valid subpoena or court order or is otherwise required by applicable law. Prior to such disclosure,

the recipient party must give the disclosing party advance notice (to the extent practicable and legally permissible) to enable the disclosing party to take action to protect its rights, at the disclosing party's discretion. In the event of any subpoena or court order regarding disclosure of Company information, the Company shall pay Wintergreen for its reasonable and documented costs and expenses associated with such subpoena or court order.

(e)    **Electronic Transmission**. Wintergreen and the Temporary Staff will transmit information to the Company by e-mail, over the Internet. Should any confidentiality breaches occur because of data transmission over the Internet, the Company agrees that this will not constitute a breach of any obligation of confidentiality that Wintergreen owes to the Company. If the Company wishes to limit such transmission to information that is not highly confidential or seek more secure means of communication for highly confidential information, it will need to inform Wintergreen.

(f)    **Confidentiality Duration**. The term of this confidentiality undertaking shall commence on the effective date of the Agreement and continue until two (2) years after the Agreement terminates. Wintergreen will have the right to destroy all Confidential Information and related records, including electronic data, five (5) years after the conclusion of this engagement; provided that, any such Confidential Information retained shall remain subject to the confidentiality provisions of this Agreement.

(g)    **Disclosures Necessary for Performance**. Wintergreen and the Temporary Staff may make reasonable disclosures of Confidential Information to perform the Services. In addition, Wintergreen and the Temporary Staff will have the right to disclose to others in the normal course of business: (1) Wintergreen's involvement with the Company; and (2) basic information about this engagement as necessary to clear conflicts or make appropriate disclosures in any bankruptcy case in which Wintergreen is involved.

4. **Relationship of the Parties**

(a)    **Independent Contractor**. At all times during the term of the Agreement, Wintergreen is and shall be an independent contractor in providing the Services to the Company. As an independent contractor, Wintergreen will have exclusive charge of hiring and paying all compensation and benefits for the Temporary Staff. The Company will not pay the Temporary Staff or Wintergreen any compensation or benefits, of any kind. Wintergreen will be responsible for all employment, withholding, income and other taxes incurred in connection with the Temporary Staff. Temporary Staff will not be employees of the Company under this Agreement. Other than Temporary Staff Officers, the Temporary Staff will not have any fiduciary duties or obligations because of the Services.

(b)    **No Partnership or Agency.** Nothing contained in the Agreement shall be construed as constituting a partnership or joint venture, or the relationship of principal/agent

between the parties. Neither party shall have any right to obligate or bind the other in any manner whatsoever.

(c)    **Customary Acknowledgement**. Wintergreen may, at its own expense and with the Company's prior approval (not to be unreasonably withheld), place announcements on its corporate website, in marketing materials and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Company's logos or other identifying marks) acknowledging the Company as a client of Wintergreen and generally describing Wintergreen's Services in connection therewith. Wintergreen agrees to not disclose any specifics of the engagement, and to limit announcements to the names and business description of the parties involved and a general description of Wintergreen's Services provided (for example, "General Corporate Advice").

(d)    **Responding to Subpoenas**. In the event Wintergreen or any Wintergreen employee or agent is requested or authorized by the Company, or is required by government regulation, subpoena, or other legal process to produce any information or testify as a witness with respect to the Services, the Company will, so long as Wintergreen or the employee or agent is not a party to the proceeding in which the information or testimony is sought, reimburse Wintergreen for its professional time and expenses, as well as the actual fees and expenses of its counsel, incurred in responding to such requests.

5. **Wintergreen Personnel; Agreement Not to Solicit**

(a)    **Wintergreen Personnel**. Wintergreen will perform the Services using either employees of Wintergreen, or independent contractors engaged by Wintergreen (collectively, "Personnel"). This may include the use of non-US based individuals and entities. Wintergreen will use all reasonable efforts to ensure ongoing continuity of all assigned Personnel. Temporary Staff who are officers ("Temporary Staff Officers") shall report to the Company's Board of Directors.

