**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : Case No. 26-60099 |
| | : Main Case |
| Debtors. | : Jointly Administered |
| | : Case No. 26-30788 |
| | : Case No. 26-30799 |
| | : Case No. 26-60100 |

---------------------------------------------------------------------x

### APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF OMNI AGENT SOLUTIONS, INC. AS ADMINISTRATIVE AGENT *NUNC PRO TUNC* TO THE PETITION DATE

North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"),

Claxton-Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc.

("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the

"Debtors"), hereby submit this application (the "Application") for entry of an order, in substantially

the form attached hereto as Exhibit A, pursuant to sections 327(a) and 328(a) of Title 11 of the United

States Code (the "Bankruptcy Code") authorizing the Debtors to employ and retain Omni Agent

Solutions, Inc. ("Omni") as the Debtors' chapter 11 administrative Agent ("Administrative Agent"),

effective *nunc pro tunc* to the Petition Date (as defined below), in accordance with the terms and

conditions set forth in that certain Engagement Agreement between the Debtors and Omni (the

"Engagement Agreement"), a copy of which is attached as Exhibit 1 to the *Declaration of Paul H.*

*Deutch in Support of the Debtors' Application for Entry of an Order Authorizing the Employment*

*and Retention of Omni Agent Solutions, Inc. as Administrative Agent Nunc Pro Tunc to the Petition*

*Date* the (the "Deutch Declaration"), a true and complete copy of which is annexed hereto as Exhibit

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

1

<u>B</u> and which is incorporated herein by reference.  In support of this Application, the Debtors rely on

the Deutch Declaration and respectfully represents as follows:

## BACKGROUND

### A.  The Chapter 11 Cases

1.  On February 10, 2026 (the "<u>Petition Date</u>"), the Debtors commenced these Chapter 11

Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors

are continuing in possession of their properties and are operating and managing their businesses, as

debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.  No request for the appointment of a trustee, examiner or patient care ombudsman has

been made in these Chapter 11 Cases and no statutory committees have been appointed or designated.

### B.  The Debtors' Corporate Structure and Operations

3.  North Star Health Alliance, Inc. was established in September 1993 and incorporated

in the State of New York as a not-for-profit corporation.  North Star is the umbrella organization

within which Carthage, Claxton, Meadowbrook and related affiliates coordinate governance, strategy,

and shared services under what is referred to as the Transformation Plan.[2] North Star is a passive

parent entity that does not itself exercise financial control over each member organization; rather, it

serves as a platform for alignment and operational integration, including shared leadership and

centralized administrative functions (*e.g.,* finance, human resources, information technology,

compliance, revenue cycle coordination, and cash planning) that are critical to sustaining rural

---

[2] Beginning in or about August 2022, North Star pursued a complex transition (the "Transformation Plan") designed to preserve access to acute care and behavioral health services in the North Country while addressing Claxton's unsustainable legacy cost and reimbursement structure as a Sole Community Hospital. The Transformation Plan involved coordinated planning among North Star member organizations, engagement with DOH and OMH, and stepwise regulatory actions. On October 23, 2024, DOH and OMH issued operating certificates that reorganized Claxton into two distinct hospital entities: (i) a standalone inpatient psychiatric hospital (CHMC) and (ii) a separate acute-care campus operated by Carthage under a shared operating certificate (the Claxton Campus).

Docusign Envelope ID: 23760B3C-E53C-45DA-BAC8-E21A7ED6E6C1

healthcare delivery across multiple campuses. The North Star system as a whole employs approximately 1,600 employees.

4. Carthage was established in November 1921 and incorporated in the state of New York as a not-for-profit corporation. Carthage operates a 25-bed Critical Access Hospital in Carthage, New York, serving a large, rural tri-county area. Carthage holds a New York State Department of Health operating certificate (No. 2238700C; Facility ID/PFI 379) for primary care hospital-critical access hospital services located at 1001 West Street, Carthage, New York 13619, and it also operates a second 25 bed acute-care campus located at 214 King Street, Suite A, Ogdensburg, New York 13669 (the "Claxton Campus") under the same operating certificate (Facility ID/PFI 15684). The Claxton Campus is the designated "9.39" hospital for the area and is the former acute-care component of Claxton that is now operated by Carthage under a shared operating certificate as part of the Transformation Plan. While the New York State Department of Health ("DOH") issued the operating certificate reflecting this configuration, Centers for Medicare & Medicaid Services ("CMS") processes to recognize and operationalize the Claxton Campus as a critical access hospital (including surveys, enrollment steps, and related notifications) have involved additional steps and timing considerations.

5. Claxton-Hepburn Medical Center, Inc. was established in December 1916 and incorporated in January 1917 in the state of New York as a not-for-profit corporation. Following the implementation of the Transformation Plan, Claxton now operates exclusively as a standalone Article 31 Inpatient Psychiatric Hospital licensed by the New York State Office of Mental Health under Operating Certificate No. 8231002, located at 214 King Street, Suite B, Ogdensburg, New York 13669. Claxton provides acute inpatient behavioral health services for adults (28 beds) and children/adolescents (12 beds), including the region's only acute inpatient unit dedicated to children

3

and adolescents. Claxton also leads the Pathways to Recovery Peer Coaching program and has been planning to establish the region's first Comprehensive Psychiatric Emergency Program.

6. Meadowbrook Terrace, Inc. was established in December 2011 and incorporated in the state of New York as a not-for-profit corporation. Meadowbrook is a 60-bed assisted living facility (58 ALP beds and 2 Adult Home) that provides assisted living services for seniors in the North Country region. Meadowbrook is a key part of the Debtors' care continuum for elderly and medically fragile patients, supporting safe discharge planning and community-based care.

7. Through this bankruptcy proceeding, the Debtors intend to continue to fulfill their mission by operating their facilities to deliver quality health care in their communities.

