**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : Case No. 26-60099 |
| | : Main Case |
| Debtors. | : Jointly Administered |
| | : Case No. 26-30788 |
| | : Case No. 26-30799 |
| | : Case No. 26-60100 |

------------------------------------------------------------------x

**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
RETENTION OF BOUSQUET HOLSTEIN PLLC AS SPECIAL
CORPORATE COUNSEL TO THE DEBTORS AND DEBTORS-IN-
POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

TO THE HONORABLE WENDY A. KINSELLA,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"),

Claxton-Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc.

("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the

"Debtors"), hereby move the Court for entry of an Order, pursuant to section 327(e) of title 11 of

the United States Code, as amended (the "Bankruptcy Code") and Rule 2014 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules") for authority to retain Bousquet Holstein PLLC

("Bousquet Holstein") as their special corporate counsel effective *nunc pro tunc* to the Petition

Date (as defined below) in accordance with the terms and conditions of that certain engagement

letter between the Debtors and Bousquet Holstein, dated November 15, 2010 (the "Engagement

Letter"), a copy of which is attached as Exhibit A to the Valentino Declaration (as defined below).

In support of this Application, the Debtors submit the *Declaration of John L. Valentino in Support*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

*of Application for Entry of an Order Authorizing the Retention of Bousquet Holstein PLLC as Special Corporate Counsel to the Debtors and Debtors-in-Possession Effective Nunc Pro Tunc to the Petition Date* (the "Valentino Declaration"), and respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. Consideration of this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and rule-based predicates for the relief requested herein are Bankruptcy Code sections 327(e), 329, 330, 503(b), 504, and 507(a)(2) and Bankruptcy Rule 2014, 2016, 5002, and 6003, and Rule 2016-1 of the Local Rules of Bankruptcy Procedure for the Northern District of New York (the "Local Rules").

## BACKGROUND

### A. The Chapter 11 Cases

3.      On February 10, 2026 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their properties and are operating and managing their businesses, as debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case and no statutory committee has yet to been appointed.

### B. The Debtors' Business

5.      North Star Health Alliance, Inc. was established in September 1993 and incorporated in the State of New York as a not-for-profit corporation. North Star is the umbrella

organization within which Carthage, Claxton, Meadowbrook and related affiliates coordinate governance, strategy, and shared services under what is referred to as the Transformation Plan.[2] North Star is a passive parent entity that does not itself exercise financial control over each member organization; rather, it serves as a platform for alignment and operational integration, including shared leadership and centralized administrative functions (e.g., finance, human resources, information technology, compliance, revenue cycle coordination, and cash planning) that are critical to sustaining rural healthcare delivery across multiple campuses. The North Star system as a whole employs approximately 1,600 employees.

6.      Carthage was established in November 1921 and incorporated in the state of New York as a not-for-profit corporation.  Carthage operates a 25-bed Critical Access Hospital in Carthage, New York serving a large, rural tri-county area. Carthage holds a New York State Department of Health operating certificate (No. 2238700C; Facility ID/PFI 379) for primary care hospital-critical access hospital services located at 1001 West Street, Carthage, New York 13619, and it also operates a second 25 bed acute-care campus located at 214 King Street, Suite A, Ogdensburg, New York 13669 (the "Claxton Campus") under the same operating certificate (Facility ID/PFI 15684). The Claxton Campus is the designated "9.39" hospital for the area and is the former acute-care component of Claxton that is now operated by Carthage under a shared operating certificate as part of the Transformation Plan. While the New York State Department of Health ("DOH") issued the operating certificate reflecting this configuration, Centers for Medicare & Medicaid Services ("CMS") processes to recognize and operationalize the Claxton Campus as

---

[2] Beginning in or about August 2022, North Star pursued a complex transition (the "Transformation Plan") designed to preserve access to acute care and behavioral health services in the North Country while addressing Claxton's unsustainable legacy cost and reimbursement structure as a Sole Community Hospital. The Transformation Plan involved coordinated planning among North Star member organizations, engagement with DOH and OMH, and stepwise regulatory actions. On October 23, 2024, DOH and OMH issued operating certificates that reorganized Claxton into two distinct hospital entities: (i) a standalone inpatient psychiatric hospital (CHMC) and (ii) a separate acute-care campus operated by Carthage under a shared operating certificate (the Claxton Campus).

