**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

```
_____x
                                           :
In re:                                     :    Chapter 11
                                           :
    NORTH STAR HEALTH ALLIANCE.,           :    Case No. 26-60099 (WAK)
    et al.¹                                :
                                           :    (Jointly Administered)
                                           :
                    Debtors-in-Possession. :
_____x
```

## OBJECTION AND RESERVATION OF RIGHTS OF M&T BANK TO INTERIM AND FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

M&T Bank ("**M&T**") by and through its undersigned counsel, Buchanan Ingersoll & Rooney P.C., hereby files this Objection (this "**Objection**") to the Debtor's *Motion for Interim and Final Orders Authorizing Use of Cash Collateral* [Dkt 13](the "**Cash Collateral Motion**"), filed by the above captioned debtors-in-possession (the "**Debtors**"). In support of this Objection, M&T respectfully states as follows:

### I.   BACKGOUND

1. The Debtors filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code on February 10, 2026 (the "**Petition Date**") in the United States Bankruptcy Court for the Northern District of New York (the "**Court**"), commencing the Debtors' chapter 11 cases (these "**Chapter 11 Cases**").

2. Prior to the Petition Date, M&T made a revolving line of credit (the "**Revolving Line of Credit**") available to Debtor Carthage Area Hospital, Inc. ("**Carthage**") up to a maximum principal amount of Five Hundred Thousand ($500,000.00) as evidenced by that certain

---

¹ The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

loan agreement dated October 31, 2018 made by and between Carthage and M&T (the "**Loan Agreement**") and that certain Promissory Note dated as of October 31, 2018 in the maximum principal amount of Five Hundred Thousand ($500,000.00) made by Carthage Area Hospital, Inc. in favor of M&T (the "**Note**"), pursuant to which Carthage, together with Meadowbrook Terrace, Inc., granted to M&T a security interest in the collateral set forth therein (the "**Security Agreement**").

3. In connection with the Revolving Line of Credit, Carthage Area Hospital executed and delivered to M&T certain other documents, agreements, and instruments relating to the Revolving Line of Credit, (collectively, with the Loan Agreement, the Note, the Security Agreement, the "**Original Loan Documents**").

4. M&T had no advance notice of the filing of the Chapter 11 Cases and was surprised to learn of the filings. Except as may be implied from the filing of the Cash Collateral Motion, M&T is unaware of any request from the Debtors for M&T to consent to the use of its cash collateral.

5. The indebtedness to M&T evidenced by the Loan Documents is secured by a valid, properly perfected lien and security interest covering amounts deposited as of the Petition Date in the operating accounts of Carthage Hospital held at M&T (the "**M&T Cash Collateral**").

## II.  OBJECTION

6. Debtors seeking relief under Chapter 11 of the Bankruptcy Code often need to use their cash and proceeds therefrom in order to continue with their business operations. However, because said cash is usually subject to security interests of pre-petition lenders, debtors-in-possession must obtain court authorization to use "cash collateral." 11 U.S.C. § 363(b).

7. A debtor's right to use cash collateral is constrained by the protection afforded under subsection (e) of section 363. Section 363(e) provides, in pertinent part:

> (e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, *shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest....* (emphasis supplied).

8. In other words, the Court must ensure that if a debtor is entitled to use cash collateral, there is adequate protection of secured creditor's interests "so as to maintain the 'benefit of the bargain' that the secured creditor originally made with the debtors." *In re Dynaco Corp.*, 162 B.R. 389, 393 (Bankr. D.N.H. 1993); *see also United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204 (1983); *In re Best Products Co., Inc.,* 138 B.R. 155, 158 (Bankr. S.D.N.Y. 1992), *aff'd,* 149 B.R. 346 (S.D.N.Y. 1992); *In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003).

9. Section 363(e) is not permissive or discretionary; upon request of a secured party, providing adequate protection is mandatory. *See In re Heatron, Inc.,* 6 B.R. 493, 494 (Bankr. W.D. Mo. 1980) ("Section 363(e) of Title 11, U.S.C. requires the Court, upon 'request of an entity that has an interest in property used' to condition such use so as to provide adequate protection of such interest. Providing adequate protection is mandatory.").

