UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099-5-wak |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30078 |
| | | Case No. 26-30079 |
| | | Case No. 26-60100 |

---------------------------------------------------------------------x

**THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS' LIMITED OBJECTION TO THE DEBTORS' MOTION FOR
INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL**

The Official Committee of Unsecured Creditors of North Star Health Alliance, Inc., *et al.* (the "Committee") files this limited objection ("Limited Objection") to the pending *Motion for Interim and Final Orders Authorizing Use of Cash Collateral* [Dkt. No. 13] (the "Motion"), filed by North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook" and together with North Star, Carthage, and Claxton, the "Debtors"). In support of this Limited Objection, the Committee states as follows:

**PRELIMINARY STATEMENT**

1. Fundamentally, the Committee does not object to—and supports—the Debtors' request for permission to use property that may be cash collateral ("Cash Collateral") to fund business operations in connection with these chapter 11 cases. The Committee recognizes that the use of Cash Collateral (or another source of liquidity) is necessary for the Debtors to maintain

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

1

business operations, continue to provide health care services, and achieve a successful outcome to these chapter 11 cases. The Committee supports these goals.

2. However, the Committee recently formed and is in the process of reviewing pending motions, including the terms of the Motion. The Committee had its introductory call with Debtors' counsel yesterday and found the call both collaborative and productive. The Committee's goal is to work with the Debtors so that they may continue to provide health care services to their local communities.

3. At this time, the Committee also objects as a substantive matter to entry of a further interim order containing certain terms of the pending *Fourth Interim Order Authorizing Use of Cash Collateral* [Dkt. No. 124] (the "Fourth Interim Order"). As such, the Committee requests that the Court enter another interim order in a modified form to permit the Committee additional time to consider the Motion and communicate with other parties regarding issues in dispute, which may help to facilitate a consensual resolution on Cash Collateral use.

**Background**

4. On February 10, 2026 (the "Petition Date"), the Debtors commenced their chapter 11 cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court.

5. Also on the Petition Date, the Debtors filed the Motion requesting that the Court authorize the Debtors to use Cash Collateral on an interim and final basis.

6. On February 11, 2026, Northern Credit Union ("NCU") filed the *Objection and Reservation of Rights of Northern Credit Union to Motion for Interim and Final Orders Authorizing Use of Cash Collateral* [Dkt. No 23] (the "NCU Objection").

7. Subsequently, on March 4, 2026, the United States Trustee (the "U.S. Trustee")

2

filed its Appointment of Official Committee of Unsecured Creditors [Dkt. No. 111] (the "Appointment Notice") appointing to the Committee the New York State Nurses Association, AMN Healthcare, Inc., Medline Industries, LP, PeriGen, Inc., and Ovation Healthcare, Inc..

8. On March 5, 2026, the Court entered the Fourth Interim Order, having previously entered orders authorizing the use of Cash Collateral on an interim basis [Dkt. Nos. 31, 57, 84, & 124].

9. The Committee interviewed and selected legal counsel on March 5, 2026, and interviewed and selected a financial advisor on March 6, 2026. The Committee's professionals had their first meeting with the Debtors' professionals on March 9, 2026.

10. That same day (also on March 9, 2026), M&T Bank ("M&T") filed the *Objection and Reservation of Rights of M&T Bank to Interim and Final Order Authorizing Use of Cash Collateral* [Dkt. No. 131] (the "M&T Objection").

11. Pursuant to the Fourth Interim Order, the Court set March 10, 2026, at 12 p.m. (prevailing Eastern Time) as the deadline to object to the Motion (the "Objection Deadline") and March 11, 2026, at 2 p.m. (prevailing Eastern Time), as the time for a further hearing on the Motion (the "Hearing").

12. The Committee expressly reserves the right to supplement this Limited Objection pending the opportunity for further review of the Motion and discussion with the parties.

**LIMITED OBJECTION**

**I.   Granting the Motion on a Final Basis Would Deprive the Committee of the Ability to Fulfill its Statutory Duties; the Court Should Enter Another Interim Order.**

13. The Committee objects to entry of a final order granting the Motion at this time because, for reasons outside the Committee's control (namely the timing of its formation and retention of professionals), the Committee and its counsel have not had an adequate opportunity

3

to review the Motion and confer with other parties. Given the Committee's significant statutory and fiduciary duties, and the pivotal role that Cash Collateral usage will play in these cases, the Committee believes that entry of a further interim order is warranted.

