**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

---------------------------------------------------------------------- x
In re                                                                  : Chapter 11
                                                                       :
NORTH STAR HEALTH ALLIANCE, INC. *et al*,[1]                           : Case No. 26-60099-5-wak
                                                                       : Main Case
             Debtors.                              : Jointly Administered
                                                                       : Case No. 26-30078
                                                                       : Case No. 26-30079
                                                                       : Case No. 26-60100
---------------------------------------------------------------------- x

### MOTION TO REDACT AND FILE UNDER SEAL CERTAIN PORTIONS OF THE MOTION BY OVATION HEALTHCARE (I) TO COMPEL COMPLIANCE WITH THE OVATION SERVICES AGREEMENTS, (II) FOR RELIEF FROM THE AUTOMATIC STAY, AND (III) TO COMPEL ASSUMPTION OR REJECTION OF THE OVATION SERVICES AGREEMENTS

Ovation Healthcare f/k/a Quorum Health Resources ("Ovation Healthcare"), hereby submit this application (the "Sealing Motion") to this Court for entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a) and 107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing, but not directing, Ovation Healthcare to redact and file under seal certain confidential information (the "Confidential Information") contained in or submitted with the *Motion by Ovation Healthcare (I) To Compel Compliance with the Ovation Services Agreements, (II) For Relief from the Automatic Stay, and (III) To Compel Assumption or Rejection of the Ovation Services Agreements* (the "Motion"). In support of this Sealing Motion, Ovation Healthcare and respectfully states:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

**RELIEF REQUESTED**

1. By this Sealing Motion, Ovation Healthcare respectfully requests entry of an Order authorizing, but not directing, Ovation Healthcare to redact and file commercially sensitive Confidential Information contained in the Motion or submitted in connection therewith.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

3. Venue of these cases and this Sealing Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The legal predicates for the relief requested herein are sections 105(a) and 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018.

**FACTUAL BACKGROUND**

I. **The Chapter 11 Cases**

5. On February 10, 2026 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their affairs as debtors-in-possession.

6. The Debtors' chapter 11 cases are jointly administrated.

II. **Facts Specific to Relief Requested**

7. On or about March 23, 2020, representatives of Ovation Healthcare and Claxton-Hepburn Medical Center executed that certain Operational, Financial, and Strategic Assessment Agreement, effective as of March 23, 2020 (referred to as the "Master Agreement").

8. Following entry of the Master Agreement, Ovation Healthcare and Claxton-Hepburn Medical Center executed two statements of work to the Master

2

Agreement covering revenue cycle services (the "Revenue Cycle Services Agreement") and revenue cycle coding services (the "Coding Services Agreement," and together with the Revenue Cycle Services Agreement and the Master Agreement, the "Ovation Services Agreements").

9. Both before and after the Petition Date, Ovation Healthcare provided services to the Debtors pursuant to the Ovation Services Agreements.

10. Due to the Debtors' failure to pay for post-petition services provided by Ovation Healthcare pursuant to the Ovation Services Agreements, Ovation Healthcare is seeking entry of an order (I) compelling compliance with the Ovation Services Agreements, specifically the payment of amounts owed to Ovation Healthcare for post-petition services, (II) granting relief from the automatic stay to the extent necessary for Ovation Healthcare to terminate the Ovation Services Agreements, and (III) compelling the assumption or rejection of the Ovation Services Agreements (the "Motion").

11. The Motion and the annexed Ovation Services Agreements contain commercial terms negotiated among the parties that would cause commercial disadvantage should they become known.

12. Due to the sensitive and confidential commercial nature of the Confidential Information, Ovation Healthcare is requesting that the Confidential Information be provided on a confidential basis only to (a) this Court, (b) the U.S. Trustee, (c) counsel for the Debtors; and (d) counsel to the Official Committee of Unsecured Creditors on a "professionals'-eyes-only" basis.

**BASIS FOR RELIEF**

13. A bankruptcy court may enter a seal order under the broad confidentiality protections in bankruptcy proceedings where necessary to protect commercial information. The proposed redactions of Confidential Information should

3

remain under seal, because their disclosure would cause Ovation Healthcare and/or the Debtors commercial injury.

