UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
SYRACUSE DIVISION

Hearing Date:  May 13, 2026
Hearing Time:  10:00 a.m. (EST)
Hearing Location: Syracuse, NY

------------------------------------------------------------------------x
:
In re                                                                    :
:
NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1]        :
:
Debtors.        :
:
------------------------------------------------------------------------x

Chapter 11

Case No. 26-60099
Main Case
Joint Administration Requested

## DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER (I) EXTENDING THE TIME TO FILE (A) SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS AND (B) RULE 2015.3 FINANCIAL REPORTS AND (II) GRANTING CERTAIN RELATED RELIEF

North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby submit their second motion (this "Second Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 521 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), Rules 1007, 2015.3, and 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) extending the (i) deadline by which the Debtors must file schedules of assets and liabilities and statements of financial affairs (the "Schedules and Statements") by an additional 30 days, through and including May 10, 2026 (the "Schedules and Statements Deadline"), without prejudice to the Debtors' ability to request additional extensions and (ii) the deadline by which the Debtors must file their initial reports of financial information with respect to entities in which the Debtors hold a

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

1

controlling or substantial interest as set forth in Bankruptcy Rule 2015.3(d) (the "2015.3 Reports")
also to May 10, 2026 (the "2015.3 Reports Deadline"), without prejudice to the Debtors' ability to
request additional extensions, and (b) granting certain related relief.  In further support of the
Second Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.      The Court has jurisdiction to consider this Second Motion pursuant to 28 U.S.C.
§§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper
in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a) and 521
of the Bankruptcy Code and Bankruptcy Rules 1007, 2015.3, and 9006(b).  The Debtors consent
to the entry of a final order or judgment by the Court in connection with this Second Motion to the
extent it is later determined that the Court, absent consent of the parties, cannot enter final orders
or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### A. The Chapter 11 Cases

3.      On February 10, 2026 (the "Petition Date"), the Debtors commenced their chapter
11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the
Bankruptcy Code.  The Debtors are continuing in possession of their properties and are operating
and managing their businesses, as debtors-in-possession, pursuant to Sections 1107(a) and 1108
of the Bankruptcy Code.

4.      No request for the appointment of a trustee or examiner has been made in these
Chapter 11 Cases.

5.     By Notice of Appointment dated March 4, 2026, the Office of the United States Trustee ("U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").

6.     By Notice of Appointment dated March 12, 2026, the U.S. Trustee appointed Suzanne Koenig as the Patient Care Ombudsman (the "PCO").

**B. The Debtors' Business**

7.     North Star Health Alliance, Inc. was established in September 1993 and incorporated in the State of New York as a not-for-profit corporation.  North Star is the umbrella organization within which Carthage, Claxton, Meadowbrook, and related affiliates coordinate governance, strategy, and shared services under what is referred to as the Transformation Plan.[2] North Star is a passive parent entity that does not itself exercise financial control over each member organization; rather, it serves as a platform for alignment and operational integration, including shared leadership and centralized administrative functions (*e.g.*, finance, human resources, information technology, compliance, revenue cycle coordination, and cash planning) that are critical to sustaining rural healthcare delivery across multiple campuses. The North Star system as a whole employs approximately 1,475 employees.

8.     Carthage was established in November 1921 and incorporated in the state of New York as a not-for-profit corporation.  As noted, pursuant to the Transformation Plan, Carthage operates two 25-bed Critical Access Hospitals in Carthage and Ogdensburg, New York serving a

---

[2] Beginning in or about August 2022, North Star pursued a complex transition (the "Transformation Plan") designed to preserve access to acute care and behavioral health services in the North Country while addressing Claxton's unsustainable legacy cost and reimbursement structure as a Sole Community Hospital. The Transformation Plan involved coordinated planning among North Star member organizations, engagement with DOH and OMH, and stepwise regulatory actions. On October 23, 2024, DOH and OMH issued operating certificates that reorganized Claxton into two distinct hospital entities: (i) a standalone inpatient psychiatric hospital (CHMC) and (ii) a separate acute-care campus operated by Carthage under a shared operating certificate (the Claxton Campus).

