UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re:

Chapter 11

NORTHSTAR HEALTH ALLIANCE, INC. *ET AL,*

                              Debtors.

Case No. 26-60099-5-wak
Main Case
Jointly Administered
Case No. 26-30078
Case No. 26-30079
Case No. 26-60100

### REPLY ON REQUEST
### FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES
### TO WILLIAM FIPPS AND BRANDON BOWLINE

To:  Hon. Wendy A. Kinsella, United States Bankruptcy Judge:

William R. Fipps and Brandon Bowline ("Employees") for their reply on their request for the allowance of administrative expenses in conjunction with the rejection of their employment contracts respectfully show:

1.       Employees reply to the joint submission by the Debtors and Committee (the "Opposing Parties") to Employees' response to the motion to reject their employment contracts and requesting the allowance of severance pay because of the rejection of their contracts.

**Employees' Position on the Debtors' Motion**

2.       Employees' position is that the motion to reject their employment contracts is governed by the exercise of Debtors' business discretion. Paragraph 24 of Employees' responses states that position. Employees state in the same paragraph that they do not intend to debate the Debtors' exercise of their business discretion and wish Debtors well in their future endeavors.  The Opposing Parties seem to overlook that point.

3.       Employees' position is that a claim arising out of post-petition services arising due to the Debtors' rejection of their employment contracts and arising out of Employees' post-petition services is

properly heard with and in conjunction a hearing on the rejection of their employment contracts so the Court is fully advised of the effect of the motion the Court has been asked to consider. Employees do not know how the Court will rule if the Court knows that approval of the motion may entail locking the Debtors into the expenses of administration claimed by Employees. Likewise, Employees seek to put other parties in interest on notice of their claimed administrative expenses so that no one reasonably can claim they were misled or unaware of the possible consequences of Debtors' motion. Employees seek to preclude any claim by any party at any later stage of the case that the issues should have been raised at the time of the Debtors' motion. Employees' response to Debtors' motion and request for allowance of their demands pursuant to 11 USC 503(b)(1) puts these matters before the Court and parties in interest.

4.    The Debtor's motion requires an exercise of discretion. Employees placed matters before the Court which could bear on the exercise of the Court's discretion.

5.    The Opposing Parties' submission does not challenge the essential correctness of Employees' explanation of the totality of the surrounding circumstances, including, but not limited to, the Employees' contractual duties, the extraordinary efforts beyond their ordinary contractual duties imposed on them without their consent by the filing of Debtors' petition and Employees' success in keeping health care entities operating with adequate safety during a period of great stress and turmoil among Debtors' 1,700+ employees as of the petition date, that Employees' contractual compensation levels are below average for similar health care positions, their freedom from responsibility for Debtors' financial difficulties, the apparent attempt to have Employees involuntarily assist in financing Debtors' ongoing operations without a hint of protection for the credit they would be forced to provide without payment, any claim of inadequate funds to pay the Employees' administrative expense claims, or any other matter discussed in Employees' response and claim.

**The Opposing Parties' Arguments Are Insufficient To Defeat Employees' Requests
For Allowance And Payment Of Administrative Expense**

6.    The Opposing Parties opposition appears to fall into two categories.  The Opposing Parties make comments about the relevant law.   The Opposing Parties also claim that the compensation demanded is not documented, although the employment contracts are attached to Employees submission.

7.    The Opposing Parties legal contentions are incorrect.   Section 507(a)(2) and 503()(1) provide for payment of expenses of administration in a case.  These cases seem unlikely to include any domestic support claims domestic within sec. 507(a)(1), thus making any claim within the scope of sec. 503(b)(1) an unsecured claim of the highest priority in these cases.  Sec. 503(b)(1) includes claims for actual, necessary costs and expenses of preserving the estate incurred after the petition date including salaries.  Employees' request for payment are for their personal work and services rendered to the Debtors after the Debtors' petition.   The Opposing Parties omit any claim that the Employees did not render services to Debtors as salaried employees.  The Opposing Parties omit any claim as to the value of the Employees' services, that Employees' post-petition services had a value more than the agreed periodic compensation, that Employees were successful in maintaining a functioning health care facility with adequate staffing and supplies during the turmoil and dislocation following any Chapter 11 filing.  The Court can take notice that the start of any Chapter 11 case is fraught with difficulties in the best of circumstances.

