| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** | **Hearing Date/Time: May 13, 2026, 10:00 a.m.** |
| **NORTHERN DISTRICT OF NEW YORK** | **Hearing Location:  Syracuse, NY** |
| **SYRACUSE DIVISION** | **Opposition Due: May 6, 2026** |

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099-5-wak |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30078 |
| | : | Case No. 26-30079 |
| | : | Case No. 26-60100 |

------------------------------------------------------------------x

### DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS

North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage" or "CAH"), Claxton-Hepburn Medical Center, Inc. ("Claxton" or "CHMC"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"),[2] hereby move (the "Motion") this Court (as defined herein) for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, granting the relief described below and represent as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. Consideration of this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

[2] The Debtors' non-debtor affiliates (individually each a "Non-debtor Affiliate" or, collectively, the "Non-debtor Affiliates") consist of:  (1) Claxton-Hepburn, P.C. ("CHPC"), (2) North Country Orthopaedic Group PC ("NCOG"), (3) North Country Realty, LLC ("NCR"), (4)  Comprehensive Women's Health Services, PLLC, (5) the Claxton-Hepburn Medical Center Foundation, Inc., (6) the Carthage Area Hospital Foundation, Inc., (7) the Claxton-Hepburn Medical Center Auxiliary, (8) the Carthage Area Hospital Auxiliary, (9) Claxton Medical PC, (10) Claxton-Hepburn Medical Campus, and (11) North Country Orthopaedic Ambulatory Surgical Center, LLC.

1

2.     The statutory predicates for the relief requested herein are Bankruptcy Code sections 105 and 365 and Bankruptcy Rule 6006.

## BACKGROUND

### A.     The Chapter 11 Cases

3.     On February 10, 2026 (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in possession of their properties and are operating and managing their health care businesses, as debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.     No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

5.     By Notice of Appointment dated March 4, 2026, the Office of the United States Trustee ("UST") appointed an official committee of unsecured creditors (the "Committee").

6.     By Notice of Appointment dated March 12, 2026, the UST appointed Suzanne Koenig as the Patient Care Ombudsman (the "PCO").

### B.     The Debtors' Corporate Structure and Operations

7.     North Star Health Alliance, Inc. was established in September 1993 and incorporated in the State of New York as a not-for-profit corporation.  North Star is the umbrella organization within which Carthage, Claxton, Meadowbrook and related affiliates coordinate governance, strategy, and shared services under what is referred to as the Transformation Plan.[3]

---

[3] Beginning in or about August 2022, North Star pursued a complex transition (the "Transformation Plan") designed to preserve access to acute care and behavioral health services in the North Country while addressing Claxton's unsustainable legacy cost and reimbursement structure as a Sole Community Hospital. The Transformation Plan involved coordinated planning among North Star member organizations, engagement with DOH and OMH, and stepwise regulatory actions. On October 23, 2024, DOH and OMH issued operating certificates that reorganized Claxton into two distinct hospital entities:  (i) a standalone inpatient psychiatric hospital (CHMC) and (ii) a separate

2

North Star is a passive parent entity that does not itself exercise financial control over each member organization; rather, it serves as a platform for alignment and operational integration, including shared leadership and centralized administrative functions (*e.g.*, finance, human resources, information technology, compliance, revenue cycle coordination, and cash planning) that are critical to sustaining rural healthcare delivery across multiple campuses. The North Star system, as a whole, employs approximately 1,475 employees.

