**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099 |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30788 |
| | : | Case No. 26-30799 |
| | : | Case No. 26-60100 |

-------------------------------------------------------------------x

**APPLICATION FOR ORDER REDUCING TIME FOR NOTICE OF
HEARING TO CONSIDER DEBTORS' MOTION FOR ENTRY OF AN
ORDER APPROVING A SETTLEMENT INVOLVING CARTHAGE AREA
HOSPITAL, INC., WALTER DODARD, D.O., AND COMPREHENSIVE
WOMEN'S HEALTH SERVICES, PLLC, AND FOR RELATED RELIEF**

TO THE HONORABLE CHIEF JUDGE WENDY A. KINSELLA:

North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"),

Claxton-Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc.

("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the

"Debtors"), by and through the undersigned proposed counsel, make this application (the

"Application") for an Order reducing the notice required of a hearing to consider their motion for

entry of an order approving a settlement involving Carthage Area Hospital, Inc., Walter Dodard,

D.O., and Comprehensive Women's Health Services, PLLC, and for related relief (the "Settlement

Motion"), pursuant to Section 105(a) of Title 11 of the United States Code (the "Bankruptcy

Code"), Fed. R. Bankr. P. 9006(c), and Local Bankruptcy Rule 9013-5(b).  In support of this

Application, the Debtors respectfully submit as follows:

---

[1] The Debtors in these cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

1

50509372.1

**JURISDICTION**

1.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are Bankruptcy Code section 105(a), Fed. R. Bankr. P. 9006(c), and Local Bankruptcy Rule 9013-5(b).

**BACKGROUND**

**A.      The Chapter 11 Cases**

3.      On February 10, 2026 (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in possession of their properties and are operating and managing their businesses, as debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

5.      By Notice of Appointment dated March 4, 2026, the Office of the United States Trustee (the "UST") appointed an official committee of unsecured creditors (the "Committee").

6.      By Notice of Appointment dated March 12, 2026, the UST appointed Suzanne Koenig as the Patient Care Ombudsman (the "PCO").

**B.      The Debtors' Corporate Structure and Operations**

7.      North Star was established in September 1993 and incorporated in the State of New York as a not-for-profit corporation.  North Star is the umbrella organization within which Carthage, Claxton, Meadowbrook and related affiliates coordinate governance, strategy, and

2

50509372.1

shared services under what is referred to as the Transformation Plan.[2]  North Star is a passive

parent entity that does not itself exercise financial control over each member organization; rather,

it serves as a platform for alignment and operational integration, including shared leadership and

centralized administrative functions (*e.g.*, finance, human resources, information technology,

compliance, revenue cycle coordination, and cash planning) that are critical to sustaining rural

healthcare delivery across multiple campuses.  The North Star system, as a whole, employs

approximately 1,475 employees.

8.      Carthage was established in November 1921 and incorporated in the state of New

York as a not-for-profit corporation.  Carthage operates a 25-bed Critical Access Hospital in each

of Carthage, New York and Ogdensburg, New York, serving a large, rural tri-county area.

Carthage holds a New York State Department of Health ("DOH") operating certificate (No.

2238700C; Facility ID/PFI 379 & Facility ID/PFI 15684) for primary care hospital-critical access

hospital services located at 1001 West Street, Carthage, New York 13619, and 214 King Street,

Suite A, Ogdensburg, New York 13669 (the "Claxton Campus").  The Claxton Campus is the

designated "9.39" hospital for the area and is the former acute-care component of Claxton that

Carthage now operates as part of the Transformation Plan.  While the DOH issued the operating

certificate reflecting this configuration, Centers for Medicare & Medicaid Services ("CMS")

processes to recognize and operationalize the Claxton Campus as a critical access hospital

---

[2] Beginning in or about August 2022, North Star pursued a complex transition (the "Transformation Plan") designed to preserve access to acute care and behavioral health services in the North Country while addressing Claxton's unsustainable legacy cost and reimbursement structure as a Sole Community Hospital.  The Transformation Plan involved coordinated planning among North Star member organizations, engagement with DOH and OMH, and stepwise regulatory actions.  On October 23, 2024, DOH and OMH issued operating certificates that reorganized Claxton into two distinct hospital entities: (i) a standalone inpatient psychiatric hospital (CHMC) and (ii) a separate acute-care campus operated by Carthage under a shared operating certificate (the Claxton Campus).

3

(including surveys, enrollment steps, and related notifications) have involved additional steps and timing considerations.

9. Claxton-Hepburn Medical Center, Inc. was established in December 1916 and incorporated in January 1917 in the state of New York as a not-for-profit corporation. Following the implementation of the Transformation Plan, Claxton now operates exclusively as a standalone Article 31 Inpatient Psychiatric Hospital licensed by the New York State Office of Mental Health under Operating Certificate No. 8231002, located at 214 King Street, Suite B, Ogdensburg, New York 13669. Claxton provides acute inpatient behavioral health services for adults (28 beds) and children/adolescents (12 beds), including the region's only acute inpatient unit dedicated to children and adolescents.

10. Meadowbrook Terrace, Inc. was established in December 2011 and incorporated in the state of New York as a not-for-profit corporation. Meadowbrook is a 60-bed assisted living facility (58 ALP beds and 2 Adult Home) that provides assisted living services for seniors in the North Country region. Meadowbrook is a key part of the Debtors' care continuum for elderly and medically fragile patients, supporting safe discharge planning and community-based care.

