# EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

-------------------------------------------------------------------x

In re

NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1]

Debtors.

-------------------------------------------------------------------x

:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 26-60099
Main Case
Jointly Administered

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO**
**OBTAIN POST-PETITION FINANCING, (II) GRANTING LIENS**
**AND SUPER-PRIORITY CLAIMS, (III) MODIFYING THE**
**AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING**

Upon consideration of the motion (the "Motion") of North Star Health Alliance, Inc.

("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc.

("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the debtors and debtors-in-

possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases")

commenced on February 10, 2026 (the "Petition Date"), for interim and final orders pursuant to

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

50720473.1

§§ 105, 362, 364(c), 364(d), 364(e), 502, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of New York (the "Local Rules"), seeking:

(I)      authority for Carthage, as "Borrower" under, and as defined in, the DIP Agreement (as defined below) (the "Borrower"), to enter into that certain *Health Facility Restructuring Pool Loan and Security Agreement* (as hereafter amended, restated, supplemented, or otherwise modified from time to time, the "DIP Agreement"), in substantially the form annexed hereto (with such changes, if any, as were addressed to the Court at the Interim Hearing or are authorized to be made as amendments to the DIP Agreement and other DIP Documents (as defined below) in accordance with this Interim Order), together with the Guarantees by each of North Star, Claxton and Meadowbrook (the "Guarantors"), and other agreements, instruments, and documents delivered or executed by Debtors from time to time in connection therewith (as hereafter amended, restated, supplemented, or otherwise modified from time to time, collectively with the DIP Agreement, the "DIP Documents"), pursuant to which the Borrower shall (1) obtain post-petition senior secured super-priority debtor-in-possession financing consisting of a non-revolving credit facility in the maximum aggregate principal amount of up to $15,000,00.00 on an interim basis and, subject to the entry of the Final Order (as hereinafter defined), up to $60,000,000.00 on a final basis (the "DIP Loan") from the Dormitory Authority of the State of New York ("DASNY") as administrator of funds available under the Health Facility Restructuring Pool ("HFRP"), as lender (in such capacity, the "DIP Lender"), in accordance with the DIP Documents and (2) grant security interests and liens and accord super-priority administrative expense claim status in favor of the

2

50720473.1

DIP Lender pursuant to §§ 364(c), 364(d), and 364(e) of the Bankruptcy Code in accordance with the DIP Documents;

(II) authority for the Debtors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(III) to modify the automatic stay imposed by § 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents;

(IV) at an interim hearing (the "Interim Hearing") on the Motion before this Court, pursuant to Bankruptcy Rule 4001, entry of this interim order (the "Interim Order") authorizing the Borrower, on an interim basis, to borrow under the DIP Agreement an aggregate principal amount not to exceed $15,000,000.00 at any time outstanding (plus fees, interest, and other amounts in accordance with the terms of the DIP Documents) prior to the earlier of June __, 2026 and the entry of the Final Order; and

(V) scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order"), authorizing and approving on a final basis the relief requested in the Motion, including, without limitation, the Borrower's ability to utilize the DIP Loan, subject to the terms and conditions of the DIP Documents and the Final Order; and upon the Interim Hearing having been held by this Court on May 20, 2026, and upon the record made by the Debtors at the Interim Hearing, including, without limitation, the admission into evidence of the *Declaration of Andrew R. Manzer in Support of the DIP Motion* [Docket No. [__]], which was filed contemporaneously with the Motion, and the other evidence submitted or adduced and the arguments of counsel made at the Interim Hearing, and it

3

appearing that the relief requested in the Motion is in the best interests of the Debtors and the Debtors' estates and creditors, and it appearing that proper and adequate notice of the Motion and the Interim Hearing has been given, and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED, AND ADJUDGED**, as applicable[2], that:

1. Grant of Motion. The Motion is GRANTED on an interim basis as hereinafter set forth. Any and all objections to the relief requested in the Motion, to the extent not withdrawn with prejudice, waived, or resolved by consent at or before the Hearing, are hereby OVERRULED and DENIED.

2. Jurisdiction/Venue. This Court has core jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Notice. The Interim Hearing was held pursuant to the authorization of Bankruptcy Rules 2002, 4001, and 9014 and the Local Rules. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors to certain parties in interest, including: (a) the Office of the United States Trustee (the "United States Trustee"); (b) counsel for the Official Committee of Unsecured Creditors; (c) the DIP Lender and its counsel; (d) all secured creditors of record (if any); (e) the New York State Attorney General; and (f) all parties (if any) who had filed requests for notices under Rule 2002 of the Bankruptcy Rules as of the date of this Interim Order.

---

[2] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, as appropriate.

