**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____x
:
In re:                                                        :          Chapter 11
:
NORTH STAR HEALTH ALLIANCE.,        :          Case No. 26-60099 (WAK)
_et al._[1]                                                   :
:          (Jointly Administered)
:
:
Debtors-in-Possession.              :
_____x

**OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO
SECTIONS 364(c) AND 364(d) OF THE BANKRUPTCY CODE (A) AUTHORIZING
DEBTORS TO (i) OBTAIN POSTPETITION, SECURED, SUPER-PRIORITY
FINANCING ON A PERMANENT BASIS, AND (ii) BORROW UNDER SUCH
POSTPETITION FACILITY ON AN INTERIM BASIS, PENDING A FINAL
HEARING, (B) PROVIDING FOR PAYMENTS TO SECURED CREDITORS,
AND (C) SCHEDULING INTERIM AND FINAL HEARINGS ON THE
MOTION, PURSUANT TO BANKRUPTCY RULE 4001**

M&T Bank ("**M&T**") by and through its undersigned counsel, Buchanan Ingersoll &

Rooney P.C., hereby files this Objection (this "**Objection**") to the Debtors' _Motion for an Order_

_Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code (A) Authorizing Debtors to (i)_

_Obtain Postpetition, Secured, Super-Priority Financing on a Permanent Basis, and (ii) Borrow_

_Under Such Postpetition Facility on an Interim Basis, Pending a Final Hearing, (b) Providing for_

_Payments to Secured Creditors, and (c) Scheduling Interim and Final Hearings on the Motion,_

_Pursuant to Bankruptcy Rule 4001_ [Dkt 308](the "**DIP Motion**"), filed by the above-captioned

debtors-in-possession (the "**Debtors**"). In support of this Objection, M&T respectfully states as

follows:

## I.       PRELIMINARY STATEMENT

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

1.    M&T is a fully secured creditor with sufficient collateral to repay its claim in full. If the DIP Motion is granted over M&T's objection, it is highly likely M&T will be rendered *fully unsecured* with one swift stroke of this Court's pen.

2.    While M&T has and continues to support the Debtors' efforts to restructure, there are limits.  The law protects secured creditors such as M&T from having their property rights taken from them by setting an extremely high bar for granting priming liens in connection with debtor-in-possession financing.  Here, despite the Debtors' well-documented liquidity crisis, the Debtors now assert that M&T is adequately protected by equity in the Debtors' alleged accounts receivables and "enterprise value". But the Debtors' statements ring hollow, and the Debtors have offered *zero evidence* of this alleged equity cushion in support of the DIP Motion.[2]

3.    Non-consensual priming DIP liens are extraordinary for good reason.  Although M&T holds a relatively small claim in the grand scheme of these cases, this Court should not allow M&T's bargained-for pre-petition rights to be trampled through non-consensual priming liens.[3]

4.    M&T respectfully requests that this Honorable Court deny or condition the relief sought in the DIP Motion as follows: (1) deny the DIP Motion to the extent that priming liens over M&T's collateral are required, (2) carve-out M&T's secured claim from the priming liens, or (3) defer ruling on of the appropriateness of the priming liens on an interim basis to allow the Debtors, M&T, DASNY, and other parties in interest additional time to reach a resolution of this matter.

---

[2] If the Debtors are correct as to the value of said equity cushion, there is no need to prime M&T at all, as the DIP Lender would be fully protected by the very same equity cushion.

[3] Given the small amount of M&T's unsecured claim, it is unclear why priming is even necessary here.  M&T's claim is less than 1% of the total amount of the DIP and less than 5% of the proposed professional fee Carve-Out (as defined below) in these cases.  Surely, the success of the Debtor's reorganization does not rest on the decision to prime a $500,000 secured creditor.  However, to M&T, the decision to prime is material, as M&T is at serious risk of being converted from fully secured to fully unsecured.

## II.  BACKGOUND

5.  The Debtors filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code on February 10, 2026 (the "**Petition Date**") in the United States Bankruptcy Court for the Northern District of New York (the "**Court**"), commencing the Debtors' chapter 11 cases (these "**Chapter 11 Cases**").

6.  Prior to the Petition Date, M&T made a revolving line of credit (the "**Revolving Line of Credit**") available to Debtor Carthage Area Hospital, Inc. ("**Carthage**") up to a maximum principal amount of Five Hundred Thousand ($500,000.00) pursuant to which Carthage, together with Meadowbrook Terrace, Inc., ("**Meadowbrook Terrace**") granted to M&T a security interest in the collateral set forth therein (the "**Security Agreement**") (collectively, with the Loan Agreement, the Note, the Security Agreement, the "**Original Loan Documents**").

