| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**NORTHERN DISTRICT OF NEW YORK**<br>**SYRACUSE DIVISION** | **Hearing Date/Time: June 24, 2026, 2:00 p.m.**<br>**Hearing Location: Syracuse, NY**<br>**Opposition Due: June 17, 2026** |

-------------------------------------------------------------------x

In re                                                      :  Chapter 11
                                                           :
NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1]  :  Case No. 26-60099-5-wak
                                                           :  Main Case
                              Debtors.            :  Jointly Administered
                                                           :  Case No. 26-30078
                                                           :  Case No. 26-30079
                                                           :  Case No. 26-60100

-------------------------------------------------------------------x

## MOTION FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PROFESSIONALS AND MEMBERS OF OFFICIAL COMMITTEE

North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move the Court for entry of an order, substantially in the form attached hereto as **Exhibit A**, establishing procedures for interim compensation and reimbursement of expenses incurred by the Debtors' and other Professionals (as defined below) and members of any official committees appointed in these Chapter 11 cases (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. Consideration of this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

1

50193869.1

2.      The statutory predicates for the relief requested herein are sections 105 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and Rule 2016-1 of the Local Rules of Bankruptcy Procedure for the Northern District of New York (the "Local Rules").

**BACKGROUND**

**A.      The Chapter 11 Cases**

3.      On February 10, 2026 (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in possession of their properties and are operating and managing their health care businesses, as debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

5.      By Notice of Appointment dated March 4, 2026, the Office of the United States Trustee ("UST") appointed an official committee of unsecured creditors (the "Committee").

6.      By Notice of Appointment dated March 12, 2026, the UST appointed Suzanne Koenig as the Patient Care Ombudsman.

**B.      The Debtors' Corporate Structure and Operations**

7.      North Star Health Alliance, Inc. was established in September 1993 and incorporated in the State of New York as a not-for-profit corporation.  North Star is the umbrella organization within which Carthage, Claxton, Meadowbrook and related affiliates coordinate governance, strategy, and shared services under what is referred to as the Transformation Plan.[2]

---

[2] Beginning in or about August 2022, North Star pursued a complex transition (the "Transformation Plan") designed to preserve access to acute care and behavioral health services in the North Country while addressing Claxton's unsustainable legacy cost and reimbursement structure as a Sole Community Hospital.  The Transformation Plan

2

50193869.1

North Star is a passive parent entity that does not itself exercise financial control over each member organization; rather, it serves as a platform for alignment and operational integration, including shared leadership and centralized administrative functions (*e.g.*, finance, human resources, information technology, compliance, revenue cycle coordination, and cash planning) that are critical to sustaining rural healthcare delivery across multiple campuses. The North Star system as a whole employs approximately 1,200 employees.

8.      Carthage was established in November 1921 and incorporated in the state of New York as a not-for-profit corporation.  Carthage operates a 25-bed Critical Access Hospital in each of Carthage, New York and Ogdensburg, New York serving a large, rural tri-county area.  Carthage holds a New York State Department of Health operating certificate (No. 2238700C; Facility ID/PFI 379 & Facility ID/PFI 15684) for primary care hospital-critical access hospital services located at 1001 West Street, Carthage, New York 13619 and 214 King Street, Suite A, Ogdensburg, New York 13669 (the "Claxton Campus").  The Claxton Campus is also the designated "9.39" hospital for the area.  While the New York State Department of Health ("DOH") issued the operating certificate reflecting this configuration, Centers for Medicare & Medicaid Services ("CMS") processes to recognize and operationalize the Claxton Campus as a critical access hospital (including surveys, enrollment steps, and related notifications) have involved additional steps and timing considerations.

