**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : Case No. 26-60099-5-wak |
| | : Main Case |
| Debtors. | : Jointly Administered |
| | : Case No. 26-30078 |
| | Case No. 26-30079 |
| | Case No. 26-60100 |

-------------------------------------------------------------------x

**LIMITED OBJECTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS TO DEBTORS'
MOTION PURSUANT  TO SECTIONS 105(A), 363(C), 345(B), 1107(A)
AND 1108 OF THE  BANKRUPTCY CODE AUTHORIZING DEBTORS
TO CONTINUE TO (I) USE EXISTING CASH MANAGEMENT SYSTEM,
AND (II) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS**

The Official Committee of Unsecured Creditors of North Star Health Alliance, Inc., *et al.*,

(the "Committee"), files this limited objection (the "Objection") to the *Motion Pursuant to*

*Sections 105(a), 363(c), 345(b), 1107(a) and 1108 of the Bankruptcy Code Authorizing Debtors*

*to Continue to (I) Use Existing Cash Management System, and (II) Maintain Existing Bank*

*Accounts and Business Forms* [Dkt. No. 337] (the "Cash Management Motion"),[2] filed by North

Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-

Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook" and

together with North Star, Carthage, and Claxton, the "Debtors"). In support of this Objection, the

Committee states as follows:

---

[1]	The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

[2]	Capitalized terms used but not defined in this Objection shall have the meaning ascribed to such term in the Cash Management Motion.

1

27039942.v1

## PRELIMINARY STATEMENT

1.      The Committee does not oppose the Debtors' request for authority to continue using their existing bank accounts, banking institutions, and business forms, and the Committee appreciates the importance of maintaining continuous cash management operations during these Chapter 11 Cases. However, the Cash Management Motion fails to address how the Debtors will track and account for intercompany transfers among Debtors and between Debtors and non-debtor affiliates, which is critical in a complex, multi-debtor bankruptcy proceeding.

2.      Accordingly, the Committee files this limited Objection to seek the addition of specific language to any order granting the Cash Management Motion to ensure that intercompany transfers are appropriately tracked and reported to prevent prejudice to any one Debtor's estate and its creditors. Subject to the inclusion of the safeguards set forth below, the Committee would consent to the entry of an order granting the Cash Management Motion.

## FACTUAL BACKGROUND

3.      On February 10, 2026 (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate and manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      By Notice of Appointment dated March 4, 2026, the Office of the United States Trustee (the "UST") appointed the Committee.

5.      On May 26, 2026, the Debtors filed the Cash Management Motion seeking authority to continue to use their existing cash management system (the "Cash Management System"), to maintain their existing bank accounts (the "Bank Accounts"), and to use their existing

2

27039942.v1

business forms. The Cash Management Motion acknowledges in paragraph 19 that the Debtors

"will continue to maintain records respecting all transfers between and among the PrePetition Bank

Accounts so that all transactions can be ascertained after they have occurred." However, the Cash

Management Motion provides no mechanistic description of how intercompany balances will be

recorded, reconciled, or reported to the Committee and other parties in interest.

6.      The Committee's deadline to object to the Cash Management Motion was extended

by Order of the Court through Friday, June 12, 2026. [Dkt. No. 379].

## ARGUMENT

7.      Reports produced to date in these Chapter 11 Cases and the Debtors' Schedules and

Statements of Financial Affairs reflect substantial intercompany transfers among the Debtor

entities. The interim DIP budget, attached as Exhibit B (the "DIP Budget") to the *Interim Order*

*(I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Granting Liens and Super-*

*Priority Claims, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* [Dkt.

No. 357] (the "Interim DIP Order") shows regular intercompany transfers between Debtor

entities.[3] The Committee believes that appropriate accounting safeguards and intercompany

reporting requirements are essential to protect the interests of creditors of each individual Debtor

estate.

---

[3]      The DIP Budget projects substantial intercompany transfers among the Debtor estates over the 13-week forecast period. Specifically, the DIP Budget shows that Carthage is projected to transfer approximately $2,015,000.00 every two weeks to Claxton (approximately $14,105,000.00 in total over the 13-week period), while Claxton receives approximately $2,087,095.00 every two weeks (approximately $14,609,665.00 in total). Meadowbrook is projected to pay out approximately $87,095.00 every two weeks (approximately $609,665.00 in total), while North Star receives approximately $15,000.00 per bi-weekly period (approximately $105,000 in total). These intercompany transactions demonstrate a structural cash deficit at Claxton and North Star that is being funded by transfers from Carthage, which itself is the direct borrower under the DIP facility.

27039942.v1

8.      The DIP Budget also raises concerns regarding the absence of budgeted expenses for certain of the Debtor estates.[4] The DIP Budget reflects that bankruptcy administrative expenses, which the Committee believes includes professional fees and U.S. Trustee quarterly fees, are budgeted solely under Carthage. The DIP Budget reflects no bankruptcy administrative expenses budgeted for the Claxton, Meadowbrook Terrace, or North Star estates. This raises concerns about how administrative expenses will be allocated among the Debtor estates and whether the estates of Claxton, Meadowbrook, and North Star will bear their proportionate share of such expenses. If the Debtors intend to cover these expenses through intercompany transfers from Carthage, then an appropriate allocation mechanism is needed to ensure that the Carthage estate is not subsidizing administrative costs that should properly be allocated to the other Debtor estates, potentially prejudicing Carthage's creditors.

9.      An additional concern is that a lack of robust tracking and reporting of intercompany transfers may prejudice creditor recoveries in certain estates. Without adequate accounting of intercompany transfers, there is a risk that a given Debtor estate may subsidize the operations of the others at the expense of its own creditors. Absent consolidation of estates, each Debtor's property constitutes a separate estate under section 541 of the Bankruptcy Code and creditors of each estate are entitled to distributions based on the assets and liabilities of that particular estate.

