**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099-5-wak |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30078 |
| | | Case No. 26-30079 |
| | | Case No. 26-60100 |

----------------------------------------------------------------------x

**OBJECTION OF THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS TO MCKESSON CORPORATION'S**
**MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES**

The Official Committee of Unsecured Creditors of North Star Health Alliance, Inc., *et al.*

(the "Committee") hereby files this objection (the "Objection") to *McKesson Corporation's*

*Motion for Allowance and Payment of Administrative Expenses* [Dkt. No. 291] (the "Motion"),[2]

filed by McKesson Corporation ("McKesson"), for itself and as collection agent for certain of its

corporate affiliates, including without limitation McKesson Plasma and Biologics, Inc. ("MPB"),

and McKesson Medical-Surgical Inc. ("MMS," and collectively with McKesson and MPB, the

"McKesson Entities"). In support of this Objection, the Committee states as follows:

**PRELIMINARY STATEMENT**

1.       McKesson—among the largest distributors and suppliers of medical and

pharmaceutical products in the United States—seeks immediate payment, ahead of similarly

---

[1]       The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax
identification number are:  Carthage Area Hospital, Inc. (2079) ("Carthage"); North Star Health Alliance, Inc. (9491)
("North Star"); Claxton-Hepburn Medical Center, Inc. (9686) ("Claxton"); and Meadowbrook Terrace, Inc. (2458)
("Meadowbrook" and together with North Star, Carthage, and Claxton, the "Debtors").

[2]       Capitalized terms used but not defined in this Objection shall have the meaning ascribed to such term in the
Motion.

27049954.v1

situated creditors, of $1,032,867.40 (the "McKesson Claim") from the Debtors, a small, rural

healthcare system seeking to maintain operations as a going concern in bankruptcy.

2.        While the McKesson Claim may be entitled to administrative priority status under

section 503(b)(9) of the Bankruptcy Code, McKesson is not entitled to immediate payment of the

McKesson Claim upon demand.[3] Under section 1129(a)(9) of the Bankruptcy Code, administrative

claims are required to be paid in full *only* upon the effective date of a confirmed chapter 11 plan.

3.        The timing of payment of section 503(b)(9) claims is securely within the discretion

of the Court, and holders of section 503(b)(9) have no right to immediate payment. *See In re*

*Bookbinders' Rest., Inc.*, No. 06-12302ELF, 2006 WL 3858020, at *4-5 (Bankr. E.D. Pa. Dec. 28,

2006). In exercising its discretion, the Court should consider "(1) the prejudice to the debtors, (2)

hardship to claimant, and (3) potential detriment to other creditors." *In re Global Home Prods.,*

*LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *4 (Bankr. D. Del. Dec. 21, 2006).

4.        Application of these factors warrants denial of the Motion here. Immediate payment

of the McKesson Claim would result in preferential and exceptional treatment over claimholders

of equal statutory priority under section 503(b)(9). The Debtors remain constrained by cash flow

and funding issues, and a disbursement of over $1 million at this juncture would destabilize the

estates and threaten ongoing operations. Further, granting this Motion will encourage other section

503(b)(9) claimants to seek similar relief, inviting a proverbial "race to the courthouse," and will

undermine the orderly administration that is central to chapter 11 practice. For these reasons, the

Motion should be denied or, at a minimum, payment of the McKesson Claim should be deferred

until a chapter 11 plan is confirmed or a sale transaction is complete.

---

[3]    For the avoidance of doubt, the Committee takes no position regarding the amount of the asserted McKesson Claim, whether the McKesson Claim should be allowed at this time, or whether the McKesson Claim is entitled to administrative expense status. Instead, the Committee defers to the Debtors and their internal books and records regarding the amount, allowance, and administrative status of McKesson's asserted claims.

27049954.v1

**FACTUAL BACKGROUND**

5.      On February 10, 2026 (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate and manage their businesses, as debtors-in-possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      By Notice of Appointment dated March 4, 2026, the Office of the United States Trustee (the "UST") appointed the Committee.

