**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

**Hearing Date/Time: August 19, 2026, 2:00 p.m.**
**Hearing Location: Syracuse, NY**
**Opposition Due: August 12, 2026**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099-5-wak |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30078 |
| | : | Case No. 26-30079 |
| | : | Case No. 26-60100 |

**DEBTORS' FOURTH MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS**

North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage" or "CAH"), Claxton-Hepburn Medical Center, Inc. ("Claxton" or "CHMC"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"),[2] hereby move (the "Motion") this Court (as defined herein) for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, granting the relief described below and represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. Consideration of this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

[2] The Debtors' non-debtor affiliates (individually each a "Non-debtor Affiliate" or, collectively, the "Non-debtor Affiliates") consist of: (1) Claxton-Hepburn, P.C. ("CHPC"), (2) North Country Orthopaedic Group PC ("NCOG"), (3) North Country Realty, LLC ("NCR"), (4) Comprehensive Women's Health Services, PLLC, (5) the Claxton-Hepburn Medical Center Foundation, Inc., (6) the Carthage Area Hospital Foundation, Inc., (7) the Claxton-Hepburn Medical Center Auxiliary, (8) the Carthage Area Hospital Auxiliary, (9) Claxton Medical PC, (10) Claxton-Hepburn Medical Campus, and (11) North Country Orthopaedic Ambulatory Surgical Center, LLC.

2. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105 and 365 and Bankruptcy Rule 6006.

## BACKGROUND

### A. The Chapter 11 Cases

3. On February 10, 2026 (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their properties and are operating and managing their health care businesses, as debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

5. By Notice of Appointment dated March 4, 2026, the Office of the United States Trustee ("UST") appointed an official committee of unsecured creditors (the "Committee").

6. By Notice of Appointment dated March 12, 2026, the UST appointed Suzanne Koenig as the Patient Care Ombudsman.

### B. The Debtors' Corporate Structure and Operations

7. North Star Health Alliance, Inc. was established in September 1993 and incorporated in the State of New York as a not-for-profit corporation. North Star is the umbrella organization within which Carthage, Claxton, Meadowbrook and related affiliates coordinate governance, strategy, and shared services under what is referred to as the Transformation Plan.[3]

[3] Beginning in or about August 2022, North Star pursued a complex transition (the "Transformation Plan") designed to preserve access to acute care and behavioral health services in the North Country while addressing Claxton's unsustainable legacy cost and reimbursement structure as a Sole Community Hospital. The Transformation Plan involved coordinated planning among North Star member organizations, engagement with DOH and OMH, and stepwise regulatory actions. On October 23, 2024, DOH and OMH issued operating certificates that reorganized Claxton into two distinct hospital entities: (i) a standalone inpatient psychiatric hospital (CHMC) and (ii) a separate

North Star is a passive parent entity that does not itself exercise financial control over each member organization; rather, it serves as a platform for alignment and operational integration, including shared leadership and centralized administrative functions (*e.g.*, finance, human resources, information technology, compliance, revenue cycle coordination, and cash planning) that are critical to sustaining rural healthcare delivery across multiple campuses. The North Star system as a whole employs approximately 1,200 employees.

8. Carthage was established in November 1921 and incorporated in the state of New York as a not-for-profit corporation. Carthage operates a 25-bed Critical Access Hospital in each of Carthage, New York and Ogdensburg, New York serving a large, rural tri-county area. Carthage holds a New York State Department of Health operating certificate (No. 2238700C; Facility ID/PFI 379 & Facility ID/PFI 15684) for primary care hospital-critical access hospital services located at 1001 West Street, Carthage, New York 13619 and 214 King Street, Suite A, Ogdensburg, New York 13669 (the "Claxton Campus"). The Claxton Campus is also the designated "9.39" hospital for the area. While the New York State Department of Health ("DOH") issued the operating certificate reflecting this configuration, Centers for Medicare & Medicaid Services ("CMS") processes to recognize and operationalize the Claxton Campus as a critical access hospital (including surveys, enrollment steps, and related notifications) have involved additional steps and timing considerations.

