**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

**Hearing Date/Time: October 21, 2026, 2:00 p.m.**
**Hearing Location: Syracuse, NY**
**Opposition Due: October 14, 2026**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099-5-wak |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30078 |
| | : | Case No. 26-30079 |
| | : | Case No. 26-60100 |

**DEBTORS' SECOND MOTION TO ENLARGE THE EXCLUSIVE PERIODS WITHIN WHICH THE DEBTORS MIGHT FILE AND SEEK APPROVAL OF A DISCLOSURE STATEMENT AND PLAN AND SOLICIT ACCEPTANCES THEREOF**

North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court for the entry of an Order, pursuant to section 1121(b) and (c) of Title 11 of the United States Code (the "Bankruptcy Code"), extending for an additional 90 days, until January 6, 2027, the period within which the Debtors exclusively may file a Chapter 11 disclosure statement and plan, and extending for an additional 90 days, until March 7, 2027, the period within which the Debtors alone might solicit acceptances of such plan (the "Motion"). A proposed order is being filed and served herewith as **Exhibit A**. In support of this Motion, the Debtors respectfully represent as follows:

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2. Venue in this proceeding is proper and this Motion is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

3. The statutory predicate for the relief requested herein is section 1121 of the Bankruptcy Code.

## BACKGROUND

### A. The Chapter 11 Cases

4. On February 10, 2026 (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their properties and are operating and managing their health care businesses, as debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

6. By Notice of Appointment dated March 4, 2026, the Office of the United States Trustee ("UST") appointed an official committee of unsecured creditors (the "Committee").

7. By Notice of Appointment dated March 12, 2026, the UST appointed Suzanne Koenig as the Patient Care Ombudsman.

### B. The Debtors' Corporate Structure and Operations

8. North Star Health Alliance, Inc. was established in September 1993 and incorporated in the State of New York as a not-for-profit corporation. North Star is the umbrella

organization within which Carthage, Claxton, Meadowbrook and related affiliates coordinate governance, strategy, and shared services under what is referred to as the Transformation Plan.[2] North Star is a passive parent entity that does not itself exercise financial control over each member organization; rather, it serves as a platform for alignment and operational integration, including shared leadership and centralized administrative functions (*e.g.*, finance, human resources, information technology, compliance, revenue cycle coordination, and cash planning) that are critical to sustaining rural healthcare delivery across multiple campuses. The North Star system as a whole employs approximately 1,100 employees.

9. Carthage was established in November 1921 and incorporated in the state of New York as a not-for-profit corporation. Carthage operates a 25-bed Critical Access Hospital in both Carthage, New York and Ogdensburg, New York, serving a large, rural tri-county area. Carthage holds a New York State Department of Health operating certificate (No. 2238700C; Facility ID/PFI 379 and Facility ID/PFI 15684) for primary care-critical access hospital services located at 1001 West Street, Carthage, New York 13619 and 214 King Street, Suite A, Ogdensburg, New York 13669 (the "Claxton Campus"). The Claxton Campus is also the designated "9.39" hospital for the area. While DOH issued the operating certificate reflecting this configuration, Centers for Medicare & Medicaid Services ("CMS") processes to recognize and operationalize the Claxton Campus as a critical access hospital (including surveys, enrollment steps, and related notifications) have involved additional steps and timing considerations.

---

[2] Beginning in or about August 2022, North Star pursued a complex transition (the "Transformation Plan") designed to preserve access to acute care and behavioral health services in the North Country while addressing Claxton's unsustainable legacy cost and reimbursement structure as a Sole Community Hospital. The Transformation Plan involved coordinated planning among North Star member organizations, engagement with the New York State Department of Health ("DOH") and the New York State Office of Mental Health ("OMH"), and stepwise regulatory actions. On October 23, 2024, DOH and OMH issued operating certificates that reorganized Claxton into two distinct hospital entities: (i) a standalone inpatient psychiatric hospital (CHMC) and (ii) a separate acute-care campus operated by Carthage under a shared operating certificate (the Claxton Campus).

10. Claxton was established in December 1916 and incorporated in January 1917 in the state of New York as a not-for-profit corporation. Following the implementation of the Transformation Plan, Claxton now operates exclusively as a standalone Article 31 Inpatient Psychiatric Hospital licensed by the New York State Office of Mental Health under Operating Certificate No. 8231002, located on the Claxton Campus. Claxton provides acute inpatient behavioral health services for adults (28 beds) and children/adolescents (12 beds), including the region's only acute inpatient unit dedicated to children and adolescents. Claxton also leads the Pathways to Recovery Peer Coaching program.

