**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099 |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30788 |
| | : | Case No. 26-30799 |
| | : | Case No. 26-60100 |

**APPLICATION FOR ORDER LIMITING NOTICE OF HEARING TO CONSIDER DEBTORS' MOTION FOR ENTRY OF ORDER APPROVING SETTLEMENT AND COMPROMISE BETWEEN DEBTORS AND CHART RISK RETENTION GROUP PURSUANT TO BANKRUPTCY RULE 9019**

TO THE HONORABLE CHIEF JUDGE WENDY A. KINSELLA:

North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through the undersigned counsel, make this application (the "Application") for an order limiting notice required for a hearing to consider the *Motion for Entry of Order Approving Settlement Between Debtors and CHART Risk Retention Group* (the "Motion"). In support of this Application, the Debtors respectfully submit as follows:

[1] The Debtors in these cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).

## JURISDICTION

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Bankruptcy Code section 105(a), Fed. R. Bankr. P. 2002(m), and Local Bankruptcy Rules 2002-1(a), 2002-1(c)(A), and 9013-1(a).

## BACKGROUND

### A. The Chapter 11 Cases

3. On February 10, 2026 (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their properties and are operating and managing their health care businesses, as debtors-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. An Official Committee of Unsecured Creditors (the "Committee") was appointed on March 4, 2026. A Patient Care Ombudsman, Suzanne Koenig (the "PCO"), was appointed on March 12, 2026.

5. By Order dated June 24, 2026 [Docket No. 417], the Court approved on a final basis the debtor-in-possession loan (the "DIP Loan") from the Dormitory Authority of the State of New York ("DASNY") to the Debtors in the total amount of up to $45 million, collateralized by, among other things, liens on substantially all assets of the Debtors.

6. On August 6, 2026, the Debtors executed a Letter of Intent with Rochester Regional Health ("RRH") as the proposed long-term strategic partner for the core hospital and behavioral health operations of the North Star system (the "RRH LOI"). The Debtors are currently pursuing a Safety Net Transformation Program ("SNTP") application and related restructuring in conjunction with RRH, the New York State Department of Health ("DOH"), and the Public Health and Health Planning Council ("PHHPC").

7. Since the Petition Date, the Debtors continue to fulfill their charitable mission by operating their facilities to deliver quality health care in their communities, supported by a local and loyal workforce.

**B. The Debtors' Operations**

8. Each of the Debtors are New York not-for-profit corporations. Debtor North Star is the umbrella passive parent that oversees the North Star system. The North Star system is a critical safety-net healthcare provider in the North Country region of New York State, serving the residents of Jefferson, St. Lawrence, and Lewis Counties. The system's facilities provide emergency care, ambulatory surgery, clinical laboratory services, diagnostic imaging, rehabilitation, cancer treatment, renal dialysis, women's health, pediatrics, musculoskeletal and orthopedic care, mental health services, wound care, school-based health centers, and a network of community-based access points.

9. The Debtors' operations currently consist of Debtor Carthage's two 25-bed Critical Access Hospitals at its Carthage campus (1001 West Street, Carthage, NY 13619) and its Ogdensburg campus and a network of provider-based clinics under its Article 28 operating certificate, Debtor Claxton's standalone Article 31 inpatient psychiatric hospital and Debtor

Meadowbrook's 60-bed assisted living facility. Collectively, the North Star system employs approximately 991 individuals.

**C. The Debtor North Star's Insurance Relationship with CHART**

10. CHART Risk Retention Group ("CHART") operates as an insurance reciprocal which is a member-owned insurance structure where the subscribers are also policy holders under traditional insurance policies and CHART collects premiums to provide medical malpractice and general liability insurance coverage for each subscriber's risks.

11. To become a member of CHART, each member enters into a Subscriber Agreement and Application for Insurance Coverage and Power of Attorney (the "Subscriber Agreement"). Claxton became a member of CHART in February 2011 and by Amendment in March 2018, NSHA succeeded to Claxton's subscriber status.

12. Effective January 1, 2025, NSHA withdrew as a member and terminated its Subscriber Agreement.

13. At the end of CHART's fiscal year 2025, the Debtor North Star had the following amounts in CHART Accounts: (i) $200,000.00 in its Paid Surplus Account; and (ii) $1,584,264.00 in its Surplus Capital Account, which amount was thereafter reduced by $110,936.25 as a result of the actuarial adjustment approved pursuant to the Interim Order. The total amount in the Debtor's Accounts being held by CHART is currently $1,673,309.75. No interest is payable on these amounts.

14. CHART is permitted to hold the capital accounts of a departed subscriber for up to five years prior to distribution of the capital account balance to the departed member. As Debtor departed CHART membership effective January 1, 2025, CHART currently holds the Debtor's Accounts on Debtor's behalf pending the date(s) of distribution pursuant to CHART's governing

standards. Debtor has requested that amounts in its accounts held by CHART be disbursed early. According to CHART, permitting early withdrawal without an appropriate discount is highly unusual and unprecedented, encouraging other departed or departing subscribers to seek premature distributions, to the detriment of CHART and its members.

15. To date, Debtor owes CHART $243,109.20 for unpaid premiums, penalties, and other charges. CHART's Rules and Regulations ("CHART's Rules") provide the right of offset.