(b)    **No Solicitation**. The Company acknowledges (1) the significant investment Wintergreen has made in the identification, recruitment, training and development of the Personnel and in the building of relationships between such Personnel and Wintergreen's other clients, (2) the loss of client billable time resulting from the transition of client files from a departing employee or agent to another employee or agent, (3) that the Company would receive substantial additional value, and Wintergreen would be deprived of the benefits of its work force, if the Company were to directly employ, engage or contract with any of the Personnel, and (4) the difficulty of placing a monetary value on the Wintergreen's investments, Wintergreen's losses and Company benefits referred to above. Accordingly, the Company agrees that for the duration of the Agreement and for twelve (12) months thereafter, neither the Company nor any of its affiliates will employ, engage or contract with any of the Personnel or otherwise induce any of the Personnel to terminate his or her employment or engagement Wintergreen. This Section 5(b)

12

does not prohibit the Company from making general solicitations for employment that are not directly targeted at the Wintergreen employees or agents or from soliciting for employment any individuals who have ceased being employees Wintergreen at least six (6) months prior and unrelated to such solicitation.

6. **Deliverables; Sharing of Deliverables with Third Parties.**

(a)    **Company's Exclusive Use.** The Company acknowledges and agrees that any oral or written advice, outlines, recommendations, information, summaries, presentations, memorandums, schedules, written reports or other work product (the "Deliverables") Wintergreen or the Temporary Staff provides to the Company under the Agreement are intended for the Company's sole benefit, and Wintergreen does not authorize any other party to receive or rely upon such Deliverables (except that the Company's legal counsel may receive such Deliverables solely for the purposes of their legal representation of the Company). Wintergreen specifically disclaims any duty of care to others based on the Services or the Deliverables. The Company acknowledges that the Deliverables are intended for use by the Company's Board of Directors and executive management team only, and the Company will not share such Deliverables with other personnel at the Company (other than those Company personnel permitted to receive such Deliverables at the direction of the Company's Board of Directors and executive management team) without notice to and consent from Wintergreen.

(b)    **Requests for Third Party Access.** In the event the Company seeks to disclose any Deliverable to a third party, then (1) the Company shall notify Wintergreen of the Company's request to grant such third party access and (2) if such request is approved by Wintergreen, prior to sharing any such Deliverable the Company shall deliver to Wintergreen a signed non-reliance letter from such third party in the form prescribed by Wintergreen.

(c)    **Ownership**. Upon payment of all amounts due to Wintergreen in connection with this Agreement, and except as set forth below, all rights to Deliverables that Wintergreen prepares specifically for and delivers to the Company in connection with this Agreement shall be owned by the Company, subject to the confidentiality and non-disclosure provisions in this Agreement. Wintergreen may retain copies of any of the Deliverables subject to the confidentiality provisions in this Agreement. Wintergreen shall retain sole and exclusive ownership of its working papers, methodologies, proprietary information, trade secrets, preexisting materials and software, tools, templates, know-how, processes, models and other intellectual property (including any non-Company specific version of any Deliverables) that Wintergreen previously developed and used to create the Deliverables or may have discovered or created as a result of the Services (the "Proprietary Information"). If the Deliverables contain Proprietary Information, Wintergreen grants the Company a non-exclusive, non-assignable license to use the Proprietary Information only in connection with the Deliverables and this Agreement.