## JURISDICTION

8. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

9. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory bases for the relief requested herein are sections 105(a), 327(a), 328(a), 363(b), and 507(a) of the Bankruptcy Code and Rules 2014(a), 2016, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

11. By this Application, the Debtors seek entry of an order authorizing the Debtors to employ and retain Omni as their Administrative Agent in these Chapter 11 Cases, effective as of the Petition Date, on the terms and conditions set forth in this Application and in the Deutch Declaration.

## BASIS FOR REQUESTED RELIEF

12. Omni is comprised of leading industry professionals with significant experience in the administrative aspects of large, complex chapter 11 cases. Omni's professionals have experience in

4

noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Omni's professionals have acted as claims and noticing agent and/or administrative agent in many large bankruptcy cases nationwide: *See, e.g.,   FAT Brands Inc.*, No. 26-90126 (ARP) (Bankr. S.D. TX. Jan. 26, 2026); *Elk Run Property Owners Association, Inc.*, No. 26-10311 (TBM) (Bankr. D. Co. Jan. 20, 2026); *The Falls Condominium Property Owners Association, Inc.*, No. 25-60870 (BTF) (Bankr. W.D. Mo. Dec. 19, 2025); *In re Fairfield Williamsburg Property Owners Association, Inc.*, No. 25-51179 (SCS) (Bankr. E.D. Va. Dec. 5, 2025); *In re Maple Ridge Property Owners Association, Inc.*, No. 25-40271 (AAE) (Bankr. W.D.N.C. Nov. 25, 2025); *In re Lugano Diamonds & Jewelry, Inc.*, No. 25-12055 (BLS) (Bankr. D. Del. Nov. 16, 2025); *In re Skyline Tower Resort Vacation Condominium Association, Inc.*, No. 25-22156 (ABA) (Bankr. D. N.J. Nov. 15, 2025); *In re Pine Gate Renewables, LLC*, No. 25-90669 (CML) (Bankr. S.D. Tx. Nov. 6, 2025); *In re Star Island Vacation Ownership Association, Inc.*, No. 25-07207 (GER) (Bankr. M.D. Fl. Nov. 6, 2025); *In re Orlando International Resort Club Condominium Association, Inc.*, No. 25-06813 (GER) (Bankr. M.D. Fl. Oct. 23, 2025); *In re Claire's Holdings LLC*, No. 25-11454 (BLS) (Bankr. D. Del. Aug. 6, 2025); *In re Cinemex Holdings USA, Inc.*, No. 25-17559 (LMI) (Bankr. S.D. Fla. June 30, 2025); *In re Zen JV, LLC*, No. 25-11195 (JKS) (Bankr. D. Del. June 24, 2025); *In re At Home Group Inc.,* No. 25-11120 (JKS) (Bankr. D. Del. June 16, 2025); *In re Boundless Broadband, LLC,* No. 25-10948 (BLS) (Bankr. D. Del. May 29, 2025); *In re Consolidated Burger Holdings, LLC*, No. 25-40162 (KKS) (Bankr. N.D. Fla. Apr. 14, 2025); *Publishers Clearing House LLC*, No. 25-10694 (MG) (Bankr. S.D.N.Y. Apr. 9, 2025); *In re Solid Fin. Tech., Inc.*, No. 25-10669 (BLS) (Bankr. D. Del. Apr. 7, 2025); *In re Go Lab, Inc.*, No. 25-10557 (KBO) (Bankr. D. Del. Mar. 25, 2025); *In re Wynne Transp. Holdings, LLC*, No. 25-10027 (KBO) (Bankr. D. Del. Jan. 10, 2025); *In re Ligado Networks, LLC*, No. 25-10006 (TMH) (Bankr. D. Del. Jan. 5, 2025).

## SERVICES TO BE PROVIDED

13.    Pursuant to the Engagement Agreement, the Debtors seek to retain Omni to provide, among other things, the following bankruptcy administration services, if and to the extent requested:

a.    Assist with, among other things,  plan solicitation, balloting, disbursements, and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices and institutional holders;

b.    Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

c.    Assist with the preparation of, and any amendments to, the Debtors' schedules of assets and liabilities and statements of financial affairs and gathering data in conjunction therewith;

d.    Provide a confidential data room, if requested;

e.    Manage and coordinate any distributions pursuant to a chapter 11 plan;

14.    Provide such other processing, balloting and other administrative services described in the Engagement Agreement, but not included in the Section 156(c) Application, as may be requested from time to time by the Debtors, the Court, or the Office of the Clerk of the United States Bankruptcy Court for the Northern District of New York.Omni's appointment as Administrative Agent will provide the Debtors with experienced professionals and services that are essential to successful chapter 11 cases.  Omni will coordinate with the Debtors' other retained professionals in these cases to avoid any unnecessary duplication of services.  Accordingly, the relief requested in this application is in the best interests of the Debtors' estates and all parties in interest.

## PROFESSIONAL COMPENSATION

15.    The fees Omni will charge in connection with providing services to the Debtors are set forth in the Engagement Agreement.  The Debtors respectfully submit that Omni's rates are competitive and comparable to the rates its competitors charge for similar services.  Indeed, the Debtors conducted a review and competitive comparison of other firms and reviewed the rates of

6

other firms before selecting Omni as Administrative Agent. The Debtors believe Omni's rates are more than reasonable given the quality of Omni's services and its professionals' bankruptcy expertise. Additionally, Omni will seek reimbursement from the Debtors for reasonable expenses in accordance with the terms of the Engagement Agreement.

16.     Omni intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in connection with the services it provides as Administrative Agent pursuant to the Engagement Agreement. Omni will comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any orders entered in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses.

17.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Omni's gross negligence, willful misconduct, or as otherwise provided in the Engagement Agreement. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of an Administrative Agent in these Chapter 11 Cases.