50162340.1

a critical access hospital (including surveys, enrollment steps, and related notifications) have involved additional steps and timing considerations.

7.    Claxton-Hepburn Medical Center, Inc. was established in December 1916 and incorporated in January 1917 in the state of New York as a not-for-profit corporation.  Following the implementation of the Transformation Plan, Claxton now operates exclusively as a standalone Article 31 Inpatient Psychiatric Hospital licensed by the New York State Office of Mental Health under Operating Certificate No. 8231002, located at 214 King Street, Suite B, Ogdensburg, New York 13669. Claxton provides acute inpatient behavioral health services for adults (28 beds) and children/adolescents (12 beds), including the region's only acute inpatient unit dedicated to children and adolescents. Claxton also leads the Pathways to Recovery Peer Coaching program and has been planning to establish the region's first Comprehensive Psychiatric Emergency Program.

8.    Meadowbrook Terrace, Inc. was established in December 2011 and incorporated in the state of New York as a not-for-profit corporation.  Meadowbrook is a 60-bed assisted living facility (58 ALP beds and 2 Adult Home) that provides assisted living services for seniors in the North Country region. Meadowbrook is a key part of the Debtors' care continuum for elderly and medically fragile patients, supporting safe discharge planning and community-based care.

9.    Through this bankruptcy proceeding, the Debtors intend to continue to fulfill their mission by operating their facilities to deliver quality health care in their communities.

## **RELIEF REQUESTED**

10.    By this Application, the Debtors request that the Court enter an order, pursuant to section 327(e) of the Bankruptcy Code, authorizing the Debtors to retain Bousquet Holstein as special corporate counsel, effective as of the Petition Date.

50162340.1

11. Prior to the Petition Date, Bousquet Holstein provided certain pre-petition legal services for the Debtors (collectively, the "Matters"), including general corporate matters, labor and employment, employee benefits and general litigation. Bousquet Holstein was also engaged by the Debtors on special projects involving real estate, health care compliance and mergers and acquisitions prior to the Petition Date. As set forth herein, the Debtors anticipate that they will require Bousquet Holstein to continue with these, and other, representations in the post-petition period.

12. It is necessary for the Debtors, as debtors-in-possession, to employ attorneys for such professional services.

## BASIS FOR RELIEF REQUESTED

13. The Debtors seek to retain Bousquet Holstein to provide advice and representation as to the Matters and related matters that may arise post-petition. Bousquet Holstein provided these services to the Debtors prior to the Petition Date, for more than 15 years, and is familiar with these aspects of the Debtors' operations and it is in the best interest of the Debtors' estates to continue to retain Bousquet Holstein for these Matters.

14. The Debtors respectfully submit that the retention of Bousquet Holstein complies with section 327(e) of the Bankruptcy Code, which provides:

> [t]he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. 327(e).

15. Thus, the retention of special counsel is authorized under the Bankruptcy Code when: (i) the proposed special counsel has previously represented the debtor, (ii) the appointment

of special counsel is in the best interest of the debtor's estate, and (iii) counsel does not hold an interest adverse to the estate with respect to the matter for which counsel is to be employed.  *See Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 622 (2d Cir. 1999).

**A.  Previous Representation and Best Interest of the Debtors' Estates.**

16.    Bousquet Holstein has represented the Debtors in connection with, and is intimately familiar with, the Matters.  Obtaining authority to retain Bousquet Holstein will be cost-effective for, and benefit, the Debtors' estates.

17.    The Debtors selected Bousquet Holstein because of Bousquet Holstein's knowledge of the Debtors' businesses and its expertise to handle the Matters in a cost-effective manner.  The Debtors believe that Bousquet Holstein has assembled a highly-qualified team of professionals and paraprofessionals to provide limited services to the Debtors during these Chapter 11 Cases.  The Debtors further believe that Bousquet Holstein has the knowledge and experience necessary to deal effectively with the issues that will arise, and that Bousquet Holstein's continued representation of the Debtors with respect to the Matters is critical to the success of the Debtors' efforts in these Chapter 11 Cases.

18.    The Debtors believe that Bousquet Holstein is well qualified to represent them as special counsel in their Chapter 11 Cases and that such retention would be in the best interests of the Debtors' estates.