10. What constitutes "adequate protection" must be determined on a case-by case basis, with the purpose being to protect the secured creditor from diminution or decrease in the value of its interest in collateral. *See In re O'Connor,* 808 F.2d 1393, 1396–97 (10th Cir.1987) (citing *In re Martin,* 761 F.2d 472 (8th Cir.1985)); *see also In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgemere Land Corp.*, 116 B.R.

3

338, 343 (Bankr. D. Mass. 1990) (finding that a question of adequate protection should focus on secured lender's entire property interests, not just its interest in cash sought to be used).

11. In other words, if the debtor's proposed protections do not adequately preserve the creditor's interest in the cash collateral as it existed on the petition date, then the creditor is not adequately protected. *In re Carbone Companies, Inc.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008). The Debtor bears the burden of proof on adequate protection. 11 U.S.C. § 363(o)(1).

12. Of concern to M&T is that the Interim Orders entered thus far in this case (collectively, the "**Interim Cash Collateral Orders**") do not adequately protect M&T's secured interest in the Debtor's Cash Collateral. M&T was not provided with any advance notice of the filing of these Chapter 11 Cases, and when the first four (4) Cash Collateral Orders were entered, were still in the process of reviewing the Loan Documents to ascertain the extent of the Debtors' obligations.

13. Prior to the initial hearing on the Cash Collateral Motion, Cash Collateral Secured Creditor Northern Credit Union ("**NCU**") filed an objection to the Motion (the "**NCU Objection**"), raising certain objections to the Debtors' use of NCU's Cash Collateral (the "**NCU Cash Collateral**").

14. On February 13, 2026, the Court entered its *Interim Order Authorizing Use of Cash Collateral* with the consent of NCU [Dkt No. 31] (the "**First Interim Cash Collateral Order**"), which among other things, generally authorized the Debtors to use cash collateral through and including February 18, 2026, subject to compliance with an approved budget and with restrictions and protections provided to NCU.

15. On February 18, 2026, the Court entered its *Second Interim Order Authorizing Use of Cash Collateral* with the consent of NCU [Dkt No. 57] (the "**Second Interim Cash Collateral Order**"), which among other things, authorized the Debtors to use cash collateral through and including February 25, 2026, subject to compliance with an approved budget and with restrictions and protections provided to NCU.

16. On February 26, 2026, the Court entered its *Third Interim Order Authorizing Use of Cash Collateral* with the consent of NCU [Dkt No. 84] (the "**Third Interim Cash Collateral Order**"), which among other things, authorized the Debtors to use cash collateral through and including March 4, 2026, subject to compliance with an approved budget and with restrictions and protections provided to NCU.

17. On March 5, 2026, the Court entered its *Fourth Interim Order Authorizing Use of Cash Collateral* with the consent of NCU [Dkt No. 124] (the "**Fourth Interim Cash Collateral Order**"), which among other things, authorized the Debtors to use cash collateral through and including March 11, 2026, subject to compliance with an approved budget and with restrictions and protections provided to NCU.

18. As noted in the NCU Objection, the Debtors' proposed interim order (and each of the subsequent Interim Cash Collateral Orders) omitted any mention of certain proposed protections in the Cash Collateral Motion, namely "rollover lien[s] to the same extent and validity of their pre-petition interest in the Debtors' assets" and "an allowed superpriority claim pursuant to 11 U.S.C. § 507(b) to the extent of any diminution in the value of each creditor's cash collateral, as applicable." *See* Cash Collateral Motion, p. 2. Each of the Interim Cash Collateral Orders has similarly omitted that language, except with respect to NCU.

19. Thus far, NCU is the only secured creditor receiving such "superpriority claims," and the scope of the so-called "Roll-Over Liens" granted by the Interim Cash Collateral Orders as applied to other Cash Collateral Secured Creditors (including M&T) is limited to "post-petition acquired assets, regardless of the nature of such assets, and to the same extent, validity, and priority" of each creditor's interest in Cash Collateral held on the Petition Date. *See* Fourth Interim Cash Collateral Order, ¶ B & ¶ 5.

20. All four Interim Cash Collateral Orders preserved the right of the Cash Collateral Secured Creditors to "assert that the Debtors may not use Cash Collateral unless the interests of the Secured Creditor are adequately protected." Fourth Interim Cash Collateral Order, ¶ C.