14. The importance of an official committee of unsecured creditors in a chapter 11 case is well-established. *See Matter of Advisory Comm. of Major Funding Corp.*, 109 F.3d 219, 224 (5th Cir. 1997) ("Creditor committees have the responsibility to protect the interest of the creditors; in essence, the function of a creditors' committee is to act as a watchdog on behalf of the larger body of creditors which it represents." (internal quotation omitted)); *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 519 (8th Cir. 2004) (quoting same); *Ritchie Cap. Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 280 (8th Cir. 2015) (quoting same).

15. The Committee is obligated to fulfill the statutory duties as set forth in section 1103 of the Bankruptcy Code. This includes consultation with the Debtors concerning administration of the estate as well as to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan[.]" 11 U.S.C. § 1103(c)(2). The Committee also must "perform such other services as are in the interests of those represented[,]" which includes evaluating and responding to the Motion.

16. As noted, the Committee has not had an adequate opportunity to fulfill its statutory duties with respect to entry of an order granting the Motion on a final basis. Without additional time to diligence (or even obtain copies of) applicable loan documents and understand the Debtors' capital structure, the Committee will not be able to satisfy its statutory duty to investigate whether the terms associated with the use of Cash Collateral are appropriate.

17. Additionally, while the Debtors filed a proposed interim order with the Motion, the

4

terms of a final order are not yet known.  Consequently, the Committee objects to entry of a final order until such time as the terms of such final order and all related documents have been filed on the docket and provided to the parties with adequate notice and an opportunity to be heard.

II. **The Committee Objects to Certain Provisions of the Fourth Interim Order to the Extent Included in a Subsequent Interim Order Authorizing Use of Cash Collateral.**

18. Based on the Committee's review to date, the Committee objects to terms of the Fourth Interim Order and the inclusion of certain terms in an additional interim order for the reason that such terms are not fair and reasonable:

19. *First***, paragraph 3 of the Fourth Interim Order grants NCU too much power over the use of Cash Collateral.**  The Debtors have the right to seek this Court's approval (i) to use Cash Collateral outside the ordinary course of business or (ii) to grant liens in assets of the estates.  Paragraph 3 of the Fourth Interim Order appears to give NCU blocking rights over these decisions.  The Debtors should not face the risk of a contempt remedy for seeking this Court's permission to exercise statutory rights under sections 363 or 364 of the Bankruptcy Code.

20. *Second,* **the Committee should not be prevented from using Cash Collateral to conduct or prosecute a lien investigation or challenge.**  The Committee must investigate the validity, enforceability, perfection, and priority of all alleged liens of the Cash Collateral Secured Creditors' interests in the Debtors' property.  However, paragraph 4 of the Fourth Interim Order prevents the Committee from using Cash Collateral—of **any** of the Cash Collateral Secured Creditors not just NCU—to fulfill this important mandate.  The Committee objects to inclusion of such restrictive language in a further interim or final order.

21. *Third***, the scope of the Roll-Over Liens and the Superpriority Claim must be narrowed.**  The Committee has no objection to the Cash Collateral Secured Creditors being granted replacement liens with the same validity, extent, and priority in property of the same type

in which they held liens as of the Petition Date—provided such replacement liens are limited to the extent of any diminution in value of Cash Collateral.  The Committee also recognizes that the Bankruptcy Code provides for superpriority claims if—and only if—there is a demonstrated need for such relief.  Paragraphs 5 and 7 of the Fourth Interim Order go beyond this.

22.     Paragraph 5 appears to grant new "Roll-Over Liens" in "**all** of the Debtors' post-petition acquired assets, **regardless of the nature of such assets**" subject only to the limit that the Roll-Over Liens be granted "to the same extent, validity and priority of any interest each Cash Collateral Secured Creditor held in Cash Collateral on the Petition Date[.]"  (Emphasis added).  Thus it appears that the Roll-Over Liens will attach to **all** assets of the estates, including avoidance and other causes of action, to the extent of any Collateral Diminution.  Similarly, paragraph 7 not only appears to grant NCU a superpriority claim (which is not necessary because the Bankruptcy Code already provides one, if necessary), but it also provides NCU "a first priority perfected security interest and lien on **all unencumbered assets of the Debtors and their estates**" as well as junior liens in encumbered assets. (Emphasis added).  Notably, neither paragraph 5 nor paragraph 7 limit the Roll-Over Liens, Superpriority Claim, or Cash Collateral Liens to assets of an estate where Collateral Diminution or a failure of adequate protection actually occurs.  This means a Cash Collateral Secured Creditor suffering Collateral Diminution in the assets of Carthage could obtain Roll-Over Liens in the assets of Claxton.