14. Specifically, pursuant to Bankruptcy Code sections 105(a) and 107(b), the Court may authorize Ovation Healthcare to file the Confidential Information under seal. Section 107(b) gives bankruptcy courts the power to protect parties in interest from potentially harmful disclosures:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

11 U.S.C. § 107(b)(1). In addition, under section 105(a) of the Bankruptcy Code, bankruptcy courts have the inherent equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

15. Bankruptcy Rule 9018 sets forth the procedure by which a party in interest may obtain a protective order authorizing the filing of a document under seal. Bankruptcy Rule 9018 provides, in relevant part:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . .

Fed. R. Bankr. P. 9018.

16. Section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018 are designed to "protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury." *In re Global Crossing Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (recognizing that the purpose of Bankruptcy

4

Rule 9018 is to "protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury"). In determining whether to grant relief under section 107(b) of the Bankruptcy Code, "[t]he court determines whether the subject documents fall within the provisions of § 107(b) and the appropriate remedy if they do." *In re Barney's, Inc.*, 201 B.R. 703, 707 (Bankr. S.D.N.Y. 1996). If section 107(b) of the Bankruptcy Code applies to the documents in question, "the court is *required* to protect a requesting interested party and has no discretion to deny the application." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis in original); *see also In re Lomas Fin. Corp.*, 1991 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991) (noting the broad scope of the term "commercial information").

        17.     Courts have held that protection under section 107(b) must be granted if the information sought to be protected is "commercial information," and significantly, that "commercial information" need not rise to the level of a trade secret to be entitled to protection. *See Orion Pictures Corp.*, 21 F.3d at 28 (finding that the use of the disjunctive in section 107(b)(1) "neither equates 'trade secret' with 'commercial information' nor requires the latter to reflect the same level of confidentiality as the former"). Further, in contrast with Rule 26(c) of the Federal Rules of Civil Procedure, Bankruptcy Code section 107(b) does not require an entity seeking such protection to demonstrate "good cause." *Id.* Nor does it require a finding of "extraordinary circumstances or compelling need." *Id.* at 27.

        18.     Rather, a party seeking the protection of section 107(b) need only demonstrate that the information is "confidential" and "commercial" in nature. *Id.* at 27; *see also Global Crossing,* 295 B.R. at 725 (recognizing that the purpose of Bankruptcy Rule 9018 is to "protect business entities from disclosure of information that could

reasonably be expected to cause the entity commercial injury"). Once it is established that the subject information qualifies as "commercial information" under section 107(b)(1), the Bankruptcy Code mandates that this information be protected from disclosure. *See id.*

19. Ovation Healthcare respectfully submits that sufficient cause exists here for this Court to grant the relief the requested. The Confidential Information – which is both "confidential" and "commercial" in nature – squarely falls within the ambit of section 107(b) of the Bankruptcy Code. Specifically, the negotiated terms of the Ovation Services Agreements, if disclosed could result in commercial injury, including by allowing current and potential contract counterparties to obtain an unfair advantage in negotiations and by negatively impacting the relationship between the parties to those agreements and their current counterparties. Accordingly, maintaining confidentiality of the highly-sensitive Confidential Information is vitally important.

13. Finally, Ovation Healthcare does not seek to seal the entirely of the Motion and the information submitted therewith, but rather Ovation Healthcare has focused on redacting only truly sensitive commercial information from the Motion and sealing the agreements themselves.[2]

14. For these reasons, Ovation Healthcare respectfully submits that the Court enter an Order, authorizing, but not directing, Ovation Healthcare to redact and file under seal the Confidential Information.

---

[2] As set forth in the Proposed Order, unredacted copies of the Confidential Information shall be provided to this Court, the U.S. Trustee, counsel for the Debtors, and counsel to the Official Committee of Unsecured Creditors on a "professionals'-eyes-only" basis. In this way, the proposed treatment of the Confidential Information is similar to the Debtors' proposed treatment of the critical vendors' index, which the Debtors proposed to be provided to the "upon request to the Office of the United States Trustee for the Northern District of New York and counsel for any official committee of unsecured creditors appointed by the Court." Docket No. 34, ¶ 22.