3

large, rural tri-county area.  Specifically, Carthage holds a New York State Department of Health operating certificate (No. 2238700C; Facility ID/PFI 379 & Facility ID/PFI 15684) for primary care hospital-critical access hospital services located at 1001 West Street, Carthage, New York 13619 and 214 King Street, Suite A, Ogdensburg, New York 13669 (the "Claxton Campus").[3] While the New York State Department of Health ("DOH") issued the operating certificate reflecting this configuration, Centers for Medicare & Medicaid Services ("CMS") processes to recognize and operationalize the Claxton Campus as a critical access hospital (including surveys, enrollment steps, and related notifications) have involved additional steps and timing considerations.

9.      Claxton-Hepburn Medical Center, Inc. was established in December 1916 and incorporated in January 1917 in the state of New York as a not-for-profit corporation.  Following the implementation of the Transformation Plan, Claxton now operates exclusively as a standalone Article 31 Inpatient Psychiatric Hospital licensed by the New York State Office of Mental Health under Operating Certificate No. 8231002, located at 214 King Street, Suite B, Ogdensburg, New York 13669.  Claxton provides acute inpatient behavioral health services for adults (28 beds) and children/adolescents (12 beds), including the region's only acute inpatient unit dedicated to children and adolescents.  Claxton also leads the Pathways to Recovery Peer Coaching program and has been planning to establish the region's first Comprehensive Psychiatric Emergency Program.

10.     Meadowbrook Terrace, Inc. was established in December 2011 and incorporated in the state of New York as a not-for-profit corporation.  Meadowbrook is a 60-bed assisted living facility (58 ALP beds and 2 Adult Home) that provides assisted living services for seniors in the

---

[3] The Claxton Campus is the designated "9.39" hospital for the area and is the former acute-care component of Claxton that is now operated by Carthage under a shared operating certificate as part of the Transformation Plan.

North Country region. Meadowbrook is a key part of the Debtors' care continuum for elderly and medically fragile patients, supporting safe discharge planning and community-based care.

11.     Through the bankruptcy proceedings, the Debtors intend to continue to fulfill their mission by operating their facilities to deliver quality health care in their communities.

## RELIEF REQUESTED

12.     By this Second Motion, the Debtors request entry of the Order substantially in the form attached hereto as Exhibit A, (a) further extending (i) the deadline by which the Debtors must file their Schedules and Statements to the Schedules and Statements Deadline, without prejudice to the Debtors' ability to request additional extensions and (ii) the deadline by which the Debtors must file their 2015.3 Reports to the 2015.3 Report Deadline, without prejudice to the Debtors' ability to request additional extensions, and (b) granting certain related relief.

## BASIS FOR RELIEF

**I.      Cause Exists to Further Extend the Deadline to File the Schedules and Statements.**

13.     Pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, a debtor is required to file Schedules and Statements within 14 days after the petition date unless the bankruptcy court orders otherwise.  Under Local Rule 1007-1(b), the deadline for filing Schedules and Statements is automatically extended to the date that is 14 days from the petition date if (a) the debtor's bankruptcy petition is accompanied by a list of all the debtor's creditors in the debtor's case in accordance with Local Rule 1007-2 and (b) the total number of creditors in the debtor's case, and any cases jointly administered therewith, exceeds 200.

14.     Here, the Debtors filed petitions indicating that they have, on a consolidated basis, between approximately 2,002 and 10,100 creditors in these Chapter 11 Cases.  Additionally, the Debtors filed the *Motion for an Order (I) Waiving the Requirement that Each Debtor File a List*

*of Creditors and Authorizing Preparation of a Consolidated List of Creditors in Lieu of Submitting a Formatted Mailing Matrix, (ii) Authorizing the Debtors to Redact and File Under Seal Certain Personally Identifiable Information on the Consolidated Creditors List* (the "Consolidation Motion"), pursuant to which the Debtors requested a modification of the deadline to file a consolidated list of their creditors.