8.    The Employees' contracts at ¶6 provide for termination under several alternatives including voluntary resignation by the employee with 120 days-notice, the employee's death, disability, cause, or termination without cause.  Termination under the different alternatives lead to different consequences as specified in ¶6.  The specified terms are effective only upon termination and do not depend upon prior service of any specified duration, any contribution to Debtors by the employee, or any other limitation (except to the extent that under the death and disability alternatives pre-existing benefits

and earnings are accelerated or continued.)  No advance notice is required for termination without cause.

But the absence of an advance notice requirement is balanced by the employer paying four months of

severance pay plus unemployment benefits and doing so without delay or debate.  Employees earned the

right to severance only when Debtors determined in their sole discretion to dispense with Employees'

ongoing services and not any earlier.  The same termination terms applied if an employee working under

the Debtors' form of contract worked a day or a decade.

9.    The Opposing Parties and Employees have differing ideas about the applicable law

governing courts in the Second Circuit.  Employees cited In Re Bethlehem Steel Corp., 479 F3d 167 (2nd Cir.

2007) as specifying the applicable law.  In that case the Court explained:

> In determining whether a payment incident to termination is entitled to priority as an administrative expense, the key inquiry is whether it represents a new benefit earned at termination or an acceleration of a benefit the employee earned over the course of his or her employment. *See Straus-Duparquet*, 386 F.2d at 650 at 103.  Regardless of when the debtor-in-possession becomes obliged to make the payment, it can only be an administrative expense if the debtor received the consideration for the obligation after the commencement of bankruptcy proceedings. (cite omitted)

479 F3d a 172-173.  The Court further stated:

> We explained that severance payments are
>
> > A form of compensation for the termination of the employment relation, for reasons other than the displaced employees' misconduct, primarily to alleviate the consequent need for economic readjustment but also to recompense (them) for certain losses attributable to the dismissal.
>
> *Id.* at 651 (internal quotation marks omitted).  The severance payment at issue in *Straus-Duparquet* did not accrue day to day over the course of employment, but rather was triggered by termination, and as such it represented a new benefit payable because of termination rather than one that would be 'payable under any circumstances.' *Id.* Because this new benefit was incurred 'as an incident of the administration of the bankrupt's estate,' it was an administrative expense and 'entitled to priority as such an expense.' *Id.*

479 F3d at 173.  The Court went on to further explain that severance pay compensated the terminated

employee ". . . for the hardships associated with termination [which] are understood to have been earned

by the employees by their termination." 479 F3d a6 173.

10.    The Opposing Parties' response to Employees citation of law was correct but wholly insufficient.   The Bethlehem Steel employee's efforts to obtain administrative expense priority and payment of retirement benefits earned over the course of a lengthy prepetition employment relationship which became payable upon termination failed.  The Court made the points quoted above in distinguishing In Re McFarlin's, 789 F2d 98 (2nd Cir. 1986) (finding a union's multiemployer withdrawal liability tied to a history of employment benefits earned by services at multiple employers over lengthy periods to not be entitled to an priority).  While the Opposing Parties observation was literally correct, it was not relevant to the facts and circumstances surrounding the Employees' request for allowance of their claim for severance pay based upon a post-petition termination without notice after rendering highly valuable services to Debtors.

### Employees Document The Computation Of Their Claims

11.    The Employees' claims for severance are documented in Exhibit A for Mr. Fipps and Exhibit B for Mr. Bowline.

Wherefore Employees request the Court exercise its discretion on the Debtors' motion and grant Employees request for allowance of their expenses of administration as set forth in Exhibits A and B annexed and for such other and further relief as to the Court seem just and proper.

Dated:  April 13, 2026

Lacy Katzen LLP
David D. MacKnight, Esq of counsel
Attorneys for Employees
600 Bausch & Lomb Place
Rochester, New York 14604
Tele:  585-454-5650