8. Carthage was established in November 1921 and incorporated in the state of New York as a not-for-profit corporation. Carthage operates a 25-bed Critical Access Hospital in each of Carthage, New York and Ogdensburg, New York, serving a large, rural tri-county area. Carthage holds a New York State Department of Health ("DOH") operating certificate (No. 2238700C; Facility ID/PFI 379 & Facility ID/PFI 15684) for primary care hospital-critical access hospital services located at 1001 West Street, Carthage, New York 13619, and 214 King Street, Suite A, Ogdensburg, New York 13669 (the "Claxton Campus"). ). The Claxton Campus is the designated "9.39" hospital for the area and is the former acute-care component of Claxton that Carthage now operates. as part of the Transformation Plan. While the DOH issued the operating certificate reflecting this configuration, Centers for Medicare & Medicaid Services ("CMS") processes to recognize and operationalize the Claxton Campus as a critical access hospital (including surveys, enrollment steps, and related notifications) have involved additional steps and timing considerations.

9. Claxton-Hepburn Medical Center, Inc. was established in December 1916 and incorporated in January 1917 in the state of New York as a not-for-profit corporation. Following the implementation of the Transformation Plan, Claxton now operates exclusively as a standalone

---

acute-care campus operated by Carthage under a shared operating certificate (the Claxton Campus).

Article 31 Inpatient Psychiatric Hospital licensed by the New York State Office of Mental Health under Operating Certificate No. 8231002, located at 214 King Street, Suite B, Ogdensburg, New York 13669.  Claxton provides acute inpatient behavioral health services for adults (28 beds) and children/adolescents (12 beds), including the region's only acute inpatient unit dedicated to children and adolescents.  Claxton also leads the Pathways to Recovery Peer Coaching program and has been planning to establish the region's first Comprehensive Psychiatric Emergency Program.

10.    Meadowbrook Terrace, Inc. was established in December 2011 and incorporated in the state of New York as a not-for-profit corporation.  Meadowbrook is a 60-bed assisted living facility (58 ALP beds and 2 Adult Home) that provides assisted living services for seniors in the North Country region. Meadowbrook is a key part of the Debtors' care continuum for elderly and medically fragile patients, supporting safe discharge planning and community-based care.

11.    Through these bankruptcy proceedings, the Debtors intend to continue to fulfill their mission by operating their facilities to deliver quality health care in their communities.

## **RELIEF REQUESTED**

12.    By this Motion, and pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, Bankruptcy Rule 6006 and Local Rule 6006-1, the Debtors seek entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, authorizing them to reject certain executory contracts identified in **Exhibit B** hereto and described herein (the "Contracts"), effective as of the date of termination of employment for employment contracts and the date of the filing of the Motion – March 2, 2026 – for the listed contracts with non-individuals.  Specifically, the Debtors seek to reject all employment, consultancy, and advisory agreements of any kind with the below referenced employees and contract parties, whether oral or written, implied, in-effect, or expired.

4

13.     As part of their reorganization, the Debtors are in the process of identifying which of their contractual relationships are no longer necessary or beneficial, including those related to the Debtors' employees in facilities being reorganized.

14.     As a result of the foregoing, and in consultation with their advisors, the Debtors determined that the Contracts are not necessary and have little or no value to the Debtors' estates, especially when weighed against the costs of the Contracts.  Accordingly, the Debtors seek to eliminate the costs and obligations associated therewith.  The requested relief will allow for rejection of the Contracts and elimination of burdensome and unnecessary obligations related thereto,  as of the date of this Motion, as opposed to waiting until the Motion is granted, or a plan is confirmed.

15.     The Contracts sought to be rejected hereby pertain to certain executive level employees of the Debtors and one hospital financing advisor, as follows:

A.  <u>Rachel May Zysk, Esq.</u> – Until her employment was terminated on April 1, 2026, Ms. Zysk was employed by the Debtor CAH as General Counsel, until pursuant to the terms of a written employment agreement ("<u>Zysk Employment Agreement</u>") dated September 15, 2022.  The Zysk Employment Agreement included an initial term continuing through December 31, 2024 and thereafter continuing for successive terms of twelve (12) months unless a notice of intention not to renew is provided at least one hundred twenty (120) days prior to the expiration of any term.  The Zysk Employment Agreement is terminable during any term under certain circumstances, subject to various rights and obligations of the parties, as set forth in the agreement.