11. Through these bankruptcy proceedings, the Debtors intend to continue to fulfill their mission by operating their facilities to deliver quality health care, with a dedicated local workforce, in their communities.

### **RELIEF REQUESTED**

12. The Debtors make this Application pursuant to Rule 9006(c) of the Federal Rules of Bankruptcy Procedure and Local Rule 9013-5(b) for an Order reducing the time, and limiting the service, for the notice of hearing to consider the Settlement Motion (the "Requested Relief").

**Shortening the Time for the Settlement Motion Hearing**

13.     Pursuant to this Application, the Debtors request that the Court conduct a hearing (the "Hearing") as soon as practicable in Syracuse, New York to consider the Requested Relief (as more fully described herein and in the Settlement Motion).

14.     Under Fed. R. Bankr. P. 2002(a)(3), a hearing on the Settlement Motion may not be held less than twenty-one (21) days from the filing of the motion.  However, pursuant to Fed. R. Bankr. P. 9006(c), the Court may, for cause shown, reduce the notice period for the Settlement Motion.

15.     Pursuant to Local Rule 9013-1(e), the Settlement Motion is required to be filed and served at least twenty-one (21) days before the return date of the motion.  Local Rule 9013-5(b) and Fed. R. Bankr. P. 9006(c) permit reduction of the notice period, however, for cause shown.

16.     With respect to the Settlement Motion, the reason why the Debtors seek to shorten the period of time for a hearing thereon, is to minimize the amount of time within which patients may need to forego care – or said another way:  to further continuity of care to patients.

17.     As described in more detail in the Settlement Motion, the Debtors closed the Practice on April 10, 2026.

18.     On April 7, 2026, Dr. Dodard communicated to the Debtors that he wanted to exercise his "buyback rights" since "my patients are calling me and telling me that they can't get appointments elsewhere for a year and would have to travel for at least an hour for the closest alternative provider."

19.     Notably, the settlement contemplated by the Settlement Motion, among other things, ensures the continuity of care to patients in an underserved area (including military families), provides for the retention and custody of records, results in the preservation of jobs, and

5

50509372.1

provides for the cancellation and/or transfer of liabilities while setting an end date for the Debtors'

likely subsidizing of CWHS operations. Alternatively, if the Settlement is not approved, Carthage

will be responsible for the costs associated with dissolving the Practice, addressing any liabilities,

and responding to requests for and addressing the preservation of patient records.

20.    If the Debtors are heard on the Settlement Motion within seven days of the filing

of the motion – on or about April 28, 2026 - the Practice could reopen within 18 to 20 days of

closure.  If the hearing on the Settlement Motion is scheduled for May 13, 2026, the Practice will

have to wait another 15 days from 33 to 35 days after closure.

21.    It is everyone's best interest to have the Practice open sooner rather than later.  That

constitutes good cause to shorten the notice of hearing.

**Limiting Service for the Settlement Motion Hearing**

22.    By this Application, the Debtors also seek entry of an order limiting notice of the

Settlement Motion so that, in lieu of service on the entire creditor matrix, notice shall be provided

only to the following parties (the "Notice Parties"):

a.    the Office of the United States Trustee;

b.    counsel to any official committee appointed in these Chapter 11 Cases;

c.    all parties to the proposed settlement;

d.    any party that has filed a notice of appearance and request for service;

e.    any party whose rights are directly affected by the proposed compromise;

f.    the New York State Department of Health;

g.    the Office of the New York Attorney General for the State of New York;

h.    Centers for Medicare & Medicaid Services;

i.    the Office of the U.S. Attorney for the Northern District of New York; and

j.    such other parties as the Court may direct.

23.    Under Federal Rule of Bankruptcy Procedure 2002, the Court may, for cause, limit

the entities entitled to receive notice.  Fed. R. Bankr. P. 2002(m) ("Except as these rules provide

50509372.1

otherwise, the court may designate the matters about which, the entity to whom, and the form and manner in which a notice must be sent.").

24.     The Debtors' consolidated creditor matrix contains thousands of creditors. Service of the Settlement Motion on all creditors would impose a substantial administrative burden and expense on the estates without providing a corresponding benefit.

25.     The proposed compromise primarily affects a discrete group of parties, including the settlement counterparties and other directly affected parties in interest, all of whom will receive actual notice.  Furthermore, the existence of the Committee provides protection to creditors of the Debtors.

26.     The proposed notice procedures are reasonably calculated to apprise all interested parties of the Settlement Motion while conserving estate resources.

**WHEREFORE**, based upon the foregoing, the Debtors respectfully request that the Court enter an Order (i) reducing the time for notice for the hearing on the Settlement Motion; (ii) setting the hearing date on the Settlement Motion for **April, 29, 2026 at 12:00 p.m.** (**Eastern Standard Time**), or as soon thereafter as is practicable; and (iii) granting such other and further relief as the Court deems just and proper.

Dated:   April 22, 2026
New York, New York

**BARCLAY DAMON LLP**
*Proposed Counsel for Debtors and*
*Debtors-In-Possession*

By:  ___/s/Janice B. Grubin_____
Janice B. Grubin
Ilan Markus (admitted *pro hac vice*)
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Telephone:  (212) 784-5800
jgrubin@barclaydamon.com
imarkus@barclaydamon.com