4

4.    Need for Financing.

(a)    The Debtors have an immediate need to borrow under the DIP Agreement to, among other things, permit the orderly continuation of the operation of their businesses, preserve the going concern value of the Debtors, and pay the costs of administration of their estates and for the other purposes set forth in the DIP Documents. The Debtors' access to sufficient working capital and liquidity through the use of borrowings under the DIP Loan is vital to preserve the operations of the Debtors' estates which provides for the care of patients, in accordance with their mission, assure the continued employment of many of the Debtors' employees, facilitate a successful restructure and right-sizing of the Debtors' businesses, and prevent immediate and irreparable harm to the Debtors' estates.

(b)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lender pursuant to, and for the purposes set forth in, the DIP Documents and is unable to obtain adequate unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable without granting to the DIP Lender: (i) priming liens under § 364(d) of the Bankruptcy Code; (ii) liens on Debtors' unencumbered property under § 364(c) of the Bankruptcy Code (collectively, the "DIP Liens" as defined below); and (iii) the Super-Priority DIP Claims (as defined below), in each case, on the terms set forth in this Interim Order and the DIP Documents.

5.    Proposed DIP Loan. The Borrower have requested that the DIP Lender establish the DIP Loan pursuant to which the Borrower may from time to time obtain loans in a maximum aggregate principal amount of up to $15,000,000 on an interim basis and, subject to the entry of the Final Order, up to $60,000,000.00 on a final basis, pursuant to the terms and conditions of the

5

50720473.1

DIP Documents. The DIP Lender is willing to make the DIP Loans, upon the terms and conditions set forth herein and in the DIP Documents.

6. <u>Certain Conditions to DIP Loans</u>. The DIP Lender's willingness to make the DIP Loans is conditioned upon, among other things: (a) the Debtors obtaining Court approval of the DIP Agreement (and all extensions of credit thereunder), as well as all of the other DIP Documents; (b) the DIP Lender receiving, as security for the payment of the DIP Obligations (as hereinafter defined), security interests in and liens on the DIP Collateral (as hereinafter defined), upon the terms set forth herein and in the DIP Documents; and (c) the Debtors' satisfaction of all conditions precedent in the DIP Agreement and the DIP Documents, unless waived in writing by the DIP Lender in its sole discretion.

7. <u>Finding of Cause</u>. Good cause has been shown for the entry of this Interim Order and authorization for the Debtors to obtain the DIP Loans under the DIP Loan, pursuant to the terms and conditions of the DIP Documents. The Debtors' need for financing of the type afforded by the DIP Documents is ongoing, immediate, and critical. Entry of this Interim Order will minimize disruption of the Debtors' operations to care for the patients in their charge, will preserve the assets of the Debtors' estates and their value for distribution to creditors, and is in the best interests of the Debtors, their estates, and their creditors. The terms of the proposed financing are fair and reasonable, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

8. <u>Finding of Good Faith</u>. The Court finds that the DIP Agreement and the other DIP Documents, as well as the terms of this Interim Order, have been negotiated in good faith and at arm's length between the Borrower and the DIP Lender. Therefore, all DIP Loans heretofore and hereafter extended and made to the Borrower pursuant to the DIP Documents shall be deemed to

50720473.1

have been extended and made in good faith within the meaning of § 364(e) of the Bankruptcy Code.

9.      Authorization of Financing; Permitted Uses; Budget.

(a)      The Court hereby authorizes and approves (i) the execution, delivery, and performance by the Debtors of and under the DIP Agreement and other DIP Documents in substantially the form annexed hereto (with such changes, if any, as were addressed to the Court at the Interim Hearing or are authorized to be made as amendments to the DIP Agreement and other DIP Documents in accordance with this Interim Order) and all other agreements, instruments, and documents referred to therein or required by the DIP Agreement to be executed by the Borrower; (ii) the Borrower borrowing in accordance with the DIP Documents (x) on an interim basis, under the DIP Documents in an aggregate principal amount not to exceed $15,000,000 at any time outstanding prior to the earlier of June __, 2026 and the entry of the Final Order; and (y) subject to the entry of the Final Order, under the DIP Loan in an aggregate principal amount not to exceed $60,000,000.00 at any time outstanding; and (iii) the Debtors satisfying all conditions precedent and performance of all obligations hereunder and under the DIP Documents in accordance with the terms hereof and thereof; *provided, however*, that the authorization to use proceeds of DIP Loans shall be limited solely to the purposes specified and authorized in this Interim Order and the DIP Documents (collectively, the "Permitted Uses") and provided, further, that until the entry of the Final Order, the Borrower may borrow under the DIP Documents only to the extent necessary to avoid immediate and irreparable harm to the Borrower, which, for purposes hereof, shall mean the obligations and expenses specified in the Budget attached to the Motion, and to pay the fees, expenses, and other amounts due by the Borrower to the DIP Lender

50720473.1

that are required to be paid prior to the Final Hearing under the DIP Documents, this Interim Order, or any other order of the Court.