7.  The indebtedness to M&T evidenced by the Loan Documents is secured by a valid, properly perfected lien and security interest covering all personal property of Carthage and Meadowbrook Terrace.

8.  For ten (10) consecutive weeks, this Court has entered week-to-week Interim Orders authorizing the Debtors' use of cash collateral while the Debtors pursued DIP financing. *See* Dkt Nos. 31, 57, 84, 124, 158, 173, 203, 225, 295 & 298.  M&T has consented to each and every one despite not receiving any adequate protection payments and has generally supported the Debtors' efforts to reorganize.

9.  M&T objects to the relief sought in the Motion for the reasons set forth below.

### III.    OBJECTIONS

#### A.  The Debtor has not Established that M&T is Adequately Protected.

10.    Under the Bankruptcy Code, debtors may only obtain postpetition financing "secured by a senior or equal lien on property of the estate that is subject to a lien only if" adequate protection is provided to parties whose liens are primed. 11 U.SC. § 364(d)(1)(B).

11.    A non-consensual priming lien is an extraordinary remedy. *See In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) (citing *In re Seth Co., Inc.*, 281 B.R. 150, 153 (Bankr. D. Conn. 2002)) ("However, granting post-petition financing on a priming basis is extraordinary and is allowed only as a last resort.").

12.    A finding of adequate protection in the face of a priming lien "should be *premised on facts, or on projections grounded on a firm evidentiary basis*." *In re Mosello*, 195 B.R. 277, 289, 292 (Bankr. S.D.N.Y. 1996) (emphasis added). Further, because a super-priority priming lien "displaces liens on which creditors have relied in extending credit," courts are "particularly cautious when assessing whether the creditors so displaced are adequately protected." *In re First South Savings Association*, 820 F.2d 700, 710 (5th Cir. 1987).

13.    A debtor has the burden of establishing that the holder of the lien to be subordinated is adequately protected. *See In re 495 Central Park Avenue Corp.,* 136 B.R. 626 (Bankr. S.D.N.Y. 1992); *In re Ames Department Stores, Inc.,* 115 B.R. 34 (Bankr. S.D.N.Y. 1990). That burden is a heavy one, particularly where the debtor relies solely on the existence of an equity cushion as evidence of adequate protection. *In re R & H Inv. Co.*, 46 B.R. 114, 116 (Bankr. D. Conn. 1985) ("When a debtor relies solely on the existence of an equity cushion to provide adequate protection to a secured creditor, the debtor assumes a heavy burden to overcome the creditor's assertion that the secured interest is at risk.").

14. The Debtors fail to satisfy this high burden, paying mere lip service to their burden of proof. The Debtors claim that "[t]here is ample remaining equity in the Debtors' encumbered property such that the current secured creditors (the "Secured Creditors"), NCU and M&T, have an ample equity cushion." *See* DIP Motion, ¶ 30. Assuming an equity cushion did exist, that alone would not be enough for the Debtor to meet its burden under 11 U.S.C. § 364(d)(1)(B). *See In re Thurston Highland Associates, LLC*, 2010 WL 148683 (Bankr. W.D. Wash. 2010) (holding existence of equity cushion insufficient adequate protection where there was insufficient evidence that use of loan proceeds would increase value of debtor's property).

15. However, here the Debtors have not even offered evidence in the DIP Motion itself that such an equity cushion exists. If anything, the Debtors' budgets, projections, and operating reports reflect the opposite.[4] The Motion is not accompanied by any affidavits, financial statements or appraisals in support of the Debtors' equity cushion analysis, and thus it should be denied. *See In re Morgan & Co., Inc.*, 2008 WL 4287870 (Bankr. E.D.N.C. 2008) (denying approval of priming liens where adequate protection depended on uncertain completion of projects and concluding that it was unfair to shift the risk of noncompletion to the existing secured party); *In re Barbara K. Enterprises, Inc.*, 2008 WL 2439649 (Bankr. S.D.N.Y. 2008) (denying proposed DIP facility where there was no adequate protection offered to compensate secured for the corresponding diminution of its interest).

16. The Debtors further allege that "[t]he estimated value of the Debtors' real estate is approximately $50 million and the Debtors' accounts receivables are in excess of $100 million."