9.      Claxton-Hepburn Medical Center, Inc. was established in December 1916 and incorporated in January 1917 in the state of New York as a not-for-profit corporation.  Following the implementation of the Transformation Plan, Claxton now operates exclusively as a standalone

---

involved coordinated planning among North Star member organizations, engagement with DOH and OMH, and stepwise regulatory actions. On October 23, 2024, DOH and OMH issued operating certificates that reorganized Claxton into two distinct hospital entities:  (i) a standalone inpatient psychiatric hospital (CHMC) and (ii) a separate acute-care campus operated by Carthage under a shared operating certificate (the Claxton Campus).

50193869.1

Article 31 Inpatient Psychiatric Hospital licensed by the New York State Office of Mental Health under Operating Certificate No. 8231002, located on the Claxton Campus.  Claxton provides acute inpatient behavioral health services for adults (28 beds) and children/adolescents (12 beds), including the region's only acute inpatient unit dedicated to children and adolescents.  Claxton also leads the Pathways to Recovery Peer Coaching program.

10.    Meadowbrook Terrace, Inc. was established in December 2011 and incorporated in the state of New York as a not-for-profit corporation.  Meadowbrook is a 60-bed assisted living facility (58 ALP beds and 2 Adult Home) that provides assisted living services for seniors in the North Country region. Meadowbrook is a key part of the Debtors' care continuum for elderly and medically fragile patients, supporting safe discharge planning and community-based care.

11.    Through these bankruptcy proceedings, the Debtors intend to continue to fulfill their mission by operating their facilities to deliver quality health care in their communities, supported by a local workforce.

**RELIEF REQUESTED**

12.    By this Motion, the Debtors respectfully request entry of an order pursuant to sections 105(a) and 331 of the Bankruptcy Code establishing an orderly process for the allowance and payment of compensation for professional services rendered and reimbursement of expenses incurred by professionals whose retentions are approved by this Court pursuant to sections 327, 328, or 1103 of the Bankruptcy Code and who will be required to file applications for allowance of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, on terms that satisfy the requirements of Bankruptcy Rule 2016 and Local Rule 2016-1.  In addition, the Debtors request entry of an order establishing a procedure for reimbursement of reasonable out-of-pocket expenses incurred by members of the Committee and any other statutory committees that may be appointed in these Chapter 11 Cases.

50193869.1

13. The Debtors further request that the Court limit service of Monthly Fee Statements, Interim Fee Applications, and Final Fee Applications (each defined below), to the Notice Parties (defined below), with notice of any hearings thereon to be served on any parties that have filed a request for service of filings pursuant to Bankruptcy Rule 2002.

14. The Debtors have consulted with the Committee regarding the relief requested in this Motion and the Committee supports the establishment of the Compensation Procedures as set forth herein.

## RETENTION OF PROFESSIONALS AND COMMITTEE MEMBERS

15. As of the date of this Motion, the Debtors have filed applications to retain, and the Court has entered orders authorizing the Debtors' retention of, Barclay Damon LLP as its lead bankruptcy attorneys, Accordion Partners, LLC, as their financial and restructuring advisors, Bousquet Holstein PLLC as its special corporate counsel, and Verrill Dana LLP as its special conflicts counsel. The Committee has filed an application to retain Dentons[3], as its counsel and FTI Consulting, Inc, as its financial and restructuring advisors. Both the Debtors and the Committee may also seek to retain additional professionals during the course of these Chapter 11 Cases.

16. Chapter 11 professionals retained under sections 327(a), 327(e), or 328(a) of the Bankruptcy Code in these Chapter 11 Cases, including all of the above will, unless otherwise provided by the specific terms of their retention, be required to submit interim and final Applications in accordance with sections 330 and 331 of the Bankruptcy Code (each, a "Professional," and, collectively, the "Professionals"). The compensation procedures proposed herein are intended to apply only to those Professionals retained under Section 327 or 328 of the

---

[3] "Dentons" includes attorneys from Dentons US LLP and Dentons Bingham Greenebaum LLC, all member firms of the Dentons Group.

50193869.1

Bankruptcy Code who will be directly involved in the administration of the Debtors' Chapter 11

Cases and not to any ordinary course professional.