10.     Without contemporaneous "due-to/due-from" ledgers, it will be difficult, if not impossible, to reconcile intercompany accounts at confirmation or in any sale or transition scenario. Such reconciliation is critical to determining the relative claims and recoveries of each

---

[4]      *See Limited Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for an Order Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code Authorizing the Debtors to Obtain Postpetition Secured, Super-Priority Financing on a Permanent Basis and Granting Other Related Relief*, ¶ 44 [Dkt. No. 378].

4

Debtor's creditors and to ensuring that any plan of reorganization or sale transaction properly allocates value among the estates.

11.     While the Debtors have represented generally in the Cash Management Motion that intercompany transfers are tracked, no intercompany reporting has been provided to the Committee to date. In order to fulfill its statutory duties to monitor the Debtors' operations and protect the interests of unsecured creditors without access to regular, the Committee request fulsome reporting on intercompany transactions.

## RELIEF REQUESTED

12.     To address its concerns, the Committee respectfully requests that any order granting the Cash Management Motion incorporate the following relief:

13.     *First*, the Debtors should be required to following certain mandatory intercompany accounting procedures, requiring the Debtors to prepare and maintain contemporaneous "Due-To/Due-From" ledgers between each Debtor estate and between any Debtor and non-Debtor affiliates. Such ledgers shall reflect all intercompany transactions, including but not limited to cash transfers, allocations of shared expenses, management fees, and any other transactions that give rise to intercompany receivables or payables.

14.     *Second*, the Debtors should be required to provide a monthly report on intercompany transfers to the Committee. No later than 20 days after each month-end, the Debtors shall deliver to the Committee an intercompany transfer matrix, in a form reasonably acceptable to the Committee, that reflects all intercompany transactions for the prior month, including (a) the parties to each transaction, (b) the date of each transaction, (c) the amount of each transaction, and (d) a brief description of the nature or business purpose of each transaction.

27039942.v1

15.     *Third*, the Debtors should allocate professional fees and U.S. Trustee quarterly fees among the Debtors. Within 30 days of entry of an order approving the Cash Management Motion, the Debtors shall file with the Court and serve upon the Committee a proposed allocation methodology for bankruptcy administrative expenses among the Debtor estates, including but not limited to professional fees, UST quarterly fees, and other chapter 11 administrative costs. Such allocation methodology shall be designed to ensure that each Debtor estate bears its appropriate share of administrative expenses and that no individual estate is prejudiced by bearing a disproportionate share of such expenses. The Committee shall have 20 days from service of such allocation methodology to object, and any unresolved disputes shall be submitted to the Court for determination.

16.     *Fourth*, the Debtors should be required to provide the Committee with additional notice, beyond the above referenced reporting requirements, of any large intercompany transfers outside the ordinary course of the Debtors' businesses. The Debtors shall provide the Committee 3 business days written notice regarding the nature and the business purpose for any non-ordinary intercompany transfer equal to or exceeding $200,000.00.  The Debtor should also provide the Committee not less than 3 business days' written notice of the opening or closure of any bank account maintained by the Debtors.

17.     *Finally*, all postpetition intercompany transactions authorized under an order granting the Cash Management Motion that result in claims against a Debtor should be accorded super-priority administrative expense status under section 503(b) of the Bankruptcy Code, provided that such super-priority administrative expense status shall be junior to (a) any carve-out for professional fees established under any order authorizing debtor-in-possession financing, and (b) fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6).

27039942.v1

## **CONCLUSION**

For the foregoing reasons, the Committee respectfully requests that the Court sustain the

Committee's Objection and grant the Cash Management Motion only upon inclusion of the

intercompany accounting, reporting, and notice provisions set forth above, and grant such other

relief as the Court deems just and proper.


Dated: June 12, 2026                              Respectfully submitted,

                                                  */s/ Andrew C. Helman*
                                                  Andrew C. Helman
                                                  Kyle D. Smith
                                                  **DENTONS BINGHAM GREENEBAUM, LLP**
                                                  One City Center
                                                  Suite 11100
                                                  Portland, ME 04101-6420
                                                  Telephone: (207) 810-4955
                                                  Email: andrew.helman@dentons.com
                                                          kyle.d.smith@dentons.com

                                                  David K. (D.K.) Boydstun, Jr.
                                                  **DENTONS BINGHAM GREENEBAUM, LLP**
                                                  3500 PNC Tower
                                                  101 South Fifth Street
                                                  Louisville, KY 40202
                                                  Telephone: (502) 589-4200
                                                  Email: david.boydstun@dentons.com

                                                  Lauren M. Macksoud
                                                  Henry Thomas
                                                  **DENTONS US LLP**
                                                  1221 Avenue of the Americas
                                                  New York, New York 10020
                                                  Telephone: (212) 768-5347
                                                  Facsimile:  (212) 768-6800
                                                  E-mail: lauren.macksoud@dentons.com
                                                          henry.thomas@dentons.com


                                                  *Counsel to The Official Committee of Unsecured*
                                                  *Creditors*

7

27039942.v1

## CERTIFICATE OF SERVICE

I, Andrew C. Helman, an individual eighteen years of age or older, hereby certify that on the date set forth below, I caused the foregoing document to be served on all parties receiving notice and service in this case through the Court's CM/ECF electronic filing service, which served the same on the parties receiving notice via the CM/ECF system.

Dated: June 12, 2026                    */s/ Andrew C. Helman*

27039942.v1