7.      From the outset of these Chapter 11 Cases, the Debtors have struggled with operational losses and funding shortfalls that continue to threaten the Debtors' ability to maintain operations and continue providing care.

8.      As a result, the Debtors have been essentially reliant on state funding to continue delivering health care services. Further, as the Court is aware, securing stable debtor-in-possession funding in these cases has been a central focus of the Debtors, the Committee, and other parties.[4]

9.      McKesson is among the largest distributors and suppliers of medical and pharmaceutical products in the United States, with consolidated revenues of approximately $403 billion and net income of approximately $6.2 billion for its fiscal year ended March 31, 2026. McKesson Corp., Annual Report (Form 10-K), at 37 (May 7, 2026).

10.      On May 13, 2026, the McKesson Entities filed the Motion seeking allowance and the immediate payment of an alleged section 503(b)(9) administrative expense in an aggregate

---

[4]      This Objection is being filed nearly contemporaneously with the Court's conduct of a final hearing in connection with the *Debtors' Motion for an Order Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code (A) Authorizing Debtors to (i) Obtain Postpetition, Secured, Super-Priority Financing on a Permanent Basis, and (ii) Borrow Under Such Postpetition Facility on an Interim Basis, Pending a Final Hearing, (B) Providing for Payments to Secured Creditors, and (C) Scheduling Interim and Final Hearings on the Motion, Pursuant to Bankruptcy Rule 4001* [Dkt. No. 308] (the "DIP Motion").

3

27049954.v1

amount of $1,032,867.40 for the value of goods delivered to the Debtors during the 20 days preceding the Petition Date. Specifically, the Motion seeks: (i) $235,300.41 payable to McKesson; (ii) $771,238.86 payable to MPB; and (iii) $26,328.13 payable to MMS.

## ARGUMENT

11.    For the reasons set forth below, the Committee objects to the Motion and respectfully requests that the Court deny McKesson's request for immediate payment of the 503(b)(9) Claim:

## I.    Section 503(b)(9) Priority Does Not Entitle McKesson to Immediate Payment.

12.    Section 503(b)(9) of the Bankruptcy Code grants administrative expense priority to a select class of claims incurred prior to the Petition Date and for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).[5] However, administrative expense priority does not entitle any creditor to the right to be paid immediately.

13.    The Bankruptcy Code requires only that administrative expense claims be paid in full on the effective date of a confirmed plan. 11 U.S.C. § 1129(a)(9)(A) ("[O]n the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim."). Nothing in section 503(b)(9) or elsewhere in the Bankruptcy Code alters this fundamental principle or creates a right to payment earlier. *See In re Global Home Prods., LLC*, 2006 WL 3791955, at *3 ("Section 503 does not specify a time for payment of these expenses

---

[5]    Post-petition administrative expenses, such as payments to vendors supplying goods or services to the estate after the petition date in the ordinary course of business, arise from value provided to the estate during the bankruptcy case and for "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. §§ 363(c)(1), 503(b)(1)(A). These expenses are typically paid in the ordinary course because they are necessary to preserve the going-concern value of the estate. *See also In re Bookbinders' Rest., Inc.*, 2006 WL 3858020, at *5 (rejecting the argument that section 503(b)(9) claimants are entitled to be paid at the same time as post-petition creditors who are being paid in the ordinary course pursuant to 11 U.S.C. § 363(c)(1)).

4

27049954.v1

but administrative expenses must be paid in full on the effective date of the plan as provided in § 1129(a)(9).").[6]

14. Bankruptcy courts have consistently recognized that the timing of payment of section 503(b)(9) claims is well within the discretion of the court. *See In re TI Acquisition, LLC*, 410 B.R. 742, 751 (Bankr. N.D. Ga. 2009); *In re Global Home Prods., LLC*, 2006 WL 3791955, at *3; *In re NE Opco, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) ("In general, courts have discretion to determine when an administrative expense claim will be paid."). Holders of section 503(b)(9) claims have no right to immediate payment simply by virtue of their demand. *In re Bookbinders' Rest., Inc.*, 2006 WL 3858020, at *4–5 ("The text of § 503(b)(9) neither states nor even implies that allowance of the expense encompasses an unqualified right to immediate payment. Nor does the text of the provision suggest that an administrative expense allowed under § 503(b)(9) is to be treated in a more favorable manner than any other allowed § 503(b) administrative expense.").