9. Claxton-Hepburn Medical Center, Inc. was established in December 1916 and incorporated in January 1917 in the state of New York as a not-for-profit corporation. Following the implementation of the Transformation Plan, Claxton now operates exclusively as a standalone Article 31 Inpatient Psychiatric Hospital licensed by the New York State Office of Mental Health

acute-care campus operated by Carthage under a shared operating certificate (the Claxton Campus).

under Operating Certificate No. 8231002, located on the Claxton Campus. Claxton provides acute inpatient behavioral health services for adults (28 beds) and children/adolescents (12 beds), including the region's only acute inpatient unit dedicated to children and adolescents. Claxton also leads the Pathways to Recovery Peer Coaching program.

10. Meadowbrook Terrace, Inc. was established in December 2011 and incorporated in the state of New York as a not-for-profit corporation. Meadowbrook is a 60-bed assisted living facility (58 ALP beds and 2 Adult Home) that provides assisted living services for seniors in the North Country region. Meadowbrook is a key part of the Debtors' care continuum for elderly and medically fragile patients, supporting safe discharge planning and community-based care.

11. Through these bankruptcy proceedings, the Debtors intend to continue to fulfill their mission by operating their facilities to deliver quality health care in their communities, supported by a local workforce.

## RELIEF REQUESTED

12. By this Motion, and pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, Bankruptcy Rule 6006 and Local Rule 6006-1, the Debtors seek entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, authorizing them to reject certain executory contracts identified in **Exhibit 1** to the Proposed Order and described herein (the "Contracts"), effective as of the date of the filing of the Motion. Specifically, the Debtors seek to reject the consultancy, advisory, and service agreements of any kind with the below referenced contract parties, whether oral or written, implied, in-effect, or expired.

13. As part of their reorganization, the Debtors are in the process of identifying which of their contractual relationships are no longer necessary or beneficial, including those related to facilities being reorganized.

14. As a result of the foregoing, and in consultation with their advisors, the Debtors determined that the Contracts are not necessary and have little or no value to the Debtors' estates, especially when weighed against the costs of the Contracts. Accordingly, the Debtors seek to eliminate the costs and obligations associated therewith. The requested relief will allow for rejection of the Contracts and elimination of burdensome and unnecessary obligations related thereto, as of the date of this Motion, as opposed to waiting until the Motion is granted, or a plan is confirmed.

15. The Contracts sought to be rejected hereby pertain to certain executive level employees of the Debtors and one hospital financing advisor, as follows:

A. **Brandon Adrian, DPM** – Pursuant to the Provider Employment Agreement between Debtor Carthage and Brandon Adrian, DPM ("Adrian") dated January 16, 2023 (the "Adrian Agreement"), Adrian provided professional podiatric medical services to or for the benefit of Carthage and its affiliates. The Adrian Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

B. **Ivan Drazek, P.A.** – Pursuant to the Provider Employment Agreement between Debtor Carthage and Ivan Drazek, P.A. ("Drazek") dated August 20, 2023 (the "Drazek Agreement"), Huang provided professional physician's assistant services to or for the benefit of Carthage and its affiliates. The Drazek Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

C. **Sarah E. Finnigan, P.A.** – Pursuant to the Provider Employment Agreement between Debtor Carthage and Sarah E. Finnegan, P.A. ("Finnegan") dated May 19, 2025 (the "Finnigan Agreement"), Finnegan provides professional services as a physician's assistant to or for the benefit of Carthage and its affiliates. The Finnegan Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

D. **Karen Fish, P.A.** – Pursuant to the Provider Employment Agreement between Debtor Carthage and Karen Fish, P.A. ("Fish") dated July 9, 2023 (the "Fish Agreement"), Fish provided professional physician assistant services to or for the benefit of Carthage and its affiliates. The Fish Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

E. **Robin Frost, RPA-C** – Pursuant to the Provider Employment Agreement between Debtor Carthage and Robin Frost, RPA-C ("Frost") dated June 30, 2025 (the "Frost Agreement"), Frost provided professional registered physician assistant services to or for the benefit of Carthage and its affiliates. The Frost Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