11. Meadowbrook was established in December 2011 and incorporated in the state of New York as a not-for-profit corporation. Meadowbrook is a 60-bed assisted living facility (58 Assisted Living Program (ALP) beds and 2 Adult Home) that provides assisted living services for seniors in the North Country region. Meadowbrook is a key part of the Debtors' care continuum for elderly and medically fragile patients, supporting safe discharge planning and community-based care.

12. Through these bankruptcy proceedings, the Debtors continue to fulfill their mission by operating their facilities to deliver quality health care in their communities, supported by a local workforce.

## RELIEF REQUESTED

13. Section 1121(b) of the Bankruptcy Code provides a debtor with the exclusive right to file a chapter 11 plan for an initial period of 120 days from the date of the order for relief. Section 1121(c) of the Bankruptcy Code further provides that, if the debtor files a chapter 11 plan within the 120-day exclusivity period (the "Exclusivity Period"), the debtor then has a period of

180 days from the date of the order for relief to solicit and obtain acceptances (the "Solicitation Period"), during which time competing plans may not be filed.

14. By motion filed on June 5, 2026, the Debtors requested an extension of their Exclusivity Period and Acceptance Period for an additional 120 days (the "First Extension Motion"). The First Extension Motion was granted by order of this Court entered on July 2, 2026 [Docket No. 437] (the "First Extension Order"). The First Extension Order extended the Debtors' Exclusivity Period through and including October 8, 2026 and the Solicitation Period through and including December 7, 2026. [3]

15. This is the Debtors' second request for extension of the Exclusivity Period and Solicitation Period. The Debtors are working diligently with DOH and their other stakeholders to implement their restructuring strategy with a partner, along with a Safety Net Transformation grant, culminating in the confirmation of a plan going effective in the first quarter of 2027. The Debtors respectfully submit that the complexity and fragility of these Chapter 11 Cases and the mission criticality of the health care they provide in the North Country necessitates a further extension of the Exclusivity Period and Solicitation Period.

16. By this Motion, the Debtors seek entry of an order pursuant to section 1121(d) of the Bankruptcy Code further extending the Exclusivity Period to January 6, 2027 and the

---

[3] The plain language of the statute makes clear that a bridge order extending the Exclusivity Period from the expiration date of June 10, 2026, through the date of the hearing on June 24, 2026, is not required. See 11 U.S.C. §1121(d) ("[o]n **request** of a party in interest **made within the respective periods specified in subsections (b) and (c)** of this section . . .") (emphasis added). Section 1121(d)(1) requires only that the request for extension be "made within" the existing exclusivity period. Nothing in the statute requires the bankruptcy court to enter its order before expiration of that period. Consistent with the statutory text, bankruptcy courts within the Second Circuit, including the Northern District of New York, routinely adjudicate timely-filed exclusivity motions after the then-current exclusivity deadline has passed. *See, e.g., In re Metro Mattress Corp*., Case No. 24-30773 (Bankr. N.D.N.Y.) (WAK) (motion filed before expiration [Dkt. No. 149]; order entered thereafter extending exclusivity [Dkt. No. 174]); *In re The Roman Catholic Diocese of Syracuse, New York*, Case No. 20-30663 (Bankr. N.D.N.Y. 2020) (MCR) (motion filed before expiration [Dkt. No. 123]; order entered thereafter extending exclusivity [Dkt. No. 180]); *In re Motors Liquidation Co.*, Case No.: 09-50026 (Bankr. S.D.N.Y. 20009) (REG) (motion filed before expiration [Dkt. No. 3815]; order entered thereafter extending exclusivity [Dkt. No. 4257]).

Solicitation Period to March 7, 2027, without prejudice to the Debtors' right to seek further extensions of such dates.

**BASIS FOR RELIEF REQUESTED**

17. Pursuant to section 1121(d) of the Bankruptcy Code, this Court may extend a debtor's exclusive periods upon a demonstration of cause:

> [o]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).