16. On February 25, 2026 CHART filed a motion for relief from the automatic stay (ECF Doc. No. 76 (the "Stay Motion"). seeking authority for CHART to offset the Debtor's liabilities against the Debtor's capital account held by CHART, as well as a comfort order confirming that CHART may make actuarially required annual adjustments to members' internal accounts, including the Debtor's. The Stay Motion was granted, in part, on consent, by Interim Order entered March 12, 2026 (ECF Doc. No. 148) (the "Interim Order") providing for CHART to make actuarially required annual adjustments to members' internal accounts, including the Debtor's. The balance of CHART's Stay Motion -- the disposition of the request to offset the Debtor's liabilities against the Debtor's capital account held by CHART -- remains pending before the Court.

17. The Motion resolves this remaining portion of the Stay Motion.

## RELIEF REQUESTED

14. The Debtors make this Application pursuant to Rule 2002(m) of the Federal Rules of Bankruptcy Procedure and Local Rules 2002-1(a), 2002-1(c)(A), and 9013-1(a) for an Order limiting the service, for the notice of hearing to consider the Motion (the "Requested Relief").

15. By this Application, the Debtors seek entry of an order limiting notice of the Motion so that, in lieu of service on the entire creditor matrix, notice shall be provided only to the following parties (the "Notice Parties"):

a. the Office of the United States Trustee for the Northern District of New York;

b. Counsel to the official committee of unsecured creditors (the "Committee") appointed in these Chapter 11 Cases;

c. Counsel to Northern Credit Union;

d. Counsel to the New York State Department of Health, the Office of the Attorney General for the State of New York;

e. the Office of the United States Attorney for the Northern District of New York;

f. Counsel to CHART Risk Retention Group;

g. all parties who have formally appeared and requested notice in these Chapter 11 cases pursuant to Bankruptcy Rule 2002; and

h. such other parties as the Court may direct.

16. Under Federal Rule of Bankruptcy Procedure 2002, the Court may, for cause, limit the entities entitled to receive notice. Fed. R. Bankr. P. 2002(m) ("Except as these rules provide otherwise, the court may designate the matters about which, the entity to whom, and the form and manner in which a notice must be sent.").

17. The Debtors' consolidated creditor matrix contains thousands of creditors. Service of the Motion on all creditors would impose a substantial administrative burden and expense on the estates without providing a corresponding benefit.

18. Furthermore, the existence of the Committee provides protection to creditors of the Debtors.

19. The proposed notice procedures are reasonably calculated to apprise all interested parties of the Motion while conserving estate resources.

**WHEREFORE**, based upon the foregoing, the Debtors respectfully request that the Court enter an order limiting notice required for a hearing to consider the Motion to the Notice Parties and granting such other and further relief as the Court deems just and proper.

Dated: November 18, 2026
New York, New York

**BARCLAY DAMON LLP**
*Counsel for Debtors and Debtors-In-Possession*

By: *___/s/Janice B. Grubin____________*
Janice B. Grubin
Emilie D. Simone
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Janice B. Grubin:
(212) 784-5808; jgrubin@barclaydamon.com
Emilie D. Simone:
(212) 784-5833; esimone@barclaydamon.com

*Counsel for the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NORTH STAR HEALTH ALLIANCE, INC., *et al*,[1] | : | Case No. 26-60099-5-wak |
| | : | Main Case |
| Debtors. | : | Jointly Administered |
| | : | Case No. 26-30078 |
| | : | Case No. 26-30079 |
| | : | Case No. 26-60100 |

**ORDER LIMITING NOTICE REQUIRED FOR HEARING TO CONSIDER DEBTORS' MOTION FOR ENTRY OF ORDER APPROVING SETTLEMENT AND COMPROMISE BETWEEN DEBTORS AND CHART RISK RETENTION GROUP PURSUANT TO BANKRUPTCY RULE 9019**

Upon the application (the "Application")[2] by North Star Health Alliance, Inc. ("North Star"), Carthage Area Hospital, Inc. ("Carthage"), Claxton-Hepburn Medical Center, Inc. ("Claxton"), and Meadowbrook Terrace, Inc. ("Meadowbrook"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") order limiting notice required for a hearing to

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Carthage Area Hospital, Inc. (2079); North Star Health Alliance, Inc. (9491); Claxton-Hepburn Medical Center, Inc. (9686); and Meadowbrook Terrace, Inc. (2458).
[2] Capitalized terms that are otherwise undefined shall have the meanings given to such terms in the Application.

consider the *Motion for Entry of Order Approving Settlement Between Debtors and CHART Risk Retention Group* (the "Motion"), and it appearing therefrom that cause exists for limiting the notice parties required for serving the notice of the hearing to consider the Motion; and upon due deliberation of the foregoing having been had thereon, it is hereby

**ORDERED**, that the Application is GRANTED as set forth herein; and it is further

**ORDERED**, that a copy of this Order, the Application upon which it was granted, the Notice of Motion, and the Motion shall be served by ECF notification and email upon:

a. the Office of the United States Trustee for the Northern District of New York;

b. Counsel to the official committee of unsecured creditors appointed in these Chapter 11 Cases;

c. Counsel to Northern Credit Union;

d. Counsel to the New York State Department of Health, the Office of the Attorney General for the State of New York;

e. the Office of the United States Attorney for the Northern District of New York;

f. Counsel to CHART Risk Retention Group;

g. all parties who have formally appeared and requested notice in these Chapter 11 cases pursuant to Bankruptcy Rule 2002; and

h. such other parties as the Court may direct.

and that service in compliance with this Order shall be good and sufficient notice of the hearing on the Motion.

# # #