7. **Indemnification; Limitations of Liability**

(a)    **Indemnification**. To the fullest extent permitted by applicable law, the Company agrees to indemnify, hold harmless, and defend Wintergreen and certain related entities and persons as set forth in this Section 7. If Wintergreen or any of its affiliates or any of their respective partners, members, officers, directors, managers, owners, shareholders, agents, employees or controlling persons (collectively, the "Indemnified Persons" and each, an "Indemnified Person" and a "Wintergreen Party") becomes involved in any capacity in any claim, action, proceeding (including any objection to or proceeding involving an Indemnified Person's fees or expenses) or investigation (each an "Action", or collectively, "Actions") brought by or against any person or entity, in any way related to the Agreement, the Company periodically will advance to the Indemnified Person amounts necessary to pay such Indemnified Person's reasonable and documented out-of-pocket legal and other expenses (including the cost of any investigation and preparation) incurred in connection with the Actions; provided, however, that if it is finally found (in a non-appealable judgment) by a court of competent jurisdiction (a "Final Judgment") that any loss, claim, judgment, damage or liability (a "Loss", or collectively, "Losses") of an Indemnified Person has resulted primarily from the gross negligence, actual fraud, or willful misconduct of such Indemnified Person in performing the Services, such Indemnified Person shall repay such portion of the advanced amounts that is attributable to expenses incurred in relation to the act or omission of such Indemnified Person that is the subject of such Final Judgment. The Company also will indemnify and hold the Indemnified Persons harmless from and against any Losses to which such Indemnified Person may become subject, that is related in any way to the Agreement, without regard to the exclusive or contributory negligence of any Indemnified Person, except to the extent that it is finally found in a Final Judgment that a Loss resulted primarily from the gross negligence, actual fraud, or willful misconduct of the Indemnified Person in performing the Services. In addition, the Company shall indemnify the Temporary Staff Officers on the most favorable basis provided by the Company to its officers and directors including under any charter, by-laws, contract or otherwise.

(b)    **Limitations of Liability.** Neither Party shall be liable to the other for consequential, incidental, indirect, punitive or special damages (including loss of profits, data, business or goodwill), regardless of the legal theory advanced or of any notice given as to the likelihood of such damages, excluding only third party damages indemnifiable under Section 7(a)(if any). The Wintergreen Parties shall not be liable to the Company, or any party asserting claims on behalf of the Company or otherwise, including, without limitation, any of the Company's equity holders, for any Loss except for direct damages found in a Final Judgment to be the direct result of Wintergreen's gross negligence, actual fraud, or willful misconduct. The collective liability of the Wintergreen Parties, if any, in relation to the Agreement or the Services shall be limited in amount to fees actually paid to Wintergreen by the Company for the Services. The parties acknowledge that the limitations set forth above are integral to the amount of fees

charged in connection with the Services, and that were Wintergreen to assume any further liability, such fees would of necessity be set substantially higher.

(c)    **Additional Provisions**. The reimbursement and indemnity obligations of the Company in this Section 7 shall be in addition to any liability which the Company may otherwise have to the Indemnified Person and shall be binding upon and inure to the benefit of any successors, heirs and personal representatives of the Company and the Indemnified Persons. The Company shall not be required to indemnify an Indemnified Person for any amount paid or payable by the Indemnified Person in the settlement of any Action without the consent of the Company. Prior to entering into any agreement or arrangement which may affect this indemnity and that does not provide for the assumption of the obligations of the Company set forth in this Section 7, the Company will notify Wintergreen in writing, and if requested by Wintergreen, shall arrange alternative means which are reasonably satisfactory to Wintergreen of providing for the obligations of the Company set forth in this Section 7.

8. **Governing Law; Jurisdiction; Jury Trial Waiver**

(a)    THIS AGREEMENT SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MAINE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PROVISIONS OF SUCH STATE AND, AS APPLICABLE THE UNITED STATES BANKRUPTCY CODE. Any action arising out of or relating to this Agreement shall be brought exclusively in the state and federal courts sitting in, or whose jurisdiction encompasses, Cumberland County, Maine.  In any litigation to enforce the Parties' obligations under this Agreement, the prevailing party shall be entitled to an award of their reasonable attorneys' fees. .The Company expressly consents to personal jurisdiction in Maine and venue in any state or federal court in Maine, for any such lawsuit. THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY IN CONNECTION WITH ANY SUCH ACTION. No action, regardless of form, arising out of the Agreement or the Services may be brought by either party more than two (2) years after the date of completion of the Services, except that an action based upon indemnification or non-payment may be brought at any time consistent with applicable law.