**OMNI'S DISINTERESTEDNESS**

18.     To the best of the Debtors' knowledge, and as disclosed in the Deutch Declaration, Omni (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, except that Omni was employed by the Debtors prior to the Petition Date as allowed by section 1107(b) of the Bankruptcy Code, and (b) does not hold or represent an interest materially adverse to the Debtors' estates.

19.     The Deutch Declaration represents that, to the best of Omni's knowledge, Omni is not materially connected with the Debtors, their creditors, other parties-in-interest, the United States

Trustee, or any person employed by the Office of the United States Trustee and that to the best of Omni's knowledge, after due inquiry, Omni does not, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, hold or represent any interest materially adverse to the Debtors, their estate, or any class of creditors or equity interest holders with respect to the matter upon which it is to be engaged.

20.     Should Omni discover any new relevant facts or relationships bearing on the matters described in this Application during the period of its retention, Omni will use reasonable efforts to file a supplemental declaration promptly.

21.     The Debtors has been informed that Omni will not share with any person or firm the compensation to be paid for services rendered in these cases, except as among employees of Omni.

## BASIS FOR REQUESTED RELIEF

23.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

24.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, and proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

Fed. R. Bankr. P. 2014.

8

25.     In light of the size and complexity of these Chapter 11 Cases, the Debtors respectfully submit that retaining and employing Omni pursuant to the terms of the Engagement Agreement is necessary and in the best interests of the Debtors' estates and all parties in interest to these Chapter 11 Cases.  The Debtors also believe that the terms and conditions of the Engagement Agreement are reasonable in light of the anticipated high volume of creditors and other parties-in-interest that will be involved in these Chapter 11 Cases.

26.     The Debtors previously filed an application seeking an order appointing Omni as claims and noticing agent pursuant to section 156(c) of title 28 of the United States Code and section 105(a) of the Bankruptcy Code [Dkt No. 32] (the "Section 156(c) Application"), which Section 156(c) Application was granted by Order dated February 18, 2026 [Dkt No. 54].  The Debtors believe that administration of these Chapter 11 Cases may require Omni to perform duties outside of the scope requested in the Section 156(c) Application.  Accordingly, to help manage administrative tasks with respect to the many creditors and other parties in interest that are expected to be involved in the Debtors' Chapter 11 Cases, and the complexity of the cases, the Debtors respectfully request the Court enter an order appointing Omni as their Administrative Agent pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016.

**NOTICE**

27.     Notice of this Application will be given to (i) the Office of the United States Trustee for the Northern District of New York, (ii) the Debtors' twenty (20) largest unsecured creditors as set forth in the list filed with the Debtors' petitions, (iii) all required governmental agencies and (iv) the Debtors' five largest secured creditors.  In light of the nature of the relief requested herein, the Debtors submit that no further notice is required.

9

28.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules to support entry of an order authorizing the Debtors to employ and retain Wintergreen in these Chapter 11 Cases.

29.    The Debtors believe that the employment of Wintergreen would be in the best interests of their estates and desire to employ Wintergreen, effective *nunc pro tunc* to the Petition Date, with compensation to be determined upon application to this Court.

WHEREFORE, the Debtors respectfully request the entry of an order:  (a) authorizing and approving the retention and employment of Wintergreen by the Debtors as their financial and restructuring advisor; (b) authorizing Wintergreen to be compensated at its standard hourly rates, as set forth in the Engagement Letter, subject to applicable provisions of the Bankruptcy Code; and (c) granting such other and further relief as this Court deems just and proper.

Dated:   March 4 , 2026

Signed by:

*Chester Truskowski*
11302BC2D15249B

North Star Health Alliance, Inc.
By:  Chet Truskowski, Board Chairperson

Signed by:

020D7CC4BA9844D...

Carthage Area Hospital, Inc.
By: Gary Rowe

Signed by:

*Zvi Szafran*
CF300E3124B4407...

Claxton-Hepburn Medical Center, Inc.
By: Zvi Szafran

Signed by:

*Dale Klock*
C02B94CBFC01438...

Meadowbrook Terrace, Inc.
By:  Dale Klock

Filed by:

**BARCLAY DAMON LLP**
*Proposed Counsel for Debtors and Debtors-In-Possession*
Janice B. Grubin
Jeffrey A. Dove
Ilan Markus (*pro hac vice* admission to be sought)
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Janice B. Grubin:  (212) 784-5808; jgrubin@barclaydamon.com
Jeffrey A. Dove:  (315) 413-7112; jdove@barclaydamon.com
Ilan Markus:  (203) 672-2661; imarkus@barclaydamon.com

50178923.1

Docusign Envelope ID: 23760B2C-E52C-45DA-BAC8-E21A7ED6E6C1

## Exhibit A

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------x

In re                                          :  Chapter 11
                                               :
NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1]  :  Case No. 26-60099
                                               :  Main Case
                 Debtors.                      :  Jointly Administered
                                               :  Case No. 26-30788
                                               :  Case No. 26-30799
                                               :  Case No. 26-60100

---------------------------------------------------------------------x

### ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF OMNI AGENT SOLUTIONS, INC. AS ADMINISTRATIVE AGENT <u>FOR THE DEBTORS</u> *NUNC PRO TUNC* <u>TO THE PETITION DATE</u>

Upon the *Application for Appointment of Omni as Claims and Noticing Agent Nunc Pro Tunc to the Petition Date* (the "<u>Application</u>")[2] filed by North Star Health Alliance, Inc. ("<u>North Star</u>"), Carthage Area Hospital, Inc. ("<u>Carthage</u>"), Claxton-Hepburn Medical Center, Inc. ("<u>Claxton</u>"), and Meadowbrook Terrace, Inc. ("<u>Meadowbrook</u>"), the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), for entry of an order pursuant to section 327(a)

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

[2] Capitalized terms used by not defined herein shall have the meanings ascribed to them in the Application.