**B.  Bousquet Holstein Holds No Adverse Interest**.

19.    Proposed counsel holds an adverse interest if they "(1) [possess or assert] 'any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant' or (2) [possess] 'a predisposition under circumstances that render such a bias against the estate.'"  *In re Residential Cap., LLC*, No. 12-12020 MG, 2012 WL 3308408, at *4 (Bankr. S.D.N.Y. Aug. 10, 2012) (quoting

6

*In re AroChem Corp.*).  Further, the review of potential conflicts is limited to the scope of the proposed special representation.  *See id.*

20.    The Debtors believe that Bousquet Holstein does not represent any interest adverse to the Debtors in accordance with 11 U.S.C. § 327(e).  As disclosed in the Valentino Declaration, Bousquet Holstein holds a general unsecured claim in the amount of $101,111.57 against the Debtors for services rendered prior to the Petition Date.

21.    Other than as set forth above and disclosed in the Valentino Declaration, the Debtors believe that Bousquet Holstein has no connection with the Debtors, their creditors, or any other party in interest, its respective attorneys and accountants, the Office of the United States Trustee, or any person employed in the Office of the United States Trustee or the U.S. Bankruptcy Court for the Northern District of New York and does not hold any bias towards or against the Debtors' estates.

22.    Bousquet Holstein has indicated its willingness to act as special counsel on the Debtors' behalf and to be compensated in accordance with the Bankruptcy Code, the Bankruptcy Rules and applicable orders of this Court entered in these Chapter 11 Cases.

23.    The Debtors understand that they will be responsible to Bousquet Holstein for all disbursements incurred by Bousquet Holstein in representing the Debtors in all respects.

24.    During the course of representing the Debtors as set forth herein, the services of Bousquet Holstein may be necessary for other duties not enumerated herein and not known at this time.  In the event the services of Bousquet Holstein are required for unusual or extraordinary matters beyond the scope or intent of this Application, the Debtors will make an additional application for such authorization.

25.    Bousquet Holstein will apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases in compliance

50162340.1

with Bankruptcy Code sections 330 and 331 and applicable provisions of the Bankruptcy Rules,

Local Rules, and any other applicable procedures and orders of the Court. Bousquet Holstein will

seek compensation based upon normal – but discounted by 10% for the Debtors --hourly billing

rates in effect for the period in which services are rendered and will seek reimbursement of

necessary and reasonable out of pocket expenses in accordance with the applicable provisions of

the Bankruptcy Code, the Bankruptcy Rules, and the United States Trustee Guidelines (the

"Guidelines").

26.     The Debtors believe that the employment of Bousquet Holstein is appropriate and

in the best interests of the Debtors, the Debtors' estates, and their creditors.

## NOTICE AND NO PRIOR REQUEST

27.     This Application has been served on the United States Trustee, counsel to the Cash

Collateral Secured Creditors, and all parties who have filed notices of appearance in these Chapter

11 cases. The Debtors submit that, under the circumstances, no other or further notice is required.

28.     No previous application for the relief requested herein has been made to this or any

other court.

**WHEREFORE**, the Debtors seek entry of an order, substantially in the form attached

hereto as **Exhibit A**, granting the relief requested herein and for such other and further relief as is

just and proper.

Dated:   March _4_, 2026

North Star Health Alliance, Inc.
By:  Chet Truskowski, Board Chairperson

Carthage Area Hospital, Inc.
By:  Gary Rowe

8

Claxton-Hepburn Medical Center, Inc.

By: Zvi Szafran

Meadowbrook Terrace, Inc.