21. According to the budgets submitted with the Cash Collateral Motion, subsequent Interim Cash Collateral Orders, as well as the *Updated Cash Flow Projections* [Dkt 70] (the "**Updated Cash Flow Projections**"), the Debtors collectively projected and have had ongoing material negative cash flow, with the most recent Cash Collateral Order projecting negative cash flow of $3,965,853 for the Debtors collectively. *See* Fourth Interim Cash Collateral Order, p. 10. Moreover, week-to-week, the budgets do not account for certain expenditures, such as professional fees (which have not yet been approved by the Court), adequate assurance payments to utilities, and back pay. *See* First, Second, & Third Interim Cash Collateral Orders. Debtors collectively are projected to have significant negative cash balances at the end of the proposed interim period. *See* Updated Cash Flow Projections.

22. This significant cash burn, coupled with uncertainty regarding future funding and additional anticipated expenses, makes the promise of rollover liens as adequate protection illusory; a narrow "Roll-Over Lien" is insufficient to protect against the risk M&T is taking, especially because the Debtors have repeatedly acknowledged their cash shortfall and have

not appeared to have significant improvements in cash flow. There is no indication by the Debtors that any new cash will be available for any rollover liens to attach to. Absent additional protections in the form of superpriority claims and additional adequate protection liens granted pursuant to section 364(c)(1)-(3), M&T will be exposed to further diminution of the M&T Cash Collateral, if they haven't already.

23. Further, under section 363(c)(4) of the Bankruptcy Code, the debtor must segregate and account for all cash collateral in its "possession, custody, or control." 11 U.S.C. § 364(c)(4). The Cash Collateral Motion acknowledges at least five other lenders in addition to NCU and M&T that may claim a secured interest in the Debtors' Cash Collateral. As noted in the NCU Objection, the budgets attached to the Cash Collateral Motion and subsequent Orders contain "no delineation of the collateral sources funding the proposed expenditures, no allocation of whose cash collateral is being used to fund each debtor entity or line item, and no description of the relative priorities that may exist between and among claimants who may hold competing claims to the same cash collateral." *See* NCU Objection, p. 4-5.

24. Notably, while the first three Interim Cash Collateral Orders included budgets for each of the Debtors, the most recent Interim Cash Collateral Order merely includes a "Consolidating Statement," which does not break down the use of cash collateral by each of the Debtor entities. *See* Fourth Interim Cash Collateral Order, p. 10. This is problematic for precisely the reasons stated in the NCU objection above, and there is no explanation as to why the Debtors are now submitting a consolidated cash flow projection as opposed to the form of the projections for the first three Interim Cash Collateral Orders.

25. In fact, the Fourth Interim Cash Collateral Orders even states that the Debtors "shall deposit all receipts, revenues, and other cash collections into the accounts currently maintained by

7

the Debtors at NCU, except to the extent doing so would be contrary to any established historical practice of the Debtors" *See, e.g.,* Fourth Interim Cash Collateral Order, ¶ 6. M&T Bank is not assured that this vague "historical practice exception" sufficiently protects against potential reallocation or diversion of its Cash Collateral to NCU or other creditors, undermining M&T's secured interest and potentially even subordinating M&T's interest to M&T's disadvantage.

26. M&T sympathizes with the fact that the Debtors are healthcare providers, and that access to cash collateral is necessary to protect the health, safety and welfare of patients in the Debtors' care. However, M&T cannot consent to any further entry of interim orders which fail to provide adequate protection of its interest. The Court cannot allow the Debtors to "risk other people's money" to salvage their own position or the position of one secured creditor. *In re Dynaco Corp.*, 162 B.R. at 395.

### III. CONCLUSION

For the reasons set forth above, M&T respectfully requests that to the extent the Court enters any future Interim Cash Collateral orders, the Court provide for adequate protection of M&T's interest and grant M&T such additional relief as it may be entitled to under the facts and applicable law.

Dated:  March 9, 2026 	Respectfully submitted,

<div style="margin-left:40%">

<u>/s/ Christopher P. Schueller</u>
Christopher P. Schueller
**BUCHANAN INGERSOLL & ROONEY PC**
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone:  (412) 562-8432
Fax:  (412) 562-1041
E-mail: christopher.schueller@bipc.com
*Attorneys for M&T Bank*

</div>