23.     The Committee objects to the scope of these two provisions because they prematurely pledge unencumbered assets, potentially result in cross-debtor collateralization, and exceed the scope of what is reasonable at time when the Debtors are unable to project cash more than a week at a time due to a pending liquidity crisis.  In particular, the Committee objects to

6

pledging avoidance actions or other causes of action (among other forms of property)[2] as these are assets typically preserved for the benefit of general unsecured creditors. *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 244 (3d Cir. 2000) (recovery from avoidance actions provides value for the benefit of a debtor's estate); *Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000) ("When recovery is sought under section 544(b) of the Bankruptcy Code, any recovery is for the benefit of all unsecured creditors"); *In re Tribune Co.*, 464 B.R. 126, 171 (Bankr. D. Del. 2011) (noting that "case law permits all unsecured creditors to benefit from avoidance action recoveries"); 3 Collier on Bankruptcy P 364.06[6] (16th 2024). As a result, "courts do not favor using § 364 to give . . . lenders security interests in the proceeds of avoidance actions[.]" *In re Qualitech Steel Corp.*, 276 F.3d 245, 248 (7th Cir. 2001); *Official Comm. of Unsecured Creditors v. Goold Elecs. Corp.*, 1993 U.S. Dist. LEXIS 14318, at *12 (N.D. Ill. Sept. 22, 1993) (vacating financing order "to the extent that the order assigns to the bank a security interest in the debtor's preference actions").

24. **_Fourth_, the Debtors should not be prevented from modifying cash management practices if in the bests interests of the estates.** Paragraph 6 of the Fourth Interim Order contains another sweeping provision: "the Debtors shall not transfer funds out of deposit accounts held at NCU or pay any Budgeted items from NCU accounts in any manner that is inconsistent with the Debtors' prior established practice or the authorization contained in this

---

[2] For the sake of clarity, the Committee objects to granting Roll-Over Liens or the Cash Collateral Liens in unencumbered assets such as commercial tort claims, causes of action, avoidance actions, or other forms of unencumbered property, such as deposit accounts into which government receivables are initially deposited, as these must be free from the control of any party.

Paragraph 5 also prevents the Debtors from seeking priming liens without NCU's consent. This is an overreach. NCU is free to oppose such a request, but the Debtors should not be subject to an order preventing them from making such a request or subjecting them to the risk of a contempt remedy for doing so.

Order, without the express prior written consent of NCU." The Committee has not yet had the opportunity to investigate the Debtors' prepetition acts and conduct and is not yet aware whether the restrictions in the prior sentence are too great or force the Debtors to maintain cash management practices that are harmful to the estates.

25. ***Fifth*, the proposed stipulations, releases, and waivers regarding NCU should be limited to items that can be diligenced within the scope of a customary lien investigation.** The stipulations, releases, and waivers in paragraph 9 of the Fourth Interim Order provide NCU protection from items that cannot reasonably be diligenced in a customary lien investigation. If an issue cannot be properly diligenced within that scope, it should not be included in the Debtors' stipulations, releases, and waivers, as they unfairly prejudice the Debtors' estates and creditors. By way of example, paragraph 9(c) of the Fourth interim Order grants a waiver by the Debtors and their estates of "claims, counterclaims, causes of action, defenses, or rights" of any kind. This sweeping language runs the risk of depriving the Debtors' estates of the ability to, among other things, assert that the NCU breached its duties to the Debtors under any prepetition contract as part of a defense to payment of the NCU Prepetition Obligations—or to assert other claims. The scope of any stipulations, releases, or waivers must align with investigation rights granted to the Committee in order to protect the estates. In the Committee's view, it would be customary for the investigation to be limited to the enforceability, validity, perfection, and priority of any NCU Prepetition Obligations.

26. ***Sixth*, to the extent the Debtors propose waiving surcharge rights or the equities of the case exception in section 552(b), the Committee objects.** To the extent that paragraph 9(c) of the Fourth Interim Order is intended to include waivers of surcharge rights under section 506(c) and the equities of the case exception under 552(b) of the Bankruptcy Code, the