6

**NOTICE**

20. Notice of this Sealing Motion will be served on (i) counsel for the Debtors; (ii) the Office of the United States Trustee for the Northern District of New York; (iii) counsel for the Official Committee of Unsecured Creditors; (iv) the New York State Department of Health; (v) the Office of the Attorney General for the State of New York; (vi) the Centers for Medicare & Medicaid Services; (vii) the United States Department of Justice; (viii) counsel for Northern Credit Union; and (ix) those persons who have formally appeared and requested service in the above-captioned chapter 11 cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

**NO PRIOR REQUEST**

21. No prior request for relief sought herein has been made by Ovation Healthcare to this or any other court.

**CONCLUSION**

WHEREFORE, Ovation Healthcare respectfully request that the Court enter the Proposed Order, substantially in the form annexed hereto as **Exhibit A**, granting the relief requested in this Sealing Motion and such other and further relief as may be just and proper.

Dated:   March 11, 2026
         New York, New York

TOGUT, SEGAL & SEGAL LLP

*/s/ Frank A. Oswald*
Frank A. Oswald
Minta J. Nester
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000

*Counsel for Ovation Healthcare f/k/a
Quorum Health Resources*

7

## **EXHIBIT A**

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
SYRACUSE DIVISION

---------------------------------------------------------------------- x
In re                                                                                           : Chapter 11
                                                                                                    :
NORTH STAR HEALTH ALLIANCE, INC. *et al*,[1]    : Case No. 26-60099-5-wak
                                                                                                    : Main Case
                Debtors.                                                 : Jointly Administered
                                                                                                    : Case No. 26-30078
                                                                                                    : Case No. 26-30079
                                                                                                    : Case No. 26-60100
---------------------------------------------------------------------- x

**ORDER GRANTING MOTION TO REDACT AND FILE UNDER SEAL
CERTAIN PORTIONS OF THE MOTION BY OVATION HEALTHCARE
(I) TO COMPEL COMPLIANCE WITH THE OVATION SERVICES AGREEMENTS,
(II) FOR RELIEF FROM THE AUTOMATIC STAY, AND (III) TO COMPEL
ASSUMPTION OR REJECTION OF THE OVATION SERVICES AGREEMENTS**

Upon motion (the "Sealing Motion")[2] of the Debtors for an order (this "Sealing Order"), pursuant to sections 105(a) and 107(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the Confidential Information contained in or submitted with the *Motion by Ovation Healthcare (I) To Compel Compliance with the Ovation Services Agreements, (II) For Relief from the Automatic Stay, and (III) To Compel Assumption or Rejection of the Ovation Services Agreements* (the "Motion") to remain under seal; and the Court having jurisdiction to consider the Sealing Motion in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Sealing Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Sealing Motion.

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the legal and factual bases set forth in the Sealing Motion establish just and sufficient cause to grant the relief requested therein; and due and sufficient notice of the Sealing Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Sealing Motion is in the best interest of the Debtors, their estates, their creditors, their stakeholders, and other parties-in-interest; and after due deliberation thereon, and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1. The Sealing Motion is granted to the extent set forth herein.

2. Ovation Healthcare is authorized, but not directed, to file the Confidential Information under seal.

3. The Clerk shall place the unredacted Confidential Information under seal. The unredacted Confidential Information shall remain under seal and remain confidential and shall not be made available to anyone without the consent of the Debtors and Ovation Healthcare; <u>provided</u> that the unredacted copies of the Confidential Information shall be provided to this Court, the U.S. Trustee, counsel for the Debtors, and counsel to the Official Committee of Unsecured Creditors on a "professionals'-eyes-only" basis. The terms and conditions of this Sealing Order shall be immediately effective and enforceable upon its entry.

4. If the Confidential Information is attached to or referenced in any future paper filed in these chapter 11 cases, this Sealing Order shall apply to such paper with respect to the Confidential Information.

5. Ovation Healthcare is authorized and empowered to take all actions necessary to implement the relief granted in this Sealing Order.

6. The original sealed document filed with the Clerk shall be destroyed sixty (60) days following disposition of the chapter 11 cases, unless Ovation Healthcare requests its return in writing.

7. Entry of this Sealing Order is without prejudice to the rights of any party-in-interest or the U.S. Trustee to seek to make public any redacted portion of the Confidential Information.

8. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Sealing Order.