15.     On February 11, 2026, the Debtors filed their first *Motion for Entry of an Order (I) Extending the Time to File (A) Schedules of Assets and Liabilities and Statements of Financial Affairs and (B) Rule 2015.3 Financial Reports and (II) Granting Certain Related Relief* [Docket No. 13] (the "First Motion").

16.     The Consolidation Motion was granted on an interim basis by the Court by Order dated February 12, 2026 [Docket No. 26] and on a final basis by Order dated February 18, 2026 [Docket No. 56].

17.     The First Motion was granted by Order dated February 12, 2026 [Docket No. 27] which extended the deadline for filing the Debtors' (i) schedules and statements until April 10, 2026, and (ii) reports of financial information pursuant to Bankruptcy Rule 2015.3(d) (the "2015.3 Reports") until 30 days after the initial date of the meeting of creditors pursuant to section 341 of the Bankruptcy Code, or April 19, 2026.[4]

18.     The Court also has authority to grant an additional extension "for cause" pursuant to Bankruptcy Rule 1007(c). Furthermore, section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court, empowers courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. 105.

---

[4] The initial date of the meeting of creditors took place on March 20, 2026 and was adjourned to a date after the Debtors filed their Schedules and Statements.

19.     The Debtors submit that, in light of the facts and circumstances surrounding these Chapter 11 Cases, the Court has authority to extend the deadline to file the Debtors' Schedules and Statements.

20.     First, the Debtors have thousands of creditors and other parties-in-interest.  To prepare their Schedules and Statements, the Debtors must compile a significant amount of financial information from books, records, and documents relating to their assets, contracts, vendors, insurance companies, employees, and patients.  This information is voluminous, and assembling the necessary information requires a significant expenditure of time and effort on the part of the Debtors, their employees and their advisors, the difficulty of which is compounded as access to the information necessary to prepare the Schedules and Statements has been hampered by the events preceding the commencement of these Chapter 11 Cases.

21.     The magnitude of that task, when taken together with the Debtors' transition into chapter 11 and the transfer from one financial and restructuring advisor to another, supports an additional extension of the deadline set forth in the Bankruptcy Code and the Bankruptcy Rules for filing the Schedules and Statements.  Moreover, the relief requested herein will not prejudice or adversely affect the rights of the Debtors' creditors or other parties-in-interest.  Rather, the extension requested herein will aid the Debtors' efforts to ensure the accuracy and completeness of the Schedules and Statements, which in turn will promote efficient administration of these Chapter 11 Cases.  Furthermore, no bar date for filing of proofs of claim has been set yet in these Chapter 11 Case.

22.     Second, the Debtors retained, in the ordinary course of their business, an interim chief executive officer, Andrew Manzer, and, subject to the Court's approval of the Debtors' retention application, a new financial advisor, Accordion Partners, LLC,  on March 3, 2026 and

March 23, 2026, respectively.   It cannot be overstated how critical the services of Mr Manzer and Accordion are to the Debtors' operations and their compliance with bankruptcy reporting requirements, including the preparation of the Schedules and Statements.  While Mr. Manzer and the Accordion team have hit the ground running, additional time is required to ensure that the Schedules and Statements are completed as accurately as possible.

23.      Bankruptcy courts have routinely granted relief similar to the relief requested herein. *See, e.g., In re Cred Inc.*, No. 20-12836 (JTD) (Dec. 21, 2020), D.I. 262 (extending the time to file schedules and statements until 61 days after the petition date, without prejudice to seek further extensions of time); *In re Mallinckrodt PLC*, No. 20-12522 (JTD) (Nov. 10, 2020), D.I. 461 (extending time to file schedules and statements to 73 days from the petition date); *In re Global Eagle Entertainment, Inc.*, No. 20-11835 (JTD) (July 27, 2020), D.I. 229 (extending time to file schedules and statements to 53 days from the petition date); *In re Southcross Energy Partners, L.P.*, No. 19-10702 (MFW) (May 3, 2019), D.I. 182 (granting debtors a total of 73 days from the petition date to file their schedules and statements).