B.  <u>Lydia Kirschman, NP</u> – Until her employment was terminated on April 3, 2026, Ms. Kirschman was employed by the Debtor CAH as a nurse practitioner, pursuant to the terms of a written employment agreement ("<u>Kirschman Employment Agreement</u>") dated July 9, 2023.  The Kirschman Employment Agreement included an initial three (3) year term and thereafter continuing for successive terms of twelve (12) months unless a notice of intention not to renew is provided at least ninety (90) days prior to the expiration of any term.  The Kirschman Employment Agreement is terminable during any term under certain circumstances, subject to various rights and obligations of the parties, as set forth in the agreement.

C.  Walter Dodard, D.O. – Until his employment was terminated on April 10, 2026, Dr. Dodard was employed by the Debtor CAH to provide professional medical services, pursuant to the terms of a written employment agreement ("Dodard Employment Agreement") dated October 1, 2018.  The Dodard Employment Agreement included an initial term continuing through September 30, 2023 and thereafter continuing for successive terms of twelve (12) months unless a notice of intention not to renew is provided at least eighteen (18) months prior to the expiration of any term.  The Dodard Employment Agreement is terminable during any term under certain circumstances, subject to various rights and obligations of the parties, as set forth in the agreement.

D.  Francis Yew-Wei Lee, M.D. – Dr. Yew-Wei Lee has been employed and will remain employed until termination of his employment on April 22, 2026, by the Debtor CHMC as a physician, pursuant to the terms of a written employment agreement ("Lee Employment Agreement") dated December 20, 2019.  The Lee Employment Agreement included an initial five (5) year term and thereafter continuing for successive terms of twelve (12) months unless a notice of intention not to renew is provided at least one hundred eighty (180) days prior to the expiration of any term.  The Lee Employment Agreement is terminable during any term under certain circumstances, subject to various rights and obligations of the parties, as set forth in the agreement.

E.  Graupel & Grit, Inc. – Pursuant to the Professional Services Agreement between Debtor, CAH and Graupel & Grit, Inc. dated April 1, 2025, Graupel & Grit, Inc. provided consulting services to or for the benefit of CAH.  The Professional Services Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

F.  InnoVative Capital, LLC – Pursuant to a Financial Advisory Services agreement, dated November 27, 2023, InnoVative Capital, LLC provided financial advisory services related to procuring replacement hospital financing for CAH.  This agreement is not needed by, or beneficial to, CAH or its estate, and therefore CAH asks this Court for authority to reject it.

G.  Masiello Martucci Hughes – Pursuant to a Consulting Services Agreement, as extended by Agreement Extension dated November 10, 2025, Masiello Martucci Hughes provide lobbying and government affairs consulting services for North Star.  This agreement is not needed by, or beneficial to, North Star or its estate, and therefore North Star asks this Court for authority to reject it.

16.    The Debtors believe that the Contract rejections described above will not result in any reduction in quality of care and services for patients, while the Contract rejections will enable significant and necessary reductions in both payroll and costs.

6

## BASIS FOR RELIEF

**A.      Rejection of the Contracts is an Exercise of the Debtors' Sound Business Judgment**

17.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a); *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *Med. Malpractice Ins. Ass'n v. Hirsch* (*In re Lavigne*), 114 F.3d 379, 386 (2d Cir. 1997).  "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'"  *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).

18.      Courts defer to a debtor's business judgment in determining whether to approve rejection of an executory contract and, upon finding that a debtor has exercised its sound business judgment, regularly approve the rejection under section 365(a) of the Bankruptcy Code.  *See Bildisco & Bildisco*, 465 U.S. at 523 (recognizing the use of the "business judgment" standard to approve rejection of executory contracts); *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009) (same); *In re Penn Traffic Co.,* 524 F.3d 373, 383 (2d Cir. 2008) (same); *In re Klein Sleep Products, Inc*, 78 F.3d 18, 25 (2d Cir. 1996) (same); *In re Minges*, 602 F.2d 38, 42–43 (2d Cir. 1979) (same); *In re Balco Equities Ltd.*, 323 B.R. 85, 98–99 (Bankr. S.D.N.Y. 2005) (same); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) (approving rejection of license by debtor because such rejection satisfied the "business judgment" test);.