(b)     Except as otherwise provided herein, the use of proceeds of borrowings under the DIP Documents shall be limited solely to payment of (i) the fees, expenses, and other amounts due by the Borrower at any time to the DIP Lender under the DIP Documents, this Interim Order, or any other order of the Court, (ii) any fees required to be paid to the Clerk of the Court, (iii) the fees and disbursements incurred by a chapter 7 trustee (if any) under § 726(b) of the Bankruptcy Code in an amount not to exceed $50,000 out of the DIP Collateral, and (iv) the obligations and expenses specified in the Budget and the Borrower shall only incur DIP Loans under the DIP Loan in accordance with the specific purposes, and at the specific time periods, set forth in the Budget (collectively, the "*Budget Covenants*").

(c)     The initial Budget is annexed to the Motion as Exhibit 3.  Pursuant to the DIP Loan Agreement, the Borrower are required to provide the DIP Lender with a proposed updated Budget at the time of each request for an advance of a DIP Loan, which, once approved in writing by the DIP Lender in its sole discretion, shall supplement and replace the initial Budget then in effect, and all references to the Budget shall be deemed to be references to such updated Budget, without further notice, motion, or application to, order of, or hearing before, this Court; *provided, however*, that unless and until the DIP Lender has approved in writing any proposed updated Budget, the Debtors shall still be subject to and be governed by the terms of the Budget then in effect in accordance with this Interim Order, and the DIP Lender shall have no obligation to fund any DIP Loans under any such proposed updated Budget or otherwise fund any DIP Loans not otherwise provided for in the Budget then in effect.

8

50720473.1

(d) For the avoidance of doubt, payment of the professional fees, costs, and expenses of (i) the Debtors' professionals, and (ii) professionals of any official committee appointed in this Chapter 11 Cases (any such official committee being referred to as a "Committee"; and the professionals retained by such Committee, the "Committee Professionals"), from proceeds of DIP Loans or DIP Collateral shall be limited to the amounts set forth in the Budget for that purpose and subject to the provisions of any orders of the Court approving or denying any such fees and expenses.

(e) Notwithstanding anything to the contrary in this Interim Order, the fees, expenses, and other amounts due by the Borrower at any time to the DIP Lender under the DIP Documents, this Interim Order, or any other order of the Court, including, without limitation, the professional fees, costs, and expenses of the DIP Lender's professionals shall be due, payable, and paid in accordance with the terms of the DIP Documents, this Interim Order, or such other order of the Court notwithstanding any budgeted amounts for such fees, costs, and expenses set forth in the Budget, and the Debtors shall not be deemed to have breached the terms of the Budget or the Budget Covenants to the extent the actual amount of such fees, costs, and expenses exceed the applicable budgeted amounts as set forth in the Budget and are nevertheless paid.

(f) The DIP Lender shall not have any obligation or responsibility to monitor the Borrower' use of any DIP Loans and may rely upon the Borrower' representations that the amount of DIP Loans requested at any time, and the use thereof, are in accordance with the requirements of this Interim Order and the DIP Documents. Notwithstanding the foregoing, upon the reasonable request of the DIP Lender, the Borrower shall report to the DIP Lender regarding the use of the DIP Loans and whether such use is in accordance with the requirements of this

50720473.1

Interim Order and the DIP Documents, including, without limitation, by providing a comparison of such uses to the Budget.

10. <u>Execution, Delivery, and Performance of DIP Documents</u>. The Debtors are authorized and directed to execute, deliver, and perform under all the terms and conditions of each and every DIP Document, each of which is hereby approved. The DIP Documents may be executed and delivered on behalf of the Debtors by any officer, director, or agent of the Debtors who represents himself or herself to be duly authorized and empowered to execute the DIP Documents for and on behalf of the Debtors, and the DIP Lender may rely on any of such person's execution and delivery of any of the DIP Documents as having done so with all requisite power and authority to do so. Upon the entry of this Interim Order, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms. In furtherance of the provisions of this Interim Order, the Debtors are authorized and directed to do and perform all acts, to make, execute, and deliver all agreements, instruments, and documents, and to pay all filing and recording fees as may be necessary or, in the opinion of the DIP Lender, are desirable to give effect to any of the terms and conditions of the DIP Documents or as otherwise required or contemplated by the DIP Documents.

11. <u>DIP Collateral and DIP Liens</u>.