---

[4] Realizing that the DIP Motion lacks any evidentiary basis whatsoever, the Debtors informed M&T that they intend to file Declarations prior to the hearing and request an evidentiary hearing less than 24 hours later. Such litigation by ambush should not be permitted and M&T should be afforded a reasonable time to prepare for any evidentiary hearing.

*Id.*, ¶ 30. Yet no proof has been provided, and this valuation is speculative at best. *See In re Mosello*, 195 B.R. at 290 ("the debtors' development scheme is beset by uncertainty and risk, and the ultimate outcome of the project is a matter of speculation based upon assumptions which cannot be quantified or verified by objective evidence."); *In re Megan-Racine Assocs.*, 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996)(to determine whether proposed adequate protection is either sufficient or overreaching, the bankruptcy court must value the collateral, determine the extent of the secured lender's or creditor's interest in the collateral, and the likelihood that the value of the collateral will decrease during the pendency of the bankruptcy case).

17.    There are no hard facts here on which to base a finding of adequate protection; two of the Debtors have not even filed their Schedules, and the intercompany accounts receivables listed as assets in the remaining Debtors' Schedule A/B[5] are not guaranteed given the fact that the Debtors' schedules, budgets, and monthly operating reports and cash flow projections all confirm a rapidly deteriorating cash position. For example, Carthage's Monthly Operating Report for February 2026 [Dkt No. 263] reflected total receipts of $10,042,435.00, with an ending cash balance of $3,791,086.00 despite reporting total $108,242,925.00 in accounts receivable. *See* Dkt No. 263 at Part 1 & 2. A month later, the Monthly Operating Report for March 2026 contemplates similar total receipts, but a much lower ending cash balance of $449,053.00, even with DOH funding. *See* Dkt. No. 279 at Part 1. Even if the Debtors have significant gross receivables, the record is clear that there are no *net* positive accounts receivable after payment of operating expenses which would be available to repay M&T.

---

[5] *See* Schedule A/B for Meadowbrook Terrace, Inc. [Dkt No. 302] and Northstar Health Alliance, Inc. [Dkt No. 300].

18. Indeed, to anyone even remotely familiar with the trajectory of this case, the notion that the Debtors' "enterprise value" provides an equity cushion to M&T defies logic and common sense. DIP Motion, ¶ 37.[6]

**B. The DIP Motion Impermissibly Attempts to Subordinate M&T to a $10 Million Professional Fee Carve-Out**

20. If granted, the DIP Motion would improperly elevate professional fees over M&T's secured claim. The DIP Motion provides for "Bankruptcy Costs," which includes a carve-out for professional fees (the "Carve-Out"), incurred in connection with this case up to the budgeted amount of $10.7 million. M&T has not consented to the Carve-Out, nor does it make any sense that $10.7 million in such "Bankruptcy Costs" should be primed over the objection of secured creditors. However, if the DIP Motion is granted as drafted, M&T will have *effectively been forced* to accept the Carve-Out thereby elevating professional fees and these unknown alleged costs ahead of its secured claim. M&T is not aware of any authority that authorizes bankruptcy courts to elevate administrative expenses over a secured claim or force a professional fee carve out on an unwilling secured creditor. *See In re California Webbing Industries, Inc.,* 2007 WL 1953018 (Bankr. D.R.I. 2007) ("[a] carve out may not exist unless ordered or approved by the Court with the consent of the affected secured creditor.").

21. To the extent the DIP Motion is granted, the Carve Out should be borne exclusively by the DIP Lender, not M&T.[7]

**C. The Proposed Repayment of the DOH VAPAP Advances ahead of M&T Should Not be Granted.**

---

[6] M&T notes that it does not presently have liens that would extend to this "enterprise value" in any event.

[7] Under the Bankruptcy Code, such professionals are generally entitled only to administrative claims under 11 U.S.C. § 507(b), which typically provide for payment after secured creditors' claims are satisfied. By elevating the fees of professionals ahead of secured creditors, who have relied on their liens to extend credit, the DIP Motion violates the priority scheme contemplated by Congress in the Bankruptcy Code. *See also In re Trim–X Inc.,* 695 F.2d 296, 301 (7th Cir.1982) (the estate, and not the secured creditor, bears the cost of the administrative expenses of the estate).