## PROPOSED COMPENSATION PROCEDURES

17.     The Debtors propose that the monthly payment of compensation and

reimbursement of expenses of the Professionals (the "Compensation Procedures") be structured as

follows:

a.     On or before the 20th day of each month following the month for which compensation is sought (or as soon as reasonably practicable thereafter), each Professional seeking compensation or reimbursement may file a statement with the Court (a "Monthly Fee Statement") for such compensation or reimbursement and serve the Monthly Fee Statement, by electronic mail, U.S. mail, or overnight delivery, on:  (i) the Debtors, 14 King Street, Ogdensburg, NY 13669, Attn: James Porter, Chief Restructuring Officer; (ii) counsel for the Debtors, Barclay Damon LLP, Barclay Damon Tower, 1270 Avenue of the Americas, Suite 2310, New York, NY 10020, Attn: Janice B. Grubin, Esq.; (iii) counsel for the Committee, Dentons US LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Lauren M. Macksoud, Esq. and Dentons Bingham Greenebaum, LLP, One City Center, Suite 11100, Portland, ME 04101-6420, Attn: Andrew C. Helman, Esq.; (iv) counsel for any additional committees that may be hereafter appointed; and (v) the Office of the United States Trustee, Northern District of New York, 100 South State Street, Room 4230, Rochester, NY 14614, Attn: Erin P. Champion, AUST, Trial Attorney (collectively, the "Notice Parties"); provided, however, that with respect to any first Monthly Fee Statement for the period of time from the Petition Date through May 31, 2026, each Professional may submit its first Monthly Fee Statement by June 30, 2026.

b.     Any Professional that fails to file a Monthly Fee Statement for a particular month or months may subsequently submit a consolidated Monthly Fee Statement for a subsequent month or months.

c.     For those Professionals who bill based on time, each Monthly Fee Statement must contain a list of the individuals and their respective titles *(e.g.,* attorney, accountant, or paralegal) who provided services during the statement period, their respective billing rates, the aggregate hours spent by each individual, a reasonably detailed breakdown of the disbursements incurred, and contemporaneously maintained time entries for each individual in increments of tenths (1/10) of an hour.

50193869.1

d.  Any party in interest will have until 4:00 p.m. (Eastern Standard Time) on the 14th day following filing and service of a Monthly Fee Statement (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described in subparagraph (e) below. Upon the expiration of the Objection Deadline, a Professional may file a certificate of no objection ("CNO") with the Court with respect to the unopposed portion of the fees and expenses requested in its Monthly Fee Statement. After a CNO is filed, the Debtors are authorized and directed to pay the Professional an amount (the "Actual Monthly Payment") equal to the lesser of (i) eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested in the applicable Monthly Fee Statement (the "Maximum Monthly Payment") and (ii) eighty percent of (80%) the fees and one hundred percent (100%) of the expenses requested in the applicable Monthly Fee Statement that are not subject to an objection pursuant to subparagraph (e) below (the "Uncontested Monthly Payment").

e.  If any party in interest wishes to object to a Professional's Monthly Fee Statement, it must, on or before the Objection Deadline (or such later date as may be agreed to by the objecting party and the Professional whose Monthly Fee Statement is being contested): (i) file a written objection (an "Objection") with the Court and (ii) serve the Objection on the affected Professional and each of the other Notice Parties. Thereafter, the objecting party and the affected Professional may attempt to resolve the Objection on a consensual basis. If the parties are unable to reach a resolution of the Objection, the affected Professional may either (i) file a request with the Court for payment of the difference between the Maximum Monthly Payment and the Uncontested Monthly Payment (the "Incremental Amount") or (ii) forego payment of the Incremental Amount until the next interim or final fee Application hearing, at which time the Court will consider and resolve any outstanding Objections.

f.  Nothing herein shall require the Debtors to make any payments to Professionals, and all payments to Professionals otherwise authorized herein shall accrue but be suspended, during any period of time in which the Debtors believe in good faith that it does not have sufficient liquidity to make such payment.

g.  Each Professional may submit its first Monthly Fee Statement no earlier than the 30th day of June, 2026. This initial Monthly Fee Statement will cover the period from the Petition Date through May 31, 2026. Thereafter, the Professionals may file Monthly Fee Statements in the manner described above.

h.  The decision by any party not to object to a Monthly Fee Statement shall not be a waiver of any kind or prejudice that party's right to object to any Application subsequently made to the Court in accordance with the Bankruptcy Code.