15. In exercising its discretion over the timing of payment of administrative expense claims, this Court should consider three factors: "(1) the prejudice to the debtors, (2) hardship to claimant, and (3) potential detriment to other creditors." *In re Global Home Prods., LLC*, 2006 WL 3791955, at *3 (citing *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005)); *In re Bookbinders' Rest., Inc.*, 2006 WL 3858020, at *1 (adopting same three-factor test); *In re NE Opco, Inc.*, 501 B.R. at 259 (same). Additionally, when determining the timing of payment of

---

[6] McKesson also argues that section 503(b)(9) claims are entitled to immediate payment because, upon conversion to chapter 7, such claims are not subordinated under section 726(b) and therefore occupy a superior position in the administrative expense hierarchy. This argument (i) misinterprets the statute, and (ii) conflates *priority* with the *timing* of payment. Even accepting McKesson's argument, section 726(b) addresses only the order of distribution in a converted chapter 7 case. It says nothing about when administrative expenses must be paid in an ongoing chapter 11 case. Moreover, as nonprofit corporations, the Debtors' Chapter 11 Cases cannot be involuntarily converted to chapter 7, making McKesson's section 726(b) argument largely inapplicable here. *See* 11 U.S.C. § 1112(c).

5

administrative expense claims, courts also consider "bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets." *In re Global Home Prods., LLC*, 2006 WL 3791955, at \*3; *In re NE Opco, Inc.*, 501 B.R. at 259.

16.    "Distributions to administrative claimants are generally disallowed prior to confirmation if there is a showing that the bankruptcy estate may not be able to pay all of the administrative expenses in full." *Id.*; *In re NE Opco, Inc.*, 501 B.R. at 259. Notably, courts have held that a section 503(b)(9) claimant must demonstrate that "there is a necessity to pay and not merely that the Debtor has the ability to pay," in order to qualify for "exceptional" immediate payment of an administrative expense. *Global Home Prods., LLC*, 2006 WL 3791955, at \*3 (quoting *In re Cont'l Airlines, Inc.*, 146 B.R. 520, 531 (Bankr. D. Del. 1992)); *see also In re NE Opco, Inc.*, 501 B.R. at 259 ("To qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay.").

## II.    Immediate Payment Would Inequitably Single Out McKesson for Preferential Treatment Over Similarly Situated Creditors.

17.    McKesson has made no showing that immediate payment is necessary or that it would suffer any material hardship from deferral. Granted, *all* creditors suffer while awaiting payment from a debtor in bankruptcy; due to McKesson's size and revenues, it is unlikely that any such hardship would outweigh the substantial prejudice to the Debtors. *In re Global Home Prods., LLC*, 2006 WL 3791955, at \*5 (denying immediate payment to a creditor with sales in excess of $400 million per year, in part because it provided "no evidence that immediate payment [was] necessary to keep [it] in business."); *see also In re NE Opco, Inc.*, 501 B.R. at 259 (denying immediate payment of section 503(b)(9) claim where claimant "has not presented any other argument or evidence to support the necessity of immediate payment").

6

18.     All holders of section 503(b)(9) claims share the same statutory priority. *See* 11 U.S.C. §§ 503(b)(9), 507(a)(2). Other section 503(b)(9) claimants hold claims of equal priority and are entitled to equal treatment under the Bankruptcy Code. Paying McKesson's claim immediately while leaving other similarly situated creditors unpaid would be inconsistent with the equitable distribution principles underlying the Bankruptcy Code.