F. **Timothy Gilliam, P.A.** – Pursuant to the Provider Employment Agreement between Debtor Carthage and Timothy Gilliam, P.A. ("Gilliam") dated January 16, 2023 (the "Gilliam Agreement"), Gilliam provides professional services as a physician assistant to or for the benefit of Carthage and its affiliates. The Gilliam Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

G. **Carolyn Hettrich, M.D.** – Pursuant to the Provider Employment Agreement between Debtor Carthage and Carolyn Hettrich, M.D. ("Hettrich") dated June 5, 2023 (the "Hettrich Agreement"), Hettrich provides professional medical and clinical services to or for the benefit of Carthage and its affiliates. The Hettrich Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

H. **Howard H. Huang, M.D.** – Pursuant to the Provider Employment Agreement between Debtor Carthage and Howard H. Huang, M.D. ("Huang") dated September 1, 2021 (the "Huang Agreement"), Huang provided professional medical and clinical services to or for the benefit of Cargage and its affiliates. The Huang Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

I. **Joyce R. Ndungu, NP** – Pursuant to the Provider Employment Agreement between Debtor Carthage and Joyce R. Ndungu, NP ("Ndungu") dated January 1, 2025 (the "Ndungu Agreement"), Ndungu provided professional nurse practitioner services to or for the benefit of Carthage and its affiliates. The Ndungu Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

J. **J. David Schaefer, M.D.** – Pursuant to the Provider Employment Agreement between Debtor Claxton and J. David Schaefer, M.D. ("Schaefer") dated December 1, 2024 (the "Schaefer Agreement"), Schaefer to or for the benefit of Claxton and its affiliates. The Schaefer Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

K. **Barratt Schultz, P.A.** – Pursuant to the Provider Employment Agreement between Debtor Carthage and Barratt Schultz, P.A. ("Schultz") dated July 9, 2023 (the "Schultz Agreement"), Schultz provides professional physician assistant services to or for the benefit of Carthage and its affiliates. The

Schultz Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

L. **Sandra E. Timerman, M.D.** – Pursuant to the Provider Employment Agreement executed on September 24 and 27, 2024, Leased Employee Agreement dated January 1, 2025, and Addendum to Professional Services Agreement dated March 31, 2025 between Debtor Carthage and Sandra E. Timerman, M.D. ("Timerman") (collectively, the "Timerman Agreement") provided professional medical and clinical services to or for the benefit of Carthage and its affiliates. The Timerman Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

M. **Ronald G. Perciaccante & Marvin S. Reimer, M.D., P.C. d/b/a Child & Adolescent Health Associates** – Pursuant to the Leased Employee Agreement dated January 1, 2025, between Debtor Carthage, Timerman, and Ronald G. Perciaccante & Marvin S. Reimer, M.D., P.C. d/b/a Child & Adolescent Health Associates ("Perciaccante & Reimer") (the "Perciaccante & Reimer Agreement"), Perciaccante & Reimer leased to Carthage the professional medical and clinical services of Timerman for the benefit of Carthage and its affiliates. The Perciaccante & Reimer Agreement is terminable during its term, subject to various rights and obligations of the parties, as set forth herein.

16. The Debtors believe that the Contract rejections described above will not result in any reduction in quality of care and services for patients, while the Contract rejections will enable significant and necessary reductions in the Debtors' costs and expenses.

## BASIS FOR RELIEF

### A. Rejection of the Contracts is an Exercise of the Debtors' Sound Business Judgment

17. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see* also *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *Med. Malpractice Ins. Ass'n v. Hirsch* (*In re Lavigne*), 114 F.3d 379, 386 (2d Cir. 1997). "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to

'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993).