18. The principal goal of chapter 11 is the successful reorganization of the debtor's business in order to maximize the benefit to creditors. *See NLRB v. Bildisco,* 465 U.S. 513, 527 (1984); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983). The Congressional intent woven throughout chapter 11 is that the principal means of a successful outcome should be a considered and consensual plan. *In re Perkins*, 71 B.R. 294, 297 (W.D. Tenn. 1987). To promote the formulation of a considered and consensual plan, Congress gave the debtor the exclusive right to propose a plan of reorganization for an initial 120-day period. *See In re Ames Dep't Stores, Inc.*, 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor the flexibility to negotiate with its creditors."). Pursuant to section 1121(d) of the Bankruptcy Code, this initial period of exclusivity can be extended for "cause".

19. Whether "cause" exists to extend a debtor's exclusive periods to file and solicit acceptances of a chapter 11 plan is a decision committed to the sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case. *See In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987). Congress intended to give the bankruptcy court maximum

flexibility to make such determination. *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).

20. In determining whether cause exists to extend a debtor's exclusive periods, courts have considered numerous factors, including:

(1) the size and complexity of the case;

(2) the need for more time to allow the debtor to negotiate a consensual chapter 11 plan and prepare adequate information;

(3) whether the debtor has made good faith progress toward a chapter 11 plan;

(4) whether the debtor has been paying its debts when due;

(5) whether the debtor has demonstrated reasonable prospects for filing a viable chapter 11 plan;

(6) whether the debtor has made progress in negotiating with its creditors;

(7) the length of time the case has been pending;

(8) whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's demands; and

(9) whether unresolved contingencies that may affect the viability of a chapter 11 plan exist.

*See In re Tripodi*, No. 04-30793, 2005 LEXIS 1981, at *4 (Bankr. D. Conn. 2005).

21. While not all factors are relevant to every case, courts have used a subset of the above factors to determine whether cause exists, *In re Hoffinger Indus.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003), and further consider the totality of circumstances of each case. *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997).

22. An analysis of the various factors noted above demonstrates that sufficient cause exists for extending the Exclusivity Period and Solicitation Period to January 6, 2027 and March 7, 2027, respectively.

23. First, the size and complexity of these cases warrant a further extension of the Exclusivity Period and Solicitation Period. The Debtors operate multiple medical facilities in two

counties in Upstate New York, maintain a substantial workforce, and have approximately 4,000 creditors.

24. Second, the Debtors' significant progress to date in these Chapter 11 Cases justifies the requested further extension of the Debtors' exclusive periods. The Debtors have also made substantial good faith progress in selecting a prospective partner, which is, of necessity, a prerequisite toward formulation of a chapter 11 plan. The Debtors require additional time to: (i) negotiate the terms of an affiliation with their selected partner and begin the process of implementation; (ii) negotiate with creditors and the Committee concerning the terms of, and formulation of, a plan of reorganization providing for, among other things, implementation of the affiliation and distributions to creditors; and (iii) prepare a disclosure statement.

25. Throughout the Chapter 11 Cases, the Debtors have maintained the high quality of patient care they are known for with a loyal and dedicated workforce, maintained employee wages and benefits, paid vendors for postpetition goods and services, and met their cash collateral and DIP loan reporting obligations. With approval of the DIP loan, the Debtors have sufficient liquidity to pay their postpetition debts as they come due, which supports the granting of a further extension of the Debtors' Exclusive Period and Solicitation Period because it suggests that such an extension will not jeopardize the rights of postpetition creditors and will facilitate the promulgation of their plan.

26. The Debtors have reasonable prospects for filing a viable chapter 11 plan that will provide for distributions to creditors. The Debtors are continuing to work with the Committee, their secured creditors, the DOH, their potential partner and other parties in interest to lay the groundwork to allow them to formulate a confirmable chapter 11 plan. Until further progress is made in negotiating a partnership, submitting the SNTP grant application and complying with

regulatory requirements in the next few months, the Debtors will be unable to finalize a chapter 11 plan or prepare a disclosure statement containing adequate information.

27. The Debtors respectfully assert that there can be no inference in these cases that they are seeking further extensions of their Exclusivity Period and Solicitation Period as a negotiating tactic or as a means of maintaining leverage over any group of creditors whose interests may be harmed by such a further extension. The requested further extension is sought solely to provide adequate time to develop and implement necessary steps required for plan formulation with support from the DOH, the Committee and certain of their secured creditors. The Debtors are in the best position to lead the formulation of a confirmable chapter 11 plan that will provide for, among other things, implementation of the affiliation under the SNTP grant and an orderly distributions to creditors. Allowing the Debtors' Exclusivity Period and Solicitation Period to terminate at this point would defeat one of the primary purposes of section 1121 of the Bankruptcy Code, which is the development of a consensual chapter 11 plan. *See Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005).