(b,)    Notwithstanding Section 8(a) above, if the Company is the subject of a bankruptcy proceeding while the Agreement is in effect, all disputes under the Agreement shall be brought in the bankruptcy court having jurisdiction over such Chapter 11 case.

9. **Termination and Survival**

(a)    **Termination**. Either the Company or Wintergreen may terminate the Agreement at any time for any reason upon thirty (30) days written notice to the other party. Wintergreen may cease performing services at any time if the Company fails to perform its financial obligations under this Agreement and in such event may terminate upon providing seven (7) days written notice to the Company unless the Company cures such financial non-performance within

15

before the expiration of such seven (7) day cure period. Upon termination, (i) all undisputed fees and expenses incurred by Wintergreen, both billed and unbilled, up through the time and date of termination shall be deemed earned and come payable and (ii) at the option of Wintergreen, any unpaid amounts shall be set off against the Retainer (if any), with any balance due to either the Company or Wintergreen paid immediately thereafter.

(b)    **Survival**. The terms of the Agreement that by their context are intended to apply after termination of the Agreement or completion of the Services, including but not limited to Section 1 and Sections 3 through 11 of these Terms, shall survive any termination and continue to bind all parties.

(c)    **Performance-Based Fees**. If the fees specified for Wintergreen in the Agreement include a performance-based fee, and the metrics on which the fee is based are achieved within the 12-month period following the termination of the Agreement, then such fee shall be payable notwithstanding the termination of the Agreement.

10. **General**

(a)    **Entire Agreement**. The Engagement Letter and Schedules set forth the entire agreement between Wintergreen and the Company relating to the Services, and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

(b)    **Force Majeure.** Wintergreen will not be responsible for any failure or delay in performance due in whole or in part to any cause beyond Wintergreen's control.

(c)    **No Third-Party Beneficiaries**. Except as expressly provided herein, the Agreement is for the sole benefit of the parties hereto, and nothing herein expressed or implied shall give or be construed to give to any other person or entity any legal or equitable rights whatsoever.

(d)    **No Implied Exclusivity**. The Company acknowledges that Wintergreen, subject to its professional obligations, may provide similar services for other clients, including the Company's competi**tors.**

(e)    **Severability**. If any term, provision or portion of the Agreement shall be determined to be invalid, void or unenforceable, the remainder of the terms, provisions and portions of the Agreement shall remain in full force and effect.

(f)    **Modification**. This Agreement may not be altered, modified or changed in any manner except by a writing signed by the parties.

(g)    **Notices**. All notices under the Agreement shall be in writing. Any notice shall be delivered by e-mail, personally to the recipient, by U.S. mail, or by internationally recognized

16

overnight courier. Any notice shall be deemed to be given only upon actual receipt. All notices required or permitted to be delivered under the Agreement shall be sent, if to Wintergreen, to: Wintergreen, Inc., Attn. Jonathan Pantenburg, 21 Pinehurst Lane, Falmouth, Maine 04105, Attention: Chief Executive Officer, and by email to jpantenburg@wintergreenme.com and rbloom@wintergreenme.com ;and if to the Company, to the address to which the Engagement Letter is addressed, to the attention of the Company's Chief Executive Officer and to the email address of the Company's Chief Executive Officer, or to such other name or address as may be given in writing to the other party.  All notices shall be effective at the time of transmission of the email.

(h)      **Data Protection Laws**. The parties mutually intend to comply with all applicable laws and regulations governing the protection of personal data (collectively, "Data Protection Laws"). Accordingly, to the extent that either party will share with the other party data that is reasonably believed to be subject to Data Protection Laws, the parties agree to take appropriate measures and cooperate reasonably in order to ensure compliance with all applicable Data Protection Laws.

(i)      **Joint and Several Obligations**. If more than one entity is included in the definition of the Company, each such entity shall be jointly and severally liable for the Company's obligations pursuant to this Agreement.