1

of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule

2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules), authorizing and

approving the employment and retention of Omni ("Omni") as Administrative Agent for the

Debtors in the above-captioned Chapter 11 Cases *nunc pro tunc* to the Petition Date pursuant to

the terms and conditions of that certain engagement agreement between Omni and the Debtors,

effective *nunc pro tunc* to the Petition Date (the "Engagement Agreement"), and upon

consideration of the Deutch Declaration; and the Court having jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334, and the Court having found that the Application is a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue of the Application being proper pursuant to

28 U.S.C. §§ 1408 and 1409, and the relief requested herein being in the best interests of the

Debtors, their estates, creditors, and other parties-in-interest, and proper and adequate notice of the

Application having been given; and it appearing that no other further notice is necessary, and the

Court having determined that, based on the representations in the Application, Omni neither holds

nor represents an interest adverse to the Debtors or their estates and is a "disinterested person" as

defined in Bankruptcy Code section 101(14) (as modified by Bankruptcy Code section 1107(b))

and as required by Bankruptcy Code section 327(a), and good and sufficient cause existing for the

granting of the relief requested in the Application; now, therefore, **IT IS HEREBY ORDERED**

**THAT**:

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized to employ and retain Omni as their Administrative

Agent *nunc pro tunc* to the Petition Date in accordance with the terms and conditions set forth in

the Application and the Engagement Agreement, as modified herein.

2

3.      The terms of the Application and the Engagement Agreement are approved except as limited, modified, replaced, or rendered inapplicable to these Chapter 11 Cases by this Order.

4.      This Court shall have exclusive jurisdiction over any and all matters arising under or in connection with Omni's engagement by the Debtors, including the indemnification provisions outlined in the Engagement Agreement, as modified herein.

5.      Omni is authorized to provide bankruptcy administrative services (the "Administrative Services") in its role as Administrative Agent, including, without limitation to:

a.      Assist with, among other things, plan solicitation, balloting, disbursements, and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices and institutional holders, to the extent that the aforementioned services are not included in the Section 156(c) Application;

b.      Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

c.      Assist with the preparation of, and any amendments to, the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

d.      Provide a confidential data room, if requested;

e.      Manage and coordinate any distributions pursuant to a chapter 11 plan;

f.      Provide such other processing, solicitation, balloting, and other administrative services described in the Engagement Agreement, but not included in the Section 156(c) Application, as may be requested from time to time by the Debtors, the Court or the Office of the Clerk of the United States Bankruptcy Court for the Northern District of New Yorks.

6.      Except as set forth in the Section 156(c) Order or any order of this Court establishing interim compensation procedures for the Debtors' professionals, Omni shall be compensated for its services as Administrative Agent in accordance with the terms of the Engagement Agreement, and will file interim and final fee applications for allowance of its

compensation and expenses subject to Bankruptcy Code sections 330 and 331, as the case may be,

and the applicable Bankruptcy Rules, local rules and orders of the Court.

7.     The indemnification provisions and limitation of liability provisions in the

Engagement Letter are hereby modified and restated to give effect to the following:

> All requests of Omni for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Omni be indemnified in the case of its own bad-faith, self-dealing, gross negligence or willful misconduct.

> In the event that Omni seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Omni for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Omni's own application (both interim and final) and such invoices and time records shall be subject to the approval of the Court under the standards of Bankruptcy Code sections 330 and 331 without regard to whether such attorney has been retained under Bankruptcy Code section 327 and without regard to whether such attorneys' services satisfy Bankruptcy Code section 330(a)(3)(C).

> Omni shall not be entitled to reimbursement by the Debtors for any fees, disbursements and other charges of Omni's counsel other than those incurred in connection with a request of Omni for payment of indemnity, retention of Omni and preparation of fee applications.

> In no event shall Omni be entitled to indemnification, contribution, exoneration, reimbursement of attorneys' fees or expenses, limitation on liability or allocation or apportionment of damages if the Debtors asserts a claim, to the extent the Court determines by final order that such claim for indemnity arose out of Omni's own bad-faith, self-dealing, gross negligence, or willful misconduct.

8.     To the extent that there may be any inconsistency between the terms of the

Application, the Engagement Agreement, and this Order, the terms of this Order shall govern.

9.     The Debtors and Omni are authorized to take such other action as is reasonably

necessary to comply with all of the duties set forth in the Application and this Order.

10.    Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

11.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

# # #

Docusign Envelope ID: 23760B3C-E53C-45DA-BAC8-E21A7ED6E6C4

## **Exhibit B**

Deutch Declaration

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x

In re                                                                              :    Chapter 11
                                                                                   :
NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1]    :    Case No. 26-60099
                                                                                   :    Main Case
                               Debtors.                                    :    Jointly Administered
                                                                                   :    Case No. 26-30788
                                                                                   :    Case No. 26-30799
                                                                                   :    Case No. 26-60100

-----------------------------------------------------------------------x

### DECLARATION OF PAUL H. DEUTCH IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF OMNI AGENT SOLUTIONS, INC. AS ADMINISTRATIVE AGENT *NUNC PRO TUNC* TO THE PETITION DATE

I, Paul H. Deutch, under penalty of perjury, declare as follows:

1.       I am the Executive Vice President of Omni Agent Solutions, Inc. ("Omni"), a chapter 11 administrative services firm that specializes in the administration of bankruptcy cases. Omni's corporate headquarters is  located at 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367.  I am duly authorized to make this declaration on behalf of Omni.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.       I submit this Declaration in support of the *Application for Entry of an Order Authorizing the Employment and Retention of Omni Agent Solutions, Inc. as Administrative Agent Nunc Pro Tunc to the Petition Date* (the "Application"),[2] filed contemporaneously herewith by North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc. ("Claxton"),  and  Meadowbrook  Terrace,  Inc.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

1

("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").