By: Dale Klock

Filed by:

**BARCLAY DAMON LLP**
*Proposed Counsel for Debtors and Debtors-In-Possession*
Janice B. Grubin
Jeffrey A. Dove
Ilan Markus (*pro hac vice* admission to be sought)
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Janice B. Grubin:  (212) 784-5808; jgrubin@barclaydamon.com
Jeffrey A. Dove:  (315) 413-7112; jdove@barclaydamon.com
Ilan Markus:  (203) 672-2661; imarkus@barclaydamon.com

50162340.1

Docusign Envelope ID: 23760B2C-EF3C-45DA-BAC8-F21A7ED6E6C4

# <u>EXHIBIT A</u>

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                               :    Chapter 11
                                                    :
NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1]    :    Case No. 26-60099-5-wak
                                                    :    Main Case
                                    Debtors.        :    Jointly Administered
                                                    :    Case No. 26-30078
                                                         Case No. 26-30079
                                                         Case No. 26-60100

----------------------------------------------------------------x

**ORDER AUTHORIZING RETENTION OF BOUSQUET HOLSTEIN PLLC**
**AS SPECIAL CORPORATE COUNSEL TO THE DEBTOR AND**
**DEBTOR-IN-POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**[2]

Upon the application (the "Application") of the North Star Health Alliance, Inc. ("North

Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc.

("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors"), for authority to retain Bousquet Holstein

PLLC ("Bousquet Holstein"), as its special corporate counsel; and upon the Declaration of John

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).
[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

L. Valentino in support of the Application; and the Court being satisfied that (a) the employment of Bousquet Holstein is necessary and in the best interests of the Debtors, the Debtors' estates, and their creditors, (b) Bousquet Holstein does not have or represent any interest adverse to the Debtors, the Debtors' estates, and their creditors, and (c) Bousquet Holstein is a disinterested person" as that term is defined in section 101(14) of Title 11 of the United States Code, as amended (the "Bankruptcy Code"); and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § 1409; and good and sufficient cause appearing for the relief sought by the Application; it is hereby

**ORDERED**, that the Application is granted as set forth herein; and it is further

**ORDERED**, that pursuant to Bankruptcy Code section 327(e), the Debtors are hereby authorized to retain and employ Bousquet Holstein as their special corporate counsel in these Chapter 11 Cases effective *nunc pro tunc* as of the Petition Date; and it is further

**ORDERED**, that Bousquet Holstein shall use its best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases; and it is further

**ORDERED**, that Bousquet Holstein shall be compensated in accordance with the procedures set forth in Bankruptcy Code section 330, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Northern District of New York, and any orders issued by this Court; and it is further

**ORDERED**, that Bousquet Holstein shall be reimbursed for reasonable and necessary expenses; and it is further

50162340.1

**ORDERED**, that the Debtors are authorized to take all actions necessary to implement the relief granted in this Order; and it is further

**ORDERED**, that notice of the Application is deemed to be good and sufficient notice of such Application; and it is further

**ORDERED**, that notwithstanding any stay that might be imposed by Bankruptcy Rule 6004(h) or otherwise, this Order shall be effective and enforceable immediately upon entry hereof; and it is further

**ORDERED**, that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

# # #

50162340.1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099 |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30788 |
| | : | Case No. 26-30799 |
| | : | Case No. 26-60100 |

-------------------------------------------------------------------x

**DECLARATION OF JOHN L. VALENTINO IN SUPPORT OF**
**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE**
**RETENTION OF BOUSQUET HOLSTEIN PLLC AS SPECIAL**
**CORPORATE COUNSEL TO THE DEBTORS AND DEBTORS-IN-**
**POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

I, John L. Valentino, pursuant to 28 U.S.C. § 1746, hereby declare that the following is

true to the best of my knowledge, information and belief:

1.      I am a member of the law firm of Bousquet Holstein PLLC ("Bousquet Holstein"),

which maintains offices for the practice of law at 110 West Fayette Street, One Lincoln Center,

Suite 1000, Syracuse, New York 13202.  I am familiar with the matters set forth herein, and make

this declaration in support of the application of North Star Health Alliance, Inc. ("North Star"),

Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc. ("Claxton"),

and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and debtors-in-

possession (collectively, the "Debtors") in these Chapter 11 Cases, for authority to retain Bousquet

Holstein as special corporate counsel to the Debtors.

2.      I submit this Declaration in accordance with the Application seeking to retain

Bousquet Holstein as special counsel to assist the Debtors in connection with the review and

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

analysis of pending and potential legal Matters (as defined below) including, without limitation, providing legal advice and representation on labor and employment matters as requested by the Debtors.