8

Committee objects, as granting those waivers is inappropriate at this time. Section 506(c) of the Bankruptcy Code allows a debtor to surcharge a lender's collateral for the cost of preserving or disposing of that collateral. 11 U.S.C. § 506(c). The provision ensures that the cost of liquidating a secured lender's collateral is not paid from unsecured creditor recoveries. *See Borrego Springs Bank N.A. v. Skuna River Lumber, L.L.C. (In re Skuna River Lumber, LLC)*, 564 F.3d 353, 355 (5th Cir. 2009) ("the Bankruptcy Code protects unsecured creditors from bearing the costs of liquidating secured creditor's collateral by "allow[ing] administrative expenses to be surcharged against a creditor's collateral"); *see also Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus., Inc.)*, 57 F.3d 321, 325 (3d Cir. 1995) ("section 506(c) is designed to prevent a windfall to the secured creditor"); *Kivitz v. CIT Group/Sales Fin., Inc.*, 272 B.R. 332, 334 (D. Md. 2000) ("the reason for [section 506(c)] is that unsecured creditors should not be required to bear the cost of protecting property that is not theirs"). Similarly, the "equities of the case" exception in section 552(b) of the Bankruptcy Code allows a debtor, committee, or other party-in-interest to exclude post-petition proceeds from pre-petition collateral on equitable grounds, including to avoid having unencumbered assets fund the cost of a secured lender's foreclosure. 11 U.S.C. § 552(b). The waivers of sections 506(c) and 552(b) deprive the Debtors and unsecured creditors of rights provided under the Bankruptcy Code designed to ensure an equitable distribution of estate assets. Waiver of these rights should not be granted absent compelling reasons and certainly not without a reciprocal benefit to the estates.

27. ***Seventh*, the Challenge Period Should be Lengthened.** The Committee requests that it be granted a period of 90 calendar days from entry of a further interim order authorizing use of Cash Collateral to investigate items related to the NCU Prepetition Obligations. The Committee requests that the investigation period be enlarged in light of the Debtors' significant liquidity crisis

9

as this will reduce the likelihood of incurring unnecessary legal fees when the future of these cases remains uncertain. Moreover, the Committee requests that any stipulations, waivers, or releases be suspended or ineffective upon the commencement of a challenge proceeding and that the Committee be granted derivative standing to complete and commence such a challenge.[3]

28. ***Eighth*, a future Budget should include funds for fees incurred by the Committee's professionals.** The Committee is mindful of the Debtors' urgent liquidity crises, but the Committee requires the advice and representation of professionals in order to appear in this Court and fulfill the Committee's statutory duties. The Committee requests that provision be made for its professionals with parity to funds allocated for the Debtors' professionals, including from any prepetition retainers.

29. ***Finally*, the Committee Should Receive Weekly Reporting.** The Committee requests that it be provided projection-to-actual weekly reporting. This information is necessary to permit the Committee to evaluate the Debtors' liquidity and financial constraints in as close to real time as is possible. The Committee understands that the Debtors' updated Cash Collateral budgets contain reconciliations against prior projections. Once the budget periods lengthen, weekly reporting will be needed.

## Reservation of Rights

30. This Limited Objection is preliminary. The Committee's review of the Motion and other relevant information continues. The Committee reserves all of its rights, including the right to supplement or amend this Limited Objection as necessary or appropriate.

## CONCLUSION

Based on the foregoing, the Committee respectfully requests that the Court (A) enter a

---

[3] The Fourth Interim Order is silent on whether bringing a challenge to the NCU Prepetition Claims results in the stipulations, releases, and waivers being suspended or voided.

further interim order to provide the Committee an opportunity to complete its diligence and communicate with other parties, and (B) provide such further and additional relief as the Court deems proper under law and equity.

Dated: March 10, 2026

Respectfully submitted,

*/s/ Lauren M. Macksoud*
Lauren M. Macksoud
Henry Thomas*
**DENTONS US LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-5347
Facsimile: (212) 768-6800
E-mail: lauren.macksoud@dentons.com
      henry.thomas@dentons.com

Andrew C. Helman*
Kyle D. Smith*
**DENTONS BINGHAM GREENEBAUM, LLP**
One City Center
Suite 11100
Portland, ME 04101-6420
Telephone: (207) 810-4955
Email: andrew.helman@dentons.com
      kyle.d.smith@dentons.com

David K. (D.K.) Boydstun, Jr.*
**DENTONS BINGHAM GREENEBAUM, LLP**
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone: (502) 589-4200
Email: david.boydstun@dentons.com

*Proposed Counsel for The Official Committee of Unsecured Creditors*

*\*pro hac vice applications are forthcoming*

## CERTIFICATE OF SERVICE

      I, Lauren Macksoud, an individual eighteen years of age or older, hereby certify that on the date set forth below, I caused the foregoing document to be served on all parties receiving notice and service in this case through the Court's CM/ECF electronic filing service, which served the same on the parties receiving notice via the CM/ECF system.

Dated: March 10, 2026                   */s/ Lauren Macksoud*