**II.      Cause Exists to Further Extend the Deadline to File the 2015.3 Reports.**

24.      Pursuant to Bankruptcy Rule 2015.3(b), a chapter 11 debtor must file, no later than seven (7) days before the date set for the 341 Meeting and no less than every six months thereafter, periodic financial reports of the value, operations and profitability of each entity that is not a publicly traded corporation or a debtor in the chapter 11 cases, and in which the estate holds a substantial or controlling interest.  The Court has authority to grant an additional extension "for cause" pursuant to Bankruptcy Rule 9006(b).  Pursuant to Bankruptcy Rule 2015.3(d), the Court has authority to modify the reporting requirements, after notice and a hearing, for cause, including that the debtor is "not able, after a good faith effort, to comply with these reporting requirements."

25.     Cause exists to extend the deadline for filing the 2015.3 Reports, if applicable, because the Debtors are still determining, with the assistance of Mr. Manzer, Accordion and counsel, whether any of the Debtors hold interests in non-Debtor subsidiaries that fall under the requirements of Rule 2015.3 and thus would be required to file 2015.3 Reports.  The size, complexity, and scope of the Debtors' businesses require additional time to determine whether the filing of 2015.3 Reports is necessary and, accordingly, cause exists to further extend the deadline because burdens imposed by complying with Bankruptcy Rule 2015.3 in the early days of these Chapter 11 Cases are substantial.  The Debtors are not in a position to complete their initial 2015.3 Reports, if applicable, within the time required.

26.     Extending the deadline to file their initial 2015.3 Reports will also enable the Debtors, if applicable, to work with their advisors and the Office of the U.S. Trustee to determine the appropriate nature and scope of the reports and any proposed modifications to the reporting requirements established by Bankruptcy Rule 2015.3, obviating the need for subsequent amendments to the 2015.3 Reports.  Accordingly, the Debtors respectfully request that the Court grant an additional extension of the time by which the Debtors must file their initial 2015.3 Reports, if applicable, to the 2015.3 Reports Deadline.

27.     Bankruptcy courts have routinely granted relief similar to the relief requested herein.  *See, e.g.*, *In re Phoenix Servs. Topco, LLC*, No. 22-10906 (MFW) (Nov. 10, 2022), D.I. 250 (extending time to file 2015.3 Reports to 62 days from the petition date); *In re EHT US], Inc.*, No. 21-10036 (CSS) (Mar. 10, 2021), D.I. 350 (extending time to file Rule 2015.3 Reports to 60 days from the petition date); *In re Global Eagle Entertainment, Inc.*, No. 20-11835 (JTD) (Aug. 18, 2020), D.I. 232 (extending time to file 2015.3 Report to 58 days from the petition date).

28. In sum, the Debtors submit that cause exists to approve the Schedules and Statements Deadline and the 2015.3 Reports Deadline.

## NOTICE

29. No trustee or examiner has been appointed in these Chapter 11 Cases. Notice of this Second Motion will be provided to: (a) the U.S. Trustee; (b) counsel for the Committee; (c) the New York State Department of Health; and (d) any persons that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## NO PRIOR REQUEST

30. No prior motion for the relief requested herein, other than the First Motion referenced above, has been made to this or any other Court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: April 9, 2026
New York, New York

**BARCLAY DAMON LLP**
*Proposed Counsel for Debtors and Debtors-In-Possession*

By: /s/Janice B. Grubin
Janice B. Grubin
Ilan Markus (admitted *pro hac vice*)
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Telephone: (212) 784-5800
jgrubin@barclaydamon.com
imarkus@barclaydamon.com

## EXHIBIT A

**Proposed Order**

1