19.      Courts emphasize that the business judgment rule is not an onerous standard and that it "is flexible and encourages discretion."  *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011). "Great judicial deference is given to the [debtor's] exercise of business judgment."  *GBL*

7

*Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (N.D. Tex. 2005); *see also In re Penn Traffic Co.*, 524 F.3d at 383; *In re Old Carco LLC*, 406 B.R. at 188. As long as a transaction "appears to enhance a debtor's estate, court approval of a debtor in possession's decision to [enter into the transaction] should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the Bankruptcy Code." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (citation and internal quotation marks omitted).

20. Courts generally will not second-guess a debtor's business judgment concerning the rejection of an executory contract. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121–22 (Bankr. D. Del. 2001); *see also In re Penn Traffic Co.,* 524 F.3d at 383; and *In re Old Carco LLC*, 406 B.R. at 188. Satisfying the "business judgment" standard requires only a modest showing, relevantly, that the proposed treatment of the executory contract or unexpired lease will benefit the debtor's estate. *See id.*; *see also In re Orion Pictures Corp.*, 4 F.3d at 1098-99 (stating that section 365 of the Bankruptcy Code permits a debtor in possession, subject to court approval, to decide which executory contracts would be beneficial to reject).

21. As part of their reorganization and ongoing efforts to reduce costs and burdensome obligations, the Debtors have determined that the Contracts provide little or no ongoing benefit to the Debtors' estates, and are not commensurate with their costs. Accordingly, rejecting the Contracts would clearly benefit the Debtors' estates and creditors for all the reasons set forth herein.

22. In light of the foregoing, the Debtors respectfully request that the Court approve rejection of the Contracts pursuant to section 365(a) of the Bankruptcy Code in the manner requested herein as a sound exercise of their business judgment.

**B.      Rejection as of the Date of this Motion is Appropriate**

23.      The Debtors submit that it is appropriate for the Court to deem the Debtors' rejection of the Contracts effective as of the date of termination of employment.  *See, e.g., Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028-29 (1st Cir. 1995) (indicating "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively" to the motion filing date); *Pacific Shore Dev., LLC v. At Home Corp (In re At Home Corp.)*, 392 F.3d 1064, 1065 (9th Cir. 2004) (citing *Thinking Machines Corp.* in holding same).

24.      Section 365 of the Bankruptcy Code does not address when the rejection ordered by the Court is deemed effective, nor does the Bankruptcy Code restrict courts from concluding that the effective date of the rejection is the date of the requested relief or a later date.  *See In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (stating that the best interpretation of section 365 of the Bankruptcy Code requires an order of the court to determine the date of rejection); *see also In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 of the Bankruptcy Code does not include "restrictions as to the manner in which the court can approve rejection"); *see also In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 of the Bankruptcy Code "does not prohibit the bankruptcy court from allowing the rejection of [leases] to apply retroactively").  However, courts, including those in this Circuit, have held that a bankruptcy court may exercise its equitable powers in granting such a retroactive order when doing so promotes the purposes of section 365(a) of the Bankruptcy Code.  *See In re Avianca Holdings S.A.,* 618 BR 684, 709 (Bankr. S.D.N.Y. 2020) (approving *nunc pro tunc* rejection), citing *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 U.S. Dist. LEXIS 22052

at *3-4 (S.D.N.Y. Nov. 15, 2002) (same); *In re Jamesway Corp.*, 179 B.R. at 38 (holding that courts may approve retroactive rejection); *see also In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) ("[T]he court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a).").