(a) All "Indebtedness" under (and as defined in) the DIP Agreement, including, without limitation, all DIP Loans and all other amounts owing under the DIP Documents (then existing, contingent, or otherwise, all of the foregoing being collectively called the "<u>DIP Obligations</u>") shall be, and hereby are, secured by perfected liens, subject and subordinate only to the Carve-Out (as hereinafter defined) (collectively, the "<u>DIP Liens</u>"), in favor of the DIP Lender on and in the following collateral (the "<u>DIP Collateral</u>").

10

(b)    The DIP Liens with respect to the DIP Collateral shall have the following priorities:

        (i)    <u>Encumbered Collateral</u>.    Pursuant to § 364(d) of the Bankruptcy Code, a first priority senior lien on and security interest in all currently encumbered real and personal property of the Debtors;

        (ii)    <u>Unencumbered Collateral</u>.    Pursuant to § 364(c)(2) of the Bankruptcy Code, a lien on and security interest in all real and personal property of the Debtors; and

        (iii)    <u>Carve-Out</u>.  The DIP Liens shall be subject and subordinate in all respects to the Carve-Out in accordance with paragraph 14 of this Interim Order.

12.    <u>Super-Priority DIP Claim; Surcharge</u>.

(a)    <u>Scope of Super-Priority DIP Claim</u>.  Subject to the Carve-Out in accordance with paragraph 14 of this Interim Order, and in addition to being secured as provided in this Interim Order and any Final Order, all DIP Obligations shall constitute an allowed administrative expense claim under § 503(b) of the Bankruptcy Code and shall constitute an allowed super-priority claim (the "<u>Super-Priority DIP Claim</u>") pursuant to § 364(c)(1) of the Bankruptcy Code over all other administrative expenses in the Chapter 11 Cases of the kind specified in, or ordered pursuant to, §§ 105, 326, 328, 330, 331, 503(a), 503(b), 506, 507(a), 507(b), 546(c), 546(d), 726(b), 1113, or 1114 of the Bankruptcy Code.

(b)    <u>No Surcharge</u>.  Subject to the Carve-Out in accordance with paragraph 14 of this Interim Order, no costs or administrative expenses that have been or may be incurred in the Chapter 11 Cases, in any matters or proceedings related hereto or in any superseding chapter 7 case, and no priority claims, are or will be prior to or on a parity with the Super-Priority DIP Claim of the DIP Lender for the DIP Obligations.  Subject to the entry of the Final Order, in no event shall any costs or expenses of administration be imposed upon the DIP Lender or any of the DIP

11

Collateral pursuant to §§ 105, 506(c), or 552(b) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Lender, and no such consent shall be implied from any action, inaction, or acquiescence by the DIP Lender.

13.    <u>Repayment</u>.  The Debtors shall be liable to repay the DIP Obligations in accordance with the DIP Documents (whether or not budgeted in the Budget).  The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Documents and as provided herein, without offset, counterclaim, deduction, or other claim of avoidance of any nature or type. In no event shall the Debtors be authorized to offset, deduct, avoid, or recoup any amounts owed, or alleged to be owed, by the DIP Lender to the Debtors against any of the DIP Obligations, unless and to the extent expressly otherwise agreed to in writing by the DIP Lender.

14.    <u>Payment of Certain Fees and Expenses</u>.

(a)    <u>Use of Professional Expenses</u>.  The Borrower are authorized to use proceeds of DIP Loans, for so long as no Event of Default under (and as defined in) the DIP Agreement shall have occurred and be continuing, to pay fees, compensation, costs, expenses, and disbursements (collectively, "<u>Professional Expenses</u>") of (i) professionals (including, without limitation, attorneys, accountants, appraisers, consultants, and brokers) retained by the Debtors (collectively, the "<u>Debtor Professionals</u>"), and (ii) Committee Professionals retained by any Committee, if any, *provided, however*, that no proceeds of DIP Loans shall be used to pay Professional Expenses of any Debtor Professionals and any Committee Professionals, (collectively, the "<u>Professional Persons</u>") or any other costs incurred in connection with (1) investigating, commencing, or continuing any claims, causes of actions, adversary proceedings, or contested matters against the DIP Lender with respect to any loan, repayment or other transaction, act, or inaction under or in connection with the DIP Documents, including,

12

without limitation, discovery proceedings subsequent to the commencement of any such claims or causes of action; (2) challenging the DIP Liens or the Super-Priority DIP Claim; (3) challenging the DIP Obligations; or (4) that would otherwise be expenses not permitted pursuant to the Budget.