22.     Similar to the Carve-Out, approval of the DIP Motion would also elevate the DOH VAPAP Advances ahead of M&T.  The DOH VAPAP Advances were never formally approved by this Court despite clearly being made outside the ordinary course of business. M&T lacks sufficient information to evaluate the nature or terms of the DOH VAPAP Advances, including whether they were intended to be loans or some other form of support.

23.     Assuming *arguendo* that the DOH VAPAP Advances were in fact loans, they are unsecured as this Court never approved any grant of liens on such loans.

24.      M&T is not aware of any authority that would authorize a bankruptcy court to approve repayment of *unauthorized, unsecured post-petition* loans, at the expense of an existing *secured* creditor.[8]  Such unlawful reordering of priorities violates the very scheme Congress contemplated in the Bankruptcy Code and effectively stacks $15 million of new secured debt on top of M&T's secured claim.  This Court should not permit the repayment of VAPAP Advances from the proceeds of any debtor-in-possession financing. These advances should remain unsecured and treated in accordance with the priority scheme set forth in the Bankruptcy Code.

**D. Setoff Rights Cannot be Primed under Section 364 of the Bankruptcy Code**

25.     M&T agrees with NCU that its setoff rights under section 553 of the Bankruptcy Code cannot be primed under section 364. Section 553 provides that the Bankruptcy Code does not affect any right of a creditor to offset a mutual prepetition debt owing by the creditor to the debtor against a prepetition claim of the creditor against the debtor, except as provided in § 362 (providing that the automatic stay applies to setoff rights) and § 363 (providing, *inter alia*, for use

---

[8] While the Debtors assert the DOH VAPAP Advances are "secured" by alleged recoupment rights, this Court has not approved any such rights. The end result is that M&T, a pre-petition *fully secured* lender, gets primed, and the DOH, who made unsecured post-petition loans without formal Court authority, gets paid in full.

by a debtor of property of the estate and for sale of such property free and clear of interests of others in the property in certain circumstances). 11 U.S.C. § 553; *see also In re Patterson*, 967 F.2d at 509 (setoff right, as it exists under state law, is preserved by 11 U.S.C. § 553).

26.    The setoff provisions of § 553 make no mention of the DIP financing provisions of § 364. Insofar as much as a court finds that a setoff right, while treated as a secured claim by at least one other section (§ 506) of the Bankruptcy Code, is not a lien, there is no authority to prime setoff rights.

27.    Thus, for the same reasons asserted by NCU in their Objection to the DIP Motion filed at Dkt No. 319, M&T objects to the DIP Financing Motion to the extent it seeks to "prime" M&T's setoff rights as not being authorized under Section 364 and contrary to Section 551. M&T's setoff rights should be expressly preserved in any order approving the DIP Motion.

## IV.    CONCLUSION

WHEREFORE, For the reasons set forth above, M&T respectfully requests that this Honorable Court do one of the following:  (1) deny the DIP Motion to the extent that priming liens over M&T's collateral are required, (2) carve-out M&T's secured claim from the priming feature of the DIP liens, or (3) defer ruling on the question of priming liens on an interim basis to afford the Debtors, M&T and the DOH additional time to reach a resolution of this matter.[9] Further, this Objection is made without prejudice to, and expressly reserves, all rights, claims, defenses, and objections of the undersigned party, including but not limited to, the right to raise additional

---

[9] In the event that the Court overrules M&T's Objection in full, M&T should be granted the following as adequate protection: (1) regular adequate protection payments in an amount to be determined by the Court (2) second priority liens on *all* assets of the Debtors including real estate; (3) a super-priority administrative expense claim senior to all other administrative claims other than that of the DIP Lender; (4) subordination of the Carve-Out to M&T's secured claim.

defenses and to assert any rights or objections to the relief requested under applicable law, whether or not expressly set forth herein. The undersigned specifically reserves the right to respond to, object to, or take other appropriate action regarding any subsequent filings, schedules, reports, or pleadings filed by debtor or other interested parties. Nothing contained herein shall be deemed a waiver of any rights, claims, or defenses available under applicable law or in equity, all of which are hereby expressly reserved.

Dated:  May 20, 2026                                   Respectfully submitted,


                                      /s/ Christopher P. Schueller
Christopher P. Schueller
NY I.D. No. 509543
BUCHANAN INGERSOLL & ROONEY LLP
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: (412) 562-8432
Fax: (412) 562-1041
E-mail: christopher.schueller@bipc.com
*Attorneys for M&T Bank*