7

i.    At approximately four-month intervals or such other intervals convenient to the Court (the "Interim Fee Period"), each of the Professionals may file with the Court and serve on the Notice Parties a request (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by such Professional in its Monthly Fee Statements, including any holdbacks, filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code.  Only the Court has authority to determine whether to award compensation and reimbursement pursuant to any Application, however all such Applications should be prepared in substantial conformity with, and may be reviewed by the United States Trustee pursuant to, the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* dated May 17, 1996 (28 C.F.R. Part 58, Appendix A), as published in 61 Fed. Reg 24889.[4] The Interim Fee Application must be accompanied by a cover sheet substantially in the form of Exhibit B attached hereto and include a brief description identifying:

      i.    the Monthly Fee Statements that are the subject of the request;

      ii.    the amount of fees and expenses requested;

      iii.    the amount of fees and expenses paid to date or subject to an Objection; and

      iv.    any other information requested by the Court or required by the Local Rules.

j.    Any Professional who fails to file an Interim Fee Application seeking approval of compensation and reimbursement paid pursuant to Monthly Fee Statements at least once every six (6) months shall be ineligible to receive further monthly payments until such an Interim Fee Application has been filed with the Court.

k.    The Debtor will request that the Court schedule a hearing on the Interim Fee Applications at least once every six (6) months or at such other intervals as the Court deems appropriate.  If no Objections are timely filed, the Court may grant an Interim Fee Application without a hearing.

l.    The pendency of an Objection to a Monthly Fee Statement or Interim Fee Application will not disqualify a Professional from future payment of compensation or reimbursement of expenses under the Compensation Procedures.  Any Professional that fails to file a Monthly Fee Statement or an Interim Fee Application when due or permitted will be ineligible to receive further interim payments of fees or expenses under the

---

[4] The United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases dated June 11, 2013 (28 C.F.R. Part 58, Appendix B), as published in 78 Fed Reg. 36248 and 78 Fed. Reg., 40507 (date correction only), are not applicable to this Chapter 11 Case.

8

50193869.1

Compensation Procedures until such time as a Monthly Fee Statement or Interim Fee Application is submitted by the Professional. There will be no other penalties for failing to file a Monthly Fee Statement or an Interim Fee Application in a timely manner.

m.    Neither the payment of, nor the failure to pay, in whole or in part, monthly compensation and reimbursement as provided herein, shall have any effect on the Court's interim or final allowance of compensation and reimbursement of expenses for any Professional pursuant to a final fee application ("Final Fee Application"). All fees and expenses paid to Professionals under the Compensation Procedures are subject to disgorgement until final allowance by the Court after notice and a hearing.

18.    The Debtors further request that the Court limit service of Monthly Fee Statements, Interim Fee Applications, and Final Fee Applications (each, an "Application") to the Notice Parties, with notice of any hearings thereon (a "Hearing Notice") to be served only on those parties that have filed a notice of appearance with the Clerk of this Court and requested notice of pleadings in these Chapter 11 Cases. Serving the Applications and the Hearing Notices in this manner will permit the parties most active in these Chapter 11 Cases to review and object to the Professionals' fees and will save unnecessary duplication and mailing expenses.

19.    The Debtors project that they will have sufficient cash available to make monthly and interim payments to Professionals retained in these cases in compliance with the Compensation Procedures set forth herein.