## III.    Immediate Payment Would Cause Irreparable Harm to the Estates and Ongoing Operations.

19.     Payment of over $1 million in connection with the McKesson Claim would represent a substantial and potentially destabilizing expense to the Debtors at this juncture. Even if the proposed debtor-in-possession financing is approved,[7] immediate payment of the McKesson Claim would consume available funds that have not been budgeted for this purpose and would divert resources from critical operational needs. This is the type of prejudice that courts have found weighs against immediate payment of administrative expense claims. *See In re Global Home Prods., LLC*, 2006 WL 3791955, at *4 (finding prejudice to debtors where immediate payment of section 503(b)(9) claims would adversely affect the debtors' borrowing ability under a debtor-in-possession financing agreement).

20.     The Debtors are currently engaged in a sale or strategic partnership process to maximize value for the estates and preserve health care services for the communities they serve. Liquidity should be preserved, as budgeted, until such a transaction has been secured and, likely, consummated. Moreover, allowing immediate payment of the McKesson Claim may encourage other trade creditors holding administrative expense claims to also seek immediate allowance and payment, which could further strain the Debtors' resources. *See In re Global Home Prods., LLC*, 2006 WL 3791955, at *3.

---

[7]     *See supra* note 4.

27049954.v1

**IV.    Granting McKesson's Motion Will Invite a Disorderly "Race to the Courthouse."**

21.    If one section 503(b)(9) creditor obtains immediate payment upon demand, then every similarly situated creditor will be incentivized to do the same, which could undermine the orderly administration of these cases. In connection with determining the timing of payment of an administrative expense, courts have recognized that "one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets." *In re Global Home Prods., LLC*, 2006 WL 3791955, at *3 (citing *In re HQ Global Holdings, Inc.*, 282 B.R. 169 (Bankr. D. Del. 2002)). Denying McKesson's request for immediate payment "preserves a later equitable distribution to other administrative claimants." *Id.* at *5.

22.    The appropriate time for payment of section 503(b)(9) claims is upon confirmation of a plan or pursuant to further order of the Court following a comprehensive assessment of the estates' ability to pay all administrative expenses and other claims. *See In re Global Home Prods., LLC*, 2006 WL 3791955, at *5 (denying motion for immediate payment of section 503(b)(9) claim, finding that "[t]he prejudice to Debtors of requiring immediate payment far outweighs the prejudice, if any, to [the claimant]"); *In re TI Acquisition, LLC*, 410 B.R. at 751 (allowing section 503(b)(9) claim but deferring payment).

## CONCLUSION

Based on the foregoing, the Committee respectfully requests that the Court (A) deny the Motion without prejudice; or in the alternative, (B) defer payment of the McKesson Claim until further order of the Court; and (C) grant such other and further relief as the Court deems just and proper.

[*the remainder of this page is intentionally left blank*]

8

27049954.v1

Dated: June 17, 2026

Respectfully submitted,

*/s/ Kyle D. Smith*

Lauren M. Macksoud
Henry Thomas
**DENTONS US LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-5347
Facsimile:  (212) 768-6800
E-mail: lauren.macksoud@dentons.com
      henry.thomas@dentons.com

Andrew C. Helman
Kyle D. Smith
**DENTONS BINGHAM GREENEBAUM, LLP**
One City Center
Suite 11100
Portland, ME 04101-6420
Telephone: (207) 810-4955
Email: andrew.helman@dentons.com
      kyle.d.smith@dentons.com

David K. (D.K.) Boydstun, Jr.
**DENTONS BINGHAM GREENEBAUM, LLP**
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone: (502) 589-4200
Email: david.boydstun@dentons.com

*Counsel to The Official Committee of Unsecured
Creditors*

9

## CERTIFICATE OF SERVICE

I, Kyle D. Smith, an individual eighteen years of age or older, hereby certify that on the date set forth below, I caused the foregoing document to be served on all parties receiving notice and service in this case through the Court's CM/ECF electronic filing service, which served the same on the parties receiving notice via the CM/ECF system.

Dated: June 17, 2026                    */s/ Kyle D. Smith*

27049954.v1