18. Courts defer to a debtor's business judgment in determining whether to approve rejection of an executory contract and, upon finding that a debtor has exercised its sound business judgment, regularly approve the rejection under section 365(a) of the Bankruptcy Code. *See Bildisco* & *Bildisco*, 465 U.S. at 523 (recognizing the use of the "business judgment" standard to approve rejection of executory contracts); *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009) (same); *In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008) (same); *In re Klein Sleep Products, Inc*, 78 F.3d 18, 25 (2d Cir. 1996) (same); *In re Minges*, 602 F.2d 38, 42–43 (2d Cir. 1979) (same); *In re Balco Equities Ltd.*, 323 B.R. 85, 98–99 (Bankr. S.D.N.Y. 2005) (same); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) (approving rejection of license by debtor because such rejection satisfied the "business judgment" test);.

19. Courts emphasize that the business judgment rule is not an onerous standard and that it "is flexible and encourages discretion." *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011). "Great judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (N.D. Tex. 2005); *see also In re Penn Traffic Co.*, 524 F.3d at 383; *In re Old Carco LLC*, 406 B.R. at 188. As long as a transaction "appears to enhance a debtor's estate, court approval of a debtor in possession's decision to [enter into the transaction] should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the Bankruptcy Code." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (citation and internal quotation marks omitted).

20. Courts generally will not second guess a debtor's business judgment concerning the rejection of an executory contract. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121– 22 (Bankr. D. Del. 2001); *see also In re Penn Traffic Co.*, 524 F.3d at 383; and *In re Old Carco LLC*, 406 B.R. at 188. Satisfying the "business judgment" standard requires only a modest showing, relevantly, that the proposed treatment of the executory contract or unexpired lease will benefit the debtor's estate. *See id.*; *see also In re Orion Pictures Corp.*, 4 F.3d at 1098-99 (stating that section 365 of the Bankruptcy Code permits a debtor in possession, subject to court approval, to decide which executory contracts would be beneficial to reject).

21. As part of their reorganization and ongoing efforts to reduce costs and burdensome obligations, the Debtors have determined that the Contracts provide little or no ongoing benefit to the Debtors' estates, and are not commensurate with their costs. Accordingly, rejecting the Contracts would clearly benefit the Debtors' estates and creditors for all the reasons set forth herein.

22. In light of the foregoing, the Debtors respectfully request that the Court approve rejection of the Contracts pursuant to section 365(a) of the Bankruptcy Code in the manner requested herein as a sound exercise of their business judgment.

**B. Rejection as of the Date Set Forth in Exhibit 1to the Proposed Order is Appropriate**

23. The Debtors submit that it is appropriate for the Court to deem the Debtors' rejection of the Contracts effective as of the date of termination of employment. *See, e.g.*, *Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028-29 (1st Cir. 1995) (indicating "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively" to the motion filing date); *Pacific Shore Dev., LLC v. At Home*

*Corp (In re At Home Corp.)*, 392 F.3d 1064, 1065 (9th Cir. 2004) (citing *Thinking Machines Corp.* in holding same).

24. Section 365 of the Bankruptcy Code does not address when the rejection ordered by the Court is deemed effective, nor does the Bankruptcy Code restrict courts from concluding that the effective date of the rejection is the date of the requested relief or a later date. *See In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (stating that the best interpretation of section 365 of the Bankruptcy Code requires an order of the court to determine the date of rejection); *see also In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 of the Bankruptcy Code does not include "restrictions as to the manner in which the court can approve rejection"); *see also In re CCI Wireless, LLC,* 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 of the Bankruptcy Code "does not prohibit the bankruptcy court from allowing the rejection of [leases] to apply retroactively"). However, courts, including those in this Circuit, have held that a bankruptcy court may exercise its equitable powers in granting such a retroactive order when doing so promotes the purposes of section 365(a) of the Bankruptcy Code. *See In re Avianca Holdings S.A.,* 618 BR 684, 709 (Bankr. S.D.N.Y. 2020) (approving *nunc pro tunc* rejection), citing *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 U.S. Dist. LEXIS 22052 at *3-4 (S.D.N.Y. Nov. 15, 2002) (same); *In re Jamesway Corp.*, 179 B.R. at 38 (holding that courts may approve retroactive rejection); *see also In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) ("[T]he court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a).").