28. Based upon the foregoing, the Debtors respectfully submit that ample cause exists under the Bankruptcy Code and the applicable case law for the requested further extension of the Exclusivity Period and Solicitation Period.

## NOTICE, NO PRIOR REQUEST, AND RIGHT TO SEEK FURTHER EXTENSIONS

29. Notice of this Motion has been provided to the (i) the U.S. Trustee; (ii) counsel for the Committee, Northern Credit Union, and the New York State Department of Health; (iii) the Office of the New York State Attorney General; (iv) the U.S. Attorney for the Northern District of New York; (v) the Centers for Medicare Medicaid Services; and (vi) any party that has requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. The Debtors submit that such

notice is sufficient and appropriate under the circumstances and that no other or further notice need be given.

28. Other than the First Extension Motion, no previous request for the relief sought herein has been made by the Debtors to this or any other court.

29. The Debtors further request that the relief requested herein be granted without prejudice to the Debtors' right to seek further extensions of their Exclusivity Period and Solicitation Period.

**WHEREFORE**, the Debtors respectfully request that the Court (i) enter an order, substantially in the form attached hereto as **Exhibit A**, granting the Debtors' second request to extend the Exclusivity Period within which only the Debtors may file a chapter 11 plan until January 6, 2027 and granting the Debtors' second request to extend the Solicitation Period within which the Debtors may solicit acceptances of its chapter 11 plan until March 7, 2027, without prejudice to seek further extensions; and (iii) grant such other and further relief as the Court may deem just and proper.

Dated: September 30, 2026
New York, New York

**BARCLAY DAMON LLP**
*Counsel for Debtors and Debtors-In-Possession*

By: *__/s/Janice B. Grubin__________*
Janice B. Grubin
Ilan Markus (admitted *pro hac vice*)
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Janice B. Grubin:
(212) 784-5808; jgrubin@barclaydamon.com
Ilan Markus:
(203) 672-2661; imarkus@barclaydamon.com

**<u>EXHIBIT A</u>**
**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[4] | : | Case No. 26-60099-5-wak |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30078 |
| | : | Case No. 26-30079 |
| | : | Case No. 26-60100 |

**ORDER GRANTING DEBTORS' SECOND MOTION TO ENLARGE THE EXCLUSIVE PERIODS WITHIN WHICH THE DEBTORS MIGHT FILE AND SEEK APPROVAL OF A DISCLOSURE STATEMENT AND PLAN AND SOLICIT ACCEPTANCES THEREOF**

This matter having come before this Court upon the motion date September 30, 2026 [Docket No. ___] (the "Motion") of North Star Health Alliance, Inc., Carthage Area Hospital, Inc., Claxton-Hepburn Medical Center, Inc., and Meadowbrook Terrace, Inc., the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), seeking the entry of an order, pursuant to 11 U.S.C. §§ 1121(b) and (c), extending for an additional 90 days, until January 6,

[4] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

2027, the period within which the Debtors exclusively may file a chapter 11 disclosure statement and plan(the "Exclusivity Period") , and extending for an additional 90 days, until March 7, 2027, the period within which the Debtors alone might solicit acceptances of such plan (the "Solicitation Period"); and this matter having come before this Court for a hearing on October 21, 2026, on notice to the Office of the United States Trustee, counsel for the Committee of Unsecured Creditors, Northern Credit Union, New York State Department of Health, New York State Attorney General, and U.S. Attorney for the Northern District of New York, the Centers for Medicare Medicaid Services, and those parties requesting notices, and the Court finding such notice to be adequate; and no party having filed any opposition to the Motion; and upon all pleadings and proceedings had in this matter to date, and good cause appearing therefor, it is hereby

**ORDERED**, that the Motion is granted as hereinafter set forth;

**ORDERED**, that the time within which the Debtors exclusively may file a Chapter 11 disclosure statement and plan is hereby extended for an additional 90 days, until January 6, 2027; and it is further

**ORDERED**, that the period within which the Debtors alone might solicit acceptances of such plan is hereby extended for an additional 90 days, until March 7, 2027; and it is further

**ORDERED**, that nothing herein shall be without prejudice to the Debtors' right to request further extensions of the Exclusivity Period and Solicitation Period or to seek other appropriate relief; and it is further

**ORDERED** that the Debtors are authorized and empowered to take any and all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion; and it is further

**ORDERED** that notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

# # #