11. **Disclosure of Pre-existing Relationships**

(a)      To the best of Wintergreen's knowledge, Wintergreen, its members, shareholders, officers, managers, agents and employees do not have any relationships with the Company or parties-in-interest of which the Company has made us aware that would create a conflict of interest for Wintergreen in providing the Services. Wintergreen has in the past had, and from time to time may now or in the future have, relationships with parties in interest of the Company in matters unrelated to the Company (the "Unrelated Matters") and (ii) has in the past had relationships with the parties-in-interest disclosed on **Schedule D** in matters related to the Company (the "Related Matters"). Wintergreen does not anticipate having any future involvement in the Related Matters.

(b)      By signing the Agreement, the Company thereby (1) waives any conflict of interest relating to performance of professional services by Wintergreen in connection with the Related Matters, and (2) consents to the continued performance of professional services by Wintergreen in connection with the Unrelated Matters.

(c)      In addition to the Related Matters, from time-to-time Wintergreen may provide services or have business associations with other entities or people with relationships with the Company, including creditors of the Company. Wintergreen will not be prevented or restricted from providing services to such other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's interests, provided

17

Wintergreen makes appropriate arrangements to maintain the confidentiality of the Company's Confidential Information.

**Schedule D**

**Disclosure of Relationships**

Wintergreen has had or currently has relationships with the following parties-in-interest of the Company in matters related to the Company:

-Rob Bloom's wife, Kristen Bloom, is a mental health therapist employed by Carthage Area Hospital. This employment is not a significant source of family income and Ms. Bloom intends to leave that position within the next six months.

-Benjamin Rubacha is the Chief Information Officer of the NSHA system, and also provides limited IT services to other entities, either individually or through an IT consulting firm he owns. Mr. Rubacha has been a part-time (approximately 3-5 hours per week) employee of Wintergreen where has helped manage Wintergreens own IT issues. Wintergreen intends to make terminate Mr. Rubacha's services as an employee and, to the extent needed, retain his consulting services as an independent contractor.

-Versa Badge is a vendor and creditor of NSHA, providing software relating to physician time studies. Versa Badge and Wintergreen have referred work to each other, without compensation.

-Ovation is a vendor and creditor of NSHA, providing services relating to revenue cycle management. Ovation and Wintergreen have referred work to each other, without compensation.

19

**Schedule E**

**Subsidiaries and Affiliates of Northstar Health Alliance**

Carthage Area Hospital

Claxton-Hepburn Medical Center, Inc.

Claxton-Hepburn, P.C.

North Country Orthopaedic Group

North Country Realty, LLC

North Country Ambulatory Surgery Center

North Star Health Alliance, Inc

Meadowbrook Terrace Assisted Living Facility

Comprehensive Women's Health Services, PLLC

Claxton Hepburn Medical Center Foundation, Inc.

Carthage Area Hospital Foundation, Inc.

29148395_7

# Engagement Letter (CLEAN)- Wintergreen Inc. and North Star Health Alliance, et al. 01_19_202 6(29148395.7)

Final Audit Report                                                                           2026-01-20

| | |
|---|---|
| Created: | 2026-01-19 |
| By: | Rob Bloom (rbloom@wintergreenme.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAApFaYRKUf99FC9lKABQjbK04jqnuP8GRI |

## "Engagement Letter (CLEAN)- Wintergreen Inc. and North Star Health Alliance, et al. 01_19_2026(29148395.7)" History

Document created by Rob Bloom (rbloom@wintergreenme.com)
2026-01-19 - 5:16:36 PM GMT

Document emailed to Richard Duvall (rduvall@nshany.org) for signature
2026-01-19 - 5:16:42 PM GMT

Email sent to Rob Bloom (rbloom@wintergreenme.com) bounced and could not be delivered
2026-01-19 - 5:17:12 PM GMT

Email viewed by Richard Duvall (rduvall@nshany.org)
2026-01-20 - 0:18:34 AM GMT

Document e-signed by Richard Duvall (rduvall@nshany.org)
Signature Date: 2026-01-20 - 0:19:30 AM GMT - Time Source: server

Agreement completed.
2026-01-20 - 0:19:30 AM GMT

**Adobe Acrobat Sign**