3.      Omni is comprised of leading industry professionals with significant experience in the administrative aspects of large, complex chapter 11 cases.  Omni's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Omni's professionals have acted as debtors' official claims and noticing agent and/or administrative agent in many large bankruptcy cases in this district and in other districts nationwide, including:  *See*, *e.g.*, *FAT Brands Inc.*, No. 26-90126 (ARP) (Bankr. S.D. TX. Jan. 26, 2026); *Elk Run Property Owners Association, Inc.*, No. 26-10311 (TBM) (Bankr. D. Co. Jan. 20, 2026); *The Falls Condominium Property Owners Association, Inc.*, No. 25-60870 (BTF) (Bankr. W.D. Mo. Dec. 19, 2025); *In re Fairfield Williamsburg Property Owners Association, Inc.*, No. 25-51179 (SCS) (Bankr. E.D. Va. Dec. 5, 2025); *In re Maple Ridge Property Owners Association, Inc.*, No. 25-40271 (AAE) (Bankr. W.D.N.C. Nov. 25, 2025); *In re Lugano Diamonds & Jewelry, Inc.*, No. 25-12055 (BLS) (Bankr. D. Del. Nov. 16, 2025); *In re Skyline Tower Resort Vacation Condominium Association, Inc.*, No. 25-22156 (ABA) (Bankr. D. N.J. Nov. 15, 2025); *In re Pine Gate Renewables, LLC*, No. 25-90669 (CML) (Bankr. S.D. Tx. Nov. 6, 2025); *In re Star Island Vacation Ownership Association, Inc.*, No. 25-07207 (GER) (Bankr. M.D. Fl. Nov. 6, 2025); *In re Orlando International Resort Club Condominium Association, Inc.*, No. 25-06813 (GER) (Bankr. M.D. Fl. Oct. 23, 2025); *In re Claire's Holdings LLC*, No. 25-11454 (BLS) (Bankr. D. Del. Aug. 6, 2025); *In re Cinemex Holdings USA, Inc.*, No. 25-17559 (LMI) (Bankr. S.D. Fla. June 30, 2025); *In re Zen JV, LLC*, No. 25-11195 (JKS) (Bankr. D. Del. June 24, 2025); *In re At Home Group Inc.,* No. 25-11120 (JKS) (Bankr. D. Del. June 16, 2025); *In re Boundless Broadband, LLC,*

No. 25-10948 (BLS) (Bankr. D. Del. May 29, 2025); *In re Consolidated Burger Holdings, LLC*, No. 25-40162 (KKS) (Bankr. N.D. Fla. Apr. 14, 2025); Publishers Clearing House LLC, No. 25-10694 (MG) (Bankr. S.D.N.Y. Apr. 9, 2025); *In re Solid Fin. Tech., Inc.*, No. 25-10669 (BLS) (Bankr. D. Del. Apr. 7, 2025); *In re Go Lab, Inc.*, No. 25-10557 (KBO) (Bankr. D. Del. Mar. 25, 2025); *In re Wynne Transp. Holdings, LLC*, No. 25-10027 (KBO) (Bankr. D. Del. Jan. 10, 2025); *In re Ligado Networks, LLC*, No. 25-10006 (TMH) (Bankr. D. Del. Jan. 5, 2025).

4.      As Administrative Agent, Omni will perform the bankruptcy administration services specified in the Application and the Engagement Agreement, as modified by any order granting the Application.  In performing such services, Omni will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as Exhibit 1 hereto.

5.      Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Omni and its professional personnel:

a.      are not creditors, equity security holders, or insiders of the Debtors;

b.      are not and were not, within two years before the date of the filing of this case, directors, officers, or employees of the Debtors; and

c.      do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

6.      I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in these Chapter 11 Cases. The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, their trustees, members, officers, and directors, lenders, creditors, and vendors, and other parties in interest.  The results of the conflict check were compiled and reviewed by Omni professionals.  At this time, and as set forth in further detail herein, Omni is not aware of any connection that would present a disqualifying conflict of interest.  Should Omni discover any new

3

relevant facts or connections bearing on the matters described herein during the period of its retention, Omni will use reasonable efforts to file promptly a supplemental declaration.

7.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Omni, nor any of its personnel, holds or represents an interest materially adverse to the Debtors' estates nor has a material connection to the Debtors, their creditors, or related parties with respect to any matter for which Omni will be employed.  Omni may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Omni serves or has served as claims and noticing agent and/or administrative Agent for another chapter 11 debtor.  However, to the best of my knowledge, no such relationships are materially related to these Chapter 11 Cases.

8.      Omni may have working relationships with certain of the professionals retained by the Debtors and other parties herein but such relationships are entirely unrelated to these Chapter 11 Cases.  Omni has and will continue to represent clients in matters unrelated to these Chapter 11 Cases, and Omni and its personnel may have, and will continue to have, relationships personally or in the ordinary course of its business with certain vendors, professionals, financial institutions, and other parties in interest in connection with matters unrelated to this case.  Omni may also provide professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

9.      Omni and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms, and financial Agents.  All engagements where such firms represent Omni or its personnel in their individual capacities are unrelated to these Chapter 11 Cases.

Docusign Envelope ID: 23760B3C-E53C-45DA-BAC8-E21A7ED6E6C1

10. Upon information and belief, and upon reasonable inquiry, Omni does not believe that any of its partners or employees own any debt or equity securities of the Debtors or of any of its affiliates.