3.      Bousquet Holstein is a midsized law firm, which allows our attorneys to work closely together, while maintaining frequent communication with our clients.  The firm is focused on providing legal counsel in a progressive, creative manner, continuously seeking and developing innovative solutions to complex legal issues.  Bousquet Holstein possesses the requisite experience and expertise to manage and resolve complex issues and procedures that may arise in defending the Debtors in the Claims.

4.      Prior to the Petition Date, Bousquet Holstein provided certain pre-petition legal services for the Debtors (collectively, the "Matters"), including general corporate matters, labor and employment, employee benefits and general litigation.  Bousquet Holstein was also engaged by the Debtors on special projects involving real estate, health care compliance and mergers and acquisitions prior to the Petition Date.  As a result, Bousquet Holstein is familiar with the Debtors' history and administrative operations.

5.      Bousquet Holstein holds a general unsecured claim in the amount of $101,111.57 against the Debtors for services rendered prior to the Petition Date.

6.      Bousquet Holstein has reviewed the Debtors' combined conflicts list containing their creditors and parties in interest in these cases.  Bousquet Holstein has in the past, does currently, and may again in the future, provide legal representation to various creditors of the Debtors.  Bousquet Holstein does not represent any of them in these Chapter 11 Cases.

7.      While Bousquet Holstein has provided in the past, and may provide in the future, legal services unrelated to the Debtors' Chapter 11 Cases to certain of the Debtors' creditors,

3

Bousquet Holstein submits that not all of these matters are currently active within the firm and many represent matters that have been completed and closed. Those creditors with active cases are identified on **Schedule 1** attached hereto.

8.     Other than as disclosed herein, Bousquet Holstein has no connection with the creditors or any other party in interest or their respective attorneys or accountants, except that Bousquet Holstein may have in the past, may currently, and may again in the future, represent certain creditors of the Debtors with respect to matters unrelated to the Debtors. Bousquet Holstein may or may not be general counsel to any such creditor, but often is retained on case-specific matters. Bousquet Holstein has not represented or been requested to represent or consult with any prior or existing client with regard to the Debtors' cases. Bousquet Holstein has used its best efforts to determine such representation and will supplement the disclosure if additional information regarding same is discovered.

9.     Notwithstanding the foregoing, to the best of my knowledge, Bousquet Holstein has no adverse connection with the Debtors, their creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee or the U.S. Bankruptcy Court for the Northern District of New York in these Chapter 11 Cases.

10.    There has been no agreement for the sharing or division of compensation earned or to be earned in this proceeding which is prohibited by 18 U.S.C. § 155 or 11 U.S.C. § 504.

11.    As to the Bousquet Holstein professionals who are expected to provide legal services to the Debtors as special corporate counsel, Bousquet Holstein currently charges the Debtors the following hourly rates: $440 to $530 for partners; $320 to $330 for associates; and

50162340.1

Docusign Envelope ID: 23760B2C-E53C-45DA-BAC8-F21A7ED8E6C4

$240 to $300 for paralegals. The foregoing rates are inclusive of a ten (10%) fee discount provided to the Debtors via the Engagement Letter.

12.     Bousquet Holstein shall charge the Debtors for all disbursements incurred in representing the Debtors in these Chapter 11 Cases.

13.     Bousquet Holstein understands that any fees and expenses awarded in this case will be set by the Court based on application and contemporaneous time records.

14.     Bousquet Holstein also respectfully requests that any Order entered by the Court entered by the Court approving the retention of Bousquet Holstein as special counsel to the Debtors be effective *nunc pro tunc* to of the Petition Date.

**I DECLARE**, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: February 27, 2026
       Syracuse, New York

                                JOHN L. VALENTINO

5

50162340.1

## SCHEDULE 1

### CLAXTON-HEPBURN MEDICAL CENTER

1. Mirion Technologies
   - Active Litigation
2. Irrevocable Spousal Lifetime Access trust for the Benefit of Carol L. Maginn
   - Active Litigation
3. Sentry Data Systems
   - Active Litigation
4. Danielle St-Denis
   - Active Litigation
5. NLRB 1199 EIU United Healthcare Workers
   - Active Litigation
6. David Boyce, MD
   - Threatened Litigation
7. Sanjoy Banik
   - Threatened Litigation