25.    As an ongoing part of their reorganization and scrutiny of their operations, the Debtors have, in consultation with their advisors, undertaken an analysis of their contracts. This analysis has resulted in a determination that the Contracts should be rejected effective as of the date of termination of employment for the employment contracts and the date of the filing of the Motion for the corporate contracts. The Contracts for which the Debtors seek rejection provide minimal or no value to the Debtors' estates or creditors from and after the date of this Motion, especially in light of their costs, and instead may unnecessarily tax the Debtors' limited resources until the rejection effective date is established. In this case, the balance of equities favors the rejection relief requested herein.

26.    Without a rejection date as of the date of this Motion, there is a risk that the Debtors could be forced to incur unnecessary obligations or administrative costs for contracts that provided little or no tangible benefit to the Debtors' estates. *See, e.g.*, *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 U.S. Dist. LEXIS 22052 at *3 (S.D.N.Y. Nov. 15, 2002) (finding retroactive rejection valid when the balance of equities favors such treatment); *In re Jamesway Corp.*, 179 B.R. at 33.

27.    Moreover, bankruptcy courts have granted relief, similar to the relief sought here, in other chapter 11 cases. *See, e.g.*, *In re GetSwift, Inc.*, Case No. 22-11057 (MEW) [ECF No. 133] (Bankr. S.D.N.Y. Jan. 25, 2023); *In re Grupo Aeromexico, S.A.B. de C.V.*, Case No. 20-11563 (JPM) [ECF No. 210] (Bankr. S.D.N.Y. July 29, 2020); *In re LATAM Airlines Group S.A.*, Case No. 20-11254 (JLG) [ECF No. 391] (Bankr. S.D.N.Y. Jun. 28, 2020); *In re Avianca Holdings S.A.*,

10

Case No. 20-11133 (MG) [ECF No. 277] (Bankr. S.D.N.Y. Jun. 11, 2020); *In re AMR Corporation*, Case No. 11-15463 (Bankr. S.D.N.Y. Dec. 23, 2011) (SHL) [ECF No. 454]; *In re Northwest Airlines Corporation*, Case No. 05-17930 (ALG) [ECF No. 672] (Bankr. S.D.N.Y. Oct. 13, 2005); and *In re Delta Air Lines, Inc.*, Case No. 05-17923 (PCB) [ECF No. 164] (Bankr. S.D.N.Y. Sep. 16, 2005).

## NOTICE

28.    Notice of this Motion has been provided to (a) the Office of the United States Trustee for the Northern District of New York, (b) proposed counsel for the Official Committee of Unsecured Creditors, (c) the New York State Department of Health, (d) the Office of the Attorney General for the State of New York, (e) the Centers for Medicare & Medicaid Services, (h) the Office of the U.S. Attorney General for the Northern of New York, (i) the counterparties listed on **Exhibit B**; and (j) those person who have formally appeared and requested service in these Chapter 11 Cases pursuant to Rule 2002 (collectively, the "Notice Parties").  In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

## RESERVATION OF RIGHTS

29.    Nothing contained herein or any action taken pursuant to such relief is intended or shall be construed as:  (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors or any appropriate party in interest's rights to dispute the amount of, basis for or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holders, or (d) an approval, assumption, adoption or rejection of any agreement, contract, lease, program or policy between the Debtors and any third party under section 365 of the Bankruptcy Code that is not included on

11

**Exhibit B**.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to

the Court's order is not intended to be and should not be construed as an admission as to the validity

or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NO PRIOR REQUEST

30.     No previous request for the relief sought herein has been made by the Debtors to

this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order,

substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and

such other and further relief as the Court deems just and proper.