(b)  Carve-Out.  All liens and claims of the DIP Lender, including, without limitation, the DIP Liens and the Super-Priority DIP Claim, shall be subject and subordinate to payment of the Carve-Out in accordance with the terms of this Interim Order.  For the purposes of this Interim Order, the "Carve-Out" shall mean: (i) all fees required to be paid to the Clerk of the Court; (ii) fees and disbursements incurred by a chapter 7 trustee (if any) under § 726(b) of the Bankruptcy Code in an amount not to exceed $50,000 out of the DIP Collateral; and (iii) all unpaid, accrued Professional Expenses incurred by Professional Persons at any time, to the extent allowed at any time, whether by this Interim Order, procedural order, or otherwise, but only to the extent all such Professional Expenses set forth in this clause (iv) do not exceed the lesser of (x) $500,000 and (y) the aggregate amount permitted through such time for such expenses in the Budget as then applicable (the "Carve-Out Professional Expenses"); provided, however, that from and after the date of delivery by the DIP Lender to the Debtors of a written notice (a "Carve-Out Trigger Notice") that an Event of Default has occurred and that the DIP Lender has deemed the Carve-Out to have been triggered (such delivery, a "Carve-Out Trigger Event"), the Carve-Out payable in respect of Professional Expenses shall not exceed the lesser of (x) $500,000 and (y) the sum of (1) the aggregate amount of Carve-Out Professional Expenses incurred but unpaid prior to delivery of the Carve-Out Trigger Notice, regardless of whether such Carve-Out Professional Expenses are allowed before or after delivery of the Carve-Out Trigger Notice (*provided* that Carve-Out funds in respect of such Carve-Out Professional Expenses shall only be released to the applicable Professionals once allowed by order of the Court) and (y) up to $50,000.00 of additional

13

50720473.1

Professional Expenses incurred after delivery of the Carve-Out Trigger Notice (*provided* that Carve-Out funds in respect of such Professional Expenses shall only be released to the applicable Professionals once allowed by order of the Court); *provided, further*, that nothing herein shall be construed to impair the ability of any interested party to object to any Professional Expenses sought by any Professional Person.

15.     <u>Preservation of Rights Granted Under this Interim Order</u>.

(a)     <u>Protection from Subsequent Financing Order</u>.  It shall constitute an Event of Default under (and as defined in) the DIP Agreement if the Debtors seek, or if there is entered in the Chapter 11 Cases, or in any successor case, any order that authorizes the obtaining of credit or the incurrence of indebtedness by the Debtors (or any trustee or examiner) that (i) is secured by a security, mortgage, collateral interest, or lien on all or any part of the DIP Collateral that is equal or senior to the DIP Liens or (ii) has priority administrative status that is equal or senior to the Super-Priority DIP Claim; *provided, however*, that nothing herein shall prevent the entry of an order that specifically provides that, as a condition to the granting of the benefits of clauses (i) or (ii) above, all of the DIP Obligations must be fully paid in immediately available funds from the proceeds of such credit or indebtedness, and all contingent obligations owed to the DIP Lender as provided in the DIP Documents must be fully cash collateralized.

(b)     <u>Rights Upon Dismissal, Conversion, or Consolidation</u>.  If the Chapter 11 Cases are dismissed, converted, or substantively consolidated with another case, then neither the entry of this Interim Order nor the dismissal, conversion, or substantive consolidation of the Chapter 11 Cases shall affect the rights or remedies of the DIP Lender under this Interim Order and the DIP Documents, and all of the respective rights and remedies hereunder and thereunder of the DIP Lender shall remain in full force and effect as if the Chapter 11 Cases had not been

14

dismissed, converted, or substantively consolidated.  It shall constitute an Event of Default under (and as defined in) the DIP Agreement if the Debtors seek, or if there is entered, any order dismissing the Chapter 11 Cases.  If an order dismissing the Chapter 11 Cases is at any time entered, such order shall provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (i) all of the liens and claims granted and/or continued hereunder shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order (and that such liens and claims shall, notwithstanding such dismissal, remain binding on all interested parties) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing all such liens and claims.

(c)    No Discharge; Credit Bid Rights.  Unless and until the payment in full of the DIP Obligations shall occur, all such obligations shall not be discharged by the entry of any order confirming a plan in the Chapter 11 Cases, and pursuant to § 1141(d)(4) of the Bankruptcy Code, the Debtors have waived such discharge.  The right of the DIP Lender to submit a credit bid in the full or partial amount of the DIP Obligations for all or any part of the DIP Collateral in any sale of the DIP Collateral, whether such sale is effectuated through § 363 or § 1129 of the Bankruptcy Code, by a chapter 7 trustee under § 725 of the Bankruptcy Code, or otherwise, shall not be limited, restricted, impaired, altered, or otherwise modified in any respect.  If the DIP Lender makes a credit bid in connection with any auction or other sale process relating to the sale or other disposition of any DIP Collateral, then for purposes of such auction or sale process or any applicable order of this Court, the DIP Lender shall be automatically deemed to be a "qualified bidder" and its credit bid shall automatically constitute a qualified bid, regardless of whether the qualified bidder or qualified bid requirements are satisfied and whether or not such qualified bid requirements are contained in an order of this Court.