20.    The Compensation Procedures will enable the Debtors to closely monitor costs of administration, maintain appropriate cash flow, and implement efficient cash management procedures. Moreover, the Compensation Procedures will allow the Court and key parties in interest to ensure the reasonableness and necessity of the compensation and reimbursement sought pursuant to such procedures.

21.    The Debtors submit that the efficient administration of these Chapter 11 Cases will be significantly aided by establishing the foregoing Compensation Procedures. Accordingly, the

relief requested is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

## REIMBURSEMENT OF EXPENSES OF MEMBERS OF OFFICIAL COMMITTEES

22.     The Debtors anticipate that members of official committees (each, a "Committee Member") may incur certain out-of-pocket expenses and will seek reimbursement of those expenses from the Debtors.  Alternatively, counsel may advance out of pocket costs for Committee Members and include those amounts in its invoices.  For similar reasons to those stated above with respect to the Professionals, the Compensation Procedures should also apply to allow Committee Members to seek reimbursement either directly from the Debtors or through their counsel.

## BASIS FOR RELIEF REQUESTED

23.     Pursuant to section 331 of the Bankruptcy Code, all professionals are entitled to submit applications for interim compensation and reimbursement of expenses every 120 days, or more often if permitted by the court.  *See* 11 U.S.C. § 331.  In addition, section 105(a) of the Bankruptcy Code authorizes the court to issue any order "necessary or appropriate to carry out the provisions of the [Bankruptcy Code]," thereby codifying the bankruptcy court's inherent equitable powers.  11 U.S.C. § 105(a).

24.     In many cases in this circuit and others, courts have recognized that the permissive language of section 331 of the Bankruptcy Code, coupled with the court's inherent power under section 105(a) of the Bankruptcy Code, provides authority for the entry of orders establishing similar procedures for monthly compensation and reimbursement of expenses of professionals. *See, e.g., In re Metro Mattress, Inc.*, Case No. 24-30773 (Bankr. N.D.N.Y. Dec. 9, 2024); *In re The Diocese of Rochester,* Case No. 19-20905 (Bankr. W.D.N.Y. Dec. 5, 2019); *In re Herb Philipson's Army and Navy Stores Inc.,* Case No. 18-61376-6 (DD) (Bankr. N.D.N.Y. Nov. 20, 2018); *In re Nine West Holdings, Inc.,* Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 5, 2018);

10

50193869.1

*In re Cenveo, Inc.,* Case No. 18-22178 (RDD) (Bankr. S.D.N.Y. Mar. 8, 2018); *In re Runway Liquidation Holdings, LLC,* Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Avaya,* Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Mar. 28, 2017).

25.     Factors to consider in deciding whether to establish interim compensation procedures include "the size of [the] reorganization cases, the complexity of the issues involved, and the time required on the part of the attorneys for the debtors in providing services necessary to achieve a successful reorganization." *See, e.g., In re Intl Horizons, Inc.,* 10 B.R. 895, 897 (Bankr. N.D. Ga. 1981) (establishing procedures for monthly interim compensation and noting that "the Court does not wish to require that attorneys for the debtors in possession fund this reorganization proceeding.").

26.     As set forth herein, the Compensation Procedures proposed in this Motion are designed to promote the efficient administration of these Chapter 11 Cases, while at the same time allowing for appropriate monitoring of the Professionals' fees.

27.     The size of these Chapter 11 Cases and the amount of time and effort that will be required from the Professionals to appropriately address the Debtors' operations and restructuring efforts justifies the Compensation Procedures requested herein.  Indeed, such Compensation Procedures are necessary to ensure that the Professionals are compensated fairly and timely for their services in this case and are not forced to bear undue financial burden or risk caused by delays in payment.  The Debtors respectfully submit that the Compensation Procedures sought herein are appropriate in light of the foregoing.