25. As an ongoing part of their reorganization and scrutiny of their operations, the Debtors have, in consultation with their advisors, undertaken an analysis of their contracts. This analysis has resulted in a determination that the Contracts should be rejected effective as of the

date of termination of employment for the employment contracts and the date of the filing of the Motion for the corporate contracts. The Contracts for which the Debtors seek rejection provide minimal or no value to the Debtors' estates or creditors from and after the date of this Motion, especially in light of their costs, and instead may unnecessarily tax the Debtors' limited resources until the rejection effective date is established. In this case, the balance of equities favors the rejection relief requested herein.

26. Without a rejection date as of the date set forth in **Exhibit 1** to the proposed Order attached to this Motion as **Exhibit A**, there is a risk that the Debtors could be forced to incur unnecessary obligations or administrative costs for contracts that provided little or no tangible benefit to the Debtors' estates. *See, e.g.*, *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 U.S. Dist. LEXIS 22052 at *3 (S.D.N.Y. Nov. 15, 2002) (finding retroactive rejection valid when the balance of equities favors such treatment); *In re Jamesway Corp.*, 179 B.R. at 33.

27. Moreover, bankruptcy courts have granted relief, similar to the relief sought here, in other chapter 11 cases. *See, e.g., In re GetSwift, Inc.*, Case No. 22-11057 (MEW) [ECF No. 133] (Bankr. S.D.N.Y. Jan. 25, 2023); *In re Grupo Aeromexico, S.A.B. de C.V.*, Case No. 20-11563 (JPM) [ECF No. 210] (Bankr. S.D.N.Y. July 29, 2020); *In re LATAM Airlines Group S.A.*, Case No. 20-11254 (JLG) [ECF No. 391] (Bankr. S.D.N.Y. Jun. 28, 2020); *In re Avianca Holdings S.A.*, Case No. 20-11133 (MG) [ECF No. 277] (Bankr. S.D.N.Y. Jun. 11, 2020); *In re AMR Corporation*, Case No. 11-15463 (Bankr. S.D.N.Y. Dec. 23, 2011) (SHL) [ECF No. 454]; *In re Northwest Airlines Corporation*, Case No. 05-17930 (ALG) [ECF No. 672] (Bankr. S.D.N.Y. Oct. 13, 2005); and *In re Delta Air Lines, Inc.*, Case No. 05-17923 (PCB) [ECF No. 164] (Bankr. S.D.N.Y. Sep. 16, 2005).

## NOTICE

28. Notice of this Motion has been provided to (a) the Office of the United States Trustee for the Northern District of New York, (b) counsel for the Official Committee of Unsecured Creditors, Northern Credit Union, and the New York State Department of Health, (c) the Office of the Attorney General for the State of New York, (d) the Office of the U.S. Attorney General for the Northern of New York, (e) the counterparties listed on **Exhibit 1** attached to the Proposed Order; and (f) those person who have formally appeared and requested service in these Chapter 11 Cases pursuant to Rule 2002 (collectively, the "Notice Parties"). In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

## RESERVATION OF RIGHTS

29. Nothing contained herein or any action taken pursuant to such relief is intended or shall be construed as: (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors or any appropriate party in interest's rights to dispute the amount of, basis for or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holders, or (d) an approval, assumption, adoption or rejection of any agreement, contract, lease, program or policy between the Debtors and any third party under section 365 of the Bankruptcy Code that is not included on **Exhibit 1** attached to the Proposed Order. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**NO PRIOR REQUEST**

30. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: July 29, 2026
New York, New York

**BARCLAY DAMON LLP**
*Counsel for Debtors and Debtors-In-Possession*

By: *_/s/Ilan Markus_*
Janice B. Grubin
Ilan Markus (admitted *pro hac vice*)
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Janice B. Grubin:
(212) 784-5808; jgrubin@barclaydamon.com
Ilan Markus:
(203) 672-2661; imarkus@barclaydamon.com

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099-5-wak |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30078 |
| | : | Case No. 26-30079 |
| | : | Case No. 26-60100 |