11. Based on the foregoing, I believe that Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Moreover, to the best of my knowledge and belief, neither Omni nor any of its employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Omni is to be employed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: March 3 , 2026 **OMNI AGENT SOLUTIONS, INC.**


By: ___*/s/Paul Deutch*_____
Paul Deutch
Executive Vice President

5

Docusign Envelope ID: 23760B3C-E53C-45DA-BAC8-E21A7ED6E6C1

## **Exhibit 1**

**Engagement Agreement**

Omni 2/10/26 (PHD)

## <u>STANDARD SERVICES AGREEMENT</u>

This Agreement is entered into as of January 10, 2026, between (I) Omni Agent Solutions, Inc ("**Omni**"), and (II) North Star Health Alliance, Inc., Carthage Area Hospital, Inc., Claxton-Hepburn Medical Center, Inc., and Meadowbrook Terrace, Inc. (collectively, the "**Companies**"). The parties agree as follows:

### <u>Terms and Conditions</u>

I.    SERVICES

(a)    Upon request by the Companies or as may be necessary for Omni to comply with applicable law, governmental regulation, court order or court rule, Omni shall provide the Companies with consulting and administrative services ("**Services**") in connection with the Companies' pending chapter 11 cases. Without limitation, the Services may include any or all of the following: Assisting in the preparation of the Companies' bankruptcy schedules and statements of financial affairs ("**Schedules and SOFA**"), noticing, communication related services, claims management and reconciliation, plan solicitation, balloting and tabulation, contract review, securities, claims analysis, providing confidential online workspaces or data rooms (the publication of which shall not violate the confidentiality provisions of this Agreement), account management, disbursements, automation, and any other service which may be agreed upon by the parties.

(b)    The Companies understand that to assist or enable Omni to provide the Services, Omni will engage in communications with various persons acting on the Companies' behalf (each, a "**Companies Party**").[1] The Companies represent to Omni and agree that any and all requests, advice, information or direction which a Companies Party provides to or makes of Omni is expressly authorized by the Companies, that Omni may rely upon the accuracy and completeness of the information provided without any obligation to further verify it, and that the Companies shall be bound by any and all requests, advice, information or direction made.

(c)    The Companies understand that Omni is not being retained to provide any legal or financial advice and that none of Omni's communications with a Companies Party or any other party constitutes legal or financial advice.

II.    RATES

(a)    The Companies agree to pay Omni for all fees, charges and costs for Services provided on their behalf in the amounts set forth in the schedule attached hereto as **Exhibit "A"** (the "**Rate Schedule**"). *In addition, Omni has agreed to provide the Companies with a ten (10%) percent discount on Omni's standard hourly rates.* Omni reserves the right to amend the Rate Schedule by increasing its hourly rates, unit prices, and any other charges, fees, and costs therein during the term of this Agreement and that upon so doing, the parties agree that the rates, prices,

---

[1] Unless otherwise agreed upon, a Companies Party includes the Companies' managers, general partners, officers, directors, employees, agents, representatives, counsel, consultants and/or any other party with whom the Companies authorize to engage in a communication with Omni.

and other charges shall be effective immediately and constitute the operative Rate Schedule.

(b)    Omni may invoice the Companies monthly for the Services it provided during the preceding calendar month consistent with the applicable Rate Schedule. All invoices are due and payable upon receipt. Any payment made to Omni will be in accordance with applicable bankruptcy law and orders of the bankruptcy court.

(c)    If any amount is unpaid to Omni thirty (30) days from the date of the Companies' receipt of an invoice, the Companies agree to pay a late charge calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute of any portion of an invoice, the Companies shall give written notice to Omni within ten (10) days of receipt of the invoice as to the charges disputed and the basis thereof. The undisputed portion of the invoice will remain due and payable immediately upon receipt, but late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law. At its sole discretion, Omni may first apply any payment received against the cumulative sum of the late charges then due before it applies any remaining balance to the outstanding principal balance.

(d)    Omni may require an advance or direct payment from the Companies of an individual expense, or a group of related expenses, which are expected to exceed $7,500 (*e.g.*, publication notice).

(e)    The Companies shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Companies, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(f)    The Companies shall pay to Omni all actual charges (including fees, costs and expenses as set forth in the then effective Rate Structure) related to, arising out of, or resulting from, any error or omission made by the Companies including, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses.

(g)    *[This section intentionally left blank]*

(h)    Payments to Omni for services rendered under the terms of this Agreement may be remitted using either or both of the following methods:

(i)    **Wire Transmission**

(Omni's wire information will be included on each monthly invoice)

(ii)    **Check**
Omni Agent Solutions
c/o Accounts Receivable
5955 De Soto Avenue
Suite 100

Docusign Envelope ID: 23760B2C-E53C-45DA-BAC8-E21A7ED6E6C1

Omni 2/10/26 (PHD)

Woodland Hills, CA 91367

III.    RETENTION

(a)    The Agreement is effective immediately upon its execution by the parties; provided, however, that it shall be subject to, if and when applicable, the terms of any order entered approving the engagement of Omni by the Companies in the Companies' chapter 11 proceeding(s).

(b)    As soon as is practicable, but in no event more than thirty (30) days after such case or cases are commenced, the Companies agree to and shall take all necessary actions to obtain bankruptcy court approval to retain Omni as their claims and noticing agent pursuant to 28 U.S.C. § 156(c), and as its administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of any application concerning Omni's retention and any order setting forth its terms are subject to Omni's approval which shall not be unreasonably withheld. Notwithstanding any other provision of this Agreement, if the bankruptcy court does not enter an order approving Omni's retention pursuant to 28 U.S.C. § 156(c) or section 327 of the Code, this Agreement will be terminated effective immediately.

IV.    TERM

(a)    Except as provided herein, the Agreement will remain in effect until terminated: (a) on a mutually agreed upon date as set forth in a writing executed by both parties; (b) on a date of no less than sixty (60) days from the date written notice is provided by one party to the other; (c) by the Companies for cause ("**Cause**") which, for purposes of this Agreement, shall mean that Omni has acted in bad faith, with gross negligence, or engaged in willful misconduct that results in material harm to the Companies' effort and ability to restructure in their chapter 11 cases; or (d) by Omni upon the Companies' material breach of any term herein. If Omni's engagement has been already approved by the bankruptcy court, then Omni shall continue to perform the Services until the entry of an order by the bankruptcy court, in a form and substance satisfactory to Omni, whose consent will not be unreasonably withheld, providing for the terms and conditions of its discharge, including date of termination.