### CARTHAGE AREA HOSPITAL

1. Shawna S. Galloway
   - Active Litigation
2. Blake R. Valentine
   - Active Litigation
3. Surgicalist of New York, P.C. ("Synergy").
   - Threatened Litigation
4. CHG Medical Staffing, Inc. d/b/a CompHealth Medical Staffing.
   - Active Litigation
5. Weatherby Locums, Inc.
   - Active Litigation
6. Xerox Financial Services.
   - Threatened litigation
7. Delphi Hospitalist Services.
   - Threatened litigation
8. Walter Dodard.
   - Active Litigation
9. Breyana L. Lloyd.
   - Threatened Litigation

Docusign Envelope ID: 23760B2C-EF3C-45DA-BAC8-E21A7ED8E6C4

# **EXHIBIT A**

# GREEN·SEIFTER
## ATTORNEYS, PLLC

110 WEST FAYETTE STREET · ONE LINCOLN CENTER · SUITE 900 · SYRACUSE  NEW YORK 13202 · P 315 422 1391 · F 315 422 3549♦

MICHAEL J. BALANOFF

LAURENCE G. BOUSQUET

PHILIP S. BOUSQUET

CHRISTINE WOODCOCK DETTOR

DAVID A. HOLSTEIN †

VIRGINIA A. HOVEMAN *

TIMOTHY M. LYNN

SHARON A. MCAULIFFE

LAWRENCE M. ORDWAY, JR.

STEVEN A. PAQUETTE

PAUL M. PREDMORE

LOWELL A. SEIFTER ‡

JAMES L. SONNEBORN

THOMAS E. TAYLOR **

JOHN L. VALENTINO

ROBERT K. WEILER

HARRISON V. WILLIAMS, JR.

———

OF COUNSEL:

EDWARD S. GREEN ‡

GARY J. LAVINE **

SIDNEY L. MANES

———

CECELIA R.S. CANNON

JASON J. CENTOLELLA

KATHLEEN FAULKNHAM CENTOLELLA

ANTHONY J. D'ELIA

EMILEE K. LAWSON HATCH ***

KIM V. HEYMAN ††

JULIA B. JOYCE

DAFNI S. KIRITSIS

SARA E. LOWENGARD

DAVID C. TEMES

———

ROBERT D. MCAULIFFE
1993-1995

DAVID A. YAFFEE
1986-2004

———

ALSO ADMITTED TO IL BAR *
ALSO ADMITTED TO DC BAR **
ALSO ADMITTED TO MA BAR - ***
ALSO ADMITTED TO FL & PA BAR †
ALSO ADMITTED TO PA BAR ††
ALSO CERTIFIED PUBLIC ACCOUNTANT ‡
NOT FOR SERVICE OF PROCESS ♦

November 15, 2010

Walter S. Becker, CEO and Hospital Administrator
Carthage Area Hospital
1001 West Street
Carthage, New York  13619

**Re:  Engagement Letter**

Dear Walter:

It was a pleasure meeting with you, Richard Duvall, and Mark Hill on November 5, 2010.  Lowell, Sharon and I were quite impressed with your facilities, and would very much enjoy the opportunity of working with you and the Carthage Area Hospital staff.

At the conclusion of our meeting, you requested that I send to you an engagement letter outlining our schedule of rates for legal services.  I provide this letter for that purpose.  Enclosed you will find a schedule of rates for the professionals in our firm who would likely work with you and the hospital staff.  Please note, the Schedule reflects the regular billing rates for the professionals listed, and also lists the rates that we agree to provide the hospital.  These rates reflect a 10% discount from our firm's regular rates.  Although our rates are adjusted annually to reflect the increased experience of our professional staff and costs of operation, our firm will continue to provide the hospital with a 10% discount from our regular rates in any matters for which our representation is provided.

The scope of the services to be provided by our firm will be determined on a case-by-case basis as the hospital may request from time-to-time.  If the services are those that can be provided by our firm and which we agree to perform, the terms contained in this engagement letter will apply.

**Personnel and Billing Practices**

We charge fees for services provided on an hourly basis.  I will be the primary contact for the hospital on all matters, and the attorney most involved in labor and employment matters.  Other attorneys and paralegals in our firm will be asked to assist the hospital when their particular skills are properly suited to the various tasks that may be required in connection with representing the hospital.  We bill in one-quarter (.25) hour increments.  All of our rates are reviewed from time-to-time and are subject to



Carthage Area Hospital
November 15, 2010
Page 2

adjustments (usually in January), based upon the increasing experience of our attorneys and various economic factors, including inflation.