Dated:  April 16, 2026                          **BARCLAY DAMON LLP**
        New York, New York              *Proposed Counsel for Debtors and*
                                        *Debtors-In-Possession*

                                        By:     */s/Janice B. Grubin*
                                        Janice B. Grubin
                                        Ilan Markus (admitted *pro hac vice*)
                                        1270 Avenue of the Americas, Suite 2310
                                        New York, New York 10020
                                        Janice B. Grubin:
                                        (212) 784-5808; jgrubin@barclaydamon.com
                                        Ilan Markus:
                                        (203) 672-2661; imarkus@barclaydamon.com

12

**<u>Exhibit A</u>**
**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

---------------------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : Case No. 26-60099-5-wak |
| | : Main Case |
| Debtors. | : Jointly Administered |
| | : Case No. 26-30078 |
| | : Case No. 26-30079 |
| | : Case No. 26-60100 |

---------------------------------------------------------------------x

### SECOND ORDER AUTHORIZING DEBTORS TO
### REJECT CERTAIN EXECUTORY CONTRACTS

Upon the motion dated April 15, 2026 [Docket No. ___] (the "<u>Motion</u>")[2] of North Star

Health Alliance, Inc. ("<u>North Star</u>"), Carthage Area Hospital, Inc. ("<u>Carthage</u>" or "<u>CAH</u>"),

Claxton-Hepburn Medical Center, Inc. ("<u>Claxton</u>" or "<u>CHMC</u>"), and Meadowbrook Terrace, Inc.

("<u>Meadowbrook</u>"), the above-captioned debtors and debtors-in-possession (collectively, the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

1

"Debtors"), for entry of an order (this "Order"), pursuant to sections 365(a) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 6006, authorizing rejection as of the date of the Motion of certain executory contracts identified in **Exhibit B** attached to the Motion, all as set forth more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties set forth in the Motion, and it appearing that no other or further notice need be provided; and no objections or responses having been filed; and the Court having reviewed the Motion and considered the relief requested in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and upon all of the proceedings had before the Court and a hearing held on May 13, 2026 and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion is hereby granted as set forth herein.

2.      Pursuant to sections 365 and 105 of the Bankruptcy Code, Bankruptcy Rule 6006, and Local Rule 6006-1, and subject to the terms of this Order, each of the executory Contracts, whether written, oral or implied, and identified in **Exhibit B** to the Motion, are hereby rejected effective as of the stated date of termination of employment in the Motion for each of the employment contracts, and  with respect to the contracts with entities, March 2, 2026, the date of the filing of the Motion.

2

3.      Claims arising out of any rejection effected pursuant to this Order must be filed by the date that is thirty (30) days after entry of this Order.

4.      Nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with any claims arising out of any rejection effectuated pursuant to this order.

5.      To the extent necessary, the automatic stay provided by section 362 of the Bankruptcy Code is hereby modified as to the Debtors to allow the parties to effectuate the provisions of this Order.

6.      The notice set forth in the Motion is good and sufficient notice and satisfies Bankruptcy Rules 2002(a), 6006, 6007, and 9014 by providing the counterparties with notice and an opportunity to object and be heard at a hearing.

7.      The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

8.      The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # #

**<u>Exhibit B</u>**
**Executory Contracts**

| Contract Counterparty | Address | Document Description |
|---|---|---|
| Rachel May Zysk, Esq. | Redacted for privacy | All employment agreements. |
| Lydia Kirschman, NP | Redacted for privacy | All employment agreements. |
| Walter Dodard, D.O. | Redacted for privacy | All employment agreements. |
| Francis Yew-Wei Lee, M.D. | Redacted for privacy | All employment agreements. |
| Graupel & Grit, Inc. | Attn: Kenneth Dean Harrison<br>22177 Riverbend Drive East<br>Watertown, NY 13601 | All professional consulting service agreements. |
| InnoVative Capital, LLC | Attn: Alan P. Richman, President/CEO<br>1489 Baltimore Pike, Building 400<br>Springfield, PA 19064 | All financial advisory services agreements. |
| Masiello Martucci Hughes | Attn: Victor Martucci, Managing Partner<br>54 State Street, Suite 1001<br>Albany, NY 12207 | All professional consulting service agreements. |