50720473.1

(d)    No Marshaling.  The Debtors agree not to assert rights pursuant to the equitable doctrine of "marshaling" or any similar doctrine with respect to any DIP Collateral at any time securing any of the DIP Obligations, and subject to entry of the Final Order, in no event shall any DIP Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of the Debtors' estates pursuant to § 551 of the Bankruptcy Code.

(e)    No Requirement to File Proof of Claim.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any bar order establishing a deadline for the filing of proofs of claims entitled to administrative expense treatment under § 503(b) of the Bankruptcy Code, the DIP Lender shall not be required to file any proof of claim with respect to any of the DIP Obligations, all of which shall be allowed without the necessity of filing any such proof of claim, and the failure to file any such proof of claim shall not affect the validity or enforceability of any of the DIP Documents or prejudice or otherwise adversely affect the DIP Lender's rights, remedies, powers, or privileges under the DIP Documents or this Interim Order.

(f)    Reservation of Rights.  So long as not inconsistent with the provisions of this Interim Order, the terms, conditions, and provisions of this Interim Order are in addition to, and without prejudice to the rights of, the DIP Lender to pursue any and all rights and remedies available to the DIP Lender under the DIP Documents and the Bankruptcy Code, or any other applicable agreement or law, including, without limitation, the right to seek relief from the automatic stay, to seek an injunction, to oppose any request for the granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object

16

to applications for allowance and/or payment of compensation of Professional Persons, or other parties seeking compensation in the Chapter 11 Case.

16.     Automatic Perfection of Liens.  Upon entry of this Interim Order, the DIP Liens shall be deemed valid, binding, enforceable, and perfected with respect to all of the DIP Collateral. The DIP Lender shall not be required to file any UCC-1 financing statements, mortgages, notices of lien, or any similar document or take any other action (including, without limitation, possession of or control of any of the DIP Collateral or the obtaining of any consent of any third party) in order to validate the perfection of any DIP Liens.  If the DIP Lender chooses to file or record any such UCC-1 financing statements, mortgages, notices of lien, or similar documents, or take any other action to validate the perfection of any DIP Liens, the Debtors are authorized and directed to execute any agreements, instruments, and documents as the DIP Lender shall reasonably request, and all such agreements, instruments, and documents shall be deemed to have been filed or recorded as of the date of entry of this Interim Order, and the Debtors shall pay or reimburse the DIP Lender for the payment of any cost, fees, or expenses (including, without limitation, recording taxes) payable in connection with the filing or recordation of any UCC-1 financing statements, mortgages, notices of lien, or similar documents.  The DIP Lender may, in its discretion, file a certified copy of this Interim Order in any filing office in any jurisdiction in which the Borrower has or maintains any DIP Collateral, and each filing office is directed to accept such certified copy of this Interim Order for filing and recording.

17.     Reimbursement of Expenses.  All reasonable and documented costs and expenses incurred by the DIP Lender for which the Borrower are obligated under the DIP Documents shall form a part of the DIP Obligations and shall be paid by the Borrower (without the necessity of filing any application with or obtaining further order from the Court) in accordance with the terms

17

50720473.1

of the DIP Documents (whether or not budgeted in the Budget); *provided* that no written objection from the United States Trustee or any Committee is received within twenty (20) days (the "Review Period") after receipt thereby of invoice(s) thereof (subject in all respects to applicable privileges and work product doctrines). Any written objection by any of the foregoing persons shall specify the specific charges and amounts that are objected to and the rationale for any such objection. If an objection is received as to any portion of such invoice(s), the Debtors shall promptly pay after the Review Period the portion of such invoice(s) not subject to objection, and the Court shall decide any such objection unless otherwise resolved.

18. Amendments to DIP Documents. The Debtors and the DIP Lender are hereby authorized to execute, deliver, and implement, in accordance with the terms of the DIP Documents and without further order of the Court, any amendments to and modifications of any of the DIP Documents on the following conditions: (a) the amendment or modification must not constitute a material change to the terms of the DIP Documents, (b) copies of the amendment or modification must be served upon the United States Trustee, any Committee, and any other interested parties specifically requesting such notice, and (c) notice of the amendment or modification must be filed with the Court. Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court.