## NOTICE

28.     Notice of this Motion has been provided to the (i) the Office of the United States Trustee; (ii) counsel for the Official Committee of Unsecured Creditors; (iii) counsel to M&T Bank; (iv) counsel to Northern Credit Union; (v) Carthage Savings & Loan; (vi) NBT Bank;

11

50193869.1

(vii) Community Bank, N.A.; (viii) the New York State Department of Health; (ix) the Centers for Medicare & Medicaid Services; (vi) the Office of the U.S. Attorney for the Northern District of New York; (x) the Office of the New York State Attorney General; (xi) the Internal Revenue Service; and (xii) any party that has requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  The Debtors submit that such notice is sufficient and appropriate under the circumstances and that no other or further notice need be given.

## <u>NO PRIOR REQUEST</u>

29.    The Debtors have not previously sought the relief requested herein from this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order attached hereto as <u>Exhibit A</u> respectively, granting the relief requested herein and providing such other and further relief as the Court deems just and proper.

Dated:  May 29, 2026
New York, New York

**BARCLAY DAMON LLP**
*Counsel for Debtors and Debtors-In-Possession*

By:    */s/Ilan Markus*
Janice B. Grubin
Ilan Markus (admitted *pro hac vice*)
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Janice B. Grubin:
(212) 784-5808; jgrubin@barclaydamon.com
Ilan Markus:
(203) 672-2661; imarkus@barclaydamon.com

12

# **<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

------------------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : Case No. 26-60099-5-wak |
| | : Main Case |
| Debtors. | : Jointly Administered |
| | : Case No. 26-30078 |
| | : Case No. 26-30079 |
| | : Case No. 26-60100 |

------------------------------------------------------------------x

## ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PROFESSIONALS AND MEMBERS OF OFFICIAL COMMITTEES

Upon consideration of the motion of North Star Health Alliance, Inc. ("North Star"),

Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc. ("Claxton"),

and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and debtors-in-

possession (collectively, the "Debtors") seeking entry of an order (this "Order") under sections

105 and 331 of Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-1 of the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

1

Local Rules establishing procedures for interim compensation and reimbursement of expenses for Professionals and members of official committees and granting other relief (the "Motion")[2]; the Court having reviewed and considered the support for the Motion provided in the record and at the hearing on the Motion; it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, creditors and parties in interest; it appearing that this Court has jurisdiction over this matter pursuant to U.S.C. §§ 157 and 1334; it appearing that this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); it appearing that venue of these proceedings and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; due and proper notice of this Motion having been provided; it appearing that no other or further notice of the Motion need be provided; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      All objections to the Motion or the relief requested in the Motion that have not been made, withdrawn, waived or settled, and all representation of rights included therein, are overruled and disallowed on the merits.

3.      Except as may otherwise be provided in any order of the Court authorizing the retention of a specific Professional or with respect to the retention and compensation of ordinary course professionals not engaged primarily to provide service related to these Chapter 11 Cases, all Professionals retained under sections 327(a), 327(e), or 328(a) of the Bankruptcy Code in these Chapter 11 Cases may seek monthly compensation in accordance with the following procedures:

   a. On or before the 20th day of each month following the month for which compensation is sought (or as soon as reasonably practicable thereafter), each Professional seeking compensation or reimbursement may file a statement with the Court (a "Monthly Fee Statement") for such compensation or reimbursement and serve the Monthly Fee Statement, by

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

50193869.1

electronic mail, U.S. mail, or overnight delivery, on: (i) the Debtors, 14 King Street, Ogdensburg, NY 13669, Attn: James Porter, Chief Restructuring Officer; (ii) counsel for the Debtors, Barclay Damon LLP, Barclay Damon Tower, 1270 Avenue of the Americas, Suite 2310, New York, NY 10020, Attn: Janice B. Grubin, Esq.; (iii) counsel for the Committee, Dentons US LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Lauren M. Macksoud, Esq. and Dentons Bingham Greenebaum, LLP, One City Center, Suite 11100, Portland, ME 04101-6420, Attn: Andrew C. Helman, Esq.; (iv) counsel for any additional committees that may be hereafter appointed; and (v) the Office of the United States Trustee, Northern District of New York, 100 South State Street, Room 4230, Rochester, NY 14614, Attn: Erin P. Champion, AUST, Trial Attorney (collectively, the "Notice Parties"); provided, however, that with respect to any first Monthly Fee Statement for the period of time from the Petition Date through May 31, 2026, each Professional may submit its first Monthly Fee Statement by June 30, 2026.