**FOURTH ORDER AUTHORIZING DEBTORS TO**
**REJECT CERTAIN EXECUTORY CONTRACTS**

Upon the motion dated July 29, 2026 [Docket No. ___] (the "Motion")[2] of North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage" or "CAH"), Claxton-Hepburn Medical Center, Inc. ("Claxton" or "CHMC"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Order"), pursuant to sections 365(a) and 105(a) of the

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

Bankruptcy Code and Bankruptcy Rule 6006, authorizing rejection as of the date of the Motion of certain executory contracts identified in **Exhibit 1** attached hereto, all as set forth more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties set forth in the Motion, and it appearing that no other or further notice need be provided; and no objections or responses having been filed; and the Court having reviewed the Motion and considered the relief requested in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and upon all of the proceedings had before the Court and a hearing held on August 19, 2026 and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The relief requested in the Motion is hereby granted as set forth herein.

2. Pursuant to sections 365 and 105 of the Bankruptcy Code, Bankruptcy Rule 6006, and Local Rule 6006-1, and subject to the terms of this Order, each of the executory Contracts, whether written, oral or implied, and identified in **Exhibit 1** attached hereto, are hereby rejected effective as of the date set forth in the attached **Exhibit 1**.

3. Claims arising out of any rejection effected pursuant to this Order must be filed by the date that is thirty (30) days after entry of this Order.

4. Nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with any claims arising out of any rejection effectuated pursuant to this order.

5. To the extent necessary, the automatic stay provided by section 362 of the Bankruptcy Code is hereby modified as to the Debtors to allow the parties to effectuate the provisions of this Order.

6. The notice set forth in the Motion is good and sufficient notice and satisfies Bankruptcy Rules 2002(a), 6006, 6007, and 9014 by providing the counterparties with notice and an opportunity to object and be heard at a hearing.

7. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

8. The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # #

**Exhibit 1**
**Executory Contracts**

| Contract Counterparty | Address | Document Description | Rejection Effective Date |
|---|---|---|---|
| Adrian, Brandon DPM | [redacted] | Provider Employment Agreement dated October 13, 2025 | 7/17/2026 |
| Drazek, Ivan P.A. | [redacted] | Provider Employment Agreement dated August 20, 2023 | 7/31/2026 |
| Finnigan, Sarah E. P.A. | [redacted] | Provider Employment Agreement dated May 19, 2025 | 7/31/2026 |
| Fish, Karen P.A. | [redacted] | Provider Employment Agreement dated July 9, 2023 | 7/31/2026 |
| Frost, Robin RPA-C | [redacted] | Provider Employment Agreement dated June 30, 2026 | 6/30/2026 |
| Gilliam, Timothy, P.A. | [redacted] | Provider Employment Agreement dated January 16, 2023 | 7/31/2026 |
| Hettrich, Carolyn M.D. | [redacted] | Provider Employment Agreement dated June 5, 2023 | 7/31/2026 |
| Huang, Howard H. M.D. | [redacted] | Provider Employment Agreement dated September 1, 2021 | 7/31/2026 |
| Ndungu, Joyce R. NP | [redacted] | Provider Employment Agreement dated January 1, 2025 | 6/30/2026 |
| Schaefer, J. David M.D. | [redacted] | Provider Employment Agreement dated December 1, 2024 | 7/10/2026 |
| Schultz, Barratt P.A. | [redacted] | Provider Employment Agreement dated July 9, 2023 | 7/31/2026 |
| Timerman, Sandra E. M.D. | [redacted] | Provider Employment Agreement executed on September 24 and 27, 2024, Leased Employee Agreement dated January 1, 2025, and Addendum to Professional Services Agreement dated March 31, 2025 | 6/30/2026 |
| Ronald G. Perciaccante & Marvin S. Reimer, M.D., P.C. d/b/a Child & Adolescent Health Associates | 513 Washington Street Watertown, NY 13601 | Leased Employee Agreement dated January 1, 2025 concerning provider Sandra E. Timerman, M.D. | 6/30/2026 |