(b)    Upon its termination, Omni shall provide the Companies with all materials Omni is required to return to the Companies under the terms of this Agreement as well as all in-process deliverables in their then-current state of completion for Services which Omni provided prior to the effective date of the termination promptly after it has received payment in full of all sums attributable to such Services, including for any Services which have then not yet been invoiced. Omni shall coordinate with the Companies and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, shall provide the necessary staff and assistance required for an orderly transfer, and the Companies agree to pay all sums which may become due in connection therewith. Without limiting the foregoing, upon the Companies' written request made at any time during the term of this Agreement, Omni shall deliver to the Companies and/or the Companies' retained professionals at the Companies' sole expense any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Companies.

## V. CONFIDENTIALITY

Omni and the Companies, on behalf of themselves and on behalf of each Companies Party, agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement ("**Confidential Information**"), except if any of such information: (a) is then or thereafter becomes publicly available, other than by breach by the receiving party; (b) is already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; (c) was independently developed; (d) is lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; or (e) is subject to production or revelation pursuant to an order of any court, governmental agency or other regulatory body, arbitrator or subpoena, it may, upon not less than ten (10) calendar days written notice to the other party, release the required information.

## VI. OMNI'S PROPERTY RIGHTS

(a)    The parties understand and agree that any and all software programs or other materials furnished by Omni pursuant to this Agreement or used by Omni to provide the Services during the term of this Agreement ("**Omni's Property**") are Omni's sole and exclusive property. Without limiting the foregoing, Omni's Property includes data processing programs, specifications, applications, routines, documentation, ideas, concepts, know-how or techniques relating to data processing or Omni's performance of Services. Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time of accessibility, types of terminals and other equipment, and the Omni database serving the Companies, so long as any such changes do not materially interfere with ongoing Services provided to the Companies in connection with the Companies' pending bankruptcy cases.

(b)    The Companies acknowledge and agree that regardless of any sums it has been charged or has paid to Omni, it obtains no rights or ownership whatsoever in any of Omni's Property and that their use by the Companies is limited to enabling Omni to provide the Services hereunder.

## VII. BANK ACCOUNTS

At the request of the Companies, Omni is authorized to establish account(s) with financial institutions in the name of and/or as agent for the Companies and to manage such account(s), including to facilitate distributions pursuant to a chapter 11 plan or otherwise.

## VIII. COMPANIES' DATA

(a)    Without limiting any other provision of this Agreement, the Companies represent and warrant to Omni that when a Companies Party provides information to Omni (a) the Companies have all necessary authority to disclose it to Omni and that Omni is fully authorized to use it in connection with its performance of the Services; (b) that the information is materially

Omni 2/10/26 (PHD)

accurate and complete to the best of the Companies' knowledge at the time of such communication(s); and (c) that Omni has no responsibility whatsoever to verify or otherwise independently confirm the accuracy or completeness of any information, programs, data or instructions it is provided including, without limitation, data it receives in connection with the preparation of the Companies' Schedules and SOFAs. The Companies agree that they shall be deemed to have reviewed and approved any and all Schedules and SOFAs which are filed on their behalf.

(b)    Without limiting any other provision of this Agreement, the Companies understand and agree that all data, storage media, programs or other materials which are furnished to Omni on its behalf (the "**Companies' Data**") may be retained by Omni until full payment has been made to Omni for all of its Services and that they shall remain liable to Omni for all fees and expenses thereafter charged by Omni for maintaining, storing or disposing of any or all of it.  Omni agrees that it will dispose of the Companies' Data in a manner requested by or acceptable to the Companies; provided, however, that if Omni has not provided Services to the Companies for a period of ninety (90) days and provides no less than thirty (30) days written notice, Omni may dispose of any or all of the Companies' Data in any commercially reasonable at the Companies' sole expense. The Companies agree to use commercially reasonable efforts to initiate and maintain backup files that would allow the Companies to regenerate or duplicate all programs, data or information which is provided on their behalf to Omni.

(c)    If Omni is retained pursuant to bankruptcy court order, disposal of any of the Companies' Data shall comply with any applicable court orders and rules or clerk's office instructions.

## IX.    NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting its enforceability to the maximum extent compatible with applicable law.

## X.    INDEMNIFICATION

(a)    To the fullest extent permitted by applicable law, the Companies shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)    Omni and the Companies shall provide notice to the other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either

Omni 2/10/26 (PHD)

party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c)    The Companies' indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d)    The Companies' indemnification obligations hereunder shall survive the termination of this Agreement.

XI.    LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to the Companies for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by the Companies for the portion of the particular specific task or expense of the Service that gave rise to the alleged Loss.  In no event shall Omni's liability to the Companies for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII.    GENERAL

(a)    Each party acknowledges that authorized person(s) on its behalf have read Agreement, understands it, and agrees to be bound by its terms. Each party further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b)    If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)    This Agreement may be modified only by a writing duly executed by a Companies Party, on behalf of the Companies, and an officer of Omni.

(d)    This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e)    This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

Docusign Envelope ID: 23760B2C-E53C-45DA-BAC8-E21A7ED6E6C1

Case 26-60099-5-wak    Doc 114    Filed 03/04/26    Entered 03/04/26 11:55:20    Desc
Main Document    Page 31 of 36
Omni 2/10/26 (PHD)

(f)      Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g)      The Companies will use their best efforts to cooperate with Omni at the Companies' facilities if any portion of the Services require Omni's physical presence.