We will exert in good faith, our timely, ethical, and professional efforts on the hospital's behalf and will, at all points along the way, communicate with you regarding the progress of our efforts, so that you can make informed decisions about our continued representation.

A copy of our Fee Policy is enclosed. It provides some additional information about our standard billing practices. If anything in this letter is inconsistent with the Fee Policy, this letter will govern.

It is our practice to bill for matters on a monthly basis and payment for invoices is expected upon your receipt of the bill. Interest will accrue on amounts more than thirty (30) days overdue at the rate of one percent (1%) per month. In addition to reflecting the charges for the services of attorneys and legal assistants, our statement will reflect costs incurred by G&S in the rendition of its services, including, if applicable, long distance telephone charges, telecopy and fax charges, photocopying expenses, computerized legal and other research systems, filing fees and court costs, messenger and special delivery services, and travel expenses, and may include charges for extraordinary items which may be generated by the particular demands of the scope of work. We would also bill you, and you would agree to pay, all applicable taxes associated with those costs, expenses, and disbursements. Further, if certain out-of-pocket expenses are incurred on your behalf, these invoices may be sent directly to you for payment.

If you ever have questions or concerns about our billing procedures, invoices, or the services provided, please contact me. I will endeavor to fully and promptly address any questions and concerns to your satisfaction.

You may terminate our engagement at any time by notifying us in writing. Subject to compliance with applicable ethical considerations, under certain circumstances we may also withdraw from our representation of you by notifying you in writing. These circumstances include, but are not limited to, cases where we have good cause for termination, or where our withdrawal may be accomplished without a material adverse effect to your interests, or where you fail to substantially fulfill an obligation to us, including obligations to pay fees and expenses to us as agreed. Upon termination of our representation, you will be obligated to pay us for all services rendered and expenses incurred as of the date of receipt of the letter of termination.



Carthage Area Hospital
November 15, 2010
Page 3

If a fee dispute arises in this matter, you have the right to elect to resolve the dispute through arbitration pursuant to Part 137 of the Rules issued by Administrative Order of the Chief Administrative Judge. A copy of Part 137 is enclosed for your information.

If you have any questions about anything discussed in this letter, please call me.

In closing, our firm is excited about the possibility of providing regular legal counsel to Carthage Area Hospital. We greatly appreciate the opportunity to represent the hospital and look forward to working with you and hospital staff.

Best regards,

GREEN & SEIFTER, ATTORNEYS, PLLC

John L. Valentino
Email: jvalentino@GSLaw.com
Direct Fax: (315) 423-2839

JLV:bah
Enclosures
1479731_1.DOC

Docusign Envelope ID: 23760B2C-EF8C-45DA-BAC8-E21A7ED8E6C4

## FEE SCHEDULE OF PROFESSIONALS

| Professional | 2010 Regular Hourly Rates | Rate for Carthage Area Hospital |
|---|---|---|
| Lowell A. Seifter | $330. | $297. |
| Sharon A. McAuliffe | $285. | $257. |
| Jason C. Centolella | $210. | $189. |
| Christine Woodcock Dettor | $250. | $225. |
| John L. Valentino | $300. | $270. |
| Marjorie A. Pepe, Paralegal | $145. | $131. |

1479748_1.DOC

Docusign Envelope ID: 237E08A9CF80C45DA-BAC8-521A7EP6E6C4



# FEE POLICY

We seek to establish a fair fee for all services provided. This means that the fee must be fair to you and us. We believe that it is important to explain how our fees are determined.

### Basis for Fee

A lawyer's product is not just his or her time. It is also his or her experience, judgment, research, access to the courts, support staff and equipment. Time is simply a relatively efficient way to set a monetary value for those products. Therefore, standard hourly rates are established for each attorney and paralegal in our law firm and are determined by experience and skill. These rates are the primary basis for determining the fee.

All of our rates are reviewed from time to time and are subject to adjustments based upon the increasing experience of the attorneys and various economic factors, including inflation.