19. Events of Default; Remedies.

(a) Events of Default and Remedies. An "Event of Default" shall be deemed to have occurred and exist for purposes of this Interim Order and the DIP Documents upon the occurrence of (i) an "Event of Default" under (and as defined in) the DIP Agreement, (ii) any failure of compliance by the Debtors with respect to any of the provisions of this Interim Order, and such failure shall remain unremedied for ten (10) days after the earlier of (x) the date on which

18

the DIP Lender notifies the Debtors thereof and (y) the date on which the Debtors have knowledge thereof, (iii) the failure to obtain entry of the Final Order, in form and substance acceptable to the DIP Lender, on or before June X, 2026, or (iv) the Debtors' failure to timely and strictly comply with any of the following obligations and deadlines (the "Case Milestones"):

(a)  The Debtors shall present a minimum of three partnership options to Lender in a Letter of Intent to apply for funding and approval under the DOH's Safety Net Transformation Program on or before June 20, 2026.

(b)  Within thirty (30) days of written approval of a Letter of Intent by DOH, Debtors shall submit a formal application for a Safety Net Transformation Program award.

(c)  Debtors shall file a Plan of Reorganization, Motion to Dismiss or Notice of Conversion within X days of final decision on application for Safety Net Transformation Program.

(d)  Enforcement of Remedies.  Upon or after the occurrence of any Event of Default, the DIP Lender shall be fully authorized, in its sole discretion, to exercise all remedies available to it under the DIP Documents and applicable law, including, without limitation, the right to (i) declare all DIP Obligations to be immediately due and payable, (ii) declare the termination, reduction, or restriction of any further commitment to extend credit to the Borrower, to the extent any such commitment remains, and/or (iii) terminate the DIP Agreement and any DIP Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; *provided* that the DIP Lender shall provide five (5) Business Days' notice to the Debtors (with a copy to the United States Trustee and any Committee) prior to the enforcement of the DIP Liens or exercise of any other rights or remedies against the DIP Collateral.  The foregoing notice provisions are without prejudice to the rights of the DIP Lender to seek earlier relief from this Court upon appropriate notice and hearing

19

50720473.1

pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  In any hearing regarding the exercise of remedies, unless otherwise ordered by the Court, the sole and exclusive issue shall be whether or not an Event of Default has occurred and is continuing under any of the DIP Documents.  Upon or after the occurrence of an Event of Default, and notwithstanding the notice periods referred to above, the DIP Lender shall not be obligated to make any DIP Loans to the Borrower.  The automatic stay provisions of § 362 of the Bankruptcy Code are modified to the extent necessary to implement the provisions of this paragraph.  Additionally, injunctive or other similar provisions contained in any plan or any order confirming any plan shall not preclude the DIP Lender from exercising the rights and remedies provided to it pursuant to and in accordance with this Interim Order and the DIP Documents.

(e)     Application of DIP Collateral Proceeds.  Notwithstanding any contrary provision contained in this Interim Order, if the DIP Lender shall proceed to enforce the DIP Liens in respect of any DIP Collateral, then the DIP Lender, in its discretion, may elect to apply all proceeds of the DIP Collateral to the payment or cash collateralization of the DIP Obligations then outstanding, if any, in such order of application as the DIP Lender may elect in its discretion.

(f)     Rights Cumulative.  The rights, remedies, powers, and privileges conferred upon the DIP Lender pursuant to this Interim Order shall be in addition to, and cumulative with, those contained in the DIP Documents.

20.     Modification of Automatic Stay.  The automatic stay provisions of § 362 of the Bankruptcy Code are modified to the extent necessary to implement the provisions of this Interim Order and the DIP Documents, thereby permitting, among other things, (a) the DIP Lender to receive collections of DIP Collateral for application to the DIP Obligations as provided herein, (b) the DIP Lender to file or record any UCC-1 financing statements, mortgages, notices of lien,

50720473.1

or any similar documents evidencing or validating the perfection of the DIP Liens, and (c) the DIP Lender to exercise any of its rights and remedies as set forth in Paragraph 19 of this Interim Order and/or the DIP Documents, all without further order modifying or terminating the automatic stay of § 362 of the Bankruptcy Code.

21.     <u>Service of Order</u>.  Promptly after the entry of this Interim Order, the Debtors shall mail, by May __, 2026, a copy of this Interim Order, to: (a) the United States Trustee; (b) counsel for the Official Committee of Unsecured Creditors; (c) the DIP Lender and its counsel; (d) all secured creditors of record (if any); (e) the New York State Attorney General; (f) the parties having been given notice of the Interim Hearing; and (g) all parties (if any) who had filed requests for notices under Rule 2002 of the Bankruptcy Rules as of the date of this Interim Order; and shall file a certificate of service regarding same with the Clerk of the Court.  Such service shall constitute good and sufficient notice of this Interim Order and the Final Hearing.