b.   Any Professional that fails to file a Monthly Fee Statement for a particular month or months may subsequently submit a consolidated Monthly Fee Statement for a subsequent month or months.

c.   For those Professionals who bill based on time, each Monthly Fee Statement must contain a list of the individuals and their respective titles *(e.g.,* attorney, accountant, or paralegal) who provided services during the statement period, their respective billing rates, the aggregate hours spent by each individual, a reasonably detailed breakdown of the disbursements incurred, and contemporaneously maintained time entries for each individual in increments of tenths (1/10) of an hour.

d.   Any party in interest will have until 4:00 p.m. (Eastern Standard Time) on the 14th day following filing and service of a Monthly Fee Statement (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described in subparagraph (e) below. Upon the expiration of the Objection Deadline, a Professional may file a certificate of no objection ("CNO") with the Court with respect to the unopposed portion of the fees and expenses requested in its Monthly Fee Statement. After a CNO is filed, the Debtors are authorized and directed to pay the Professional an amount (the "Actual Monthly Payment") equal to the lesser of (i) eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested in the applicable Monthly Fee Statement (the "Maximum Monthly Payment") and (ii) eighty percent of (80%) the fees and one hundred percent (100%) of the expenses requested in the applicable Monthly Fee Statement that are not subject to an objection pursuant to subparagraph (e) below (the "Uncontested Monthly Payment").

e.   If any party in interest wishes to object to a Professional's Monthly Fee Statement, it must, on or before the Objection Deadline (or such later date

3

as may be agreed to by the objecting party and the Professional whose Monthly Fee Statement is being contested): (i) file a written objection (an "Objection") with the Court and (ii) serve the Objection on the affected Professional and each of the other Notice Parties. Thereafter, the objecting party and the affected Professional may attempt to resolve the Objection on a consensual basis. If the parties are unable to reach a resolution of the Objection, the affected Professional may either (i) file a request with the Court for payment of the difference between the Maximum Monthly Payment and the Uncontested Monthly Payment (the "Incremental Amount") or (ii) forego payment of the Incremental Amount until the next interim or final fee Application hearing, at which time the Court will consider and resolve any outstanding Objections.

f.      Nothing herein shall require the Debtors to make any payments to Professionals, and all payments to Professionals otherwise authorized herein shall accrue but be suspended, during any period of time in which the Debtors believe in good faith that it does not have sufficient liquidity to make such payment.

g.      Each Professional may submit its first Monthly Fee Statement no earlier than the 20th day of June, 2026. This initial Monthly Fee Statement will cover the period from the Petition Date through May 31, 2026. Thereafter, the Professionals may file Monthly Fee Statements in the manner described above.

h.      The decision by any party not to object to a Monthly Fee Statement shall not be a waiver of any kind or prejudice that party's right to object to any Application subsequently made to the Court in accordance with the Bankruptcy Code.

i.      At approximately four-month intervals or such other intervals convenient to the Court (the "Interim Fee Period"), each of the Professionals may file with the Court and serve on the Notice Parties a request (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by such Professional in its Monthly Fee Statements, including any holdbacks, filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code. Only the Court has authority to determine whether to award compensation and reimbursement pursuant to any Application, however all such Applications should be prepared in substantial conformity with, and may be reviewed by the United States Trustee pursuant to, the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* dated May 17, 1996 (28 C.F.R. Part 58, Appendix A), as published in 61 Fed. Reg 24889.[3]