(h)      Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i)      The Companies and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture, or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j)      The language used in this Agreement will be deemed to be the language chosen by the Companies and Omni to express their mutual intent, and no rule of strict construction will be applied against either party.

(k)      In the event that any arbitration legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree that the prevailing party is entitled to be paid all of its reasonable attorneys' fees, court costs, and any other expense reasonably related thereto in the amount which may be set by the court or by an arbitrator, whether in the same action or in a separate action brought for the purpose of establishing such amount, in addition to any other relief to which the prevailing party may be entitled.

(l)      The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

(m)      During the pendency of the Companies' chapter 11 cases, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 cases.

(n)      Omni reserves the right to make changes in operating procedures, operating systems, programming languages, general purpose library programs, application programs, time periods of accessibility, types of terminals and other equipment, and the Omni database serving

Omni 2/10/26 (PHD)

the Companies, so long as any such changes do not materially interfere with ongoing Services provided to the Companies in connection with the Companies' pending bankruptcy case(s).

(o)    All headings used in this Agreement are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

XIII.  NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Omni:          Omni Agent Solutions, Inc.
                     5955 De Soto Avenue
                     Suite 100
                     Woodland Hills, CA 91367
                     Tel: (818) 906-8300
                     Attn: Brian K. Osborne, Pres. & CEO
                     Email: Bosborne@omniagnt.com

If to the Companies:  North Star Health Alliance, Inc.

                     _____
                     _____
                     _____
                     Attn: _____
                     Email:_____

With a copy to:      Barclay Damon
                     1270 Avenue of the Americas
                     Suite 2310
                     New York, NY 10020
                     Attn:   Janice B. Grubin, Esq.
                     Email: JGrubin@barclaydamon.com

Or to such other address as the Party to receive the notice or request so designates by written notice to the other.

Docusign Envelope ID: 23760B2C-E52C-45DA-BAC8-E21A7ED6E6C4
Omni 2/10/26 (PHD)

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement effective as of the date first above written.

<b>OMNI AGENT SOLUTIONS, INC.</b>

By: _____
Name:  Paul Deutch
Title:    Executive Vice President

Agreed and accepted this ___ day of February, 2026

<b>NORTH STAR HEALTH ALLIANCE, INC., <i>ET AL.</i></b>

_____
Name:
Title:

Docusign Envelope ID: 23760B3C-E53C-45DA-BAC8-E21A7ED6E6C1

Omni 2/10/26 (PHD)

# EXHIBIT

# "A"

Docusign Envelope ID: 237B0B4C-E53C-45DA-BAC8-F31A7FD6C1F4

# 2025 Rate Sheet

OMNI
AGENT SOLUTIONS

| Hourly Rates for Standard and Custom Services* | RATE / COST |
|---|---|
| Office Services | $50 - $75.00 per hour |
| Case Administration Services | $80 - $275 per hour |
| Claims Management | $80 - $275 per hour |
| Noticing Services | $80 - $275 per hour |
| Schedules and SOFA Services | $80 - $275 per hour |
| Solicitation Services | $80 - $295 per hour |
| Disbursement/Treasury Services | $150 - $295 per hour |
| Communications Services – Call Center | $75 - $175 per hour |
| Quality Control/Oversight Management | $150 - $275 per hour |
| Senior Management/Consulting Services | $225 - $275 per hour |
| Programming and IT Customization | $95 - $175 per hour |

| Claims Management | RATE / COST |
|---|---|
| Inputting Proofs of Claim | Hourly rates (No per claim charges) |
| Scanning | $.10 per image |
| Remote Internet access for claims management | |
| Setup | No charge |
| Access | No charge |

| Schedules / SoFA | RATE / COST |
|---|---|
| Preparation and updating of schedules and SoFAs | $80.00 - $275.00 per hour |

| Informational Website | RATE / COST |
|---|---|
| Creation, Configuration and Initial Setup | No charge |
| Data Entry / Information Updates | Standard hourly rates apply |
| Programming and Customization | $95 - $175 per hour |
| Debtor Website Hosting | No charge |
| Committee Website Hosting | No charge |
| Shareholder Website Hosting | No charge |
| Scanning | $0.10 per image |

| Public Debt and Equities Securities and/Rights Offerings Services | RATE / COST |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Liquidating / Disbursing Agent | RATE / COST |
|---|---|
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, bank reconciliations | Standard hourly rates apply |

| Solicitation and Tabulation | RATE / COST |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

*Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

# 2025 Rate Sheet

Docusign Envelope ID: 237B0B0C-ED3C-45DA-BAC8-F31A7EE6C1F4

| Printing and Noticing Services | RATE / COST |
|---|---|
| Copy | $.10 per image |
| Document folding and insertion | No charge |
| Labels/Envelope printing | $.035 each |
| MSL E-mail noticing | No charge |
| High Volume or Certified E-mail Noticing | TBD per volume |
| Facsímile Noticing | $.10 per image |
| Postage/Overnight Service | Prevailing rates as required (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE / COST |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

| Call Centers / Dedicated Line | RATE / COST |
|---|---|
| Creation, configuration and initial setup | No charge |
| Hosting fee | $50.00 per Month |
| Usage | $.10 per Minute |
| Call center personnel | Standard Hourly Rates |

| UST Reporting Compliance | RATE / COST |
|---|---|
| Assist debtors to satisfy jurisdicational requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |

| Electronic Services, Storage & Security | RATE / COST |
|---|---|
| License Fee and System Maintenance | .10 per Record |
| Per image storage | No charge |
| Monthly Encryption Bandwidth and Security Compliance Charges** | .15 per MB |
| Automated Services | .20 per process |

| Virtual Data Rooms | Quote upon request |
|---|---|

| Miscellaneous | RATE / COST |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $50.00 per copy |

** Charges relate to secure, bidirectional encryption of web-based documents and telephony, as well as secure storage of case records, documents and related files based on volume