In applying our standard hourly rate, we maintain detailed time records. These records show, for example:

- Telephone calls made for or with you;

- Conferences with you or your other representatives;

- Research of legal questions;

- Preparation and review of correspondence, documents and pleadings;

- Planning a resolution of the issues presented by the project and conferring with other attorneys in the firm to test the theories and solutions to the issues;

- Court appearances and related activities;

- Computer research and analysis.

However, additional factors are also considered in determining a fair fee. Fees are established through the exercise of judgment on each individual matter after considering a number of factors, including the time and labor required, the novelty and difficulty of the issues involved, the skill required to perform the legal services properly, time limitations imposed by the client or by the circumstances, the experience, reputation and ability of the attorneys performing services, the amount involved and the results obtained through our services, the likelihood that such employment will preclude other employment, the fee customarily charged in the locality by others for similar services, and the nature and length of our relationship with the client.



# FEE POLICY

Additional premiums may be billed for rush work, complex work by a lawyer within their area of specialized expertise, or for work volume which prevents an attorney from accepting work from other clients.

Generally, our objective of charging a reasonable fee for our services is achieved through maintaining accurate records as to the time spent by each attorney and legal assistant and then billing for that time in accordance with a range of hourly rates we establish based upon the individual attorney's and legal assistant's experience and level of expertise. Fees derived from these calculations may be modified when we take into consideration the factors discussed above.

## Fee Quotations and Estimates

We encourage you to discuss fees with us in advance. We are happy to estimate the costs of a project, if possible. For some projects, the time required is beyond our control, and it may be difficult to provide an estimate in advance or to stay within the estimate provided. In either case, we will seek to keep you informed of the actual time expended, so that together we can manage legal costs for the best overall result.

On some projects we will agree in advance to a fixed fee or a maximum fee.

## Expenses and Disbursements

In addition to providing services to you, our invoices may reflect costs and expenses, advanced by us on your behalf including:

| | |
|---|---|
| Court Costs | Fees of Expert Witnesses |
| Deposition Costs | Long Distance Telephone Calls |
| Filing Fees | Computer Research Costs |
| Travel Expenses | Postage and Express Delivery |
| Messenger Delivery Costs | Fax Charges |
| Photocopying | |

## Invoices for Fees and Expenses

For new clients or large or specialized matters, we generally require a retainer. The retainer will be applied as the services are rendered. If our representation is concluded before the retainer is exhausted, the balance will be refunded. If the retainer is exhausted before our representation is concluded, we generally require that the retainer be restored before rendering further services.

WWW.GSLAW.COM

- 2 -



# FEE POLICY

We usually bill on a monthly basis and payment will be due upon your receipt of our bill. Alternative billing schedules may be arranged. **Amounts not paid within 30 days will incur a monthly finance charge of 1% calculated from the date the bill was rendered (12% annual rate).**

You have the right to terminate our services at any time by giving notice to us. We reserve the same rights for ourselves, provided we satisfy professional ethical standards. Upon any termination, our fees and disbursements are due immediately.

If you ever have a question about our billing procedures or statements, please ask us. We desire to fully address any questions that you may have so that you fully understand these procedures and our statements and are satisfied with them. We want you to be frank with us should you have any concerns.

This policy may be modified from time to time as appropriate.

We accept MasterCard, Visa or American Express credit cards for payment of our fees.

## Personal Financial Information Privacy Notice

Green & Seifter Attorneys, PLLC is committed to protecting the confidentiality of client personal financial information. Like other professionals who render advice on personal financial matters, we are required by a new federal law to inform you of our policies regarding your personal financial information. As attorneys, we consider client confidentiality to be a professional obligation of the utmost importance, and our professional standards of confidentiality are stricter than those imposed by the new law.

In the course of providing professional services to you, we receive non-public personal information, which is used by us to provide services to you, to accurately identify you, and to administer your files and records.

The non-public information we receive from you is held in confidence. We will not disclose any non-public personal information about you to anyone, except as permitted by law. We also maintain physical, electronic, and procedural safeguards to guard your non-public personal information. If you decide to discontinue our professional services or become an inactive client, we will adhere to the privacy policies and practices as described in this notice.

If you have questions about our privacy policy, or would like additional copies of this notice, please visit our web site at WWW.GSLAW.COM, or e-mail us at INFO@GSLAW.COM.