22.     <u>No Deemed Control</u>.  By making DIP Loans to the Borrower and administering the financing relationship with the Borrower pursuant to the DIP Documents, the DIP Lender shall not be deemed to be in control of the Borrower or the Borrower' operations, or to be acting as a "responsible person," "managing agent", or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute) with respect to the operations or management of the Borrower.

23.     <u>Binding Effect; Successors and Assigns</u>.  Immediately upon entry of this Interim Order by the Court (notwithstanding any applicable law or rule to the contrary), the provisions of this Interim Order shall be binding on and inure to the benefit of all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Lender, the Debtors, and their respective

21

successors and assigns (including, without limitation, the Debtors' estates, any chapter 11 trustee hereafter appointed or elected for the estate of the Debtors, or any chapter 7 trustee appointed in any superseding chapter 7 cases); *provided, however*, that the DIP Lender shall not have any obligation to make DIP Loans to any chapter 7 or chapter 11 trustee appointed or elected for the estates of the Debtors.

24.     Order Controls.  This Interim Order and the DIP Documents shall be construed as being additive and supplemental to each other, and not limiting to each other, and any rights and remedies expressly therein shall be cumulative of each other and not limiting of each other. However, in the event of any direct contradiction between the terms of the DIP Documents and this Interim Order, the provisions of this Interim Order shall govern and control.  In the event of any inconsistency between the terms or conditions of this Interim Order and the terms or conditions of any other order entered by this Court prior to the entry of this Interim Order, the provisions of this Interim Order shall govern and control.

25.     Effect of Appeal.  All rights under § 364(e) of the Bankruptcy Code are hereby preserved to the fullest extent of the law.

26.     Effectiveness.  This Interim Order shall take effect and be enforceable immediately upon entry hereof notwithstanding any contrary Bankruptcy Rule, Local Rule, or Federal Rule of Civil Procedure, and there shall be no stay of execution or effectiveness of this Interim Order.

27.     Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Order according to its terms.

28.     Final Hearing.  The Final Hearing on the Motion shall be held at the United States Bankruptcy Court for the Northern District of New York, James M. Hanley U.S. Courthouse and Federal Building, 100 South Clinton Street, Syracuse, New York, on June __, 2026 or as soon

thereafter as counsel may be heard.  If any or all of the provisions of this Interim Order are modified, vacated, or stayed as the result of any objection timely filed and asserted at the Final Hearing, then, without limiting the provisions of paragraph 25 hereof, any DIP Obligations incurred prior to the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to the protections afforded under § 364(e) of the Bankruptcy Code and to all the rights, remedies, privileges, and benefits, including, without limitation, the DIP Liens and Super-Priority DIP Claim granted herein and pursuant to the DIP Documents with respect to all such DIP Obligations.

29.     Objection Deadline.  If any party in interest shall have an objection to any of the provisions of this Interim Order, such party shall be authorized to assert such objection at the Final Hearing, *provided* that a written statement setting forth the basis for such objection is filed with the Court, and concurrently served upon:  (a) the Office of the United States Trustee, 100 State Street, Suite 4230, Rochester, New York 14614, Attn: Erin P. Champion, Esq. (erin.champion@usdoj.gov); (b) counsel to the Debtors, Barclay Damon LLP, 1270 Avenue of the Americas, Suite 2310, New York, NY 10020, Attn: Janice B. Grubin (jgrubin@barclaydamon.com) and Ilan Markus (imarkus@barclaydamon.com); (c) counsel to the DIP Lender, Attorney General, Bankruptcy Litigation Unit Civil Recoveries Bureau, Attn:  Martin A. Mooney, Esq. (Assistant Attorney General Section Chief), The Capitol, Albany, New York 12224-0341; (martin.mooney@ag.ny.gov) (d) counsel for the Official Committee of Unsecured Creditors, Dentons US LLP, 1221 Avenue of the Americas, 25th Floor, New York, New York 10020, Attn: Lauren Macsoud, Esq. (lauren.macksoud@dentons.com) and Dentons Bingham Greenebaum, LLP, One City Center, Suite 11100, Portland, Maine 04101-6420, Attn: Andrew C. Helman, Esq. (andrew.helman@dentons.com) and Kyle D. Smith, Esq.

23

50720473.1

(kyle.d.smith@dentons.com); and (e) all parties (if any) who had filed requests for notices under Rule 2002 of the Bankruptcy Rules as of the date of this Interim Order; so that such objections and responses are filed on or before 4:00 p.m., prevailing Eastern Standard time on May __, 2026. Any objecting party should appear at the Final Hearing to assert the basis for such objection before the Court or the Court may deem such objection to have been waived and abandoned by such objecting party.

# # #

50720473.1