---

[3] The United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases dated June 11, 2013 (28 C.F.R. Part

4

The Interim Fee Application must be accompanied by a cover sheet substantially in the form of Exhibit B attached hereto and include a brief description identifying:

i.      the Monthly Fee Statements that are the subject of the request;

ii.     the amount of fees and expenses requested;

iii.    the amount of fees and expenses paid to date or subject to an Objection; and

iv.     any other information requested by the Court or required by the Local Rules.

j.      Any Professional who fails to file an Interim Fee Application seeking approval of compensation and reimbursement paid pursuant to Monthly Fee Statements at least once every six (6) months shall be ineligible to receive further monthly payments until such an Interim Fee Application has been filed with the Court.

k.      The Debtor will request that the Court schedule a hearing on the Interim Fee Applications at least once every six (6) months or at such other intervals as the Court deems appropriate. If no Objections are timely filed, the Court may grant an Interim Fee Application without a hearing.

l.      The pendency of an Objection to a Monthly Fee Statement or Interim Fee Application will not disqualify a Professional from future payment of compensation or reimbursement of expenses under the Compensation Procedures. Any Professional that fails to file a Monthly Fee Statement or an Interim Fee Application when due or permitted will be ineligible to receive further interim payments of fees or expenses under the Compensation Procedures until such time as a Monthly Fee Statement or Interim Fee Application is submitted by the Professional. There will be no other penalties for failing to file a Monthly Fee Statement or an Interim Fee Application in a timely manner.

m.      Neither the payment of, nor the failure to pay, in whole or in part, monthly compensation and reimbursement as provided herein, shall have any effect on the Court's interim or final allowance of compensation and reimbursement of expenses for any Professional pursuant to a final fee application ("Final Fee Application"). All fees and expenses paid to Professionals under the Compensation Procedures are subject to disgorgement until final allowance by the Court after notice and a hearing.

_____

58, Appendix B), as published in 78 Fed Reg. 36248 and 78 Fed. Reg., 40507 (date correction only), are not applicable to this Chapter 11 Case.

5

4.      All Committee Members appointed in these Chapter 11 Cases must seek reimbursement of expenses incurred in accordance with the Compensation Procedures, provided, however, Counsel to any official committee may, in accordance with the foregoing procedures for monthly compensation and reimbursement of Professionals, collect and submit statements of expenses, with supporting receipts or other documentation, on behalf of such Committee Members.

5.      Required service of Monthly Fee Statements, Interim Fee Applications, and Final Fee Applications (the "Applications") is limited to the Notice Parties.  Only those parties who have filed a notice of appearance with the Clerk of this Court and requested notice of pleadings in these Chapter 11 Cases shall be entitled to receive Hearing Notices with respect to any hearing to be held on the Applications.

6.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

7.      Notwithstanding the possible applicability of Rules 6004, 7062, or 9014 of the Bankruptcy Rules, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

# # #

6

50193869.1

# **<u>EXHIBIT B</u>**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

-------------------------------------------------------------------x
In re                                                      : Chapter 11
                                                           :
NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1]  : Case No. 26-60099-5-wak
                                                           : Main Case
                               Debtors.                    : Jointly Administered
                                                           : Case No. 26-30078
                                                           : Case No. 26-30079
                                                           : Case No. 26-60100
-------------------------------------------------------------------x

**MONTHLY FEE STATEMENT OF _____ FOR COMPENSATION**
**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**
**AS _____ FOR THE PERIOD _____**

Name of Applicant:                       _____

Authorized to Provide
Professional Services to:                _____

Date of Retention:                       _____

Period for which compensation and
reimbursement is sought:                 _____

Amount of Compensation sought as
actual, reasonable and necessary:        _____

Amount of Expense Reimbursement sought
as actual, reasonable and necessary:     _____

This is a: _____ monthly      _____ quarterly      _____ final statement.

This is Applicant's _____ monthly fee statement in this case.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

50193869.1